1   LARSON & ZIRZOW, LLC
    ZACHARIAH LARSON, ESQ.
2   Nevada Bar No. 7787
    E-mail: zlarson@lzlawnv.com
3   MATTHEW C. ZIRZOW, ESQ.
    Nevada Bar No. 7222
4   E-mail: mzirzow@lzlawnv.com
5   850 E. Bonneville Ave.
    Las Vegas, Nevada 89101
6   Telephone:  (702) 382-1170
    Facsimile:  (702) 382-1169
7
8   Attorneys for Plaintiff

9

10                  **UNITED STATES BANKRUPTCY COURT**
                     **FOR THE DISTRICT OF NEVADA**

11  In re:                                    Case No.: BK-S-15-14956-abl
                                              Chapter 11
12  MARC JOHN RANDAZZA,

13          Debtor.

14  _____

15  MARC JOHN RANDAZZA, an individual,

16          Plaintiff,

17  v.                                        **COMPLAINT**

18  CRYSTAL L. COX, an individual,

19          Defendant.

20

21

22          Plaintiff, Marc John Randazza, as debtor and debtor in possession ("Mr. Randazza"), by

23  and through his attorneys, the law firm of Larson & Zirzow, LLC, hereby respectfully complains,

24  objects, and alleges against Defendant, Crystal L. Cox, an individual ("Ms. Cox") as follows:

25  . . .

26  . . .

27  . . .

28

**JURISDICTION AND VENUE**

1.      The Court has subject matter jurisdiction to consider and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Rule 1001(b)(1) of the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada.

2.      The basis for relief herein are 11 U.S.C. §§ 502(b)(1) and 523, and Rules 3007, 4007(a) and (c), and 7001(1), (4), (6) and (9) of the Federal Rules of Bankruptcy Procedure.

3.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)-(C), and (I).

4.      Pursuant to Local Rule 7008.1, Mr. Randazza consents to the entry of final orders and judgments by the bankruptcy judge in this matter.

5.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

**THE PARTIES**

6.      Plaintiff, Mr. Randazza, is an individual residing in Las Vegas, Clark County, Nevada.  On August 28, 2015 (the "Petition Date"), Mr. Randazza filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada thereby commencing his bankruptcy case (the "Chapter 11 Case").

7.      Mr. Randazza is authorized to operate his businesses and manage his property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in the Chapter 11 Case.

8.      Mr. Randazza is the manager of Randazza Legal Group and am attorney licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada.  He focuses his legal practice on litigating First Amendment, trademark and copyright infringement, defamation, free speech, intellectual property and similar litigation.

9.      Mr. Randazza also has experience in a variety of similar transactional responsibilities including providing advice to clients on First Amendment, copyright, trademark, domain name law, internet law, and entertainment law, including the negotiation and drafting of various associated agreements.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

10.    Mr. Randazza has also taught courses at the law school level regarding the foregoing topics, having published numerous law review, bar journal, and other articles regarding those topics, and having numerous speaking engagements regarding those topics.

11.    Mr. Randazza is also the editor of The Legal Satyricon, which is well-known blog on law, liberty, technology and politics, which has recently been rated in the Top 100 Legal Blogs by the American Bar Association (the "ABA").

12.    Defendant, Ms. Cox, is an individual residing in the State of Washington who has a mailing address of P.O. Box 2027, Port Townsend, Washington 98368, and who may be served via e-mail at savvybroker@yahoo.com.

## GENERAL ALLEGATIONS

### A.    Ms. Cox's Well Documented History as an Extortionist.

13.    In Obsidian Finance Group LLC v. Cox, No. cv-11-57-HZ (D. Or.) (the "Obsidian Case"), Ms. Cox was a defendant in a defamation lawsuit brought by Obsidian Finance Group ("Obsidian") and Kevin Padrick ("Mr. Padrick"), Obsidian's principal, in connection with a publication by her that Mr. Padrick committed tax fraud in the course of his service as a bankruptcy trustee.

14.    After obsessively posting defamatory information about these targets online attacking them relentlessly, Ms. Cox then sought a financial advantage from them in exchange for cleaning up the very reputational damage she caused by offering to cease her attacks and to remediate the harm as long as the target hired her to do so.

15.    On November 30, 2011, a jury returned a $2.5 million verdict against Ms. Cox in the Obsidian Case for defamation, which verdict received substantial nationwide media coverage as illustrated by the articles referenced hereinafter.

16.    On December 7, 2011, Forbes journalist Kashmir Hill wrote the article "Why an Investment Firm was Awarded $2.5 Million After Being Defamed by Blogger" describing the Obsidian Case, which involved allegations of fraud made by Ms. Cox against Obsidian on her blog and questions as to whether she enjoyed certain legal protections as journalists.

17.    Forbes also noted an unusual tactic, which Ms. Hill described in a subsequent article

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

for Forbes on April 2, 2012, "Ugly New Reputation-Smearing Tactic: Going After a Toddler's Internet Footprint." This article was principally about Ms. Cox attacking Mr. Randazza's then three-year-old daughter, N.R. in her extortion scheme, after attacks on Mr. Randazza personally, and then his wife, failed to result in the desired payments to Ms. Cox.

18.    As was reported in Forbes, "[a]fter Obsidian sued Cox, she contacted them offering her 'reputation services;' for $2,500 a month she could 'fix' the firm's reputation and help promote its business. (In some circles we call that 'extortion')."

19.    On December 8, 2011, Mark Bennett wrote the article "The Sky is Definitely Not Falling," observing that "[a] non-journalist like Cox is not allowed to defame a person. But – and this is crucial to an understanding of this case – a journalist is *also* not allowed to defame a person."

20.    On December 10, 2011, New York Times journalist David Carr wrote "When Truth Survives Free Speech," noting "[w]hen [Cox] gets in a fight with someone, she frequently responds by creating a domain with that person's name, some allegation of corruption, or both [and] an unsuitable offer to holster her gun in exchange for a payoff."

