1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
Email: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
Email: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170
Fax:  (702) 382-1169

Attorneys for Plaintiff

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>     Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11 |
| MARC JOHN RANDAZZA, an individual,<br><br>     Plaintiff,<br><br>v.<br><br>CRYSTAL L. COX, an individual,<br><br>     Defendant. | Adv. No. 16-1111-abl<br><br>**MOTION FOR JUDGMENT BY**<br>**DEFAULT ENTERED BY THE COURT**<br><br>Date:  November 28, 2017<br>Time:  10:00 a.m. |

**LARSON & ZIRZOW, LLC**
**850 E. Bonneville Ave.**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170  Fax: (702) 382-1169**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     JURISDICTION AND VENUE ........................................................................2

III.    STATEMENT OF FACTS ................................................................................2

        A.      Brief Background on Mr. Randazza. ....................................................2

        B.      Ms. Cox's Well-Documented History as an Extortionist. ...................3

        C.      Ms. Cox's Extortionate Conduct Against Mr. Randazza........................4

        D.      The WIPO Case. ..................................................................................8

        E.      The Initial Stages of the 2040 Case. .................................................10

        F.      The 297 Case........................................................................................12

        G.      The 938 Case........................................................................................13

        H.      Ms. Cox's Eight Other Dismissed Cases Against Mr. Randazza. .......13

        I.      Returning Back to the 2040 Case.......................................................16

        J.      Relevant Events Occurring After the Commencement of the Chapter
                11 Case.................................................................................................19

IV.     LEGAL ARGUMENT........................................................................................22

        A.      Standard of Decision............................................................................22

        B.      An Examination of All Relevant Factors Weighs Heavily in Favor
                of Granting Mr. Randazza a Default Judgment Against Ms. Cox. .......24

        C.      Mr. Randazza is Entitled to a Default Judgment on His First Claim
                for Relief for Disallowance of Ms. Cox's Proof of Claim.................25

                1.      Ms. Cox's Claims Asserted in Her Proof of Claim Are
                        Precluded by Various Dismissal Orders from Prior
                        Litigations. ..............................................................................25

                2.      Mr. Randazza is Not Liable for Defamation............................27

                3.      Mr. Randazza is Not Liable for Legal Malpractice. ..............36

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

i

D.   Mr. Randazza is Entitled to a Default Judgment on His Second Claim for Relief for  Declaratory Relief Denying and Dismissing Ms. Cox's Discharge Objection. ..............................................................41

1.   Ms. Cox's Discharge Objection is Procedurally Improper. ......................41

2.   Ms. Cox's Allegations are Insufficient as a Matter of Law to Sustain Her 523(a)(6) Claim. .....................................................43

E.   Mr. Randazza Is Entitled to a Default Judgment on His Third Claim for Relief for Abuse of Process Against Ms. Cox. ...................................44

1.   Ms. Cox Clearly Committed an Abuse of Process and Thus a Default Judgment Should Be Entered on This Claim in Favor of Mr. Randazza. ..................................................................44

2.   Mr. Randazza Should Be Awarded Compensatory Damages Against Ms. Cox Based on His Claim for Abuse of Process. ...................46

3.   Mr. Randazza Should Also Be Awarded Punitive Damages Against Ms. Cox Based on His Claim for Abuse of Process. ...................48

F.   To the Extent the Court Deems an Evidentiary Hearing is Necessary, Mr. Randazza Requests That it Be Scheduled Forthwith and at the Court's Earliest Availability. ...........................................................49

V.   CONCLUSION.......................................................................................50

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

1.      Plaintiff, Marc John Randazza, as debtor and debtor in possession ("Mr. Randazza" or "Plaintiff"), hereby submits his motion (the "Motion") against Defendant, Crystal L. Cox ("Ms. Cox"),[1] seeking a default judgment against her pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure (the "Rule(s)"), made applicable pursuant to Rule 7055 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)") as to all claims in his *First Amended Complaint* (the "FAC") (Adv. ECF 6).[2] This Motion is made and based on the points and authorities herein, the accompanying *Request for Judicial Notice* (the "RJN") filed herewith, the *Declaration of Marc John Randazza* (the "Randazza Declaration"), the *Declaration of F. Chris Austin* (the "Austin Declaration"), the *Declaration of Ronald D. Greene*, *Jr.* (the "Greene Declaration"), and the *Declaration of Matthew C. Zirzow, Esq.* (the "Zirzow Declaration") all filed in support of this Motion, the dockets in this adversary proceeding (the "Adversary Proceeding") and in Mr. Randazza's underlying bankruptcy case, as well as the docket in the related adversary proceeding involving the same parties, Adv. No. 07-1005, judicial notice of all of which are respectfully requested, and any arguments of counsel made at the time of any hearing on this Motion.

2.      This litigation is about Ms. Cox's campaign of bad faith harassment against the Randazza family through cyber-extortion. Ms. Cox's *modus operandi* as an extortionist is simple: She approaches individuals offering her "reputation management" services for thousands of dollars per month. If they refuse, she then uses these services to "Google bomb"[3] her would-be "clients"

---

[1] Ms. Cox identifies herself as a "Reverend" or "Pastor" of the "Goddess Church" or "Family of Light."  See http://www.crystalcox.com (last visited October 9, 2017).  In her website/blog, as well as on her YouTube channel described later herein, Ms. Cox describes herself as a "Timeline Shift Coach, Consciousness Coach, Energy Healer, Lightworker, Oracle, Family of Light," as a "Director and Head Pastor of Bringing Back Goddess Church; Mother Goddess Church of Western Washington, Port Townsend, Friday Harbor, and San Juan Islands," and as a "Clairvoyant, Spiritual Advisor, Alternative Medicine Consultant, Spiritual Counselor, Energy Healer, Lightworker, Frequency Keeper." (Zirzow Decl. ¶ 9, Ex. 1).  Putting aside whether it is correct for her to use or to be addressed with such titles, for the sake of simplicity, the Plaintiff will refer to her herein just as "Ms. Cox."

[2] References to "Adv. ECF" are to the docket entries in this Adversary Proceeding.

[3] The term "Google bomb" refers to the practice of causing a web page to rank highly in search engine results for unrelated or off-topic search terms by linking heavily.  In contrast, search engine optimization is the practice of improving the search engine listings of web pages for relevant search terms. See https://en.wikipedia.org/wiki/Google_bomb (last visited October 9, 2017).

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1

– both to punish them for refusing, and to act as a warning to the next person she approaches. When Ms. Cox tried to extort Mr. Randazza, he went public with her attempts to extort him. Ms. Cox's claims stem from Mr. Randazza's actions speaking out against her criminal behavior. The only reason Ms. Cox filed her Proof of Claim and her Discharge Objection against Mr. Randazza is to retaliate against him for exercising his right to free speech in a public forum on a matter of public concern: Ms. Cox's well-documented and nationally-known extortionate behavior, and his actions in seeking redress for her improper activities.

## II.  JURISDICTION AND VENUE

3.     On August 28, 2015 (the "Petition Date"), Mr. Randazza filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the above-captioned court thereby commencing his bankruptcy case (the "Chapter 11 Case"). Mr. Randazza is authorized to operate his businesses and manage his property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in the Chapter 11 Case, and no request has been made for the appointment of a trustee or examiner.

4.     The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C), (I) and (O). Pursuant to Local Rule 7008.1, Mr. Randazza consents to the entry of final orders and judgments by the bankruptcy judge in this matter. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

## III.  STATEMENT OF FACTS

**A.     Brief Background on Mr. Randazza.**

5.     Mr. Randazza is the manager of Randazza Legal Group and an attorney licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada. He focuses his legal practice on litigating First Amendment, trademark and copyright infringement, defamation, free speech, intellectual property and similar litigation. Mr. Randazza also has experience in a variety of similar transactional responsibilities including providing advice to clients on First Amendment, copyright, trademark, domain name law, internet law, and entertainment law, including the negotiation and drafting of various associated agreements. He has also taught courses at the law

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

school level on the foregoing topics, having published many law review, bar journal, and other articles on those topics, and having numerous speaking engagements about those topics. (Randazza Decl. ¶ 3, Ex. 1).  Mr. Randazza is also the editor of <u>The Legal Satyricon</u>, which is well-known blog on law, liberty, technology and politics, which the American Bar Association has rated in the Top 100 Legal Blogs.  (<u>Id.</u> ¶ 4, Exs. 2 and 3).

**B.    <u>Ms. Cox's Well-Documented History as an Extortionist.</u>**

6.    As a First Amendment attorney, Mr. Randazza became aware of <u>Obsidian Finance Group LLC v. Cox</u>, No. cv-11-57-HZ (D. Or.) (the "<u>*Obsidian*</u> Case"), which introduced him to Ms. Cox.  In the <u>Obsidian</u> Case, Ms. Cox was a defendant in a defamation lawsuit brought by Obsidian Finance Group ("<u>Obsidian</u>") and Kevin Padrick ("<u>Mr. Padrick</u>"), Obsidian's principal. Mr. Padrick was also a victim of Ms. Cox's extortion scheme.  To retaliate against Mr. Padrick, Ms. Cox began publishing many interlinked blog posts falsely claiming that Mr. Padrick committed tax fraud in the course of his service as a bankruptcy trustee.  After obsessively posting defamatory information about these targets online attacking them relentlessly with an interlinked network of websites calculated to attack her targets' reputation, Ms. Cox then sought a financial advantage from them in exchange for cleaning up the reputational damage she caused by offering to stop her attacks and to remediate the harm if the target hired her to do so.  (RJN, Exs. 1-5).

7.    On November 30, 2011, a jury returned a $2.5 million verdict against Ms. Cox in the <u>Obsidian</u> Case for defamation, which verdict received much nationwide media attention.  (RJN, Ex. 3).

8.    On December 7, 2011, <u>Forbes</u> journalist Kashmir Hill wrote the article "Why an Investment Firm was Awarded $2.5 Million After Being Defamed by Blogger" describing the <u>Obsidian</u> Case, which involved allegations of fraud made by Ms. Cox against Obsidian and Mr. Padrick on her blog and questions as to whether she enjoyed certain legal protections as journalists.  As <u>Forbes</u> reported, "[a]fter Obsidian sued Cox, she contacted them offering her 'reputation services;' for $2,500 a month she could 'fix' the firm's reputation and help promote its business.  (In some circles we call that 'extortion')."  (Randazza Decl. ¶ 5, Ex. 4).

9.    On December 8, 2011, Mark Bennett wrote the article "The Sky is Definitely Not

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

3

Falling," observing that "[a] non-journalist like Cox is not allowed to defame a person. But – and this is crucial to an understanding of this case – a journalist is *also* not allowed to defame a person." (Id. ¶ 6, Ex. 5).

10.    On December 10, 2011, New York Times journalist David Carr wrote "When Truth Survives Free Speech," noting "[w]hen [Cox] gets in a fight with someone, she frequently responds by creating a domain with that person's name, some allegation of corruption, or both [and] an unsuitable offer to holster her gun in exchange for a payoff." (Id. ¶ 7, Ex. 6).

11.    On March 29, 2012, Forbes journalist David Coursey wrote the article "Are Bloggers Really Journalists? Not if they Ask for Money," commenting on the extortionate "reputation services" offered by Ms. Cox. (Id. ¶ 8, Ex. 7).

12.    On July 5, 2013, the State of Montana Board of Realty Regulation (the "Montana Realty Board") also found that Ms. Cox had engaged in extortionate behavior, thereby violating multiple rules of professional and ethical conduct. (RJN, Ex. 6). Specifically, the Montana Realty Board found that Ms. Cox violated the confidences of a client, Martin Cain, by registering the domain name <martincain.com> and using it to post various false statements about him, including an accusation that Mr. Cain hired a hit man to kill Ms. Cox. (Id. pp. 3-4, ¶¶ 7-10). The Board further found that Ms. Cox then contacted Mr. Cain and offered him the <martincain.com> website for $500,000. (Id.).

13.    Subsequently, in its decision in Ms. Cox's appeal in the Obsidian Case, the Ninth Circuit observed that "[Ms.] Cox apparently has a history of making similar allegations and seeking payoffs in exchange for retraction." Obsidian Fin. Group, LLC v. Cox, 740 F.3d 1284, 1287 (9th Cir. 2014).

14.    All the foregoing well illustrates that Ms. Cox is a serial extortionist.

**C.    Ms. Cox's Extortionate Conduct Against Mr. Randazza.**

15.    In December 2011, Michael Spreadbury ("Mr. Spreadbury") approached Mr. Randazza, an attorney, asking him to consider representing Ms. Cox on an appeal. On December 10, 2011, Mr. Randazza participated in a non-privileged conference call with Mr. Spreadbury and Ms. Cox about potentially representing her in an appeal in the Obsidian Case,

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

4

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

informing her that he would look into the case.  Mr. Randazza told Ms. Cox and Mr. Spreadbury that he would speak with Obsidian's counsel to help in making that decision – namely, to explore Obsidian's appetite for a negotiated solution.  (Randazza Decl. ¶ 9; RJN, Ex. 7, ¶ 20).

16.    On December 10 and 12, 2011, Mr. Randazza spoke with Obsidian's counsel to gather information about the case to determine whether to pursue an appeal, and to determine Obsidian's settlement posture, but ensured that it was for exploratory purposes only and clearly communicated that he was not acting on behalf of or otherwise representing Ms. Cox.  (Randazza Decl. ¶ 10; RJN, Ex. 8).

17.    After that call, in which Mr. Randazza determined that Obsidian and its counsel were willing to be reasonable, on December 14, 2011, Mr. Randazza stated that he would be willing to take her case, after certain necessary formalities were executed.  (Randazza Decl. ¶ 11, Ex. 8).  On December 16, 2011, Ms. Cox declined the offer of representation, and specifically and unequivocally stated that "Marc Randazza does NOT represent me in ANY way.")  (Id. Ex. 9).  At no time was an attorney-client relationship formed between Mr. Randazza and Ms. Cox, and Ms. Cox was well aware of that fact.

18.    Ms. Cox then (or more likely previously) decided that Mr. Randazza would be a good target for her extortion scheme.  Shortly after informing Mr. Randazza that she retained other counsel for her appeal in the Obsidian Case, she also informed him that she had set up the exact same extortion scheme that she visited upon Obsidian Finance.    Ms. Cox registered <marcrandazza.com> and offered her same "reputation management" services to him that she had offered to Obsidian.  Ms. Cox had learned, through the Obsidian Case, that she needed to be less obvious in her extortion demands, but she still made it clear.    The message in Ms. Cox's communication, especially in the context of her well-documented behavior up until that date, was clear:  pay me or you get to meet the same fate as the plaintiffs in the Obsidian Case.  (Id. ¶ 12, Ex. 10).