21.    On March 29, 2012, Forbes journalist David Coursey wrote the article "Are Bloggers Really Journalists? Not if they Ask for Money," commenting on the extortionate "reputation services" offered by Ms. Cox.

22.    On July 5, 2013, the State of Montana Board of Realty Regulation (the "Montana Realty Board") also found that Ms. Cox had engaged in extortionate behavior, thereby violating multiple rules of professional and ethical conduct.

23.    The Montana Realty Board found that Ms. Cox violated the confidences of a client, Martin Cain, by registering the domain name <martincain.com> and using it to post various false statements about him, including an accusation that Mr. Cain hired a hit man to kill Ms. Cox. The

24.    The Montana Realty Board found that Ms. Cox contacted Mr. Cain and offered him the <martincain.com> website for $500,000.

25.    Subsequently, in its decision in Ms. Cox's appeal in the Obsidian case, the Ninth Circuit observed that "[Ms.] Cox apparently has a history of making similar allegations and seeking payoffs in exchange for retraction." Obsidian Fin. Group, LLC v. Cox, 740 F.3d 1284,

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

4

1287 (9th Cir. 2014).

**B.    Ms. Cox's Extortionate Conduct Against Mr. Randazza.**

26.    In December 2011, Michael Spreadbury ("Mr. Spreadbury") approached Mr. Randazza, an attorney, asking him to consider representing Ms. Cox.

27.    On December 10, 2011, Mr. Randazza participated in a non-privileged conference call with Ms. Cox and Mr. Spreadbury, regarding potentially representing her in an appeal in the Obsidian Case, advising her that he would look into the case.  Mr. Randazza thereafter advised Ms. Cox that he would speak with Obsidian's counsel to make such determination.

28.    On December 10 and 12, 2011, Mr. Randazza spoke with Obsidian's counsel to gather information about the case in order to determine whether to pursue an appeal, but ensured that it was for exploratory purposes only and clearly communicated that he was not acting on behalf of or otherwise representing Ms. Cox.

29.    On December 14, 2011, Mr. Randazza offered to represent Ms. Cox.  On December 16, 2011, Ms. Cox declined the offer of representation, and specifically and unequivocally stated that "Marc Randazza does NOT represent me in ANY way."

30.    Ms. Cox apparently decided that Mr. Randazza would be a good target for her extortion scheme.  Shortly after informing Mr. Randazza that she retained other counsel for her appeal in the Obsidian Case, she also informed him that she had registered <marcrandazza.com> and offered her same "reputation management" services to him that she had offered to Obsidian if they paid her.

31.    The implication of Ms. Cox's communication, especially in the context of her well-documented behavior up until that date, was clear -- pay me or you get to meet the same fate as Mr. Padrick and Obsidian -- the plaintiffs in the Obsidian Case.

32.    Mr. Randazza declined to submit to Ms. Cox's extortionate demand.  On March 12, 2012, Ms. Cox sought to increase the extortionate pressure by attacking Mr. Randazza's wife by registering <jenniferrandazza.com>.

33.    When that did not have the desired effect, Ms. Cox went after Mr. Randazza's then three-year-old daughter, N.R., with a domain using her name.

5

34.     Ms. Cox's tactic of going after Mr. Randazza's minor daughter was also reported in an article by Kashmir Hill entitled "Ugly New Reputation-Smearing Tactic:  Going After a Toddler's Internet Footprint," which was printed in <u>Forbes</u> on April 2, 2012.

35.     Ms. Cox admitted, in a video response to the April 2, 2012 Forbes article, that she purchased the domain names to allegedly "stop [Mr. Randazza] from conspiring with the other side [Obsidian]" to keep him from testifying against her at a deposition to be taken by Obsidian. Specifically, she stated:

> I did this and it worked.  Okay.  It was March 23 is when Marc Randazza was scheduled for his deposition in Portland, Oregon. … I got all these domain names, including his wife and his daughter, and I never publicized the daughter one, in order to saturate the search with my story as fast as I could. And guess what? It worked. He didn't give that deposition on March 23. He backed down in coming for me because of what I did. And part of that was all of these names …. I think I'll go without coffee or food or something at least one day a week so I can buy another dot com with Marc Randazza's name in it . . . .

36.     On March 30, 2012, Mr. Randazza wrote on his law blog, <u>The Legal Satyricon</u> "Judge Rules Again that Blogger Crystal Cox is Not a Journalist.  You Know Why?  Because She isn't a Journalist," describing the outcome of the Obsidian Case, her registration of <marcrandazza.com> and domains named for his family, and her extortionate behavior.

37.     In the ensuing months, at least seven additional articles from noted legal blogs also commented on Ms. Cox's extortionate conduct toward Mr. Randazza, including but not limited to the following:

(a)     On December 9, 2011, Carlos Miller, "Blogger Must Act Like Journalist To Be Treated Like One," Photography Is Not A Crime (available at https://photographyisnotacrime.com/2011/12/blogger-must-act-like-journalist-to-be-treated-like-one/).

(b)     On March 30, 2012, Jordan Rushie, "Crystal Cox - Investigative Blogger? No More Like A Scammer and Extortionist," Philly Law Blog (available at http://phillylawblog.wordpress.com/2012/03/30/crystal-cox-investigative-blogger-no-

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

more-like-a-scammer-and-extortionist/).

      (c)    On March 30, 2012, Scott Greenfield, "A Blogger Not Like Us," Simple Justice (available at http://blog.simplejustice.us/2012/03/30/a-blogger-not-like-us-update/).

      (d)    On January 19, 2014, Ken White, "Protecting the Free Speech of Censors: The Crystal Cox Saga," Popehat (available at http://www.popehat.com/2014/01/19/protecting-the-free-speech-of-censors-the-crystal-cox-saga/).

      (e)    On April 2, 2012, Eric Turkewitz, "Blawg Review is Back! (With some incredible, but true, stories)," The New York Personal Injury Law Blog (available at http://www.newyorkpersonalinjuryattorneyblog.com/2012/04/blawg-review-is-back-with-a-couple-incredible-stories.html).