19.    Mr. Randazza declined to submit to Ms. Cox's extortionate demand.  On March 12, 2012, Ms. Cox sought to increase the extortionate pressure by attacking Mr. Randazza's wife by registering <jenniferrandazza.com>.  (Id. ¶ 13, Ex. 11).  When that did not have the desired effect,

Ms. Cox then went after Mr. Randazza's then **three-year-old daughter**, N.R., by registering a domain name that was only the three-year-old girl's name.  (Id. Ex. 12).  Ms. Cox's tactic of going after Mr. Randazza's minor daughter was also reported in an article by Kashmir Hill entitled "Ugly New Reputation-Smearing Tactic:  Going After a Toddler's Internet Footprint," which Forbes printed on April 2, 2012.  (Id. Ex. 13).

20.    On March 30, 2012, Mr. Randazza went public to combat Cox's criminal behavior wrote on his law blog, The Legal Satyricon "Judge Rules Again that Blogger Crystal Cox is Not a Journalist.  You Know Why?  Because She isn't a Journalist," describing the outcome of the Obsidian Case, her registration of <marcrandazza.com> and domains named for his family, and her extortionate behavior.  His motivation for this was that he had observed that he was not Cox's only victim – and that he had the ability to help prevent extortion against other parties by casting a light on Cox's activities.  (Id. ¶ 14, Ex. 14).

21.    Ms. Cox tried to rehabilitate her image by claiming that she was not engaging in extortion, however, in doing so, she admitted in a video response to the April 2, 2012 Forbes article that she purchased the domain names to prevent Mr. Randazza from providing any testimony against her at a deposition Obsidian would be taking.  Specifically, she stated:

> I did this and it worked.  Okay.  It was March 23 is when Marc Randazza was scheduled for his deposition in Portland, Oregon. … I got all these domain names, including his wife and his daughter, and I never publicized the daughter one, in order to saturate the search with my story as fast as I could. And guess what? It worked. He didn't give that deposition on March 23. He backed down in coming for me because of what I did. And part of that was all of these names …. I think I'll go without coffee or food or something at least one day a week so I can buy another dot com with Marc Randazza's name in it . . . .

(Id. ¶ 15, Ex. 15, pp. 15-16; video available at https://www.youtube.com/watch?v=8-XYnITpBNs (last visited October 9, 2017).[4]

---

[4] This video is properly authenticated by the Randazza Declaration, wherein he testifies that he has personally viewed this video and can identify Ms. Cox's voice on it based upon his previous telephone call with her regarding the potential representation of her in the Obsidian Case.  (Randazza Decl. ¶ 15).  As a result, this video is properly authenticated pursuant to Fed. R. Evid. 901(b)(5).  The video can also be authenticated given its distinctive characteristics and the like pursuant to Fed. R. Evid. 901(b)(4) because, among other matters, it appears on a channel

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

22.     In the ensuing months, at least seven (7) more articles from noted legal blogs also commented on Ms. Cox's extortionate conduct toward Mr. Randazza.  (Randazza Decl. ¶ 16, Exs. 16-22).

23.     On September 19, 2012, Ms. Cox offered to sell the Plaintiff's domain name for $5,000,000 with the title of her post taunting "Here Kitty Kitty..."  (Id. ¶ 17, Ex. 23); Randazza v. Cox, No. 2:12-cv-02040-GMN-PAL, 2012 U.S. Dist. LEXIS 178048, at *4 (D. Nev. Dec. 14, 2012).

24.     On November 19, 2012, Ms. Cox threatened that the campaign would expand to Mr. Randazza's sister.  (Randazza Decl. ¶ 18, Ex. 24).

25.     To date, Ms. Cox has obsessively registered dozens of domain names containing the Randazza family's names or surnames to extort and harass them and capitalize upon and damage the goodwill that Mr. Randazza has in his name.  Specifically, Ms. Cox registered more than thirty (30) infringing domain names (collectively, the "Infringing Domain Names"), some of which were listed under a proxy, Eliot Bernstein ("Mr. Bernstein").  (Id. ¶ 19, Exs. 25-27).

26.     Ms. Cox registered the Infringing Domain Names with the intent to capitalize on the use of Mr. Randazza's personal name, extort money from the Randazzas, and engage in witness intimidation.  (Id. ¶ 20, Ex. 28).  Specifically, Ms. Cox said she hoped to intimidate Mr. Randazza to keep him from testifying in the Obsidian Case.  (Id. ¶¶ 15 and 20, Exs. 15 and 28).  Also, Ms. Cox has asked Mr. Randazza to pay her to maintain his online reputation, which she herself has

---

entitled "Crystal Cox," and in that channel there are numerous other videos wherein Ms. Cox also personally appears and specifically discusses the 2040 Case and Mr. Randazza, and their specific interactions, at length.  These additional videos posted on the "Crystal Cox" YouTube channel include, but are not limited to, as follows:  (a) "Randazza Legal Group Harassment, Marc Randazza Attorney" available at  https://www.youtube.com/watch?v=SURuLSN0ZMo (last visited October 18, 2017); (b) "Randazza v Cox, Denial of Summary Judgement Court Ruling; Information for all you Pro Se Folks out" available at https://www.youtube.com/watch?v=mvCFii5w-dU (last visited October 18, 2017); (c) "Part One, Randazza v Cox, Denial of Summary Judgement Court Ruling" available at https://www.youtube.com/watch?v=DndQHpQu1uw (last visited October 18, 2017); (d) "Part Two, Randazza v Cox, Denial of Summary Judgement Court Ruling" available at https://www.youtube.com/watch?v=4YVxJ9soRtU (last visited October 18, 2017); (e) "Part Three, Randazza v Cox, Denial of Summary Judgement Court Ruling" available at https://www.youtube.com/watch?v=Xh6o1d1-VvE (last visited October 18, 2017).  Finally, in addition to being properly authenticated and identified, the video is also admissible, and not hearsay, as an admission by a party opponent pursuant to Fed. R. Evid. 801(d)(2).

sought to destroy through search engine optimization and link spamming techniques.[5]  (Id. ¶ 12, Ex. 10; Id. ¶ 17, Exs. 23).

27.    If Ms. Cox's targets refuse her extortion, she continues her campaign to ruin their reputations online, not only by posting defamatory rants about them, but by then repeating the defamatory rants on site after site, often on domain names that wholly include their legal names or trademarks, and interlinking all her many sites to artificially inflate the Google rankings on each site.  (Id. ¶ 21).  Ms. Cox claims to be "very good" at getting her websites to appear at the top of search results.  See Obsidian Fin. Grp., LLC v. Cox, No. 3:11-cv-57, 2012 WL 1065484, at *17 (D. Or. Mar. 27, 2012), aff'd in part, reversed in part, 740 F.3d 1284 (9th Cir. 2014).[6]  Of course, that is the point:  pay Ms. Cox or suffer the consequences.

**D.    The WIPO Case.**

28.    On July 27, 2012, Mr. Randazza filed a dispute with the World Intellectual Property Organization ("WIPO")[7] to recover several of the domain names, which WIPO awarded to him on November 30, 2012.  These domains are not the subject of the injunction in the 2040 Case (as hereinafter defined) because the WIPO award rendered such unnecessary.  Ms. Cox failed to appeal the WIPO decision; it is final and binding.  (Randazza Decl. ¶ 30).  In its decision dated November 30, 2012, the WIPO observed the following:

> Furthermore, the Respondent's [Ms. Cox's] actions in registering

---

[5] "Link spamming" refers to the practice often used by those attempting to manipulate search engine results in which the content of the website links to other pages for a reason other than that of merit. See https://en.wikipedia.org/wiki/Spamdexing#Link_spam (last visited October 9, 2017).  For example, Ms. Cox links to her other websites in her blog posts, which causes her websites to appear higher in search engine results.  (Randazza Decl. ¶ 17, Ex. 16).

[6] Ms. Cox's "very good" technique is simple.  Google considers pages to have importance based on how many other sites link to them.  Organically and honestly, this results in the best content rising to the top of the rankings.  Ms. Cox simply eliminates the third parties, linking hundreds of her own sites to one another, creating a closed extortion machine.

[7] WIPO is one of the 17 specialized agencies of the United Nations.  WIPO was created in 1967 "to encourage creative activity, to promote the protection of intellectual property throughout the world." https://en.wikipedia.org/wiki/World_Intellectual_Property_Organization (last visited October 9, 2017).  The WIPO Arbitration and Mediation Center provides time- and cost-efficient mechanisms to resolve internet domain name disputes, without the need for court litigation.  See http://www.wipo.int/amc/en/domains/ (last visited October 9, 2017).

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

and using the disputed domain names may appear, at a first glance, to simply be a vehicle through which she provides advertising through pay-per-click sites, but on slightly closer examination are actually components of an artifice intended to extort funds from the Complainant and thus a pretext for a rather egregious variant of cybersquatting.  As such, none of those actions can or will serve as a predicate upon which the Respondent can lawfully develop any rights or legitimate interests in any of the disputed domain names.
. . . .

In any event, for purposes of the Policy the Panel finds the Respondent's intention, as reflected by the record, was never to solely provide, through her websites, speech critical of the Complainant.  Rather, her objective in both registering and using the disputed names was apparently to engage in a rather sinister and tenacious scheme to extort money from the Complainant.  Specifically, the Respondent first posted negative and false commentary on her websites that was intentionally calculated to injure the Complainant's on-line reputation and disrupt the Complainant's business conducted through his law firm.  Thereafter, the Respondent used those sites in a manner that apparently optimized their ranking on the Google search engine in order to increase their visibility and prominence on search results yielded through a Google search of the Complainant, thus likely exacerbating the injury caused to the Complainant.  Once all this occurred, the Respondent then offered her reputational management services to the Complainant through which, for a considerable fee, she would remediate the Complainant's on-line reputation by eliminating all the negative and false commentary of her own making and presumably also ceasing her use of the disputed domain names.  Basically, for a price, she would undo the injury to the Complainant for which she was responsible for having created in the first place.  This egregious conduct clearly constitutes bad faith under the Policy.

(Id. ¶ 28, Ex. 29, pp. 9-10).

29.    The WIPO panel further found that:

Respondent has previously registered domain names that solely include her target's full names and uses link-bombing methods in an effort to increase the prominence of her search results on search engines.  The Respondent then offers to provide "reputation management" services to her target in return for a fee.  Such websites are not "criticism sites" but merely a pretext for the Respondent's bad faith extortionate use.

(Id. p. 5).

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**E.     The Initial Stages of the 2040 Case.**

30.     On November 28, 2012, Mr. Randazza, as well as his wife, on behalf of themselves and their minor daughter (collectively, the "Randazzas"), filed a *Complaint* (the "2040 Complaint") against Ms. Cox and Mr. Bernstein in the United States District Court for the District of Nevada (the "District Court"), thereby commencing Case No. 2:12-cv-2040-JAD-PAL (the "2040 Case").  (RJN, Exs. 9 and 10, ECF 1).[8]  The 2040 Complaint arose out of Ms. Cox and her agent Mr. Bernstein's registration and use of the Infringing Domain Names.  As previously noted, these domains were not part of the WIPO proceedings, but Ms. Cox registered them in the same course of conduct as the ones adjudicated in the WIPO case.  The Randazzas' 2040 Complaint alleged the following claims for relief:  (a) violation of individual cyberpiracy protections - 15 U.S.C. § 8131; (b) cybersquatting - 15 U.S.C. § 1125(d); (c) right of publicity - NRS 597.810; (d) common law right of publicity; (e) common law right of intrusion upon seclusion; and (f) civil conspiracy.  (Randazza Decl. ¶ 31).

31.     Shortly after commencing the 2040 Case, the Randazzas filed a motion for temporary restraining order, which sought to freeze the Infringing Domain Names pending the outcome of the 2040 Case.  (ECF 2 and 4).  After the parties briefed this matter (ECF 8 and 12), the District Court, the Hon. Gloria M. Navarro, issued a temporary restraining order in the Randazzas' favor.  (RJN, Ex. 11; ECF 14).  Specifically, the Court found that Ms. Cox and Mr. Bernstein "have embarked on a campaign of cyber-extortion."  (Id. p. 8, l. 16).  (Randazza Decl. ¶ 32).

32.     The parties filed additional pleadings in furtherance of a preliminary injunction.  (ECF 28, 29, and 30).  Following a hearing, Judge Navarro issued a preliminary injunction, thereby transferring the Infringing Domain Names to Mr. Randazza's control upon the posting of a bond,

---

[8] All references to an "ECF" shall refer to the docket in the 2040 Case.  (RJN, Ex. 9).  To reduce the number of exhibits accompanying this Motion, which are already numerous, the Plaintiff has attempted to include only the most pertinent of filings in the 2040 Case and the other cases.  To the extent a specific court filing is not included in the RJN, but rather is only generally referred to by ECF number, its purpose can be gleaned from the title of the document as appearing in the docket printout from the case (Id.).  Additionally, the Randazza Declaration is offered as further testimony of what took place in the relevant proceedings as well, which are within his personal knowledge as a party to those proceedings.

which he did post.  (RJN, Ex. 12; ECF 35 and 41).  This preliminary injunction remains in place, which Ms. Cox continues to violate.  (Randazza Decl. ¶ 33).

33.   In the 2040 Case, the District Court recognized that Ms. Cox's conduct amounts to extortion.  Specifically, the District Court found that "[Ms. Cox's] actions leading up to the filing of the Complaint, as well as [her] past behavior, as represented in Plaintiffs' reply briefing, clearly seems to indicate cyber-extortion," and that "[Ms. Cox] has been shown to have engaged in a pattern of cybersquatting and cyber-extortion").  (RJN, Ex. 12, pp. 7, 9; Ex. 11, p. 8).  (Randazza Decl. ¶ 34).

34.   On January 3, 2013, Ms. Cox filed a purported counterclaim against almost seventy (70) parties, including against not only Mr. Randazza, but also Apple, National Public Radio, and Judge Navarro, among many others, including the authors of the above-referenced articles, their employers, and the WIPO (ECF 24).  The Randazzas filed a motion to strike or, alternatively, to dismiss (ECF 48), and Ms. Cox responded (ECF 57 and 61).  (Randazza Decl. ¶ 35).

35.   Thereafter, Ms. Cox filed a 166-page purported amended counterclaim similar to her original one, thereby rendering her original counterclaim and the Randazzas' motion moot. (ECF 62).  The Randazzas again moved to strike (ECF 63) the amended counterclaim, which was also briefed by the parties (ECF 66 and 68).  (Randazza Decl. ¶ 36).

36.   While these motions were pending, Ms. Cox moved for summary judgment on her amended counterclaim.  (ECF 79).  Ms. Cox's motion became moot, however, when on February 22, 2013, Judge Navarro granted the Randazzas' motion to strike the amended counterclaim for violation of Rules 8(a)(2) and 14(a).  (RJN, Ex. 13; ECF 89).  In spite of the foregoing, however, the District Court did allow Ms. Cox to refile her allegations as a separate complaint in another case as hereinafter set forth.  (Randazza Decl. ¶ 37).