      (f)    March 31, 2012, Mark Bennett, "Crystal Cox," Defending People (available at http://blog.bennettandbennett.com/2012/03/crystal-cox.html).

      (g)    In April 2012, Janine Robben, "The Poster Child: How Oregon's Blogging Defamation Case Attracted National Attention," Oregon State Bar Bulletin (available at http://www.osbar.org/publications/bulletin/12apr/posterchild.html).

38.    On September 19, 2012, Ms. Cox offered to sell the Plaintiff's domain name by a blog posted thereon for $5,000,000 with the title of her post taunting "Here Kitty Kitty..."

39.    On November 19, 2012, Ms. Cox threatened that her campaign of harassment would expand to Mr. Randazza's sister.

40.    On March 30, 2012, Mr. Randazza wrote on his law blog, <u>The Legal Satyricon</u> "Judge Rules Again that Blogger Crystal Cox is Not a Journalist. You Know Why? Because She isn't a Journalist," describing the outcome of the <u>Obsidian</u> Case, her registration of <marcrandazza.com> and domains named for his family, and her extortionate behavior.

41.    To date, Ms. Cox has obsessively registered dozens of domain names containing the Randazza family's names or surnames in an effort to extort and harass them and capitalize upon and damage the goodwill that Mr. Randazza has in his name.

42. Ms. Cox registered more than thirty infringing domain names (collectively, the "Infringing Domain Names"), some of which were listed under a proxy, Eliot Bernstein ("Mr. Bernstein").

43. Ms. Cox registered the Infringing Domain Names with the intent to capitalize on the use of Mr. Randazza's personal name, extort money from the Randazzas, and engage in witness intimidation. In fact, the profit in Ms. Cox's endeavor flows directly from her extortion scheme.

44. If Ms. Cox's targets refuse her extortion, she continues her campaign to ruin their reputations online, not only by posting defamatory rants about them, but by then repeating the defamatory rants on site after site, often on domain names that wholly include their legal names or trademarks, and interlinking all of her many sites in order to artificially inflate the Google rankings on each site. Ms. Cox claims to be "very good" at getting her websites to appear at the top of search results.

45. Ms. Cox admits that she originally registered the Infringing Domain Names in an attempt to harass and extort Mr. Randazza. Specifically, Ms. Cox said she hoped to intimidate Mr. Randazza to keep him from testifying in the matter of Obsidian Case.

46. In addition, Ms. Cox has asked Mr. Randazza to pay her to maintain his online reputation, which she herself has sought to destroy through search engine optimization and link spamming techniques.

## C.    The WIPO Case.

47. On July 27, 2012, Mr. Randazza filed a dispute with the World Intellectual Property Organization ("WIPO") to recover several domain names, which he was awarded on November 30, 2012. These domains are not the subject of the injunction in the 2040 Case (as hereinafter defined), as they were awarded to Mr. Randazza in the WIPO case, and Ms. Cox failed to file an action within the requisite period to appeal the WIPO decision. In its decision dated November 30, 2012, the WIPO observed the following:

> Furthermore, the Respondent's [Ms. Cox's] actions in registering
> and using the disputed domain names may appear, at a first glance,
> to simply be a vehicle through which she provides advertising
> through pay-per-click sites, but on slightly closer examination are

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

actually components of an artifice intended to extort funds from the Complainant and thus a pretext for a rather egregious variant of cybersquatting. As such, none of those actions can or will serve as a predicate upon which the Respondent can lawfully develop any rights or legitimate interests in any of the disputed domain names.
. . . .
In any event, for purposes of the Policy the Panel finds the Respondent's intention, as reflected by the record, was never to solely provide, through her websites, speech critical of the Complainant. Rather, her objective in both registering and using the disputed names was apparently to engage in a rather sinister and tenacious scheme to extort money from the Complainant. Specifically, the Respondent first posted negative and false commentary on her websites that was intentionally calculated to injure the Complainant's on-line reputation and disrupt the Complainant's business conducted through his law firm. Thereafter, the Respondent used those sites in a manner that apparently optimized their ranking on the Google search engine in order to increase their visibility and prominence on search results yielded through a Google search of the Complainant, thus likely exacerbating the injury caused to the Complainant. Once all this occurred, the Respondent then offered her reputational management services to the Complainant through which, for a considerable fee, she would remediate the Complainant's on-line reputation by eliminating all the negative and false commentary of her own making and presumably also ceasing her use of the disputed domain names. Basically, for a price, she would undo the injury to the Complainant for which she was responsible for having created in the first place. This egregious conduct clearly constitutes bad faith under the Policy.

48.    The WIPO panel further found that:

Respondent has previously registered domain names that solely include her target's full names and uses link-bombing methods in an effort to increase the prominence of her search results on search engines. The Respondent then offers to provide "reputation management" services to her target in return for a fee. Such websites are not "criticism sites" but merely a pretext for the Respondent's bad faith extortionate use.

49.    If Ms. Cox's targets refuse her extortion, she continues her campaign to ruin their reputations online, not only by posting defamatory rants about them, but by then repeating the defamatory rants on site after site, often on domain names that wholly include their legal names or trademarks, and interlinking all of her many sites in order to artificially inflate the Google rankings on each site. Ms. Cox claims to be "very good" at getting her websites to appear at the top of

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

9

search results.

**D.     The Initial Stages of the 2040 Case.**

50.     On November 28, 2012, Mr. Randazza, as well as his wife, on behalf of themselves and their minor daughter (collectively, the "Randazzas"), filed a *Complaint* (the "2040 Complaint"), against Ms. Cox and Mr. Bernstein in the United States District Court for the District of Nevada (the "District Court"), thereby commencing Case No. 2:12-cv-2040-JAD-PAL (the "2040 Case").