37.   Due to Ms. Cox's series of frivolous filings, the District Court revoked her CM/ECF privileges (ECF 144).  The docket is strewn with at least a dozen of Ms. Cox's absurd motions,[9]

---

[9] Ms. Cox's vexatious, frivolous, abusive and nonsensical filings in just the 2040 Case filings included, but were not limited to, the following:  a *Motion for Judges and Clerks to Sign a Conflict of Interest Disclosure* (ECF 19); a *Motion Requesting the Recusal or Removal of District Judge Gloria M. Navarro* (ECF 20); a *Motion Requesting Preservation of Evidence* (ECF 21); a *Motion Requesting This Court Investigate Plaintiff Marc Randazza* (ECF 22); a *Motion*

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

11

all or nearly all of which the District Court struck (ECF 89, 109, 138, and 155).  (Randazza Decl. ¶ 38).

**F.    The 297 Case.**

38.    Per Judge Navarro's order, Ms. Cox did file a separate complaint (the "297 Complaint") (RJN, Ex. 15; 297 Case, ECF 91 and 94), which was docketed in the District Court as Cox v. Randazza, *et al.*, Case No. 2:13-cv-00297-MMD-VCF (the "297 Case") (RJN, Ex. 14). The 297 Complaint contained the same claims she made in the 2040 Case and in the 938 Case (as hereinafter defined). (Randazza Decl. ¶ 39).

39.    Specifically, in her 297 Complaint, Ms. Cox alleged a slew of claims and what appear to be affirmative defenses against Mr. Randazza including civil conspiracy, defamation, harassment, antitrust and fair competition, constitutional rights, due process, violation of the Hate Crime Prevention Act, abuse of process, tortious interference, interference with business advantage, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), malpractice and negligence, retraction law, shield law, witness tampering, whistleblowing under the False Claims Act, and violation of a consumer protection act.  Ms. Cox alleged that her claims all arose in connection with above-referenced communications between Ms. Cox and Mr. Randazza in and after December 2011 about the Obsidian Case and his potential representation of her therein, and Mr. Randazza's accusation of extortion when Ms. Cox purchased the numerous Infringing Domain Names and thereafter sought to be paid for "reputation management services" to ameliorate the very harm she had caused.  (Id. ¶ 40).

40.    On November 27, 2013, the District Court, through Hon. Miranda M. Du, dismissed

---

*Requesting that Plaintiffs Inform Insurance Providers of Liability, Seek Outside Counsel, and Disclosing Malpractice Issues Regarding Ex-Client* (ECF 53); a *Motion Requesting Court Notify Investigators/Authorities Regarding Suspected Criminal Actions/Activities of Plaintiff Marc Randazza and Counter-Defendants/Co-Conspirators* (ECF 60); a *Request for Admissions, Answers Requested from Marc J. Randazza* (ECF 78); a *Motion to Disqualify Judge Gloria M. Navarro* (ECF 81); a *Fourth Motion to Recuse District Judge* (ECF 97); a *Motion for Appointment of Counsel* (ECF 102); a *Motion Requesting Legal Reasons, Documented Facts Regarding Why Judge Nancy J. Koppe Recused Herself* (ECF 104); various purported *Notices of Related Cases* (ECF 105, 106 and 107); a *Second Motion for Appointment of Counsel Motion, Request to Proceed in Forma Pauperis and Application for Pro Bono Counsel 28 U.S.C. § 1915(e)(1)* (ECF 125); various other motions to proceed *in forma pauperis* (ECF 70 and 91).  The foregoing list is by no means exhaustive.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

many of her claims without prejudice in the 297 Case and ordered her to file an amended complaint. (RJN, Exs. 16 and 17; 297 Case, ECF 21 and 25). Specifically, the District Court's November 27, 2013 Order adopted Magistrate Judge Cam Ferenbach's report and recommendation in its entirety, which found, *inter alia*, that Ms. Cox's defamation claim was merely conclusory and that the scattered factual assertions in her 297 Complaint did not meet the pleading requirements of Rule 8 to support a claim of legal malpractice. (297 Case, ECF 21 and 25). Ms. Cox did not file an amended complaint in accordance with this order, however, and thus on May 14, 2014, the District Court dismissed the 297 Case with prejudice. (RJN, Exs. 18-20; 297 Case, ECF 30-32). Ms. Cox filed no appeal from these decisions. (Randazza Decl. ¶ 41).

**G.     The 938 Case.**

41.     Despite the pendency of the 297 Case, on May 14, 2013, Ms. Cox filed Case No. 1:13-cv-03257 in the United States District Court for the Southern District of New York against Mr. Randazza and others, which was subsequently transferred to the District of Nevada as Cox v. Carr, *et al.*, Case No. 2:13-cv-00938-APG-GWF (the "938 Case"). (RJN, Ex. 21). Ms. Cox's complaint in the 938 Case (the "938 Complaint") raised many of the same claims against Mr. Randazza and arose from the same underlying events as those in the 2040 Case and the 297 Case. (RJN, Ex. 22; 938 Case, ECF 2). The 938 Case was the fifth of ***nine (9) nearly identical cases*** Ms. Cox filed throughout the country in or about May 2013 against Mr. Randazza, among many others, the remainder of which are discussed below. (Randazza Decl. ¶ 42).

42.     On June 12, 2014, Magistrate Judge George W. Foley recommended dismissal of Ms. Cox's 938 Complaint on the grounds of claim preclusion due to the dismissal of the 297 Case. (RJN, Ex. 23; 938 Case, ECF 16, p. 7). Magistrate Judge Foley also noted that the other complaints Ms. Cox had filed in May 2013 had all been dismissed. (Id. p. 4). On January 20, 2015, the District Court, through the Hon. Andrew P. Gordon, adopted the Magistrate Judge's recommendation and dismissed the 938 Case with prejudice. (RJN, Exs. 24-25; 938 Case, ECF 16 and 17). Ms. Cox filed no appeal. (Randazza Decl. ¶ 43).

**H.     Ms. Cox's Eight Other Dismissed Cases Against Mr. Randazza.**

43.     Besides the 297 Case and the 938 Case, both of which were dismissed with

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

prejudice, in May 2013 Ms. Cox also instituted the following eight (8) other cases against Mr. Randazza, all of which named him as a member of slates of defendants, all arising from the same underlying facts and transactions as the 2040 Case, the 297 Case, and the 938 Case, to wit:

(a)     Cox v. Hill, et al., Case No. 4:13-cv-02046-DMR (N.D. Cal. May 2, 2013) [hereinafter, "Hill"].  Against Mr. Randazza, Ms. Cox alleged defamation, section 1983, RICO violation, negligence, professional negligence, witness tampering, and tortious interference.  The District Court dismissed this case without prejudice for improper venue on July 15, 2013.  (RJN, Exs. 26-28).

(b)     Cox v. Parsons, et al., Case No. 2:13-cv-00962-MEA (D. Ariz. May 8, 2013) [hereinafter, "Parsons"].   Against Mr. Randazza, Ms. Cox initially alleged defamation, section 1983, civil conspiracy, RICO violation, negligence, professional negligence, witness tampering, tortious interference, constitutional violations, violation of international laws, and violation of intellectual property laws.   The Court initially dismissed this case without prejudice on May 16, 2013, with leave to file an amended complaint.  Ms. Cox did so and, in her amended complaint alleged claims against Mr. Randazza for legal malpractice, defamation, civil conspiracy, negligence, witness tampering, section 1983 violations, and RICO violations.  Magistrate Judge Mark E. Aspey recommended the in forma pauperis claim be dismissed as frivolous under 28 U.S.C. § 1915 on June 18, 2013.  Thereafter, the Court dismissed the entire action with prejudice for failure to state a claim on September 19, 2013.  (Id. Exs. 29-32).

(c)     Cox v. Michaelson, et al., Case No. 3:13-cv-03136-AED-DEA (D.N.J. May 9, 2013) [hereinafter, "Michaelson"].  Against Mr. Randazza, Ms. Cox alleged defamation, section 1983, civil conspiracy, RICO violation, negligence/professional negligence, tortious interference, constitutional violations, violation of international law, and violation of intellectual property laws.  District Court Judge Anne E. Thompson dismissed this case on September 27, 2013 without prejudice under 28 U.S.C. § 1915 for failure to be pleaded properly under Rule 8(a), with permission to refile.  Ms. Cox abandoned the case and did not refile.  (Id. Exs. 33-35).

14

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

(d)    <u>Cox v. Coenen</u>, <u>et al.</u>, Case No. 2:13-cv-00534-AEG (E.D. Wis. May 13, 2013) [hereinafter, "<u>Coenen I</u>"].  Against Mr. Randazza, Ms. Cox alleged defamation, section 1983, civil conspiracy, RICO violation, negligence/professional negligence, and tortious interference.  On May 28, 2013, the Court dismissed this case without prejudice due to the pendency of the 297 Case, because the Court found that it was improper for Ms. Cox to file multiple suits against the same defendants for the same reasons in multiple courts.  As noted, the 297 Case was subsequently dismissed with prejudice.  (<u>Id.</u> Exs. 36-38).

(e)    <u>Cox v. Coenen</u>, <u>et al.</u>, Case No. 1:13-cv-03633 (N.D. Ill. May 14, 2013) [hereinafter "<u>Coenen II</u>"].  Against Mr. Randazza, Ms. Cox made identical allegations as in <u>Coenen I</u> filed the day before.  On June 7, 2013, the District Court Judge Matthew F. Kennelly dismissed this case as being legally frivolous under 28 U.S.C. § 1915(e).  (<u>Id.</u> Exs. 39-42).

(f)    <u>Cox v. Rushie</u>, <u>et al.</u>, Case No. 1:13-cv-11308-PBS (D. Mass. May 30, 2013) [hereinafter, "<u>Rushie I</u>"].  Against Mr. Randazza, Ms. Cox alleged defamation, legal malpractice, civil conspiracy, negligence, witness tampering, tortious interference, and RICO violation.  Chief Judge Patti B. Saris dismissed this matter on June 18, 2013 for improper venue and did not transfer it due to the pendency of the 297 Case, the 938 Case, <u>Hill</u>, <u>Parsons</u>, and <u>Coenen I</u> & <u>Coenen II</u>.  (<u>Id.</u> Exs. 43-45).

(g)    <u>Cox v. Rushie</u>, <u>et al.</u>, Case No. 2:13-cv-03028-JHS (E.D. Penn. May 30, 2013) [hereinafter, "<u>Rushie II</u>"].  Against Mr. Randazza, Ms. Cox alleged defamation, malpractice, conspiracy, witness tampering, tortious interference, and RICO violation.  District Court Judge Joel H. Slomsky dismissed this matter on June 6, 2013 for failure to conform to Rule 8(a).  Although leave to refile was granted, Ms. Cox was prohibited from raising any of the claims filed in any of the other cases in any amended complaint.  Ms. Cox thereafter abandoned this case.  (<u>Id.</u> Exs. 46-48).

(h)    <u>Cox v. Randazza Legal Group</u>, <u>et al.</u>, Case No. 1:13-cv-21924-DLG (S.D. Fla. May 31, 2013) [hereinafter, the "<u>RLG Case</u>"].  Against Mr. Randazza, Ms. Cox alleged

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

defamation, malpractice, conspiracy, witness tampering, tortious interference, and RICO violation.  On June 25, 2013, the Court dismissed this matter as frivolous and baseless under 28 U.S.C. § 1915(e)(2)(B)(i).  Although District Court Judge Donald L. Graham gave Ms. Cox leave to file an amended complaint, she abandoned the matter and thus the Court ordered the matter closed on July 18, 2013.  (Id. Exs. 49-52).

(Randazza Decl. ¶ 44).  In sum, all eight (8) cases were dismissed and they are all final judgments because no appeals were filed.

44.     Ms. Cox's commencement of the foregoing actions, and their subsequent dismissals and/or dispositions, is important because they preclude her from raising the same allegations in the 2040 Case by the 2040 Counterclaim (as hereinafter defined).  Notably also, the underlying theories asserted therein also form the basis for her Proof of Claim and her Discharge Objection (as both are hereinafter defined) that she filed in Mr. Randazza's Chapter 11 Case.  As a result, as explained below, Ms. Cox is barred as a matter of law from pursuing the claims in the 2040 Counterclaim, and thus also in her Proof of Claim and Discharge Objection in this Chapter 11 Case.  As also explained below, these claims also lack any substantive merit.  Indeed, properly viewed, Ms. Cox is not even a creditor in Mr. Randazza's Chapter 11 Case; rather, Mr. Randazza is entitled to an award of substantial damages against her as a result of her abuse of process. (Randazza Decl. ¶ 45).

I.     **Returning Back to the 2040 Case.**

45.     While the 297 Case was pending, on April 25, 2013, Ms. Cox also filed a non-specific motion for reconsideration of the striking of her counterclaim in the 2040 Case.  (ECF 116).  Ms. Cox's reconsideration motion acknowledged that she had filed the 297 Case.  (Id. p. 3). The parties thereafter briefed this matter (ECF 123 and 124).  (Randazza Decl. ¶ 46).

46.     On February 14, 2014, after reassignment of the 2040 Case to the Hon. Jennifer A. Dorsey, the District Court granted in part Ms. Cox's motion for reconsideration, unaware of the 297 case, thereby permitting Ms. Cox to file a proper counterclaim Mr. Randazza.  (ECF 162). (Randazza Decl. ¶ 47).

47.     On February 24, 2014, Ms. Cox filed a new counterclaim against Mr. Randazza in

the 2040 Case (ECF 164).  (Randazza Decl. ¶ 48).

48.    On March 12, 2014, Mr. Randazza moved to dismiss and to strike Ms. Cox's new counterclaim, which matter the parties briefed.  (ECF 179, 180, 185, 186, 191 and 192). (Randazza Decl. ¶ 49).

49.    The Randazzas also moved for summary judgment on their claims in the 2040 Complaint, and Ms. Cox also responded to that motion.  (ECF 75 and 80).  On April 10, 2014, the District Court, Judge Dorsey, denied the Randazzas' motion, but without prejudice, and dismissed the Randazzas' claims under the common law right of publicity, while leaving their other five (5) other claims for relief against Ms. Cox intact.  (RJN, Ex. 53; ECF 200).  (Randazza Decl. ¶ 50).

50.    On May 21, 2014, which was one week after Judge Navarro dismissed Ms. Cox's identical claims with prejudice in the 297 Case, Judge Dorsey denied the Randazzas' motion to strike and only granted their motion to dismiss Ms. Cox's counterclaims in part.  (RJN, Ex. 54; ECF 208).  The District Court also granted leave for Ms. Cox to again attempt amendment of her counterclaims against Mr. Randazza.  (Id.).  (Randazza Decl. ¶ 51).