51.     The 2040 Complaint arose out of Ms. Cox and Mr. Bernstein's registration and use of the Infringing Domain Names.  As previously noted, these domains were not made the subject of the WIPO proceedings, but were registered by Ms. Cox in the same course of conduct as the ones adjudicated in the WIPO dispute.

52.     The Randazzas' 2040 Complaint alleged the following claims for relief:   (a) violation of individual cyberpiracy protections - 15 U.S.C. § 8131; (b) cybersquatting - 15 U.S.C. § 1125(d); (c) right of publicity - NRS 597.810; (d) common law right of publicity; (e) common law right of intrusion upon seclusion; (f) civil conspiracy.

53.     Shortly after commencing the 2040 Case, the Randazzas filed a motion for temporary restraining order, thereby seeking to freeze the Infringing Domain Names pending the outcome of the 2040 Case.

54.     After this matter was briefed by the parties, the District Court, the Hon. Gloria M. Navarro, issued a temporary restraining order in the Randazzas' favor.  Specifically, she found in a decision dated as of December 14, 2012 that Ms. Cox and Mr. Bernstein "have embarked on a campaign of cyber-extortion" against Mr. Randazza.

55.     Following a hearing, Judge Navarro issued a preliminary injunction, thereby transferring the Infringing Domain Names to Mr. Randazza's control upon the posting of a bond, which he did post.

56.     This preliminary injunction remains in place, which Ms. Cox continues to violate.

57.     In the 2040 Case, the District Court recognized that Ms. Cox's conduct amounts to extortion.  Specifically, the District Court found that "[Ms. Cox's] actions leading up to the filing

of the Complaint, as well as [her] past behavior, as represented in Plaintiffs' reply briefing, clearly seems to indicate cyber-extortion," and that "[Ms. Cox] has been shown to have engaged in a pattern of cybersquatting and cyber-extortion").

58.    On January 3, 2013, Ms. Cox filed a purported counterclaim against almost seventy (70) parties, including against not only Mr. Randazza, but also Apple, National Public Radio, and Judge Navarro, among many others, including the authors of the above-referenced articles, their employers, and the WIPO.  The Randazzas filed a motion to strike or, alternatively, to dismiss and Ms. Cox responded.

59.    Thereafter, Ms. Cox filed a 166 page purported amended counterclaim similar to her original one, thereby rendering her original counterclaim and the Randazzas' motion moot. The Randazzas again moved to strike the amended counterclaim, which was also briefed by the parties.

60.    While these motions were pending, Ms. Cox moved for summary judgment on her amended counterclaim.

61.    Ms. Cox's motion became moot, however, when on February 22, 2013, Judge Navarro granted the Randazzas' motion to strike the amended counterclaim for violation of Fed. R. Civ. P. 8(a)(2) and 14(a), however, the District Court did allow Ms. Cox to refile her allegations as a separate complaint in another case as hereinafter set forth.

62.    Due to Ms. Cox's series of frivolous filings, the District Court revoked her CM/ECF privileges.  The docket is strewn with at least a dozen of Ms. Cox's improper and indeed absurdly framed motions.  All or nearly all of the foregoing were stricken by the District Court.

**E.    The 297 Case.**

63.    Ms. Cox did, in fact, initiate a separate complaint per Judge Navarro's order on February 24, 2013 (the "297 Complaint"), which was docketed in the District Court as Cox v. Randazza, et al., Case No. 2:13-cv-00297-MMD-VCF (the "297 Case").

64.    The 297 Complaint contained the same claims she makes in the 2040 Case (as hereinafter described), and in the 938 Case (as hereinafter defined).

65.    Specifically, in the 297 Complaint, Ms. Cox alleged a slew of claims and what

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

11

appear to be affirmative defenses against Mr. Randazza including civil conspiracy, defamation, harassment, antitrust and fair competition, constitutional rights, due process, violation of the Hate Crime Prevention Act, abuse of process, tortious interference, interference with business advantage, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), malpractice and negligence, retraction law, shield law, witness tampering, whistleblowing under the False Claims Act, and violation of a consumer protection act.

66.    Ms. Cox's alleges that her claims all arose in connection with above-referenced communications between Ms. Cox and Mr. Randazza in and after December 2011 regarding the Obsidian Case and his potential representation of her therein, and Mr. Randazza's accusation of extortion when Ms. Cox purchased the numerous Infringing Domain Names and thereafter sought to be paid for "reputation management services" to ameliorate the very harm she caused.

67.    Ms. Cox had moved to proceed in *forma pauperis* in the 297 Case and, on November 27, 2013, the District Court dismissed many of her claims without prejudice and ordered her to file an amended complaint.

68.    The District Court's November 27, 2013 Order adopted the Magistrate's report and recommendation in its entirety, which found, *inter alia*, that Ms. Cox's defamation claim was merely conclusory and that the scattered factual assertions in her 297 Complaint did not meet the pleading requirements of Fed. R. Civ. P. 8 to support a claim of legal malpractice.  Ms. Cox did not file an amended complaint in accordance with this order, however, and thus on May 14, 2014, the District Court dismissed the 297 Case with prejudice.

F.    **The 938 Case.**

69.    Notwithstanding the pendency of the 297 Case, on May 14, 2013, Ms. Cox filed Case No. 1:13-cv-03257 in the United States District Court for the Southern District of New York against Mr. Randazza and others, which was subsequently transferred to the District of Nevada as Cox v. Carr, *et al.*, Case No. 2:13-cv-00938-APG-GWF (the "938 Case").

70.    Ms. Cox's complaint in the 938 Case (the "938 Complaint") raises many of the identical claims against Mr. Randazza and arises from the same underlying facts and transactions as those in the 2040 Case and the 297 Case.  The 938 Case was the fifth of ***nine (9) nearly identical***

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

*cases* Ms. Cox filed throughout the country in or about May 2013 against Mr. Randazza, among numerous others, the remainder of which are discussed below.

71.    On June 12, 2014, Magistrate Judge Foley recommended dismissal under claim preclusion of Ms. Cox's 938 Complaint due to the dismissal of the 297 Case.