51.    On June 2, 2014, Ms. Cox again sought leave to amend her counterclaim, which the parties briefed (ECF 209-212).  On July 8, 2014, the District Court denied Ms. Cox's motion and dismissed her abuse of process counterclaim, but permitted her claims for defamation and legal malpractice against Mr. Randazza to proceed.  (RJN, Ex. 55; ECF 213).  (Randazza Decl. ¶ 52).

52.    As a result of the foregoing, Ms. Cox's only counterclaims remaining in the 2040 Case against Mr. Randazza were for legal malpractice as plead in her February 21, 2014 counterclaim (ECF 164), and for defamation, but as modified and edited by the Court's May 21, 2014 Order.  (ECF 208).  Ms. Cox's remaining counterclaims are referred to herein as the "2040 Counterclaim."  (Randazza Decl. ¶ 53).

53.    On August 15, 2014, Mr. Randazza answered Ms. Cox's 2040 Counterclaim (ECF 223).  Upon answering, Mr. Randazza also filed a special motion to dismiss under the Nevada Anti-SLAPP law, NRS 41.635, *et seq.* (the "Anti-SLAPP Motion").  (RJN, Ex. 56; ECF 224). Among other matters, Mr. Randazza argued in his Anti-SLAPP Motion that that Ms. Cox could

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

17

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

never prevail on the merits of her claims because neither defamation nor legal malpractice occurred, and these claims were barred by claim preclusion and *res judicata.*  The parties then briefed the Anti-SLAPP Motion.  (ECF 229 and 230).  (Randazza Decl. ¶ 54).

54.    On March 23, 2015, Judge Dorsey denied Mr. Randazza's Anti-SLAPP Motion as untimely pursuant to NRS § 41.660, and thus did not reach the merits of the Anti-SLAPP Motion itself (RJN, Ex. 57; ECF 241).  (Randazza Decl. ¶ 55).

55.    On March 30, 2015, Mr. Randazza filed an interlocutory appeal from the District Court's denial of his Anti-SLAPP Motion on timeliness grounds to United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), where the matter remains pending as Appeal No. 15-15610 (the "Appeal").  (RJN, Exs. 58 and 59; ECF 242).[10]  (Randazza Decl. ¶ 56).

56.    On April 8, 2015, the District Court issued a stay of the underlying 2040 Case pending the outcome of the Appeal before the Ninth Circuit.  (RJN, Ex. 60; ECF 265).  The District Court also denied a flurry of Ms. Cox's motions in this same order as well.  (Randazza Decl. ¶ 57).

57.    Due to an erroneous dismissal of the Appeal by the Ninth Circuit (ECF 275), which that Court promptly corrected and reversed, the stay was lifted.  (ECF 276).  On June 16, 2015, Mr. Randazza filed a motion to reinstate the stay pending the resolution of the Appeal.  (ECF 288). The District Court, through the Magistrate, allowed that motion and again stayed the 2040 Case on July 20, 2015 pending an outcome of the Appeal.  (ECF 293).  Judge Dorsey reaffirmed the foregoing stay ten days later and that stay remains in effect.  (ECF 294 and 303).  (Randazza Decl. ¶ 58).

58.    Throughout all the cases discussed above, Ms. Cox consistently listed the same

---

[10] The appeal was closed for administrative purposes on April 10, 2017, subject to reopening at Plaintiff's request following resolution of bankruptcy proceedings.  (ECF 309).  Subsequently, the Ninth Circuit has held in another matter that state anti-SLAPP statute deadlines do not apply in Federal Court.  See Sarver v. Chartier, 813 F.3d 891 (9th Cir. 2016).  As such, but for the imposition of the automatic stay as a result of Mr. Randazza's Chapter 11 Case, the Ninth Circuit would, consistent with Sarver, reverse the District Court's denial of Mr. Randazza's Anti-SLAPP Motion on timeliness grounds, and on remand, the Anti-SLAPP Motion would be decided on its merits.  Although Plaintiff believes he could have sought anti-SLAPP relief from this Bankruptcy Court in the context of this Adversary Proceeding as well, to avoid any potential conflict or jurisdictional issues, the Plaintiff avoids raising that issue in this Adversary Proceeding, but without prejudice to whatever rights he may have in the 2040 Case and/or the Appeal. Instead, the primary focus of this Adversary Proceeding is dealing with Ms. Cox's Proof of Claim and Discharge Objection as filed in Mr. Randazza's Chapter 11 Case.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

mailing address on her pleadings of P.O. Box 2027, Port Townsend, WA 98368, and her email addresses as <savvybroker@yahoo.com> and <crystal@crystalcox.com>. (Randazza Decl. ¶ 59). Notably, Ms. Cox's "savvybroker" email address is also the same email address she used to converse with Mr. Randazza regarding the <u>Obsidian</u> Case as previously set forth herein. (Randazza Decl. ¶ 11, Exs. 8 and 9).

**J.      Relevant Events Occurring After the Commencement of the Chapter 11 Case.**

59.      Ms. Cox was served with proper notice of commencement of Mr. Randazza's Chapter 11 Case at her Port Townsend address. (BK ECF 10; Zirzow Decl. ¶ 3).[11]

60.      On September 30, 2015, Ms. Cox, acting *pro se*, filed what she called an *Objection to Discharge of Debt* (the "<u>Discharge Objection</u>") (BK ECF 29) in Mr. Randazza's Chapter 11 Case; however, she did not file it as a complaint and thus it did not commence a separate adversary proceeding, nor did she seek, obtain, or serve a summons upon Mr. Randazza to answer the Discharge Objection. Instead, Ms. Cox's Discharge Objection is a fugitive, improper filing that she has never properly noticed or served on Mr. Randazza. (Zirzow Decl. ¶ 4).

61.      Also on September 9, 2015, Ms. Cox filed a *Proof of Claim* (the "<u>Proof of Claim</u>"), being claim No. 4-1, in Mr. Randazza's Chapter 11 Case in the amount of $10,000,000.00; however, she did not attach any supporting documentation to her Proof of Claim or any calculation as to how she arrived at her claim figure. Instead, the only indication of the alleged basis for her claim(s) was a general reference to the 2040 Case, and without any detail. (Zirzow Decl. ¶ 5).

62.      Ms. Cox's Discharge Objection did not list any address for which to contact her, but her Proof of Claim list the same pre-petition Port Townsend P.O. Box and the same email address of savvybroker@yahoo.com. Ms. Cox has never provided any notice of change of address with the Court in Mr. Randazza's Chapter 11 Case. (Zirzow Decl. ¶ 6).

63.      On October 5, 2016, Mr. Randazza instituted this Adversary Proceeding by filing his *Complaint* (Adv. ECF 1), which he thereafter amended as of right on October 16, 2016 by his

---

[11] References to "BK ECF" are to the docket in Mr. Randazza's Chapter 11 Case.

FAC.  The FAC included claims in the form of an objection to Ms. Cox's Proof of Claim,[12] a claim for declaratory relief dismissing her Discharge Objection, and claims against Ms. Cox for abuse of process and civil extortion.  As and for its requested relief, the FAC requested that Ms. Cox's Proof of Claim be disallowed in its entirety, that her Discharge Objection be dismissed with prejudice, that Plaintiff be awarded his fees and costs as a result of her frivolous filings, as well as an award of compensatory damages for Ms. Cox's abuse of process, and such other and further relief as the Court deems just and proper.  (Zirzow Decl. ¶ 7).

64.    On October 17, 2016, Mr. Randazza timely requested issuance of a summons (Adv. ECF 7), which was issued on October 18, 2016 (Adv. ECF 8).  Mr. Randazza served the summons on Ms. Cox with a copy of the FAC on October 19, 2016, via first class main (Adv. ECF 9), at the Port Townsend P.O. Box address listed in her Proof of Claim, as well as via substitute service to her known email address <savvybroker@yahoo.com> listed in her Proof of Claim, and the other email addressed she used in the pre-petition litigation <crystal@crystalcox.com>.  ***Notably, Ms. Cox conversed with Plaintiff's counsel regarding this Adversary Proceeding and the FAC via this "savvybroker" email account.***  (Adv. ECF 18, Ex. 1; Zirzow Decl. ¶¶ 8, 14, 18, and Exs. 3 and 6).[13]

65.    Ms. Cox failed to answer or otherwise plead to the FAC within 30 days of service, as required pursuant to Rule 12/Bankruptcy Rule 7012.  Indeed, Ms. Cox has failed to ever answer or otherwise plead in this Adversary Proceeding to date, nor has she ever appeared at any of the many hearings set by the Court.  (Zirzow Decl. ¶ 10).

66.    On October 19, 2016, Plaintiff filed a motion to refer the entire 2040 Case to this Court (ECF 306), which the District Court, Judge Dorsey, granted in part on December 2, 2016,

---

[12] See Fed. R. Bankr. P. 3007(b) (requiring that an objection to a claim including a demand for relief under Fed. R. Bankr. P. 7001 requires an adversary proceeding).

[13] Ms. Cox has continued to use this website/blog through October 2017.  See http://www.crystalcox.com (last visited October 9, 2017) (making at least 5 postings in October 2017 alone).  This website/blog references an email address of <reverendcrystalcox@gmail.com>.  (Zirzow Decl. ¶ 9, Ex. 1).  As set forth in the certificate of service accompanying this Motion, in addition to service via regular mail per the address indicated in her Proof of Claim, this Motion and related filings were also emailed to all three (3) of Ms. Cox's known email addresses.  As such, Ms. Cox received sufficient notice of this Motion.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

by referring only Ms. Cox's 2040 Counterclaim to this Court, not the entire 2040 Case, thus leaving Mr. Randazza's claims against Mr. Cox still pending before the District Court. (ECF 307). Ms. Cox's referred 2040 Counterclaim was thereafter docketed in this Court as Adversary Case No. 17-01005, which is a separate adversary proceeding from this Adversary Proceeding.[14] (Zirzow Decl. ¶ 11).

67.    On February 14, 2017, the Court held a scheduling conference in this Adversary Proceeding, and Ms. Cox failed to appear (Adv. ECF 11). The Court continued the matter for status to May 9, 2017. Ms. Cox was properly noticed on the scheduling conference via the summons served on her, as well as via an email from Plaintiff's counsel. (Zirzow Decl. ¶ 12, Ex. 2).

68.    On May 9, 2017, the Court held another status hearing in this Adversary Proceeding, and Ms. Cox again failed to appear (Adv. ECF 16). The Court again continued the matter for status to June 12, 2017. (Zirzow Decl. ¶ 13).

69.    On May 9, 2017, the Plaintiff filed and served a *Three Day Notice of Intent to Take Default* (Adv. ECF 15) on Ms. Cox, which, just like the FAC, was served via first class mail at the address listed on her Proof of Claim, and also via substitute service at her email addresses. (Zirzow Decl. ¶ 14, Ex. 3).

70.    On June 12, 2017, the Court held a third hearing in this Adversary Proceeding, and Ms. Cox again failed to appear (Adv. ECF 19). The Court again continued the matter for status to September 12, 2017. Although under no legal obligation to do so, Plaintiff's counsel sent an email to Ms. Cox advising her of the continuance. (Zirzow Decl. ¶ 15, Ex. 4).

71.    On June 12, 2017, Plaintiff filed a *Request for Default* (Adv. ECF 17), which was supported by an *Affidavit of Matthew C. Zirzow* (Adv. ECF 18). Attached to this affidavit was an email dialogue Mr. Randazza's counsel had with Ms. Cox, which confirms her awareness and

---

[14] So the Court is aware, granting the relief requested in this Motion will advance the disposition of Case No. 17-01005 because that case involves only Ms. Cox's 2040 Counterclaim. Upon this Court disallowing Ms. Cox's Proof of Claim, Mr. Randazza will immediately file, *inter alia*, a dispositive motion, in Case No. 17-01005 premised, in part, on the claim and/or issue preclusive effect of the relief requested herein.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

receipt of the FAC, scheduling issues in the Adversary Case, and Mr. Randazza's seeking a default against her for her failure to timely answer or otherwise plead to the FAC.  (Zirzow Decl. ¶ 16).

72.     On June 13, 2017, the Clerk made an *Entry of Default* against Ms. Cox (Adv. ECF 20), and Plaintiff gave *Notice of Entry of Default* to Ms. Cox (Adv. ECF 21) that same day.  These were also served on Ms. Cox as previously referenced (Adv. ECF 22), as well as by email.  (Zirzow Decl. ¶ 17, Ex. 5).

73.     Ms. Cox is not currently in Active Duty.  (Adv. ECF 18 at ¶ 8 & Ex. 2 (SCRA Affidavit of Compliance)).  Ms. Cox is not in the military service, is not an infant, and is not an incompetent person, and she continues to make internet blog postings about Plaintiff.  (Adv. ECF 18 at ¶ 9 & Ex. 3).

74.     On September 8, 2017, and, again, although under no legal obligation to do so, Plaintiff's counsel advised Ms. Cox of the upcoming status hearing via email, and also that he would be proceeding with seeking a default judgment against her.  (Zirzow Decl. ¶ 18, Ex. 6).

75.     On September 12, 2017, the Court held a fourth hearing in this Adversary Proceeding, and Ms. Cox again failed to appear.  The Court again continued the matter for further status to November 14, 2017 (Adv. ECF 23).  (Zirzow Decl. ¶ 19).

76.     As of the date of the filing of the Motion seeking a default judgment against her, Ms. Cox has not answered the FAC or moved for relief from the entry of default against her. (Zirzow Decl. ¶ 20).

## IV.  LEGAL ARGUMENT

**A.    Standard of Decision.**

77.     Pursuant to Bankruptcy Rule 7055, Rule 55 applies in adversary proceedings.  Rule 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Where a plaintiff's claim is not for a sum certain or a sum that can be made certain by computation, the plaintiff must proceed for a default judgment with the Court under Rule 55(b)(2), which provides as follows:

In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

> (A) conduct an accounting;

> (B) determine the amount of damages;

> (C) establish the truth of any allegation by evidence; or

> (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2).

78.     The Court has discretion over the decision to enter a default judgment. Benny v. Pipes, 799 F.2d 489, 493 (9th Cir. 1986). "In cases where a defendant is served with a complaint and fails to respond in any way, Rule 55(a) of the Federal Rules of Civil Procedure permits the court to rule that the defendant is in default." Playboy Enters. Int'l, Inc. v. Muller, 314 F. Supp. 2d 1037, 1039 (D. Nev. 2004) (citing Benny, supra). Failure to respond to the complaint is grounds for the Court to enter a default judgment. Id.

79.     In the determination of whether to grant a default judgment, the trial court should consider the seven factors articulated in Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). These factors are: (1) the possibility of prejudice to plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits. Id.