72.    Magistrate Foley noted that the other complaints Ms. Cox had filed in May 2013 had all been dismissed.

73.    On January 20, 2015, the Hon. Andrew P. Gordon adopted the Magistrate's recommendation and dismissed the 938 Case <u>with prejudice</u>.

74.    In addition to the 297 Case and the 938 Case, both of which were dismissed <u>with prejudice</u>, in May 2013 Ms. Cox also instituted the following eight (8) other cases against Mr. Randazza, all of which named him as a member of slates of defendants, all arising from the same underlying facts and transactions as the 2040 Case, the 297 Case, and the 938 Case.

75.    First, in <u>Cox v. Hill, *et al.*</u>, Case No. 4:13-cv-02046-DMR (N.D. Cal. May 2, 2013) [hereinafter, "<u>Hill</u>"], Ms. Cox sued Mr. Randazza, and alleged defamation, section 1983, RICO violation, negligence, professional negligence, witness tampering, and tortious interference.  This case was dismissed without prejudice for improper venue on July 15, 2013.

76.    Second, in <u>Cox v. Parsons, *et al.*</u>, Case No. 2:13-cv-00962-MEA (D. Ariz. May 8, 2013) [hereinafter, "<u>Parsons</u>"], Ms. Cox sued Mr. Randazza initially alleging defamation, section 1983, civil conspiracy, RICO violation, negligence, professional negligence, witness tampering, tortious interference, constitutional violations, violation of international laws, and violation of intellectual property laws.  It was initially dismissed without prejudice on May 16, 2013, with leave to file an amended complaint.  Ms. Cox did so and, in her amended complaint made allegations against Mr. Randazza of malpractice, defamation, civil conspiracy, negligence, witness tampering, section 1983, and RICO violation.  The Magistrate Judge recommended the *in forma pauperis* claim be dismissed as frivolous under 28 U.S.C. § 1915 on June 18, 2013.  Thereafter, the District Judge dismissed the entire action <u>with prejudice</u> for failure to state a claim on September 19, 2013.

77.    Third, in <u>Cox v. Michaelson, *et al.*</u>, Case No. 3:13-cv-03136-AED-DEA (D.N.J.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

May 9, 2013) [hereinafter, "Michaelson"], Ms. Cox sued Mr. Randazza alleging defamation, section 1983, civil conspiracy, RICO violation, negligence/professional negligence, tortious interference, constitutional violations, violation of international law, and violation of intellectual property laws.  This matter was dismissed on September 27, 2013 without prejudice under 28 U.S.C. § 1915 for failure to be pleaded properly under Fed. R. Civ. P. 8(a), with permission to refile.  Ms. Cox abandoned the case and did not refile.

78.     Fourth, in Cox v. Coenen, et al., Case No. 2:13-cv-00534-AEG (E.D. Wis. May 13, 2013) [hereinafter, "Coenen I"], Ms. Cox sued Mr. Randazza alleging defamation, section 1983, civil conspiracy, RICO violation, negligence/professional negligence, and tortious interference.  On May 28, 2013, the matter was dismissed without prejudice in favor of the 297 Case, as the Court found it was improper of Ms. Cox to file multiple suits against the same defendants for the same reasons in multiple courts.  As noted, the 297 Case was subsequently dismissed with prejudice.

79.     Fifth, in Cox v. Coenen, et al., Case No. 1:13-cv-03633 (N.D. Ill. May 14, 2013) [hereinafter "Coenen II"], Ms. Cox sued  Mr. Randazza therein making made identical allegations as in Coenen I filed the day before.  On June 7, 2013, the Court dismissed it as being legally frivolous under 28 U.S.C. § 1915(e).

80.     Sixth, in Cox v. Rushie, et al., Case No. 1:13-cv-11308-PBS (D. Mass. May 30, 2013) [hereinafter, "Rushie I"], Ms. Cox sued Mr. Randazza alleging defamation, legal malpractice, civil conspiracy, negligence, witness tampering, tortious interference, and RICO violation.  The matter was dismissed on June 18, 2013, for improper venue and was not transferred due to the pendency of the 297 Case, the 938 Case, Hill, Parsons, and Coenen I & Coenen II.

81.     Seventh, in Cox v. Rushie, et al., Case No. 2:13-cv-03028-JHS (E.D. Penn. May 30, 2013) [hereinafter, "Rushie II"], Ms. Cox sued Mr. Randazza alleging defamation, malpractice, conspiracy, witness tampering, tortious interference, and RICO violation.   The matter was dismissed on June 6, 2013 for failure to conform to Fed. R. Civ. P. 8(a).  Although leave to refile was granted, she was specifically prohibited from raising any of the claims filed in any of the other cases in any amended complaint.  Ms. Cox abandoned the matter.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

14

82.    Eighth, in <u>Cox v. Randazza Legal Group, *et al.*</u>, Case No. 1:13-cv-21924-DLG (S.D. Fla. May 31, 2013) [hereinafter, "<u>RLG Case</u>"], Ms. Cox sued Mr. Randazza alleging defamation, malpractice, conspiracy, witness tampering, tortious interference, and RICO violation. On June 25, 2013, the matter was dismissed as frivolous and baseless under 28 U.S.C. § 1915(e)(2)(B)(i).  Although Ms. Cox was given leave to file an amended complaint, she abandoned the matter and the case was ordered closed on July 18, 2013.

83.    The 297 Case, the 938 Case, <u>Hill</u>, <u>Parsons</u>, <u>Michaelson</u>, <u>Coenen I</u>, <u>Coenen II</u>, <u>Rushie I</u>, <u>Rushie II</u>, and the <u>RLG Case</u> are all hereinafter collectively referred to as the "<u>Dismissed Cases</u>."

**G.    <u>Returning Back to the 2040 Case.</u>**

84.    While the 297 Case was pending, on April 25, 2013, Ms. Cox also filed a non-specific motion for reconsideration regarding the striking of her counterclaim in the 2040 Case. Ms. Cox's reconsideration motion acknowledged that she had filed the 297 Case.  This motion was thereafter fully briefed.