80.     "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). If proximate cause is properly alleged in the complaint, it is admitted upon default. The fact of injury is thus established and plaintiff need only prove that the "compensation sought

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

relates to the damages that naturally flow from the injuries pleaded." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp. , 973 F.2d 155, 159 (2d Cir. 1992).  Since entry of default establishes liability, it also precludes affirmative defenses such as set-off claims, comparative fault, failure to mitigate damages, etc.  Id.

**B.    An Examination of All Relevant Factors Weighs Heavily in Favor of Granting Mr. Randazza a Default Judgment Against Ms. Cox.**

81.    All seven Eitel factors weigh heavily in favor of granting Mr. Randazza a default judgment.  Plaintiff addresses factors 1 and 3-7 in this section and will address factor 2, the merits, separately below.

82.    First, the possibility of prejudice to Mr. Randazza as plaintiff weighs in favor of granting him a default judgment.  Mr. Randazza has patiently more than a year for Ms. Cox to participate in this Adversary Proceeding, and he has attempted many times to prompt her to act.  However, she has refused to prosecute her claim.  The resolution of Ms. Cox's Proof of Claim and Discharge Objection now are holding up his reorganization because Mr. Randazza must resolve these matters to properly frame his proposed plan of reorganization.  An alleged large creditor like Ms. Cox, claiming $10,000,000, should not be permitted to stall Mr. Randazza's entire reorganization and potentially hold his discharge as to her alleged claims hostage through her failure to participate in these proceedings.  As a result, Mr. Randazza would be significantly prejudiced if the Court were not to grant him a default judgment.

83.    Second, the FAC is sufficiently pled.  In fact, the factual allegations in the FAC are extensive and largely repeated verbatim in this Motion.  As a result, Ms. Cox was provided with ample notice of the specific allegations against her by way of the FAC, which are repeated herein as well.  As such, this factor also weighs in favor of granting Mr. Randazza a default judgment.

84.    Third, the amount of money at stake is addressed in a separate section below and mostly involves the attorneys' fees and costs Mr. Randazza has incurred that are directly attributable from Ms. Cox's actions.  Although the amount sought may be substantial, relatively speaking, this factor is, at best, neutral in deciding whether to grant a default judgment because such costs were obviously clearly foreseeable to Ms. Cox in light of her many filings throughout

24

the country.

85.    Fourth, the possibility of a dispute concerning material facts also weighs in favor of granting Mr. Randazza a default judgment because the allegations at issue are not subject to any reasonable dispute.    All factual allegations are based on undisputed filings with various courts, and thus are subject to judicial notice.  As a result, this factor also weighs in favor of granting Mr. Randazza a default judgment.

86.    Fifth, Ms. Cox's default was not due to any excusable neglect.  Ms. Cox submits no evidence in support of such an allegation, let alone claim excusable neglect.  Moreover, as confirmed by her emails to Mr. Randazza's counsel, she acknowledged receiving the FAC and is intentionally avoiding responding to them and not updating her address with the Court despite repeated warnings to do so.  Ms. Cox's default is thus the result of an intentional and knowing failure to participate and despite repeated warnings and many court continuances.  As such, this factor also weighs in favor of granting Mr. Randazza a default judgment.

87.    Finally, although there is a general policy favoring a decision on the merits, a default judgment is warranted.  The general policy is heavily outweighed by all the other relevant factors.  Moreover, as explained herein, even if this matter were decided on the merits, Mr. Randazza would prevail, and thus this factor is ultimately is neutral in the final analysis and should not prevent the Court from granting him a default judgment.

88.    An extensive examination of the merits of Mr. Randazza's claims in his FAC against Mr. Cox follows.  This final factor weighs overwhelmingly in favor of granting Mr. Randazza a default judgment on his claims in this Adversary Proceeding against Ms. Cox.

**C.**    **Mr. Randazza is Entitled to a Default Judgment on His First Claim for Relief for Disallowance of Ms. Cox's Proof of Claim.**

   **1.**    **Ms. Cox's Claims Asserted in Her Proof of Claim Are Precluded by Various Dismissal Orders from Prior Litigations.**

89.    Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. . ."  11 U.S.C. § 502(b)(1).  The "applicable law" referenced in section 502(b)(1) includes bankruptcy law

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

as well as other federal and state laws.  See In re G.I. Indus., Inc., 204 F.3d 1276, 1281 (9th Cir. 2000); In re Eastview Estates II, 713 F.2d 443, 447 (9th Cir. 1983).

90.    Ms. Cox's Proof of Claim and the underlying claims in her Discharge Objection are simply regurgitations of the same claims, including defamation and malpractice, as she pled in the 297 Case, the 938 Case, and the Parsons case, which were all dismissed with prejudice, as well as in Coenen II and the RLG Case, wherein such cases were both found to be frivolous. As a result, her claims are all clearly barred by the doctrines of claim preclusion and *res judicata*.

91.    The 297 Case was dismissed pursuant to Rule 41(b) based upon Ms. Cox's failure to prosecute and/or in violation of the Court's order for failure to file an amended complaint after her original complaint was dismissed *inter alia* for failure to state a claim.  Such dismissal was an adjudication on the merits and entitled to claim preclusive effect against Ms. Cox's attempts to reassert the same claims against Mr. Randazza in his Chapter 11 Case.  See Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 714 (9th Cir. 2001) (finding that where a prior action was dismissed with prejudice because the plaintiff failed to prosecute, the dismissal "operates as an adjudication on the merits" for purposes of res judicata) (citing Fed. R. Civ. P. 41(b)); United States v. Schimmels (In re Schimmels), 127 F.3d 875, 884 (9th Cir. 1997) (recognizing that "involuntary dismissal generally acts as a judgment on the merits for the purposes of res judicata . . . ."); see also Johnson v. United States Dep't of Treasury, 939 F.2d 820, 825 (9th Cir. 1991) (noting that dismissal for failure to prosecute is "treated as an adjudication on the 'merits' for purposes of preclusion").

92.    The District Court has already determined that the dismissal of the 297 Case mandates a finding of claim preclusion.  In the dismissal of the 938 Case, also with prejudice, the District Court judge adopted the report and recommendations of the Magistrate Judge, which recommended dismissal on the basis of claim preclusion.  A determination that a matter is governed by the doctrine of claim preclusion or *res judicata* is itself not subject to collateral attack and must be given claim preclusive or *res judicata* effect.  See Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1530 (9th Cir. 1985).

93.    Similarly, in the Parsons matter, the United States District Court for the District of

Arizona dismissed Ms. Cox's case with prejudice pursuant to 28 U.S.C. § 1915 for failure to state a claim, and after considering the merits thereof.  As a result, subsequent identical claims against identical parties are barred by claim preclusion or *res judicata*.  See, e.g., Banks v. Pivnichny, 2015 U.S. Dist. LEXIS 90762, at *6 (E.D. Cal. July 12, 2015).

94.    Further, the Coenen II and the RLG Case matters were found to be frivolous upon consideration of the merits thereof.  Such a determination may also be given preclusive effect in a subsequent action like this Adversary Proceeding.  See Denton v. Hernandez, 504 U.S. 25, 34 (1992) (*res judicata* effect may be given to a frivolity determination under § 1915 where opposing party seeks to proceed without the filing of a paid complaint).  Here, Ms. Cox filed her Discharge Objection and thus without filing a proper adversary complaint or paying the associated filing fee.

95.    In sum, Ms. Cox is barred from asserting and re-litigating the state law claims in Mr. Randazza's Chapter 11 Case as a matter of claim preclusion or *res judicata*.  Indeed, had Ms. Cox not defaulted, Mr. Randazza would have sought and been entitled to summary judgment disallowing her Proof of Claim on the same preclusion grounds.  See Robi v. Five Platters, Inc., 918 F.2d 1439, 1441 (9th Cir. 1990) (holding that summary judgment is an appropriate context in which to decide claim or issue preclusion) (citing Takahashi v. Board of Trustees of Livingston Union School Dist., 783 F.2d 848, 849 (9th Cir. 1986)).

**2.    Mr. Randazza is Not Liable for Defamation.**

**a.    The Elements of a Defamation Claim.**

96.    Even if *res judicata* did not bar Ms. Cox's Proof of Claim, there is no merit to her underlying claims.  To establish a claim for defamation, a party must allege and demonstrate: (1) a false and defamatory statement by Mr. Randazza concerning Ms. Cox; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.  See Wynn v. Smith, 16 P.3d 424, 427 (Nev. 2001); see also Pegasus v. Reno Newspapers, Inc., 57 P.3d 82, 90 (Nev. 2002).  A statement is only defamatory if it contains a factual assertion that can be proven false.  See Pope v. Motel 6, 114 P.3d 277, 282 (Nev. 2005) ("A defamation claim requires demonstrating a false and defamatory statement of fact . . . .").  Whether a statement contains a defamatory factual assertion is a question of law for the court to

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

determine.  See Rodriguez v. Panayiotou, 314 F.3d 979 (9th Cir. 2002); Branda v. Sanford, 637 P.2d 1223, 1225-26 (Nev. 1981).  When evaluating the threshold question of whether a statement is susceptible to a defamatory meaning, the Court must analyze the statement from the standpoint of the average listener, judging the statement not in isolation, but within the context in which it is made.  Norse v. Henry Holt & Co., 991 F.2d 563, 567 (9th Cir. 1993).

97.    Here, as Judge Dorsey set forth in the 2040 Case, Ms. Cox's allegation that Mr. Randazza's single statement that Ms. Cox is an "extortionist" is the sole operative basis for her claim of defamation.  Mr. Randazza has presented sufficient evidence that his statements are truthful.  Moreover, even if they were not, they would still be privileged on multiple bases.  The burden of proving his statements were false lies with Ms. Cox.  Id.  Ms. Cox, however, has not provided and cannot provide any evidence that the communications were untruthful or made with any knowledge of their falsehood.

**b.    Mr. Randazza's Statements that Ms. Cox is an Extortionist are True.**

98.    To prevail on a claim for defamation, a plaintiff must, first and foremost, demonstrate that the statement in question is provably false.  St. Amant v. Thompson, 390 U.S. 727, 731 (1968).  Mr. Randazza's statements regarding Ms. Cox were truthful, based on his personal experience with Ms. Cox, her pattern of egregious behavior with other parties in other litigation, and the national media reports about her behavior when dealing with other parties.

99.    Mr. Randazza's communications were true and were not made with knowledge that they were false.  The District Court in the Obsidian Case, in denying Ms. Cox's motion for a new trial, found that:

> [T]he uncontroverted evidence at trial was that after receiving a demand to stop posting what plaintiffs believed to be false and defamatory material on several websites, including allegations that Padrick had committed tax fraud, defendant offered "PR," "search engine management," and online reputation repair services to Obsidian Finance, for a price of $2,500 per month.  **The suggestion was that defendant offered to repair the very damage she caused for a small but tasteful monthly fee**.

Obsidian Fin. Grp. LLC v. Cox, 2012 U.S. Dist. LEXIS 43125, at *20 (D. Ore. Mar. 27, 2012)

(emphasis added). Though not specifically using the word extortionist, there are few words more apt for the court's description of Ms. Cox's behavior as reported in this case than "extortion." Compare 18 U.S.C. § 1951(b)(2) ("The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened . . . fear"); accord NRS 205.320(3) & (4).

100.    Mr. Randazza experienced Ms. Cox's extortionate conduct, resulting in his truthful statement. He was treated the same way she treated the plaintiffs in the Obsidian Case. This characterization is supported by the various decisions by the World Intellectual Property Organization, the Montana Realty Board, the Ninth Circuit, and the Oregon and Nevada District Courts, all of whom have either characterized or explicitly labeled Ms. Cox's behavior as extortion. Ms. Cox's behavior is extortionate, and therefore, Mr. Randazza's statement that she is an extortionist is true.

### c.    Mr. Randazza's Statements are Privileged.

101.    A qualified or conditional privilege exists where a defamatory statement is "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty." Circus Hotels, Inc. v. Witherspoon, 657 P.2d 101, 105 (Nev. 1983). Whether a particular communication is conditionally privileged by being published on a "privileged occasion" is a question of law for the court, which privilege may only be overcome if the speaker published the communication with malice in fact. Id. To reach "malice in fact," Ms. Cox must prove the publication was made in bad faith, with spite or ill will, or some other wrongful motive, and without a belief that the statement was true. Id. The evidence shows Mr. Randazza made the statement that Ms. Cox is an extortionist in good faith, and reasonably believing it to be true. Thus, as discussed below, his comment is protected by the fair reporting privilege, the reply privilege, and/or her public figure status.

### d.    Mr. Randazza's Statements are Protected by the Fair Reporting Privilege.

102.    In Nevada, "the fair reporting privilege provides absolute immunity to a party who

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

29

makes a 'fair, accurate, and impartial report of events occurring in judicial proceedings.'" Ferm v. McCarty, No. 2:12-cv-00782, 2013 WL 800536, at *27 (D. Nev. Jan. 28, 2013). This privilege is not limited to the news media, but rather extends to "any person who makes a republication of a judicial proceeding from material available to the general public." Wynn v. Smith, 16 P.3d 414, 429 (Nev. 2001); accord Obsidian Fin. Grp., LLC v. Cox, 740 F.3d 1284, 1291 (9th Cir. 2014) (bloggers are entitled to the same protections as members of the institutional press). Courts have found that this privilege should be applied "liberally, resolving any doubt in favor of its relevance or pertinency." Fink v. Oshins, 49 P.3d 640, 644 (Nev. 2002).

103.    The protections of fair and just reporting privilege apply to Mr. Randazza in this case. Any statement by Mr. Randazza calling Ms. Cox an extortionist is privileged as a fair reporting of the judicial proceedings in the Obsidian Case, the various media articles covering the Obsidian Case, and the Montana Realty Board proceeding against Ms. Cox. In addition, there are many others who have also interpreted Ms. Cox's behavior in the Obsidian case and as to Mr. Randazza as that of an extortionist as well. (Randazza Decl. ¶¶ 5-8 and 16, Exs. 4-7 and 16-22). Each of those journalists and law bloggers addressed the issues presented in the Obsidian Case, wherein Ms. Cox demanded money in exchange for ceasing her defamatory online path of destruction. Each of these authors independently came to the same conclusion: that Ms. Cox's behavior is extortionate.