85.    On February 14, 2014, after reassignment of the 2040 Case to the Hon. Jennifer A. Dorsey, the District Court granted in part Ms. Cox's motion for reconsideration, thereby permitting Ms. Cox to "file a proper counterclaim against Plaintiff Marc Randazza."

86.    On February 24, 2014, Ms. Cox filed a new counterclaim against Mr. Randazza in the 2040 Case.

87.    On March 12, 2014, Mr. Randazza moved to dismiss and to strike Ms. Cox's new counterclaim, which matter was fully briefed by the parties.

88.    The Randazzas also moved for summary judgment on their claims in the 2040 Complaint, to which Ms. Cox responded.

89.    On April 10, 2014, the District Court, Judge Dorsey, denied the Randazzas' motion, but without prejudice, and dismissed the Randazzas' claims under the common law right of publicity, while leaving their other five (5) other claims for relief intact.

90.    On May 21, 2014, one week after Ms. Cox's identical claims were dismissed with prejudice in the 297 Case, Judge Dorsey denied the Randazzas' motion to strike and only granted

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

their motion to dismiss Ms. Cox's counterclaims in part. The District Court also granted leave for Ms. Cox to again attempt amendment of her counterclaims against Mr. Randazza.

91.    On June 2, 2014, Ms. Cox again sought leave to amend her counterclaim, which matter was fully briefed by the parties.

92.    On July 8, 2014, the District Court denied Ms. Cox's motion and dismissed her abuse of process counterclaim, but permitted her claims for defamation and legal malpractice against Mr. Randazza to proceed.

93.    Judge Dorsey's order of July 8, 2014 as well as her earlier orders did not consider the prior dismissals of the 297 Case and the Parsons case with prejudice, or of the prior findings of frivolity in Coenen II and the RLG Case all four (4) of which cases terminated and finally adjudicated identical claims of defamation and legal malpractice as pled by Ms. Cox in the 2040 Case. Therefore, *four times over* Ms. Cox's claims had been dismissed on their merits.

94.    As a result of all of the foregoing, Ms. Cox's only counterclaims remaining in the 2040 Case against Mr. Randazza were for legal malpractice as plead in her February 21, 2014 counterclaim, and her claim for defamation as pled in the same, but as modified and edited by the Court's May 21, 2014 Order. Ms. Cox's remaining counterclaims are hereinafter referred to as the "2040 Counterclaim."

95.    On August 15, 2014, Mr. Randazza answered Ms. Cox's 2040 Counterclaim. Upon answering, Mr. Randazza also filed a special motion to dismiss under the Nevada Anti-SLAPP law, NRS 41.635, *et seq.* (the "Anti-SLAPP Motion"), which, among other matters, argued that Ms. Cox could never prevail on the merits of her claims because neither defamation nor legal malpractice occurred, and these claims were barred by claim preclusion and *res judicata*.

96.    The Anti-SLAPP Motion was fully brief by the parties.

97.    On March 23, 2015, Judge Dorsey denied Mr. Randazza's Anti-SLAPP Motion as untimely pursuant to NRS § 41.660, and did not reach the merits of the Anti-SLAPP Motion itself.

98.    On March 30, 2015, Mr. Randazza filed an interlocutory appeal from the District Court's denial of his Anti-SLAPP Motion to United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), where the matter remains pending as Appeal No. 15-15610 (the "Appeal").

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

16

99.    Subsequently, the Ninth Circuit has held in another matter that state anti-SLAPP statute deadlines do not apply in Federal Court.  See Sarver v. Chartier, 813 F.3d 891 (9th Cir. 2016).

100.    But for the imposition of the automatic stay as a result of Mr. Randazza's Chapter 11 Case, the Ninth Circuit would, consistent with Sarver, reverse the District Court's denial of Mr. Randazza's Anti-SLAPP Motion, and on remand, the Anti-SLAPP Motion would be decided on its merits.

101.    On April 8, 2015, the District Court issued a stay of the underlying 2040 Case pending the outcome of the Appeal before the Ninth Circuit.  The District Court also denied a flurry of Ms. Cox's motions in this same order as well.

102.    Due to an erroneous dismissal of the Appeal by the Ninth Circuit, which was corrected and reversed, the stay was lifted.

103.    On June 16, 2015, Mr. Randazza filed a motion to reinstate the stay pending the resolution of the Appeal.

104.    The District Court, through the Magistrate, allowed that motion and again stayed the 2040 Case on July 20, 2015 pending an outcome of the Appeal.

105.    Judge Dorsey reaffirmed the foregoing stay ten days later and such stay pending the Appeal remains in effect at present.

**H.    Mr. Randazza's Chapter 11 Case and the Relevant Filings Therein.**

106.    On September 8, 2015, Mr. Randazza gave notice of his Chapter 11 Case to both the District Court in the 2040 Case, and also to the Ninth Circuit in the Appeal.

107.    The Ninth Circuit again erroneously dismissed Mr. Randazza's Appeal in the 2040 Case for lack of prosecution, however, the Appeal was again reinstated in light of the automatic stay in Mr. Randazza's Chapter 11 Case.

108.    Upon reinstatement of the Appeal, the stay was also necessarily reinstating as well.

109.    On September 29, 2015, Ms. Cox filed what she called an *Objection to Discharge Debt* (the "Discharge Objection") in Mr. Randazza's Chapter 11 Case.

110.    In her Discharge Objection, Ms. Cox raises the same defamation and malpractice

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

claims asserted before the District Court in the 2040 Case, and as previously attempted to be asserted or that could have been asserted in the now dismissed 297 Case, the 938 Case, and the eight (8) other Dismissed Cases.

111.    Ms. Cox did not file the Discharge Objection as a complaint and commence a separate adversary proceeding, and she also did not seek or obtain and serve a summons upon Mr. Randazza to answer the Discharge Objection.