104.    The only statements that Ms. Cox identifies as defamatory were made after substantial media coverage of the Obsidian Case, and were in fact made to some of the people who initially reported on Ms. Cox's behavior, such as Kashmir Hill, David Carr, Carlos Miller, and Mark Bennett. (Id. Exs. 1-4, 21, 26). Each of those journalists and law bloggers publicly identified Ms. Cox as an extortionist based on her behavior in the Obsidian Case, and **well before** Mr. Randazza made his statement. Mr. Randazza relied on those prior reports of the Obsidian Case in making his own determination. Therefore, Mr. Randazza's statements are protected by the fair reporting privilege.

        e.    **Mr. Randazza's Statements are Protected by the Reply Privilege.**

105.    "The common law privilege of reply grants those who are attacked with defamatory

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

statements a limited right to reply.  In <u>Foretich v. Capital Cities/ABC, Inc.</u>, the United States Court of Appeals for the Fourth Circuit explained, by example, how the privilege would work – 'If I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, when such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me.'" <u>State v. Eighth Judicial Dist. Court</u>, 42 P.3d 233, 239 (Nev. 2002) (citing <u>Foretich v. Capital Cities/ABC, Inc.</u>, 37 F.3d 1541, 1559 (4th Cir. 1994)).

106.    That example describes Mr. Randazza's actions too.  Here, Ms. Cox purchased a substantial number of websites in Mr. Randazza's name and then sought to extort him by offering "reputation management" to him in precisely the same manner that she attempted to extort the plaintiff in the <u>Obsidian</u> case.  When Mr. Randazza resisted her extortionate attempts, she upped the ante by filling her dozens of websites with defamatory material about him.  When this did not bring about the desired effect, she focused on his wife.  When that did not bring about the desired payment, she then turned her sights on Mr. Randazza's (at that time) three-year-old daughter, N.R.  Mr. Randazza defended himself and his family by pointing out that he was being attacked by an extortionist – and one whom was previously reported as an extortionist by the media, including the <u>New York Times</u>, <u>Forbes</u>, and various courts and other adjudicative bodies.

107.    As articulated above, Mr. Randazza's statement that Ms. Cox is an extortionist was not false and defamatory in the first place.  It was directly relevant to Ms. Cox's behavior attacking him (and his family) publicly, was appropriately publicized, and was not made with "actual malice."  Rather, it was simply in an attempt to publicly reply to Ms. Cox's terribly extortionate behavior – and to protect himself from her attempts at cyber-extortion.

### f.    <u>Ms. Cox Cannot Demonstrate Fault Amounting to at Least Negligence, Much Less the Required "Actual Malice" Standard.</u>

#### i.    <u>Ms. Cox is a Limited Purpose Public Figure.</u>

108.    Notwithstanding any other privilege, Ms. Cox must still demonstrate actual malice because she is, at a minimum, a limited purpose public figure.  The degree of fault required by a defendant for defamation liability to attach depends upon the target and content of the defendant's speech.  For defamation purposes, there are three categories of claimants: the general public figure,

the limited purpose public figure, and the private individual.  A general public figure is someone who is "intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large."  <u>Hustler Magazine v. Falwell</u>, 485 U.S. 46, 51 (1988) (citing <u>Curtis Publ'g Co. v. Butts</u>, 388 U.S. 130, 164 (1967) (Warren, C.J., concurring in result)).  A limited purpose public figure "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." <u>Gertz v. Robert Welch</u>, 418 U.S. 323, 351 (1974).  Private figures are all other persons.

109.    Public figures, general or limited, must show that an alleged defamer acted with "actual malice," *i.e.*, knowledge that his statement was false or reckless disregard for the truth of the statement.  <u>New York Times v. Sullivan</u>, 376 U.S. 254, 279-280 (1964).  The same standard applies for a limited purpose public figure when the statement concerns the public controversy or range of issues for which she is known.  <u>Makaeff v. Trump Univ., LLC</u>, 715 F.3d 254 (9th Cir. 2013).  One shows reckless disregard when he "acted with a 'high degree of awareness of . . . [the] probable falsity' of the statement or had serious doubts as to the publication's truth." <u>Pegasus v. Reno Newspapers, Inc.</u>, 57 P.3d 82, 90-91 (Nev. 2002).

110.    There is no doubt that Ms. Cox is a limited-purpose public figure for purposes of her involvement in the <u>Obsidian</u> Case and her extortionate behavior.  (RJN, Ex. 5; ECF 75-4). Ms. Cox voluntarily threw herself into this public controversy by filling many online blogs with slanderous writings concerning Obsidian's Chapter 11 bankruptcy trustee, as well as frequently publishing commentary on the case on her various blogs.  In fact, Ms. Cox admits and repeats in various blog postings that she is a **famous** anti-corruption blogger – certainly she cannot claim to be a private figure while plying such a public trade.  (Randazza Decl. ¶ 29, Exs. 30 and 31).

111.    Ms. Cox alleges that Mr. Randazza made defamatory statements about her, but does not identify any such statements made before March 2012 (ECF 164, p. 5, ¶ 7; p. 14, ¶ 29). Undoubtedly, by December 10, 2011, if not March 2012, Ms. Cox had become a limited purpose public figure.  The jury reached its verdict in the <u>Obsidian</u> Case in November 2011, and several reputable media outlets such as <u>Forbes</u> and <u>The New York Times</u> thereupon published articles discussing the <u>Obsidian</u> Case and Ms. Cox's overtly extortionate behavior.  (Randazza Decl. ¶¶ 7

and 8, Exs. 6 and 7).  Ms. Cox even boasts and admits in the 2040 Counterclaim that she "has been reporting on corruption for approx. 9 years" and "is a <u>nationally noted</u> anti-corruption blogger and whistle blower."  (ECF 164, p. 14, ¶ 27) (emphasis added).  And, "I am Media, I have reported on hundreds of people, corporations, companies, attorneys, cases, judges, cops, victims, and businesses over 7 years in my online media."  (ECF 90, p. 5).  Furthermore, in the April 2012 issue of the <u>Oregon State Bar Bulletin</u>, Ms. Cox was the cover story "The Poster Child: How Oregon's Blogging Defamation Case Attracted National Attention," which article went into detail about Ms. Cox's on-going pattern of extortion, especially in light of the <u>Obsidian</u> Case.  (Randazza Decl. ¶ 16(g), Ex. 22).

112.    The public was already well aware of Ms. Cox by the time Mr. Randazza made any of the statements alleged in Ms. Cox's defamation claim, making her a public figure at all relevant times – in fact, much of the public knew of her through her own efforts.  At the very least, Ms. Cox is estopped from claiming that she is not a public figure based on her assertions of notoriety in her 2040 Counterclaim.[15]  As a public figure, Ms. Cox can only prevail on her defamation claim if she can show clear and convincing evidence that Mr. Randazza acted with actual malice, *i.e.*, knowledge that his statements were false, or with reckless disregard for the truth of his statements.

### ii.    <u>Mr. Randazza Did Not Speak with Actual Malice.</u>

113.    It would be an absurd contention, given this evidence, that Mr. Randazza's statement that Ms. Cox was an extortionist was made with actual malice.  With his first-hand experience of Ms. Cox's extortionate behavior and four different adjudicative bodies all determining that Ms. Cox engaged in extortion (or conduct that can be called extortion without embellishment), there is no remotely plausible argument that Mr. Randazza stated Ms. Cox was an extortionist with knowledge that his statements were false or with reckless disregard for their truth.  Mr. Randazza knows and believes the statements to be true – and multiple adjudicative bodies have found them to be true.  Mr. Randazza is thus entitled to judgment on the claim of

---

[15] In her own words, "Cox is an investigative Blogger having over 1200 blogs . . . Cox is a nationally noted anti-corruption blogger and whistle blower."  (ECF 164, p. 14).

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

defamation.

### g.    **Ms. Cox is a "Libel-Proof" Claimant.**

114.    Ms. Cox is barred from asserting a defamation claim against Mr. Randazza because her reputation, prior to his comment, and thereafter due to her own actions or the actions of other objective observers, was so tarnished, that she is "libel-proof."  "When a plaintiff's reputation is so diminished at the time of publication of the allegedly defamatory material that only nominal damages at most could be awarded because the person's reputation was not capable of sustaining further harm, the plaintiff is deemed to be libel-proof as a matter of law and is not permitted to burden a defendant with a trial."  Eliot J. Katz, Annotation, Defamation: Who is "Libel-Proof," 50 A.L.R.4th 1257 (2004); accord 1, Robert D. Sack, Sack on Defamation § 2.4.18 (3d ed. 2004); see generally Note, The Libel-Proof Plaintiff Doctrine, 98 Harv. L. Rev. 1909 (1985).  Specifically, "An individual who engages in certain anti-social or criminal behavior and suffers a diminished reputation may be 'libel proof' as a matter of law, as it relates to that specific behavior . . . .  By extension, if an individual's general reputation is bad, he is libel proof on all matters."  Wynberg v. Nat'l Enquirer, 564 F. Supp. 924, 928 (C.D. Cal. 1982) (citing Ray v. Time, Inc., 452 F. Supp. 618, 622 (W.D. Tenn. 1976)).

115.    Here, before Mr. Randazza made his comment about Ms. Cox's extortionate behavior, Ms. Cox was already engaging in her pattern of extortion on others, and she had a wide-spread reputation for it.  In fact, every judicial or administrative body that has examined her behavior has articulated the same thing – she is an extortionist.  As articulated above, Ms. Cox had already garnered a reputation for offering her "reputation management services" for a fee in exchange for removing the defamatory content she herself plastered all over the Internet.  The New York Times and Forbes had already identified Ms. Cox's criminal behavior, as a result of the Obsidian Case.  Ms. Cox already had the reputation for engaging in the sort of behavior that only a despicable person would engage in, like violating client trust as a realtor per the previously referenced Montana Board of Realty decision, creating websites in the names of small children like that of Mr. Randazza's then-three year old daughter, N.R., and extorting those who do not simply succumb to her demands.  Ms. Cox is not the sort of claimant that can rely on the protection

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

of the law against allegations of defamation. In fact, for someone who behaves as Cox behaves "extortionist" is perhaps a compliment, when other reasonable terms for her are considered.

### h. Ms. Cox Defamation Claim is Time Barred by the Statute of Limitations.

116. NRS 11.190(4)(c) provides that "[a]n action for libel [or] slander" must be brought within two years. Despite Ms. Cox's assertions that Mr. Randazza has continued to make allegedly defamatory statements about her over the course of two or more years (ECF 164 at 16 ¶ 41), this statutory period began to run on the original date of publication of each distinct statement. Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) (finding that "'a cause of action for defamation accrues immediately upon the occurrence of the tortious act and thus, is not appropriate for the continuing violation exception'") (quoting Lettis v. U.S. Postal Serv., 39 F. Supp. 2d 181, 205 (E.D.N.Y. 1998)). Claims for defamation are also subject to the "single publication" rule, by which "aggregate communication can give rise to only one cause of action in the jurisdiction where the dissemination occurred, and result in only one statute of limitations period that runs from the point at which the original dissemination occurred." Oja v. United States Army Corps of Eng'rs, 440 F.3d 1122, 1130 (9th Cir. 2006). This rule applies equally to publications both in print and on the Internet. Id. at 1131.

117. It is difficult to ascertain specifically when Ms. Cox alleges Mr. Randazza first published the allegedly defamatory statement that Ms. Cox is an extortionist. Cox generally alleges that "Marc Randazza has harassed, defamed, taunted (sic) threatened and violated the rights of Cox since Dec. 10th 2011, just after Cox's trial (sic) Obsidian v. Cox." (ECF 164, p. 14 ¶ 27). Furthermore, she fails to identify what particular statements Mr. Randazza made, but per the District Court's Order on April 14, 2014 (ECF 204), the Court manually redlined and redacted Ms. Cox's Amended Answer (ECF 99) for her. (ECF 205). Such identification is not necessary here, as every possible claim for defamation Ms. Cox may have had against Mr. Randazza is for statements made prior to February 21, 2012 (two years before she filed her 2040 Counterclaim in the 2040 Case). All such statements are time-barred by NRS 11.190(4)(c).

118. The single publication rule prevents any later republication of such statements from

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

resetting the statutory period. And in her cause of action for defamation, Ms. Cox asserts that "Randazza's threats, actions and (sic) ganging up on Cox with various others has kept Cox . . . under constant attack for over 2 years." Insofar as these allegations are included in her claim for defamation, they are also time-barred for the same reason.

### 3.    Mr. Randazza is Not Liable for Legal Malpractice.

119.    Without meeting the fundamental requirement of establishing the existence of an attorney-client relationship, Ms. Cox's claim for malpractice fails. The claim does not even allege that an attorney-client relationship existed, much less provides the Court with any evidence sufficient to find the existence of such a relationship. By Ms. Cox's own allegations, and with the testimony of Messrs. Spreadbury and Aman, as discussed below, it is clear that an attorney-client relationship never existed, no other party thought such a relationship existed, and Mr. Randazza did not engage in any legal representation on Ms. Cox's behalf. Furthermore, Ms. Cox does not identify any breach of the attorney-client relationship or any resultant damages, and such a claim is otherwise time-barred.

### a.    Ms. Cox Cannot Demonstrate Malpractice Because There Never Was an Attorney-Client Relationship Nor Was There Unauthorized Representation.

120.    In Nevada, "legal malpractice is premised upon an attorney-client relationship, a duty owed to the client by the attorney, breach of that duty, and the breach as proximate cause of the client's damages." Semenza v. Nev. Med. Liability Ins. Co., 765 P.2d 184, 185 (Nev. 1988). For a claim of legal malpractice to survive, the claimant must successfully demonstrate first that an attorney-client relationship existed. See Day v. Zubel, 922 P.2d 536, 538 (Nev. 1996); Morgano v. Smith, 879 P.2d 735, 737 n.2 (Nev. 1994); Charleson v. Hardesty, 839 P.2d 1303, 1307 (Nev. 1992). Absent the existence of such a relationship, Ms. Cox's claim fails.

121.    "[A]n attorney who undertakes representation of an individual owes duties to that individual, even if the individual never assented to the representation." NNN Siena Office Park I 2, LLC v. Wachovia Bank Nat. Ass'n, No: 2:12-cv-01524-MMD-PAL, 2013 WL 5970719, at *3 (D. Nev. Nov. 8, 2013). In the NNN Siena case attorneys actively held themselves out as the

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

attorneys for unnamed investors and filed a motion on behalf of the parties that they purported to represent, without seeking their consent, without obtaining a waiver of an insurmountable conflict of interest, and without performing their fundamental duty of communicating with their clients. By contrast, as outlined below (and as a matter of record from the court proceedings themselves), Mr. Randazza never represented Ms. Cox, with or without her consent.   Additionally, Mr. Randazza never held himself out as Ms. Cox's attorney, never took any action on her behalf, and Ms. Cox herself never believed that Mr. Randazza was, in fact, her attorney.  (Randazza Decl. ¶ 23).