112.    Also on September 29, 2015, Ms. Cox filed a *Proof of Claim* (the "Proof of Claim"), being Claim No. 4-1, in Mr. Randazza's Chapter 11 Case in the amount of $10,000,000.00.

113.    On its face, Ms. Cox's claim is by far the largest claim asserted in Mr. Randazza's Chapter 11 Case to a significant degree.

114.    Ms. Cox attached no supporting documentation to her Proof of Claim, and no calculation as to how she arrived at her extraordinarily large alleged claim figure.

115.    The only description Ms. Cox provided regarding her alleged claims was a general citation to the 2040 Case pending before the District Court.

116.    In essence, Ms. Cox brings as her claim the same defamation and malpractice claims asserted before the District Court in the 2040 Case, and as previously attempted to be asserted, or as could have been asserted, in the now dismissed 297 Case, the 938 Case, and the eight other Dismissed Cases.  A true and correct copy of Ms. Cox's Proof of Claim is attached hereto as **Exhibit "1."**

### FIRST CLAIM FOR RELIEF

### (Objection to Ms. Cox's Proof of Claim, Claim No. 4-1)

117.    Mr. Randazza repeats, realleges, and fully incorporates the allegations plead above.

118.    Ms. Cox's Proof of Claim fails to include any particulars or supporting documentation, and thus is not entitled to even *prima facie* validity.

119.    Ms. Cox's Proof of Claim fails to state claims upon which relief can be granted and Mr. Randazza is entitled to judgment as a matter of law.

120.    Ms. Cox's claims in her Proof of Claim are barred by the doctrines of *res judicata* and claim preclusion because the dismissals of the 297 Case and the 938 Case were final

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

adjudications within the meaning of Fed. R. Civ. P. 41(b), and thus further proceeding on such claims is barred.

121.    Ms. Cox's claims in her Proof of Claim are barred by the doctrines of *res judicata* and claim preclusion because the dismissal of the Parsons case for failure to state a claim and the determinations that the claims in Coenen II and the RLG Case were frivolous were final adjudications on the merits, and thus further proceeding on such claims is barred.

122.    Mr. Randazza is not liable for defamation to Ms. Cox because his statements that Ms. Cox is an extortionist are true.

123.    Mr. Randazza is not liable for defamation to Ms. Cox because his statements that Ms. Cox is an extortionist is his protected opinion.

124.    Mr. Randazza is not liable for defamation to Ms. Cox because even if his statements that Ms. Cox is an extortionist were not true, they would be privileged from liability, and even if provably not true, Mr. Randazza's statements would be protected by the Fair Reporting Privilege and/or the Reply Privilege.

125.    Mr. Randazza is not liable for defamation to Ms. Cox because even if his statements that Ms. Cox is an extortionist were not true, and were not privileged, Ms. Cox cannot demonstrate fault amounting to at least negligence, much less the required "actual malice" standard because Ms. Cox is a public figure.

126.    Mr. Randazza is not liable for defamation to Ms. Cox because she is a "libel-proof" claimant.

127.    Mr. Randazza is not liable for defamation to Ms. Cox because his statements did not proximately cause actual damages.

128.    Mr. Randazza is not liable for defamation to Ms. Cox because such a claim is time barred by the applicable Nevada statute of limitations.

129.    Mr. Randazza is not liable to Ms. Cox for defamation because his communications are protected under Nevada's anti-SLAPP statute, NRS § 41.660.

130.    Mr. Randazza is not liable to Ms. Cox for legal malpractice because his communications are protected under Nevada's anti-SLAPP statute, NRS § 41.660.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

131.    Mr. Randazza is not liable to Ms. Cox for legal malpractice because an attorney-client relationship never existed between them, nor was there unauthorized representation by Mr. Randazza of her.

132.    Mr. Randazza is not liable to Ms. Cox for legal malpractice because he never breached a duty of care, if any existed, to Ms. Cox.

133.    Mr. Randazza is not liable to Ms. Cox for legal malpractice because, if he breached a duty of care, if any existed, to Ms. Cox, she did not proximately suffer harm thereby.

134.    Mr. Randazza is not liable to Ms. Cox for legal malpractice because such a claim is time barred by the applicable Nevada statute of limitations.

135.    Ms. Cox's claims in her Proof of Claim are frivolous and sanctionable conduct because they are being presented for improper purposes, including to harass, cause delays, and needless increase the costs of litigation; Ms. Cox's claims are not warranted by existing law, or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and Ms. Cox's allegations lack any evidentiary support.

136.    As a proximate result of Ms. Cox's frivolous and sanctionable conduct, Mr. Randazza was forced to incur and expend fees and costs to litigate the Proof of Claim, and is entitled to recover those fees and expenses.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief as to Dischargeability and Discharge Objection)

137.    Mr. Randazza repeats, realleges, and fully incorporates the allegations plead above.

138.    An actual and justiciable controversy exists between the Mr. Randazza and Ms. Cox as to whether the claims pled by her in her Proof of Claim and Discharge Objection are nondischargeable.

139.    The interests between Mr. Randazza and Ms. Cox are adverse and Mr. Randazza has a legally protectable interest in the controversy, including but not limited to determining his liability, if any, to Ms. Cox, and whether such alleged debt is nondischargeable in his Chapter 11 Case.

140.    The disputes herein are ripe for a judicial declaration pursuant to 28 U.S.C. §§ 1331,

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

2201, and 2202, that the claims as pled by Ms. Cox are not owing and are dischargeable in Mr. Randazza's Chapter 11 Case.

141.    The Discharge Objection must be dismissed as a matter of law because Mr. Randazza has no underlying liability to Ms. Cox to except from discharge.

142.    The Discharge Objection must be dismissed because Ms. Cox did not file the required complaint, did not appropriately or timely serve it, and did not obtain or timely serve a summons with it, and the time therefor has expired pursuant to Fed. R. Bankr. P. 4007(c), 7004, and 7012(b)/Fed. R. Civ. P. 12(b).