122.    Importantly, "the attorney-client relationship is based on the subjective belief of the client." In re Rossana, 395 B.R. 697, 702 (Bankr. D. Nev. 2008).  According to Ms. Cox's own statements in her 2040 Counterclaim, "[o]n this first call . . . Randazza did not commit to representation." (ECF 164, p. 3).  Following the initial conversation between Mr. Randazza, Ms. Cox, and Mr. Spreadbury, Ms. Cox "awaited Randazza to do a conflicts check, check the record and then get back to Cox on his representation and the details of such . . . .  Randazza did not contact Cox with any ideas, details, elements of negotiations in any way." (Id.).  The evidence in Mr. Spreadbury's unrebutted and sworn declaration further shows that no attorney-client relationship ever existed and that Ms. Cox did not believe Mr. Randazza was her attorney at the time.  (RJN, Ex. 7; ECF 210-1, ¶¶ 23-26).  "Cox was not particularly interested in hiring Mr. Randazza before the call, and it was very clear . . . that Ms. Cox never considered Mr. Randazza to have been her attorney." (Id. ¶ 25).  This suggests that Cox contacted Randazza as a pretext to commence her attempted extortion of him.

123.    Ms. Cox begins her allegations by stating that she "had an initial consultation" with Mr. Randazza, "whereby Cox divulged private information," including "case strategy."  (Id. at 2).  However, Mr. Spreadbury, a third party, was present for the entirety of Ms. Cox's single conversation with Mr. Randazza, thus destroying any privilege that could have been claimed in those communications.  (Id. ¶¶ 8, 10).  Mr. Spreadbury is the one who initiated the contact with Mr. Randazza.  (Id. ¶ 6).  Furthermore, all parties understood that the consultation would not be privileged or confidential.  (Id. ¶¶ 8, 10).  All participants in that call were also informed and aware

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

that no attorney-client relationship was being formed as a result of this conversation, and that Mr. Randazza would have to review the docket and make determinations regarding potential conflicts, before any offer of representation could be made.  (Id. ¶¶ 9, 11, 12, 20, 26, 27(d); Randazza Decl. ¶ 24).

124.    Next, Ms. Cox alleges that Mr. Randazza spoke to counsel for Obsidian and Mr. Padrick regarding her appeal of the decision in that case. (ECF 164, p. 3).  Ms. Cox does not claim that Mr. Randazza took these actions as her attorney.  (Id.).  That is because Mr. Randazza did not, in fact, act as her attorney, and never had.  The purpose of that call was to understand Obsidian's positions, not to share Cox's.  (Randazza Decl. ¶ 25).

125.    It is true that Mr. Randazza spoke with David Aman ("Mr. Aman"), counsel for Obsidian and Mr. Padrick, as a preliminary introduction (RJN, Ex. 8; ECF 211, ¶¶ 3 and 5), however, such a conversation does not give rise to an attorney-client relationship because, prior to accepting representation, an attorney may perform due diligence and reach out to his proposed counterpart to determine the current state of the case, potential for settlement, or the potential to narrow the issues.  Such is consistent with the requirements of RPC 1.16(a)(1) & 3.1.  This is what Mr. Randazza and Mr. Aman did, and Mr. Randazza made it abundantly clear to Mr. Aman that he did not represent Ms. Cox at that point.  (Id. ¶¶ 3, 5, 6).

126.    During their conversations, Mr. Aman knew that Mr. Randazza did not represent Ms. Cox, and never took any of Mr. Randazza's statements as anything more than what they were – a mere introduction and exploration of the case.  (Id. ¶ 3).  Furthermore, Mr. Randazza never discussed any information provided by Ms. Cox, much less any information that could be deemed to be privileged, especially in light of her simultaneous communication of that information to Mr. Spreadbury.  (Id.)

127.    By her own words, Ms. Cox left the initial consultation call waiting to hear back from Mr. Randazza on whether he would represent her.  Ms. Cox then went to Mr. Volokh to confirm his representation of her.  (ECF 164, p. 3).  Mr. Randazza later spoke to Mr. Volokh about the case.  In Mr. Randazza's conversation with Mr. Volokh, the two attorneys discussed how they saw the issues in the case.  Mssrs. Randazza and Volokh then discussed whether it would be

advantageous for them both to work on the case.  Mr. Volokh expressed interest in having Mr. Randazza as co-counsel in the case.  Only upon Mr. Volokh expressing an interest in teaming up on the case with him did Mr. Randazza decide that he was willing to accept the case.  (Randazza Decl. ¶ 26).

128.    Mr. Randazza emailed Ms. Cox to state that he *would* represent her if she wished to hire him, and Ms. Cox then unequivocally declined in writing and expressly stated that Mr. Randazza did not represent her in any way.  Given her admission, Ms. Cox cannot now claim that there was any attorney-client relationship when she repudiated that very relationship.  (Randazza Decl. ¶ 27).

### b.    Mr. Randazza Never Breached Any Duties and Ms. Cox Was Not Damaged.

129.    Beyond not having an attorney-client relationship, Ms. Cox also has not alleged how Mr. Randazza breached any duty, and what damages may have resulted.  Even if Ms. Cox believed that Mr. Randazza were acting as her attorney, there was neither breach nor injury.

130.    Mr. Randazza revealed no identifiable confidential information.  (Randazza Decl. ¶ 28).  Ms. Cox was not forced into a settlement agreement in the Obsidian Case, even though she claims that Mr. Randazza *would have tried* to enter into one.  Ms. Cox was also not precluded or time-barred from appealing in the Obsidian Case as a result of Mr. Randazza's alleged unauthorized representation of her.  Ms. Cox asserts that Mr. Randazza's behavior "almost lost Cox the attorney she wanted," (ECF 164, p. 3), however, she still went with her choice of counsel – Mr. Volokh – as her attorney in that matter, and the case was quickly resolved in her favor.

131.    Ms. Cox also cannot claim that the public perception of her as an extortionist was a resultant damage of Mr. Randazza's alleged "malpractice."  As evidenced above, Ms. Cox's reputation is what it is because of Ms. Cox's own actions, as opined upon by the New York Times, the Ninth Circuit, the World Intellectual Property Organization, federal district court judges in Oregon and Nevada, the Montana Board of Real Estate, and many journalists.  Beyond not being able to demonstrate any sort of attorney-client relationship, Ms. Cox fails to even *allege* the other two necessary elements of a legal malpractice claim -- breach of that duty and damages.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**c.    A Malpractice Claim is Time-Barred by the Statute of Limitations.**

132.    NRS 11.207(1) provides that "[a]n action against an attorney . . . to recover damages for malpractice . . . must be commenced within 4 years after the plaintiff sustains damage or within 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action, whichever occurs earlier."

133.    Ms. Cox's malpractice claim rests on a conversation Mr. Randazza had with Mr. Aman, the attorney for Obsidian, in December 2011.  Ms. Cox alleges that Mr. Randazza spoke with Mr. Aman without her authorization and, during this conversation, represented himself as Ms. Cox's attorney and entered into negotiations with Mr. Aman regarding the Obsidian Case. (ECF 164, p. 3, ¶ 4).  She does not specify when this alleged conversation occurred, but she claims to have learned of it from Mr. Volokh during a phone conversation on December 15, 2011.  (Id.). Ms. Cox even admits that, shortly after this purported conversation with Mr. Volokh and after Mr. Randazza offered to represent her in the Obsidian Case, she explicitly told Mr. Randazza, "knowing what Randazza had done to harm her," that she declined his offer of representation.  (Id. at 4 ¶ 4).

134.    As a result, on the face of Ms. Cox's 2040 Counterclaim, her assertions of unauthorized representation are time-barred by NRS 11.207.  Mr. Randazza's alleged misconduct took place, and Ms. Cox "discovered" this conduct, in December 2011, more than two years before Ms. Cox's operative counterclaim (i.e., the 2040 Counterclaim) for malpractice was first attempted on February 21, 2014.  And even if Mr. Randazza had "conceal[ed]" his act of alleged misconduct from Cox, less than a week elapsed between such concealment and Ms. Cox's discovery of it.  Ms. Cox thus could not prevail on any portion of her malpractice claim premised on Mr. Randazza's unauthorized representation of her in December 2011 because such an action is time-barred by the applicable statute of limitations.

135.    Ms. Cox also claims that Mr. Randazza committed malpractice at times subsequent to February 21, 2012, but such claims are fundamentally flawed and cannot succeed.  Specifically, Ms. Cox alleges that on March 7, 2012, "Randazza became so enraged at not representing Cox and Cox speaking critical of him that he contacted Obsidian (the Opposition) and agreed to conspire

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

with them to convince Judge Hernandez and the world that Cox was guilty of Extortion." (ECF 164, p. 5). Ms. Cox continues by stating that it was because of this grand conspiracy that she was not granted a new trial in the <u>Obsidian</u> case. Nothing in this statement is premised on an attorney-client relationship, or even the fanciful perception of an attorney-client relationship. Thus, the March 2012 allegations do not form the basis of a malpractice claim and the December 2011 events are time-barred. It is clear from the record in the <u>Obsidian</u> Case that Judge Hernandez came to the conclusion that Cox is an extortionist on his own – needing no assistance from Mr. Randazza to realize it. And nothing attributable to the allegations against Mr. Randazza relate to the denial of her motion for a new trial. <u>See</u> <u>Obsidian Fin. Grp., LLC v. Cox</u>, No. 3:11-cv-57-HZ, 2012 U.S. Dist. LEXIS 43125 (D. Or. Mar. 27, 2012). Accordingly, her accusation that there was a conspiracy, involving Judge Hernandez (and apparently Judge Navarro at some point) is without any merit.

136.    For all the foregoing reasons, Ms. Cox's claims in her Proof of Claim are without merit, and thus this factor also weighs in favor of granting Mr. Randazza a default judgment on his first claim for relief in the FAC to disallow Ms. Cox's Proof of Claim.

**D.    Mr. Randazza is Entitled to a Default Judgment on His Second Claim for Relief for Declaratory Relief Denying and Dismissing Ms. Cox's Discharge Objection.**

**1.    Ms. Cox's Discharge Objection is Procedurally Improper.**

137.    Bankruptcy Rule 4007(a) provides that both a creditor <u>and a debtor</u> may file a complaint to determine the dischargeability of any debt. Fed. R. Bankr. P. 4007(a). Mr. Randazza asserts that his claim for declaratory relief is a complaint subject to Bankruptcy Rule 4007<u>(b)</u>, which may be filed at any time (and not one brought pursuant to Bankruptcy Rule 4007<u>(c)</u>, which can only be filed by a creditor and also only within 60 days of the date first set for the meeting of creditors under section 341(a) of the Bankruptcy Code), because his claim is not one under section 523(c) of the Bankruptcy Code. Under the plain text of 523(c), such a complaint can only be "on request of the creditor to whom such debt is owed." 11 U.S.C. § 523(c)(1) (emphasis added). Mr. Randazza is not making such a request for exception to discharge.

138.    To the extent the Court grants Mr. Randazza a default judgment as to the First Claim

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

for Relief in the FAC, thereby disallowing Ms. Cox's Proof of Claim, this would result in her not having any claim against Mr. Randazza, and thus no debt that could be held nondischargeable pursuant to section 523(a) of the Bankruptcy Code.  It is axiomatic that without a debt, Ms. Cox's Discharge Objection must also be dismissed because she lacks standing under the Bankruptcy Code.  See 11 U.S.C. § 523(a) (providing that "a discharge under section 727 [and] 1141 . . . of this title does not discharge an individual from any debt . . ." (emphasis added); 11 U.S.C. § 101(12) (defining the term "debt" as a "liability on a claim"); 11 U.S.C. § 101(5) (defining the term "claim" as, among other matters, "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."  If there is no valid claim, there is no debt, Ms. Cox is not a creditor, and she lacks standing to bring a nondischargeability claim.  See Sherman v. SEC (In re Sherman), 491 F.3d 948, 958-59 (9th Cir. 2007).

139.    Second, and regardless of the Court's ruling as to the First Claim for Relief, Ms. Cox's Discharge Objection failed to initiate an adversary proceeding as required by Bankruptcy Rule 7001(6).  Specifically, she did not plead her Discharge Objection as a complaint or adhere to the other requirements of form in LR 7010, and did not pay the necessary filing fee to commence an adversary proceeding.  As a result, her Discharge Objection did not actually commence the required adversary proceeding, and such a matter is now time barred by Bankruptcy Rule 4007. (BK ECF 6) (setting deadline to file complaint to determine dischargeability of certain debts as Nov. 30, 2015); see also Kan. Dep't of Labor v. Hunter (In re Hunter), 552 B.R. 864 (Bankr. D. Kan. 2016) (dismissing an attempted nondischargeability objection because the filing included only a cover sheet and an exhibit, but not include a formal complaint by the deadline).[16]

140.    Third, Ms. Cox also did not obtain or serve any summons upon Mr. Randazza within 120 days as required by Bankruptcy Rule 7004(a)(1), incorporating the then-applicable

---

[16] In the Hunter case, the incomplete filing at issue at least commenced an adversary proceeding in which the court could decide a motion to dismiss.  By contrast, in the case at hand, absent Mr. Randazza's commencement of this Adversary Proceeding, there was no adversary proceeding actually commenced by Ms. Cox's filing of the Discharge Objection.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Rule 4(m) (the time limit was subsequently shortened to 90 days), thus requiring that the matter be dismissed pursuant to that rule.  Indeed, Ms. Cox's failure to serve has gone on for so long that it is tantamount to her failing to prosecute the matter, which allows the Court to dismiss the matter with prejudice pursuant to Rule 41(b).  See O'Rourke Bros. Inc. v. Nesbitt Burns, Inc., 201 F.3d 948, 952 (7th Cir. 2000).

### 2. Ms. Cox's Allegations are Insufficient as a Matter of Law to Sustain Her 523(a)(6) Claim.

141.    Finally, Ms. Cox's allegations against Mr. Randazza do not amount to the tortious conduct required to sustain a claim for exception to discharge pursuant to section 523(a)(6) of the Bankruptcy Code.   Section 523(a)(6) of the Bankruptcy Code provides an exception from discharge for any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  Only intentional torts, not negligent or reckless acts, can constitute willful and malicious injury, and a "knowing breach of contract" is insufficient to trigger 523(a)(6).  Kawaauhau v. Geiger, 523 U.S. 57, 60-62 (1998); Lockerby v. Sierra, 535 F.3d 1038, 1041 (9th Cir. 2008).  As such, the Court must determine whether the debtor engaged in conduct that would constitute a tort under applicable state law.  Lockerby, 535 F.3d at 1043 (citing Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1206 (9th Cir. 2001), and Del Bino v. Bailey (In re Bailey), 197 F.3d 997, 1000 (9th Cir. 1999)).