143.    The Discharge Objection must be dismissed to the extent it pleads a claim pursuant to 11 U.S.C. § 523(a)(2)(A) because Mr. Randazza did not receive money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud.

144.    The Discharge Objection must be dismissed to the extent it pleads a claim pursuant to 11 U.S.C. § 523(a)(6) because Mr. Randazza does not have a debt to Ms. Cox for a willful and malicious injury by him to Ms. Cox or her property.

145.    The Discharge Objection must be dismissed must be dismissed to the extent it pleads a claim pursuant to 11 U.S.C. § 523(a)(6) because legal malpractice is not an intentional tort as required by that subsection, and Mr. Randazza never took or mishandled any trust funds from Ms. Cox as required under that provision.

146.    The Discharge Objection must be dismissed pursuant to Fed. R. Bankr. P. 7009 and Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity.

147.    Ms. Cox's claims in her Discharge Objection are frivolous and sanctionable conduct because they are being presented for improper purposes, including to harass, cause delays, and needless increase the costs of litigation; Ms. Cox's claims are not warranted by existing law, or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and Ms. Cox's allegations lack any evidentiary support.

148.    As a proximate result of Ms. Cox's frivolous and sanctionable conduct in her Discharge Objection, Mr. Randazza was forced to incur and expend fees and costs to litigate the

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

matter, and is entitled to recover such fees and expenses.

## THIRD CLAIM FOR RELIEF

### (Abuse of Process)

149.    Mr. Randazza repeats, realleges, and fully incorporates the allegations plead above.

150.    Coenen II was dismissed as legally frivolous on June 7, 2013, the RLG Case was dismissed as legally frivolous on July 18, 2013, Parsons was dismissed with prejudice on September 19, 2013, the 297 Case was dismissed with prejudice on May 14, 2014, and the 938 Case was dismissed with prejudice on January 20, 2015.  On or after each of those dismissals, Ms. Cox knew or should have known that she could not sustain, as a matter of law, any of her putative counterclaims in the 2040 Case, and thus at the time she filed her counterclaim in the 2040 Case on February 24, 2014, those claims had already thrice been dismissed, at least once as explicitly stated with prejudice.

151.    In opposing Mr. Randazza's summary judgment and opposing his Anti-SLAPP Motion, as well as filing spurious motions in the 2040 Case, Ms. Cox committed improper, willful acts in the use of the legal process, purporting to sustain legally unsustainable claims barred, at a minimum, by claim preclusion.

152.    At all relevant times herein, Ms. Cox did not seek to resolve a legal dispute against Mr. Randazza, but rather sought to punish him for refusing to bend to her extortionate whim and to delay his claims in chief against her.

153.    Ms. Cox, therefore, committed an abuse of process against Mr. Randazza.

154.    As a proximate result of Ms. Cox's abuse of process, Mr. Randazza was forced to incur and expend fees and costs to litigate the counterclaims in the 2040 Case, and suffered a delay in the resolution of his claims against Ms. Cox.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Randazza prays for the following relief:

1.    Disallowing Ms. Cox's Proof of Claim in its entirety;

2.    Dismissing Ms. Cox's Discharge Objection with prejudice;

3.    Entering a declaratory judgment that Mr. Randazza has no liability to Ms. Cox

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

and/or that any alleged debt to Ms. Cox is subject to being discharged, and thus not excepted from discharge pursuant to any provision in 11 U.S.C. § 523(a) in Mr. Randazza's Chapter 11 Case;

4.    Awarding judgment in favor of Mr. Randazza and against Ms. Cox for his attorneys' fees, costs and expenses as a result of Ms. Cox's filing a frivolous Proof of Claim and a frivolous Discharge Objection;

5.    Granting him an award of his reasonable attorneys' fees and costs incurred in the 2040 Case, and the Proof of Claim and Discharge Objection in this adversary proceeding, as well as an award of $10,000.00, all pursuant to the Nevada anti-SLAPP statute, NRS 41.670(1)(a), (b);

6.    For recovery of attorneys' fees, costs and expenses reasonably incurred pursuant to 28 U.S.C. § 1927 or otherwise;

7.    Awarding judgment in favor of Mr. Randazza and against Ms. Cox for compensatory damages for abuse of process; and

8.    Granting Mr. Randazza such other and further relief as is just and proper.

Dated:  October 5, 2016.

LARSON & ZIRZOW, LLC

By:   /s/ Matthew C. Zirzow
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada  89101

Attorneys for Plaintiff

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

EXHIBIT "1"

EXHIBIT "1"

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

Name of Debtor:
Marc John Randazza

Case Number:
15-14956-abl

RECEIVED
AND FILED

SEP 29 2015

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Crystal L. Cox (Creditor Number 13)

Name and address where notices should be sent:
Crystal L. Cox
PO Box 2027
Port Townsend, WA 98368

Telephone number: (406) 624-9510      email: SavvyBroker@yahoo.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
 *(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):

Crystal L. Cox
PO Box 2027
Puet Townsend, WA 98368
Telephone number:          email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**          $          10,000,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Randazza v. Cox District of Nevada, 2:12-cv-02040-JAD-PAL
     (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| 6 7 6 2 | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
**Describe:**

**Value of Property:** $_____

**Annual Interest Rate_____% ☐Fixed  or  ☐Variable
(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:**      $_____

**Amount Unsecured:**            $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                                  2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.      ☐ I am the creditor's authorized agent.      ☐ I am the trustee, or the debtor,      ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                  or their authorized agent.            (See Bankruptcy Rule 3005.)
                                                                  (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Crystal L. Cox
Title:
Company:                                                                    _Crystal L Cox_ (Signature)        _Sept 2nd 2015_ (Date)
Address and telephone number (if different from notice address above):

Telephone number: 406-624-9510  email:  Savvy Broker @ yahoo. Com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B10 (Official Form 10) (04/13)                                                                                                 3

_____DEFINITIONS_____ | _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.