142.    In the case at hand, Ms. Cox asserts that Mr. Randazza committed legal malpractice and that that claim is a tort sufficient to sustain a 523(a)(6) claim.  Legal malpractice claims are a matter of negligence, however, not an intentional tort.  See Dushane v. Acosta, No. 68359, 2015 WL 9480185, at *2 (Nev. Ct. App. Dec. 16, 2015) ("Legal malpractice involves the same elements as an ordinary negligence claim, but it is premised on an attorney-client relationship and involves a breach by the attorney of a duty owed to the client."); see also Stalk v. Mushkin, 199 P.3d 838, 844 (Nev. 2009); Warmbrodt v. Blanchard, 692 P.2d 1282, 1285 (Nev. 1984).  As such, legal malpractice claims do not involve intentionally tortious conduct (much less the willful and malicious conduct required to sustain a 523(a)(6) claim), but rather are in the nature of negligence claims and thus insufficient to sustain a 523(a)(6) claim.

143.    Similarly, "[a] claim for defamation could support a determination of nondischargeability, but only if the plaintiff proved willful and malicious conduct." Stewart v. Kauanui (In re Kauanui), Nos. 14-00077, 14-90018, 2015 Bankr. LEXIS 225, at *6 (Bankr. D. Haw. Jan. 23, 2015) (citing Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1107 (9th Cir. 2005)). As set forth above, it cannot be said that Mr. Randazza acted with malice, *i.e.,* with reckless disregard for the truth, in light of the prior judicial, administrative, and arbitral proceedings in which Ms. Cox was essentially found to be an extortionist. As a result, to the extent Ms. Cox's 523(a)(6) claim in her Discharge Objection is premised on allegations that Mr. Randazza defamed her or committed legal malpractice, this claim is meritless.

144.    For all the foregoing reasons, Ms. Cox's Discharge Objection is without merit, and thus this factor also weighs in favor of granting Mr. Randazza a default judgment on his second claim for relief in the FAC to dismiss her Discharge Objection.

**E.**    **Mr. Randazza Is Entitled to a Default Judgment on His Third Claim for Relief for Abuse of Process Against Ms. Cox.**

**1.**    **Ms. Cox Clearly Committed an Abuse of Process and Thus a Default Judgment Should Be Entered on This Claim in Favor of Mr. Randazza.**

145.    Ms. Cox's prosecution of her counterclaims in the 2040 Case, including the 2040 Counterclaim, after the dismissals in the above-referenced other litigations is a clear abuse of process. The two elements required to establish the tort of abuse of process are: (1) an ulterior purpose by a party other than to resolve a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding. See Grand Canyon Skywalk Dev., LLC v. Cieslak, No. 2:13-cv-596, 2015 WL 1805055, at *4 (D. Nev. Apr. 20, 2015) (collecting cases); LaMantia v. Redisi, 38 P.3d 877, 880 (Nev. 2002). The mere filing of a complaint is insufficient to establish the tort of abuse of process; rather, it is the conduct that occurs after the filing of the complaint that gives rise to the tort of abuse of process. See id. (quoting Laxalt v. McClatchy, 622 F. Supp. 737, 751-52 (D. Nev. 1985)).

146.    Here, it is not the mere assertion of Ms. Cox's 2040 Counterclaims that give rise to the tort of abuse of process; rather, it is the many similar litigations she filed throughout the country

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

seeking to raise the same dismissed claims, and her continuing to maintain such claims in all those forums – including also this Bankruptcy Court – after being advised that such claims had been dismissed on many occasions that gives rise to the tort of abuse of process.

147.    As noted, <u>Coenen II</u> was dismissed as frivolous on June 7, 2013 and the <u>RLG Case</u> was dismissed as frivolous on July 18, 2013.  Similarly, <u>Parsons</u> was dismissed with prejudice on September 19, 2013, the 297 Case with prejudice on May 14, 2014, and the 938 Case with prejudice on January 20, 2015.  On or after each of the foregoing dismissals, Ms. Cox knew or should have known that she could not sustain any of her putative counterclaims in the 2040 Case as a result.  Thus, at the time she filed her 2040 Counterclaim on February 24, 2014, and reasserted the same matters by way of her Proof of Claim and Discharge Objection, such claims had already been dismissed on many occasions and with prejudice.

148.    In opposing Mr. Randazza's summary judgment and opposing his anti-SLAPP Motion, as well as her filing other spurious motions in the 2040 Case and her 2040 Counterclaim, and her attempt to reassert those same dismissed claims by way of the Proof of Claim and the Discharge Objection in this Chapter 11 Case, Ms. Cox committed improper, willful acts in the use of the legal process, purporting to sustain clearly unsustainable cases that were obviously barred, at a minimum, by claim preclusion.  Moreover, especially given her many similar filings in nearly ten (10) different jurisdictions throughout the country, Ms. Cox cannot plausibly claim that she sought to resolve a legal dispute against Mr. Randazza; rather, she simply sought to harass and punish him for refusing to bend to her extortionate demands and to delay his claims in chief against her.  Ms. Cox, therefore, committed an abuse of process against Mr. Randazza.  <u>See</u> <u>Bull v. McCuskey</u>, 615 P.2d 957 (Nev. 1980) (affirming abuse of process judgment against an attorney for maintaining a medical malpractice claim against a debtor, knowing that there was no basis for the claim, for the ulterior purpose of coercing a nuisance settlement).

149.    For all the foregoing reasons, Mr. Randazza's third claim for relief in the FAC for abuse of process against Ms. Cox is meritorious, and thus this factor weighs in favor of granting

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

him a default judgment on that claim.[17]

### 2. Mr. Randazza Should Be Awarded Compensatory Damages Against Ms. Cox Based on His Claim for Abuse of Process.

150. "Attorney's fees and other expenses incurred in defending wrongfully instituted civil litigation are properly awarded as a measure of damages caused by the tort of abuse of process." Kern v. Moulton, No. 3:12-cv-00296-RCJ-PAL, 2013 U.S. Dist. LEXIS 124648, at *7-8 (D. Nev. Aug. 30, 2013) (citing Dan. B. Dobbs, The Law of Torts § 440, at 1241-42 (2000)); Horgan v. Felton, 170 P.3d 982, 989 (Nev. 2007) (Maupin, C.J., concurring); Sternberg v. Johnston, 582 F.3d 1114, 1122 (9th Cir. 2009) (recognizing that attorney's fees can be damages in abuse of process suits).

151. As a direct and proximate result of Ms. Cox's abuse of process, it has taken substantial attorney's fees and costs to litigate the 2040 Case, the Proof of Claim and the Discharge Objection. (Randazza Decl. ¶ 68). Thus, Plaintiff is entitled to his attorneys' fees and costs for defending the 2040 Counterclaim, the Proof of Claim, and the Discharge Objection, all of which were proximately caused by Ms. Cox's multiple abuses of process.

152. To calculate reasonable attorneys' fees is a two-step process involving quantifying the lodestar and deciding whether to increase or reduce that amount. First, the "lodestar" is the multiplication of the reasonable hourly rate by the reasonable number of hours expended. See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).

153. Second, the Court considers the factors of Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), to wit:

> (1) the time and labor required, (2) the novelty and the difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the

---

[17] To the extent the Court awards Mr. Randazza a default judgment on his First, Second and Third Claims, he agrees to voluntarily dismiss his Fourth Claim for Relief for civil extortion.

attorney, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Id. at 70.

154.    In support of his damages in the form of attorney's fees and costs, Plaintiff submits the billing records incurred for the defense of the 2040 Counterclaim as well as the litigation of this Adversary Proceeding.  First, Mr. Randazza was forced to retain Weide & Miller, Ltd. for the 2040 Case.  F. Chris Austin, Esq. with Weide & Miller was the attorney principally working on this matter from that firm.  Mr. Austin has been practicing law for more than 20 years and is an accomplished civil litigator.  (Austin Decl. ¶¶ 2 and 3, and Ex. 1).  So far in the 2040 Case, Mr. Randazza has incurred the sum of ***$111,513.94*** in fees and costs with Weide & Miller, Ltd.  (Id. ¶ 4, and Ex. 2).

155.    Second, Randazza Legal Group, PLLC ("RLG") also assisted in the defense of the 2040 Counterclaim and Ms. Cox's onslaught of pleadings in that case.  Ronald D. Green, Jr., Esq. with RLG was the attorney supervising this matter for RLG.  Mr. Greene has been practicing law for 17 years and is an accomplished civil litigator with substantial experience.  (Green Decl. ¶¶ 2 and 3, and Ex. 1).  So far in the 2040 Case, RLG has incurred the sum of ***$262,502.50*** in fees and costs on behalf of Mr. Randazza.  (Id. ¶ 4, and Ex. 2).

156.    Third, Mr. Randazza has retained Larson & Zirzow ("L&Z") for his Chapter 11 Case and this Adversary Proceeding.  Matthew C. Zirzow, Esq. with L&Z has principally led that representation.  Mr. Zirzow has been practicing bankruptcy law for more than 18 years, is well experienced in complex bankruptcy litigation matters, is Board Certified in Business Bankruptcy Law by the American Board of Certification, and his experience was required to handle the peculiarities of Ms. Cox's improper Discharge Objection and Proof of Claim in the Chapter 11 Case and this Adversary Proceeding.  (Zirzow Decl. ¶ 21).   L&Z has incurred the sum of not less than ***$37,566.15*** in fees and costs in this Adversary Proceeding through October 18, 2017 on behalf of Mr. Randazza.  (Id. ¶ 22, Ex. 7).

157.    As detailed in the time records, in light of the sheer number of claims and pleadings involved in the 2040 Case, counsel reasonably spent a substantial amount of time defending against

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

47

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

the 2040 Counterclaim.  (Austin Decl. ¶ 5; Greene Decl. ¶ 5).  Likewise, because counsel in this Adversary Proceeding reasonably anticipated similarly contentious litigation in this matter-- although it ultimately became a default situation, which still must be appropriately proven up-- counsel reasonably spent a substantial amount of time on this Adversary Proceeding as well. (Zirzow Decl. ¶ 23).

158.    In sum, the billing records set forth the appropriate lodestar amount of *$411,582.59* in the aggregate for the defense of the 2040 Counterclaim/2040 Case and for this Adversary Proceeding.  As to the second step, there is no basis to adjust the lodestar downward and, although the litigation has been difficult, at times novel, laborious, and undesirable, warranting an increase to the lodestar, it was not contingent and such are counsel's customary fees.  To avoid any possible dispute, Plaintiff does not seek an increase to the lodestar either.

### 3.    Mr. Randazza Should Also Be Awarded Punitive Damages Against Ms. Cox Based on His Claim for Abuse of Process.

159.    Punitive damages are also available for abuse of process.  See Nev. Credit Rating Bur. v. Williams, 503 P.2d 9 (Nev. 1972); Coker Equip. Co. v. Witting, 366 Fed. Appx. 729, 733 (9th Cir. 2010) (affirming a Nevada District Court's award of compensatory and punitive damages for abuse of process).

160.    Where punitive damages are recoverable, they can be awarded as part of a default judgment.  "A plaintiff is never entitled to punitive damages as a matter of right."  Alutiiq Int'l Solutions, LLC v. OIC Marianas Ins. Corp., 149 F. Supp. 3d 1208, 1215 (D. Nev. 2016) (quoting Dillard Dep't Stores v. Beckwith, 989 P.2d 882, 887 (Nev. 1999) (quoting Ramada Inns v. Sharp, 711 P.2d 1, 2 (Nev. 1985)).  An award of punitive damages requires clear and convincing evidence of fraud, malice, or oppression.  Id. (citing Bongiovi v. Sullivan, 138 P.3d 433, 450-51 (Nev. 2006)).  When punitive damages are sought by default judgment, the court must have independent evidence to support the award because punitive-damages-worthy conduct alleged in a complaint is not regarded as admitted by default.  Id. (citing Matter of Gober, 100 F.3d 1195, 1205 (5th Cir. 1996)).

161.    A court must consider "numerous factors including the defendant's financial

48

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

position, culpability, and the extent to which this culpability offends one's sense of justice" when determining whether a punitive-damages award in any amount is warranted.  Id. (citing Evans v. Dean Witter Reynolds, Inc., 5 P.3d 1043, 1053 (Nev. 2000)); Wyeth v. Rowatt, 244 P.3d 765, 784 (Nev. 2010) (holding that courts "consider three guideposts: (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of the punitive damages award to the actual harm inflicted on the plaintiff, and (3) how the punitive damages award compares to other civil or criminal penalties that could be imposed for comparable misconduct.") (internal quotation marks omitted).

162.    As applied in the case at hand, Ms. Cox's acts were clearly done intentionally, with malice, and with the intent to oppress, as they were done with the clear intent to harm Mr. Randazza.  Indeed, at times Ms. Cox taunted Mr. Randazza, went after his wife and minor children, and filed repeated frivolous actions in nearly ten (10) different jurisdictions throughout the country based on the absurd and ridiculous conspiracy theories all in an attempt to extort some kind of settlement.  Additionally, Ms. Cox has a clear history, pattern and practice of engaging in such reprehensible conduct in the past, and continued to do so undeterred by many prior adjudications against her.  Ms. Cox's actions are not the actions of someone who is seeking in good faith to resolve a dispute through the court system, but rather someone who is seeking to use any means possible to destroy someone else, including both his professional and personal family life, because he did not bend to her extortionate demands.

163.    Given these factors, Plaintiff requests punitive damages in the amount of **$100,000.00** against Ms. Cox.

**F.    To the Extent the Court Deems an Evidentiary Hearing is Necessary, Mr. Randazza Requests That it Be Scheduled Forthwith and at the Court's Earliest Availability.**

164.    Finally, although Mr. Randazza asserts that an evidentiary hearing is likely not necessary in light of the extensive briefing and declarations submitted in support of this Motion, to the extent the Court believes that an evidentiary hearing is required to prove up all or any aspect of the default judgment requested, Mr. Randazza respectfully requests that the Court schedule such evidentiary hearing forthwith and at the Court's earliest availability.

# V.  CONCLUSION

WHEREFORE, Mr. Randazza requests that the Court order as follows:

1.      Granting him default judgment as to the First Claim for Relief in the FAC, and thereby disallowing Ms. Cox's Proof of Claim in full, and ordering the claim expunged;

2.      Granting him default judgment as to the Second Claim for Relief in the FAC, thereby dismissing Ms. Cox's Discharge Objection with prejudice;

3.      Granting him default judgment as to the Third Claim for Relief in the FAC on his claim for abuse of process, and also awarding him compensatory damages in the amount of not less than $411,582.59 for the attorneys' fees and costs incurred in the 2040 Case and this Adversary Proceeding, and punitive damages in the amount of $100,000.00;

4.      To the extent the Court grants him a default judgment on his First, Second and Third Claims for Relief as requested herein, he agrees to dismiss his Fourth Claim for Relief for civil extortion without prejudice; and

5.      Granting him such other and further relief as is just and proper.

Dated:  October 20, 2017.

By:    /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Plaintiff

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169