UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

In re:

MARC JOHN RANDAZZA,
Debtor.

MARC JOHN RANDAZZA, an individual,

Plaintiff,

V.

CRYSTAL L. COX, an individual,

Defendant, Counter-Plaintiff

**Case No.: BK-S-15-14956-abl**
Chapter 11

RECEIVED
AND FILED

OCT 30 2017

U.S. BANKRUPTCY COURT
Adv. No. 16-111 MARY A. SCHOTT, CLERK

Adv. Case No. 17-01005

**Objection to MOTION FOR
JUDGMENT BY DEFAULT**

I, Defendant Crystal Cox, Object to MOTION FOR JUDGMENT BY DEFAULT.

I, Defendant Cox cannot attend a Hearing in Las Vegas, as I am homeless, have no money or
Vehicle. I have no post office box, no phone, and no laptop or computer of my own.

I apologize to this court for not updating my mailing address, however, I lost my mailbox a
couple of years ago as I have no money. And I have lived Transient since the spring of 2014,
much of that living in my vehicle, due to what my ex-attorney Plaintiff, Marc John Randazza, has
done to me and my entire life.

**I Object to Dismissal of my Proof of Claims, Dismissal of my Objection
to Discharge of Debt (the "Discharge Objection" and Object to paying
attorney fees for Debtor to litigate. And i Object to claims that I had any
intention to abuse this court or the bankruptcy court process.
I filed the Proof of Claim due to the following:**

1



On 08-28-15 Marc John Randazza filed for Bankruptcy. (See Docket Entry 1 Voluntary Petition (Chapter 11).

On 08/28/15 Case 15-14956-abl Doc Entry Number 6 there is a Notice, See Exhibit 7.   I, Defendant / Counter-Plaintiff Crystal Cox received this document in the mail in early September of 2015 at my then P.O. box 2027 in Port Townsend WA.

I got this in the mail Because Marc Randazza listed me as a Creditor. The bankruptcy court sent this to me, I did not solicit it nor even know that Randazza filed bankruptcy at that point.

This Notice of 8-28-2015 Meeting of Creditors Chapter 11 (BNC) (Short Description) and labeled "Meeting of Creditors 341 Meeting to be held on 10/01/2015 at 01:00 PM at 341s - Foley Bldg,Rm 1500. Objections to Discharge due by 11/30/2015. Last day to file Proof of Claims 12/30/2015. (Entered: 08/28/2015) Labeled as Long Description. Entry 6 of this case stated the following:

"A chapter 11 bankruptcy case concerning the debtor(s) listed below was filed on 8/28/15. You may be a creditor of the debtor. This notice lists important deadlines. You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below."

AND

"Deadlines:
Papers must be received by the bankruptcy clerk's office by the following deadlines:
**Deadline to File a Proof of Claim**:
For all creditors (except a governmental unit): 90 days after the date
first set for the meeting of creditors"

When I, Crystal Cox, received this Notice from the court and its warning of deadlines, I Googled Proof of Claim and filed it per examples online. I had no money or attorney and I thought that was what I was being asked by the court to do in order to protect my rights to counterclaims involved in DISTRICT OF NEVADA 2:12-cv-02040-JAD-PAL and to Adversary Case No. 17-01005 of BK-S-15-14956-abl this Bankruptcy.

I thought my rights would be Void to my malpractice claims, abuse of process, and defamation, civil conspiracy, if I did not do as the court document asked of me so I filed a Proof of claim to protect my rights.

Exhibit 7, Docket Entry 6 of this case, also state:

"Claims A Proof of Claim is a signed statement describing a creditor's claim. A PROOF OF

2

CLAIM MAY BE FILED ELECTRONICALLY AT THE BANKRUPTCY COURT'S WEBSITE (http://www.nvb.uscourts.gov) or a Proof of Claim form ("Official Form B 10") can be obtained at the United States Courts website:

(http://www.uscourts.gov/FormsAndFees/Forms/BankruptcyForms.aspx) or at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office. If your claim is scheduled and is not listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you file a Proof of Claim or you are sent further notice about the claim.   Whether or not your claim is scheduled, **you are permitted to file a Proof of Claim.** If your claim is not listed at all or if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim or you might not be paid any money on your claim and may be unable to vote on a plan.    A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial."

"Discharge of Debts Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt.

See Bankruptcy Code § 1141(d). Unless the court orders otherwise, however, the discharge will not be effective until completion of all payments under the plan. A discharge means that you may never try to collect the debt from the debtor except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code § 523(a)(2), (4), or (6), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed on the front side. The bankruptcy clerk's office must receive the complaint and any required filing fee by that Deadline.

**If you believe that the debtor is not entitled to receive a discharge under Bankruptcy Code § 1141(d)(3), you must file** a complaint with the required filing fee in the bankruptcy clerk's office not later than the first date set for the hearing on confirmation of the plan. You will be sent another notice informing you of that date." (See Exhibit 7)

After receiving this court document, I went to the library computer and to the site the court told me to and printed out the Proof of Claim of which I thought I had to, so I did. Then years later Marc Randazza files an Adversary Complaint against me for doing what I thought I was court ordered to do.

I thought I filed a complaint by filing my objections to the discharge of debt. I read the Notice, researched and filed documents best I could to protect my rights

On September 30, 2015, I, Crystal Cox, acting pro se, filed a Proof of Claim. I did so after Docket Entry 6, Exhibit 7 was mailed to me and after Docket Entry 15 was mailed to me calling me Creditor 13 with a 10 million claim.  It is said that I did not attach any supporting

3



documentation to my Proof of Claim. I thought I had to file a Proof of Claim to retain my rights as a creditor per all the bankruptcy documentation sent to me calling me a Creditor.

I thought I was a Creditor and never believed that I had to prove I was after he claimed I was in Federal Bankruptcy court document. My intentions were not abuse of process, I thought I was doing what the court told me to do.

This same Document, Entry Number 6 of this bankruptcy case, BK-S-15-14956-abl, Exhibit 7, also stated the following:

"Deadline to File a Complaint Objecting to Discharge of the Debtor:
First date set for hearing on confirmation of plan.
Notice of that date will be sent at a later time."

So I thought I had to do that per the court's legal notice and to preserve my rights, so I googled "File a Complaint Objecting to Discharge of the Debtor" and filed it to the best of my ability to preserve and protect my rights as per the court notice mailed to me. My Objection to Discharge is 100% true to the best of my knowledge and understanding.

On 9-11-2015 this UNITED STATES BANKRUPTCY COURT District of Nevada also sent me Case 15-14956-abl Doc 15,  mailed to me in Port Townsend WA. On this document I, Crystal Cox, am listed as the LARGEST Creditor on that list. It is a court document and I truly believed that I was and am a Creditor. At the Top of Page 4, I am listed as Creditor 13 for 10 Million.

On that same document line 10-14 trusts Randazza set up, cars he bought, claiming a mortgage to his wife's parents, staging a divorce,  all I allege to defraud Creditors.

On the bottom of Page 20 of this same document filed with this court, I, Crystal Cox am listed as Creditor 13. Therefore I thought I was a Creditor and had to file a Proof of Claim and any Objection to Discharge I had, Per the Notice mailed to me.

I thought that because Marc Randazza entered me as a Creditor, Creditor 13, in his Bankruptcy that I was indeed a Creditor. Why would Marc Randazza put me down as a Creditor if I was not, indeed a Creditor?  In believing I was a Creditor and getting documents from the Bankruptcy Courts telling me that I had 30 days to file a claim and objections, I hurried up and did so.

In filing the Objection to Discharge of Debt (the "Discharge Objection")  in Marc Randazza's Chapter 11 Case I thought that I was filing a claim so that I would not lose future standing as I have counterclaims against Marc Randazza, as he was me attorney briefly in my appeal for Obsidian v. Cox.

I OBJECT to the dismissal of the Objection to Discharge of Debt (the "Discharge Objection" and to any accusations that it was not well intended or some form of court abuse. I thought that was

4



my complaint, my objections to the Debtor discharging debt that I firmly believe he was/is hiding money and assets from Creditors and setting up a divorce and family staged home mortgage, as well as setting up multiple trusts and signing business shares to Ronald Green, and more shenanigans to Defraud Creditors.

I was homeless when I filed the Proof of Claim and the Objection to Discharge. I researched at the library and online best I could. I am still homeless, have been since the Spring of 1014 after Randazza put my home address in the court case and his buddies texted me threats of coming to my home town and of my "knee caps". Randazza made it clear that it was a mistake to make him an enemy. Another words if I did not give him what he wanted, do as he said to do and do what he told me to do then it would be making an enemy of him. It felt like a mafia style threat when he emailed me you really want to make an enemy of me. Then he launched a 5 year and counting attack that included my church, my friends, my pastor and associate church, those I worked for or knew in the past, digging into my phone and bank records and more. All to torment and torture me in retaliation for not doing what he wanted me to do.

I am homeless still and in constant fear of my life from Marc Randazza and his "friends" in the Porn Industry and his gang stalking attorney friends. With Randazza's malicious defamation to me by interviewing with big media, radio, legal bloggers, small media and posting on his own blog, along with filing a malicious defamatory Amicus Brief in my Ninth Circuit Appeal of the very case I fired him from representing me on, and his suing me in 2012. And deliberately lying to WIPO in sworn statements. I have been unable to be hired by clients, unable to rent a home or get a local job, as they google me and find what my own attorney said in all these case.

In the Nevada case DISTRICT OF NEVADA 2:12-cv-02040-JAD-PAL where my ex-attorney maliciously sued me for having a domain name to promote my own First Amendment case, and now wants me to pay him 350,000 for him suing me, in that case he used the media outlets described above as evidence to steal my intellectual property in an unconstitutional TRO.

Randazzas own words to bloggers, attorney bloggers, and media of all manner were printed out and used as evidence in court against me to violate my civil and constitutional rights, steal my personal property and intellectual property, steal top of the search engines ranking created by my money, my time, my expertise over years.

The Bankruptcy Courts, or Trustee Office even mailed me a document asking if wanted to be on the Creditors Committee, I sent back a letter stating that I would.

Apparently On October 5, 2016, Mr. Randazza filed an Adversary Proceeding. I had no idea what this meant and still do not understand the filing of a complaint within a bankruptcy to preserve a right to a malpractice suit which was DISTRICT OF NEVADA 2:12-cv-02040-JAD-PAL and now is Adversary Case No. 17-01005 of BK-S-15-14956-abl this Bankruptcy. I have done the best I can to comply with the courts. Randazza sued me 5 years ago and has consumed my life and now wants me to pay his attorney friends approx. $350,000

5



in attorney fees for them / hime attacking and harassing me.

## **Abuse of Power and Process**

I Object to Debtor / Plaintiff Randazza claiming that I am Guilty of Abuse of Process.

I firmly allege Marc Randazza is guilty Abuse of Power and Process. As is Jay Devoy and Ronald Green of Randazza Legal Group.

Marc Randazza and the attorneys connected to his scheme use our court system to bully, harass, coerce, taunt, scare, retaliate, remove online content, and get what they want from that person depending on who it is they want from that particular person.

For example it could be to shut down their online content and take away their First Amendment rights because that person is blowing the whistle on the porn industry and what they are doing to those in the porn industry that speak out.

They also file lawsuits some call copyright trolling, as they set people up to download things then sue them for doing it, then get the court to pay their own legal fees for suing the victim/litigant.

They use the courts to stage litigation and set up precedence. They make lot's of money this way and get more cases and get precedence that helps more wealthy clients.

The gang stalking group will talk about the case on their blog and say whatever Randazza or the agenda they seeks, tells them to post / report. Then Randazza (the attorneys who sue) will use that blog / news article as evidence in court that the target/victim/litigant is bad, untrustworthy, acting unethical or unlawful, has committed some crime or civil conspiracy.

They even use their own or each others legal actions in court as factual evidence against their target, even though it is simply their stated word, as an officer of the court, and attorney, in a court filing that they file simply for the purpose of using it as evidence later against a target.

They are all attorneys and or deemed credible media such as NPR, Forbes, Fox, NYT times and more. They get their narrative out there then use this as unadjudicated evidence in court to WIN against their prey and then have the victim pay their legal fees. SO they get the precedence they were seeking or silence the voices they want to silence and they get paid by courts ordering the target to pay the very attorneys who abuses, tormented and retaliated against them using the Federal Court System, that is Abuse of Process and I allege Fraud on the Court as well as a form of assault.

Randazza and his alleged co-conspirators use Lawsuits to intimidate people into doing what they want and because he is an attorney, and officer of the court, he uses that power and



position to stalk his prey by getting phone records, bank records, talking to friends and family, and threatening to drag them into court if they don't give him secrets and information about the litigant.

I have done all I can to give voice to the whistleblowers, the insiders in the porn industry, human trafficking and sexual assault victims and others who Randazza and his gang stalking attorney friends harass, sue, taunt, bully, stalk, lie to media about the person, post lies on legal blogs, and do so for years until the person is bankrupt, scared, homeless, and have lost all quality of life and therefore are SILENCED.  In many cases they push the person to suicide and even taunt them into suicide.

I have notified the court over and over about Marc Randazza in order to attempt to protect the public at large. I have done all I can and gave everything I knew to be my life to do it.

Randazza and his alleged co-conspirators have done this same thing to Monica Foster aKa Alexandria Mayers, Diana Grandmason and other porn industry insiders and whistleblowers who have fallen on deaf ears with their reporting of crimes, human trafficking, stalking, rape, serious medical issues and more grave circumstances happening in the porn industry.

Marc Randazza touts himself as a Pro First Amendment Lawyers yet he censored me, and many other bloggers talking critical about him, making fun of him or exposing things he and his gang stalking attorney co-conspirators have done.

Randazza shut down dozens of my blogs. He stole dozens and dozens of domain name and shut down connected blogs/content and this also removed hundreds of my blog posts/my intellectual property and online content from the internet. He did not have to adjudicate any of it, he just did it. He did not have to hire an SEO expert, he did not have to sue me and win, he did not have to create the sites, pay for the domain names or blogs, or do anything to create the work product, he simply filed an Unconstitutional TRO of which he himself has argued in court for others is Unconstitutional, he used evidence against me as I described above, that he and his co-conspirators created via blogs, news, online content, WIPO and more. THEY create the narrative then use that against their victim / defendant as if it is Adjudicated FACT when it is not.

I have told the courts this for 7 years and still he is out there doing the same pattern and practice to victims. Judges let him do it because he is an officer of the court and they believe Randazza over his target (the litigant he sues to silence, manipulate or bully).

In my case, Randazza sued me. I counter-sued him, and he wrote a new Nevada Anti-Slapp law with his political connections, his power and position and used that new law against me in that very lawsuit. This is abuse of process.

I have never been charged with extortion, never had a verdict or trial in civil or criminal court for extortion. Yet Randazza seems to think it is ok and not defamation to tell the world his ex-client

7



is an extortionist, flat out states it over and over, maliciously, knowing full well it is not an adjudicated fact period.

Randazza is using and abusing the bankruptcy court to attempt to cover up the intentional damage, fraud, breach of contract, breach of fiduciary duty to his clients, creditors, and continue as a lawyer making money and a name for himself while he puts all of our lives on hold and in constant duress and danger.

If this court grants this motion and enters default against me then so be it, nothing I can do but trust that this court is lawful and of high moral and ethical standards. It will do nothing to me as I have no money, no home, no phone, few clothes, no vehicle and well there is nothing that can still be done to me but death, and that I fear daily from Marc Randazza and his friends.

However, it will harm the other victims of Randazza and attorneys like him, if this court simply enters Default against me and does not adjudicate the allegation in the discharge objection as I truly believe that Marc Randazza had malicious and deliberate intent to defraud creditors and to use the bankruptcy courts to do it.

Ruling against me will essentially tell attorneys like Randazza that they can violate their clients rights, harass and threaten them, breach stated and written contracts with them, harm their cases, bully them, lie about them in all manner of media and when the client fights back and has a claim against them, as happened to me, then Randazza and those like him can simply file for Bankruptcy. Thereby using the bankruptcy court to cover up breaches in their contractual and ethical obligations to their clients.  Essentially all attorneys can do this and never have a malpractice claim against them for anything they may have done.

Marc Randazza represented me on my high profile First Amendment Case, he was Extremely abusive to me, critical of me, talked over me, did not do as I wanted but instead as he wanted in my case and so I Fired him. Since I fired he has maliciously retaliated in every possible way.

### Background

I have been an Advocate for Victims of Sexual Predators and victims of corruption for approx. 17 years. I have thousands of blogs and hundreds of thousands of blog posts. ALL to help victims and advocate for them.

Mr. Randazza got mad when I fired him and he has since retaliated for over 5 years and counting. See Crystal Cox Declaration attached to this filing.

Another way in which I advocate for people is through my church, Bringing Back Goddess Church, a 501 3(c) incorporated in WA state. I live in Port Townsend WA mostly. I have been homeless as stated, and having lived in my truck and hostels since 2014, and losing my truck recently, I came to stay with a friend in another state for a few months. However, I intend to

8



have my church and live in WA.

Marc Randazza and his attorney friends, as well as others in the porn industry, have harassed me online for over 5 years. They have threatened and intimidated me. To this day I am in fear of Marc Randazza and his predatory porn industry friends..

I have fought to Stop Human Trafficking and have got massive tips from those inside the porn industry on Marc Randazza's predatory actions to silence them from speaking out against the sexual abuse and violence in the porn industry, by producers, attorneys and others.

Marc Randazza supports and defends pedophiles, and sexual predators.

## **Statement of Fact**

Plaintiff, Debtor Marc J. Randazza was Defendant Crystal Cox's attorney. He was very verbally abusive to me, violated my rights, tried to forcibly stop my appeal to the ninth circuit, talked down to me and disrespected me, so I fired him. (See attached Crystal Cox Declaration and Exhibits)

Randazza claims he was not my attorney, which is not true. See Exhibit 19 where Randazza agrees to Represent Cox, me, Exhibit 18a, Exhibit 18 and Exhibit 9, as well as the Declaration attached to and with this filing.

Note that Jay DeVoy was included in those emails / exhibits and acting on behalf, as well as Ronald Green of Randazza Legal Group. They were my attorneys. They sued me to silence me and intimidate me and now 5 years later and after ruining my life, tormenting and torturing me, ruining friendships family connections and my business, rendering me homeless, they want me to pay for their legal fees to their buddies and themselves for the damage they caused to me.

These attorneys have a pattern and practice of suing people to get them to do as they say, or to set a precedence for other wealthy clients, then making their victims pay their legal fees for retaliatory and abusive lawsuits.

Plaintiff, Marc John Randazza, as debtor and debtor in possession, and counter-defendant was Crystal Cox's attorney as Seen in Exhibits. Cox has legitimate malpractice claims against Randazza and has no money for an attorney to protect her civil and constitutional rights.

Marc Randazza took my intellectual property in a TRO in Nov. of 2012, nearly 5 years ago and I have had my due process rights violated.

I continue to allege that Mark Bennett, Kashmir Hill, NPR, Philly Law Blog, Scott Greenfield, Ken White Popehat attorney blogger, Forensic Accountant Blogger Tracy Coenan, Eric Turkewitz, Ari

9



Bass, Sean Tompkins, Jason Jones of SaltyDroid, AboveTheLaw.com blog, SCOTT H. GREENFIELD, Adam Steinbaugh, Bob Garfield NPR, GoDaddy, Peter L. Michaelson, David Wells Austin, Mark Bennett, Ninth Court of Appeals Blogger William Peacock Esq, and more have conspired with Randazza in abuse of process and using courts to intimidate, silence, and retaliate against whistleblowers and for personal gain.

The courts have been notified by me over and over. What the court chooses to do with this information is out of my control.

Peter L. Michaelson Trademark attorney and friend of Marc Randazza was the Sole Panelist at WIPO that ruled against me defendant Crystal Cox and Randazza's other victim in this case Eliot Bernstein iViewit inventor.

I, Crystal Cox had prior cases at WIPO for high profile wealth attorney's names in a domain name I owned, Proskauer Rose attorneys to be exact and I WON. See EXHIBIT 3,4 and 5, and my Declaration (Crystal Cox Declaration) attached to this motion. Those cases ALL had a 3 person panel. It was highly unusual and I allege corrupt that Randazzas case against me had only one Sole Panelist, his friend attorney Peter L. Michaelson.

There was no campaign of bad faith harassment against the Randazza family through cyber-extortion. I blogged, called him names, and reporting in my own First Amendment protected way.

There is no well documented Extortion. Cox claims that Randazza conspired with other attorneys, with WIPO and with media, as well as law bloggers to paint Cox, his former client, in false light, and thereby make it look like there was well documented evidence of extortion, of which there was not. There is no adjudicated documentation of fact, as a matter of law, that I, Crystal Cox have had anything whatsoever to do with extortion.

Since the Spring of 2014 I have been homeless, lived in motels, hostels, my truck and currently on a friends couch. I have lost everything in my life because of the actions of my former attorney Marc Randazza and his false claims in court documents and to media big and small.

I cannot attend hearings nor can I keep up with court filings as I have no home, no vehicle, no computer that I own, no phone, and no money. ALL due to Marc Randazza.

My former attorney, Marc Randazza lies about Obsidian v. Cox being about extortion. Obsidian sued me, I was my own attorney. The email they tout as extortion was long after they already sued me and I was acting as my own attorney, the email was negotiations with the opposition. The lawsuit against Cox, me, was not about Extortion as seen in the Original Complaint, it was a Defamation lawsuit. The email they later use to paint me in false light, knowingly and with malicious intent, that email was sent well into the lawsuit and was NOTHING to do with the original cause of Obsidian suing me for reporting on them in a high profile bankruptcy case out

10

of Bend Oregon. Nor was it extortion, it was a long thread of emails between attorneys AFTER I was already sued, and I was pro se acting as my own attorney, period.

Randazza paints falsehoods to this court as he has to WIPO, big media, small media, legal bloggers and other Federal Judges. He does so knowing full well that he is not speaking facts and truth. Randazza was my attorney. I fully believed he acted as my attorney in good faith and would not harm me. I was wrong. I pray this court stops this from happening to anyone else.

Obsidian was about ONE blog post and not ever about Extortion. That narrative came afterwards in order to defame me and discredit me as I was reporting on massive corruption among attorneys and bankruptcy trustees in that case. Any factual assertions they claim I got wrong, as they well know, I got from an inside source, a CPA and did not maliciously make up any false information to purposely harm or extort anyone.

Yes on November 30, 2011, a jury returned a $2.5 million verdict against Ms. Cox, me, and on I WON on appeal which Randazza tried to sabotage, even going so far as to working with the opposition to attempt to auction off my right to appeal in exchange for the 2.5 million debt. The ruling was overturned as it was clearly Unconstitutional, See Exhibit 33 for my WIN on Appeal. (No. 12-35238 D.C. No.3:11-cv-00057-HZ)

You will also note in that ruling that the Ninth Circuit Judges used Unadjudicated Hearsay as their "evidence" claiming I had a history of bad behavior. Ninth Court Judges, in a ruling that gave all bloggers equal rights to the institutional press journalist such as the New York Times, used a biased discriminated unfactual New York Times article in which the bad guy attorneys were interviews and the journalist flat out lied as their evidence in a high court ruling. Unadjudicated Hearsay as clearly seen in Exhibit 2 Judicial Ruling ( Case 2:12-cv-02040-JAD-PAL Document 200 Filed 04/10/14) Number 11-15 on page 4, as shown below.

"1. Periodicals

Plaintiffs offer at Exhibit B an article from Forbes Magazine. Printed material "purporting to be a newspaper or periodical" is self-authenticating. Thus, this article is self-authenticating. Its contents, however, are hearsay not subject to any exception. Accordingly, the periodical is not admissible for summary judgment purposes." Doc. 200 Randazza v. Cox.

As an Activist Litigant in my Ninth Circuit Appeals case, I requested a Motion to Rehear, another words I appealed my WIN in order to attempt to get justice. That appeal was filed by my then attorney UCLA Law Professor Eugene Volokh. As seen in Exhibit 34, United States Court of Appeals for the Ninth Circuit Nos. 12-35238, 12-35319 Motion to Rehear.

"Appellant Crystal Cox does not ask this Court to modify the substance of its opinion. She does, however, respectfully request that the Court amend its opinion to withhold the sentence that now says,

11



   Cox apparently has a history of making similar allegations and seeking
   payoffs in exchange for retraction. See David Carr, When Truth
   Survives Free Speech, N.Y. Times, Dec. 11, 2011, at B1.

A judicial assertion of misconduct by a named person, even a judicial assertion
modified with the word "apparently," could be based on the record in
a case, or on authoritative findings by another court. But it **ought not be
based on a newspaper column,** which was written without the benefit of
cross-examination, sworn testimony, or the other safeguards of the judicial
process. The claims in the columnist's assertion are neither facts found by a
factfinder nor facts subject to judicial notice under Fed. R. Evid. 201.
Moreover, while the New York Times column does discuss Cox's offering
her consulting services to appellees in this case, it does not make any such
allegations about other cases. There thus seems to be no "history" of "seeking
payoffs" claimed in the article. The "history" that the column is positing
appears to be only a history of Cox's "making similar allegations."

Unfortunately but unsurprisingly, some media outlets have not only repeated
this sentence, but even omitted the term "apparently" in doing so.
The widely reprinted Reuters wire service, for instance, wrote,

   "According to the court's opinion, Cox has a history of making allegations
   of fraud and other illegal activities "and seeking payoffs in exchange
   for retraction."

Dan Levine, Blogger Gets Same Speech Protections as Traditional Press:
U.S. Court, Reuters, Jan. 17, 2014, http://www.reuters.com/article/2014/01/
17/us-usa-blogger-ruling-idUSBREA0G1HI20140117; see also, e.g., http://
www.nbcnews.com/id/54102454/ns/technology_and_science-tech_and_
gadgets/ (NBC News republication of the Reuters article). Of course, some
such media omissions of qualifiers (such as "apparently") are inevitable.

Still, they highlight the fact that, when a statement is made in a Court of Appeals
opinion—with the authority such opinions possess—journalists might
perceive the statement as a factual finding, and not just a report of what a
newspaper column has alleged.

Judicial opinions are perceived as extraordinarily reliable sources of information.
This reliability stems from the assumption that statements in the opinion, especially statements
that allege misconduct, generally rest on adjudicated facts. Because of this, Cox respectfully
requests that this particular allegation, which relies solely on a claim made in a newspaper
column, be redacted from the opinion" (See Exhibit 34, United States Court of Appeals for the
Ninth Circuit Nos. 12-35238, 12-35319 Motion to Rehear.)

I, Crystal Cox have fought for Justice in this matter for over 5 years, to no avail.

When My motion to Rehear was Denied, I filed a writ of certiorari Pro Se to the Supreme Court
in order to seek justice.
(See Exhibit 35)

Crystal Cox, Petitioner v. Obsidian Finance Group, LLC, et al.
Docketed:      April 16, 2014
Lower Ct:      United States Court of Appeals for the Ninth Circuit
Case Nos.:     (12-35238, 12-35319)
Decision Date: January 17, 2014
Rehearing Denied:     March 5, 2014

"Petitioner requests this court to issue a ruling that requires the Ninth Circuit to redact criminal
allegations of Petitioner in a Ninth Circuit civil court ruling dated January 17th, 2014, Obsidian v.
Cox, Ninth Circuit Case Number; 12-35319; D.C. No. 3:11-cv-00057- HZ.

This issue is a matter that affects all members of the public.

Ninth Circuit Judges; Judge Arthur L. Alarcón, Judge Milan D. Smith, Jr.,and Judge Andrew D.
Hurwitz, stated:

". Cox apparently has a history of making similar
allegations and seeking payoffs in exchange for retraction.
See David Carr, When Truth Survives Free Speech, N.Y.
Times, Dec. 11, 2011, at B1. Padrick and Obsidian sent Cox
a cease-and-desist letter, but she continued posting
allegations. This defamation suit ensued."

Defendant Crystal Cox has no history of posting anything online and seeking a retraction for a
payment. This is not based in fact, and has NEVER happened, as the court record clearly
shows.

Cox was never "determined" by any court to have posted allegation, then sought a retraction,
then continued posting and was sued. This is factually incorrect. Cox alleges the Ninth Circuit
violated her constitutional rights in alleging criminal activity and has stated in error, the events
leading up to her defamation suit.

Cox asks this court to rule that criminal allegations be redacted from the Obsidian v. Cox Ninth
Circuit ruling dated January 17th, 2014."

I have done everything I possible could do to fight for justice and set the records straight.

My former attorney flat out lied to this court again about the State of Montana Board of Realty Regulation, that case was nothing to do with extortion, See Exhibit 6 for letter from the Don Harris, Special Assistant Attorney General, Department of Labor and Industry in that case stating that it was NOT about Extortion.

Martin Cain was never my client, and I to this day fully believe he hired someone to kill me as the person confessed this to me personally. Martin Cain left threatening cursing voicemails to me. Marc Randazza paid an attorney to represent Martin Cain years later, in order to file an Amicus in my Ninth Circuit case and try and sabotage my WIN.

I, Crystal Cox, have NO history whatsoever of posting online and seeking payment for a retraction. This is FALSE, and has no bearing of truth whatsoever. I am an Avid 17 year and counting Advocate of victims of sexual predators, corruption, bullying attorneys, and a voice to the victims of corrupt attorneys and social injustice.

My intention for 17 years has been selfless. I gave everything I could possibly ever give to fight for justice and truth and give voice to the victims of corruption and of predator attorneys, as well as victims of sexual crimes, taunting, judicial retaliation, predatory guardianship, human trafficking, stolen patents, real estate and mortgage fraud, insider trading, probate and estate fraud, and much more.

Randazza flat out lies about and exploits his then 3 year old daughter. I never had a blog about her, and it was in fact, he himself who went on NPR about her, and gave a photo to Forbes in his lies to them about me attacking his child, none of it true. And he immortalized his daughter's name in association with his fraud as his "toddler" as he called her SUED ME for millions upon millions based on flat out intentional lies by Marc Randazza.

I have never threatened Marc Randazza's sister and do not even know who she is. I am unsure what this allegation is based on.

None of My Court Filings were ever frivolous. I filed in good faith the whole truth to the best of my ability. The courts have not heard my plea nor done anything to stop Randazza or his alleged co-conspirators.

Randazza Says, "Ms. Cox Cannot Demonstrate Malpractice Because There Never Was an Attorney-Client Relationship Nor Was There Unauthorized Representation." I firmly disagree. I believed Marc Randazza and his law firm Randazza Legal Group to be representing me, along with his associates at the firm J. DeVoy and Ronald Green. I relied on information and advice he gave me. See Exhibit 18, 18a, 19, and 33 as well as the attached Crystal Cox Declaration for more clarity and evidence on this matter.

14



Crystal Cox should be Awarded Punitive Damages Against Marc Randazz Based on His Claim for Abuse of Process, Civil Conspiracy, Defamation and Malpractice.

I request punitive damages in the amount of 100 million. Marc Randazza and his alleged co-conspirators, at his request, ruined my life,tortured and tormented me, taunted me and ruined my quality of life and right to peaceful enjoyment, ruined my business, and my ability to have a home and live comfortable in any way. He has also caused me massive long term stress and irreparable damage.

Marc Randazza was my attorney, he used private privileged information to retaliate against me, try and control me, manipulate me and censor me. Randazza used his inside knowledge of me, as my attorney, against me. He provides this court and others with exhibits of Forbes, NPR, Philly Law Blog and more that he himself, as my ex-attorney told them the information,  They reported what he said then it was used in court as evidence against me. This same group of attorneys does this same pattern and practice to countless whistleblowers and other targets.

They prey on people, mostly women in the porn industry exposing their tactics. They also prey on people who they claim violate copyright. They set them up, sue them and then Randazza's media connections and law bloggers report on the case, the victim / defendant, based on Randazza's stated word. The victim ends up losing cases and money, and usually ends up paying Randazza or the other attorneys in the gang's legal fees.

Instead of acting in my best interest, after being my attorney and advising me,  he interfered with my 9th circuit case, he filed Amicus against me, he hired an attorney for another man to file an Amicus against me, he worked with the opposition (AMAN) in my Obsidian v. Cox case against my best interest and EXPOSED my strategy, goals, secrets and private information.

I have demanded the name of Marc Randazza's and Randazza Legal Group's malpractice insurance carrier and have been denied over and over. Again I request this court order Randazza to notify his malpractice insurance company of my claims against him. And against Randazza Legal Group, Ronald Green and J. Devoy.

After Firing Marc Randazza as my attorney, UCLA Law Professor Eugene Volokh represented me in my case, Obsidian v. Cox, of which I won my appeal. And no thanks to my former attorney Marc Randazza who filed a retaliatory Amicus in that case against me

Randazza even sued iViewit Inventor Eliot Bernstein, who is one of the victims of attorney corruption and patent theft in which I advocate for via Investigative Blogging.

## Conclusion

I OBJECT to dismissing my Discharge Objection, as every word is true and correct to the best of my ability. I pray this court will take those allegations serious and investigate Randazza for his premeditated actions to defraud clients and creditors. And report him to the authorities.

I fully believe that Marc Randazza has defrauded the Creditors in this case and staged a divorce, faked a mortgage on his home with his inlaws, and all stated in the Objection to Discharge.

I object to Mr. Randazza claiming abuse of process against me, that is one of my claims against him in my counterclaim.

I Object to claims of Civil Extortion. Marc Randazza and the Randazza Legal Group, J. DeVoy and Ronald Green received my files, analyzed my case and Randazza advised me as my attorney. I have not received money from Marc Randazza, nor "extorted him" in anyway. His claims are False.

I Object to paying attorney fees for Marc Randazza to file what he calls (Adversary Complaint ) My intention was to do as the Bankruptcy court asked me as seen in Docket Entry 6 of this case, Exhibit 7.

As seen in Exhibit 2, Denial of Randazza's Summary Judgement, Randazza has NO CASE against me, Crystal Cox and he never did. (Case No.: 2:12-cv-2040-JAD-PAL Doc. 200)

Counterclaims should be allowed against J. Devoy, Ronald Green and Randazza Legal Group as well, as this court permits.

This case is also related to DISTRICT OF NEVADA 2:12-cv-02040-JAD-PAL and to Adversary Case No. 17-01005, an adversary case connected to this one, of which I have never been able to receive flings, as I have no electronic access. I Request to file electronically in all the above state cases so that I may defend myself. All these cases within cases confuse me. I do not know my rights nor responsibilities in Adversary Case No. 17-01005 and have never been emailed anything and have no post office box.

I believe that what I have described to this court to be 100% true. I believe that Randazza has committed fraud on the courts, committed deliberate willful bankruptcy fraud and request that this court notify the authorities, the FBI, the Department of Justice, the Police and the Attorney General.

I also again notify this court that whistleblowers inside the porn industry who are exposing pedophilia, human trafficking, abuse, sexual assault, stalking and more are being harassed in the same way as Randazza and his gang stalking co-conspirators are attacking me. I ask this court to please stop them in anyway this court can.

16



I do the best I can in standing up for the victims of the porn industry in which Marc Randazza and his co-conspirators protect the predators, the pedophiles, and the human traffickers.

I beg the court to listen to me on these matters. I have done all I can to protect these victims. Randazza and those who work with him such as Ari Bass, Sean Tompkins, Ronald Green, Jay DeVoy, Ken White, and more taunt and torture these women daily. The woman have to hide in fear, and fight in legal cases sued by Randazza please enjoin the Attorney General, FBI, and DOJ in this matter and protect these woman that Randazza and his friends target daily. They are the voice for those abused by the sexual and violent predators of and connected to the porn industry.

These attorneys are maliciously gangstalking countless people, then suing them and using our courts to ruin their life in every way. They are sued, stalked, taunted, threatened every single day by these bullies. This court has a chance to stop them by reporting them.

Even if this court were to believe everything Randazza has staged as Evidence against me, a former client. That would have no bearing as to whether my Objection to Discharge is true or not. And would have no bearing on claims that Randazza intentionally set up Trusts, bought cars, set up Retirement accounts, signed Ronald Green to more money and ownership of Randazza Legal Group and other intentional actions to defraud Creditors intentionally and knowingly, with malicious intent.

Whatever decision this court makes, it will not harm me. I have no money, home, business, vehicle, phone and I have nothing to lose but my life, of which I am in fear for every single day from Randazza and his alleged co-conspirators. The decision however will affect other Creditors, former Clients who have legal and ethical rights regarding Randazza, and trickle down to the whistleblowers in the porn industry.

If this court needs to make my Objection to the Discharge of Debt an Adversary Complaint to carry out lawful Justice then I ask that the court do so. My intention was simply to do the right thing, obey the law, do as the court asked and to protect myself and other victims of Randazza Legal Group and alleged co-conspirators.

I request electronic access for any further filings as I have no money or way to mail and have had help with this mailing of which I will not have in the future.

I prefer all contact be email. My eMail is ReverendCrystalCox@Gmail.com

I declare under penalty of perjury that the foregoing is true and correct. I am not an attorney. I try, and I do my best at this to fight back and stand up for myself and the others harmed by these guys. I realize I ramble and run on here and there, I do the best I can. I mean no disrespect to this court or any court in my filings. My intention is to help the victims of such

17



activities and to stand up honorably for Justice for all to the best of my ability.

Dated: October 23, 2017.

*Crystal J. Cox Oct. 23 2017*

/s/ Crystal L. Cox
Crystal L. Cox, Pro Se Defendant / Counter-Plaintiff / Creditor
Investigative Blogger, Victims Advocate, Reverend

Crystal Cox Contact Information:

Current Temporary Mailing Address
Crystal L. Cox
C/O Eliot Bernstein
2753 Northwest 34th Street,
Boca Raton, FL  33434

Permanent eMail: SavvyBroker@yahoo.com  AND ReverendCrystalCox@Gmail.com

18



**Certificate of Service**

I certify I sent this Objection to Default Judgement Motion to:

Judge AUGUST B. LANDIS
U.S. Bankruptcy Court
District of Nevada
Foley Federal Building
300 Las Vegas Boulevard South
Third Floor, Courtroom #1
Las Vegas, NV 89101

And TO: Matt@lzlawnv.com

*Crystal 2. Cox*

Crystal L Cox
Oct 23 2017

19

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

In re:                                          **Case No.: BK-S-15-14956-abl**
                                                Chapter 11


MARC JOHN RANDAZZA,
        Debtor.


MARC JOHN RANDAZZA, an individual,              **Adv. No. 16-1111**

                Plaintiff,

V.

                                                **Adv. No. 17-01005**

CRYSTAL L. COX, an individual,

                Defendant, Counter-Plaintiff


                                DECLARATION OF CRYSTAL COX
                                IN SUPPORT OF Objection to MOTION
                                FOR JUDGMENT BY DEFAULT
                                And support of Cox's Counterclaims

DISTRICT OF NEVADA 2:12-cv-02040-JAD-PAL is a connected case.


**Background**

**Brief Nature of Lawsuit Randazza filed against me, Defendant / Counter Plaintiff Cox.**

1. This cybersquatting, Trademark Infringement (Lanham Act) case arises out of the alleged targeting of Plaintiffs Marc Randazza, his wife Jennifer, and their young daughter Natalia, by Defendant Crystal Cox, an "investigative blogger", Real Estate Broker, Victims Adcovate, Pastor, and online publisher. Cox was a former client of Marc Randazza and his law firm Randazza Legal Group. As noted in **Exhibit 18, 19 and 18a, as well as Exhibit 9.**

2. Randazza alleged that Defendant / Counter Plaintiff Crystal Cox and Defendant Eliot Bernstein engaged in an online harassment campaign to extort them, by registering dozens of

1



internet domain names that incorporate the Randazzas' names and then demanding they agree to purchase Cox's "reputation management" services to remove this allegedly defamatory material from the internet and rehabilitate their cyber reputations.

3.  Crystal Cox has never been under investigation for extortion by authorities. Cox claims she has never taken money to remove anything negative she posted online, and has never engaged in any cybersquatting activities. There have never been adjudicated facts that Cox engaged in civil or criminal extortion in any way.

I Crystal Cox claim that I never demanded Randazza agree to purchase my services nor did I threaten to post online or to remove any postings. Cox purchased domains names originally to report on her First Amendment case, Obsidian v. Cox in which Marc Randazza and his law firm Randazza Legal Group represented her on, for a brief time.

4.  Randazza claims that Cox and Bernstein have violated Trademark Laws, the Lanham act, right of privacy and have acted in conspiracy to harm them. Randazza took possession of the intellectual property of Cox and Bernstein as of December 2012 under an unconstitutional TRO, Randazza still has possession of that Intellectual property and has reaped benefit from it's search engine placement and value built by COX, and SEO expert.

5.  Defendant Crystal Cox claims that this lawsuit was instituted to harass her and stifle her First Amendment freedoms of speech and expression.

### Counter Plaintiff Crystal Cox's Counterclaims - Brief Nature of Suit

1.  Counter Plaintiff Crystal Cox's counterclaims arise out of allegations that her former attorney Marc Randazza owed her certain duties and obligations as a matter of law and ethics.  And that he violated those duties in which has caused her irreparable harm of which she is entitled all allowable relief, as a matter of law. See Exhibit 18 and 19a for representation, as well as Exhibit 9.

2.  Defendant Crystal Cox alleges that Marc Randazza is guilty of malpractice and of defamation.

3.  Cox alleges that Marc Randazza violated Slander and Defamation Laws; 28:1332 Diversity-Libel, Assault,Slander and 320 Assault, Libel, and Slander.

4.  Cox acknowledges that she is, indeed, a public figure, however, Cox alleges that Randazza defamed Cox maliciously and with full knowledge that what he was saying and publishing was false as a matter of fact. And that as her attorney Randazza owed her a duty as such.

Crystal Cox being a public figure does not protect Randazza as a Defense, as he was her attorney and he has no legal right to knowingly defame Cox.

2

5. Cox alleges that Marc Randazza used information he gathered as her attorney to cause her deliberate and willful harm, and that he did so deliberately with malice.

6. Cox alleges that Marc Randazza posted defamatory statements, with actual malice, to third parties accusing her of the felony crime of extortion and other misconduct in which he knew was false. Randazza knew that Cox had no ruling, no investigation and no adjudicated fact as to her having committed the felony crime of Extortion. Randazza cannot simply say that he defamed Cox because others were doing it.

7. Cox alleges that Marc Randazza violated the Nevada Rules of Professional Conduct and that this violation caused Cox irreparable harm.

8. Cox alleges that Marc Randazza has painted her in false light to the entire world and that this has branded Cox for life, with no way to recover.

9. Cox alleges that Marc Randazza was negligent in his defamatory statements to 3rd parties with malice and that he was negligent as having been her former attorney.

10. Marc Randazza has a clear pattern of abuse and violations against his clients. As seen Below
http://fightcopyrighttrolls.com/2015/07/09/marc-randazza-must-pay-600k-for-clear-and-serious-breaches-of-fiduciary-duty-against-his-former-client/comment-page-1/

Randazza frequently breaches fiduciary duty and the covenant of good faith and fair dealing with his past, former and present clients, as he has done with me, Crystal Cox, Defendant.

Mr. Randazza had been involved in and successfully concluded negotiations for a bribe in the amount of $75,000, to be paid to Mr. Randazza by the other side in connection with resolution of high-importance litigation, commonly referred to as the "Oron litigation," which had been initiated and pursued on behalf of E/L by Mr. Randazza, as E/L's counsel of record. (As seen in Exhibit 66)

Mr. Randazza permitted and encouraged his children to have warm personal relationships with Mr. Gideon, who they called "Uncle." (As seen in Exhibit 66). And yet Marc Randazza and Jennifer Randazza branded me, Defendant Crystal Cox a monster to forbes, ny times, npr and the world for having a domain name, and claimed I had done something illegal and immoral against their TODDLER who also is a Plaintiff in this case. Meanwhile he allowed the child to be at porn industry parties associated with known predators.

Randazza negotiations with adverse parties alleged misconduct consisted of engaging in ethically-prohibited is a repeated pattern and history.



Just as in Marc Randazza's representation of Crystal Cox in her Obsidian vs. Cox appeal, Marc **Randazza engages in ethical misconduct in negotiations with adverse parties.**

## Summary of Evidence / Statement of Fact

### DEFAMATION / SLANDER Claims

1. Cox alleges that Marc Randazza defamed her.

2. Cox alleges that Randazza KNEW that what he was posting online and swearing to WIPO, and telling NPR, Forbes, the New York Times and various legal bloggers and attorneys, was false. Therefore, Cox claims that Randazza had actual malice and that, as a matter of law Cox is entitled to all allowable relief, per law, as to his stating Cox is an Extortionist and that Cox had a blog about his infant child of which Cox had no such blog.

Randazza made this defamatory statements up and stated these to third parties such as and not limited to Forbes, the New York Times, NPR and many other online publications and legal blogs, as well as in sworn statements to WIPO, and that he did so with malice and with full knowledge that what he was saying and post was and is false.

Randazza also posted on his personal blog that Cox had attacked his infant child and that Cox had a blog about his child, of which this deliberate false statements and postings have caused Cox irreparable harm of which she is entitled all allowable relief as a matter of law. Cox never had a blog about Randazza's infant child and this statement has caused serious backlash in Cox's life.

3. Cox claims that she is entitled to stated relief and does not have to proof actual damages. Cox is also entitled to punitive damages from her former attorney.

4. Cox claims that Exhibit 21 shows that after Cox had fired Randazza and continued on solely with Eugene Volokh as her representation in her Ninth Circuit appeal, Randazza emailed her and offered to be of any help to her in the future that she may need.

Yet when Cox emailed Randazza some time later asking for help, Randazza retaliated against Cox and told the world that the email was extortion.

**Exhibit 21** proves that Randazza defamed Cox with intent, willfully, wanton, and maliciously. Even after claiming, offering, to be of any kind of help to his former client Crystal Cox.

4

Exhibit 21 shows that On December 16th 2011 at 12:55 PM Randazza says he has no issue with Cox firing him and he offers to help Cox in the future in anyway he can. This acknowledges that he was representing Cox and he was willing to help in the future in anyway way her could.

Exhibit 21 shows that Marc Randazza claimed to respect Cox, he apologized if she felt not treated well and said the following: "People like you are important for the future of citizen journalism, and I wish to see you succeed."

Yet Randazza painted Cox in false light to the entire world, and even in sworn statements claiming that she had extorted him and was guilty of the felony crime of extortion. And that she had attacked his infant child.

Marc Randazza did not file a criminal complaint regarding his felony extortion allegation. Randazza, instead, used his media and legal connections to paint me, Cox, as guilty for the crime of extortion.

Randazza violated Cox's rights of due process and her constitutional rights. Randazza deliberately, with full knowledge of it being false, defamed me, Crystal Cox, and made false statements to third parties around the world. Including and not limited to NPR, Forbes, the New York Times, Legal and Fraud Experts, WIPO (international publications, domain names and intellectual property law), and he used his knowledge of First Amendment Law, and his connection to legal bloggers and big and small media to paint me, Cox, out as a criminal worldwide.

Cox claims that Randazza owed her a duty to keep her email asking him for help private and a duty to not do anything adverse to Cox. Cox claims that Randazza was negligent and unlawful when he then embarked on a 5 years and counting, campaign to maliciously harass, intimidate, sue, lie to courts and media and ruin her life, family, relationships, business, reputation and quality of life.

I, Crystal Cox, relied on what my former attorney, Marc Randazza, said about my case, my best interest moving forward, and that he would follow through with what was my wishes for the case. Cox told Randazza, in confidence, her strategy and goals and that she wanted to appeal to the Ninth Circuit. Randazza used that to try and negotiate a settlement with the Opposition (AMAN / Padrick) and STOP the appeal.

5

A settlement that Cox did not want and was NOT in his client, Crystal Cox's best interest, but instead in the best interest of his wealthy Porn Industry clients who needed this First Amendment issue resolved in a way that benefited them financially and not Crystal Cox, Marc Randazza's client.

Randazza was letting the APPEAL clock run out, knowing full well that I Crystal Cox wanted to appeal to the Ninth. I fired him and Eugene Volohk filed my Appeal of which I Won. See January 17, 2014 No. 12-35238 and No. 12-35319 D.C. No. 3:11-cv-00057-HZ. UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Cox claims she relied on her former attorneys word offering help to her even if in the background. Yet when she emailed him, taking him up on that offer. He took that private email and gave it to legal bloggers, courts, WIPO and big and small media widespread, maliciously painting her, Cox, in false light, accusing the email, her as being extortion.

5.   Cox claims that Exhibit 17, an email from Randazza to her proves that Randazza had full knowledge that what he was posting about Cox being an extortionist was false.

Exhibit 17 shows an email from Counter Defendant Marc Randazza to Counter Plaintiff Crystal Cox, in this email you see Randazza stating,  "Asking me for a job, or a recommendation? That doesn't bother me in the least."

However, after this Marc Randazza went on NPR, interviewed with Forbes and the New York Times, spoke with a large amount of attorneys who blog about legal cases, spoke with the New York times, made sworn statement in court and to WIPO, and posted on his own blog that Crystal Cox was guilty of extorting him. Though he clearly stated that Cox was asking him for a job.

The email that these sites and Randazza's legal blog used, claiming it was extortion, was the very same email as seen in Exhibit 17 whereby it is clear that Marc Randazza himself believed that Cox was only asking for a job and not committing the felony crime of extortion.

Yet with full knowledge that the statements he was making were false, Marc Randazza painted Cox in false light to the entire world as extortionate and stated that Cox had extorted him. Even though Exhibit 17 clearly shows that he knew Cox was not attempting to harm or intimidate him or his family in any way. But that Cox was only asking for a job and that he did not mind her asking for a job.



Exhibit 17 shows that Marc Randazza is offended and perhaps even mad, however it clearly shows that Randazza believed that Cox was ONLY asking for a job. Yet he spent the next 3 years and counting, publishing and making false statements to all manner of media and swearing to those false statements to courts and WIPO, knowing full well that what he was saying was not factual.

Therefore, Cox alleges that Randazza instituted a world wide defamatory campaign against Cox to retaliate against her for firing him in her infamous Landmark Ninth Circuit, First Amendment Case Obsidian v. Cox.

Cox alleges that this has ruined her life, affected what the Ninth Circuit Judges said, as they quoted the New York Times as proof of Cox's alleged behavior. Cox's former attorney, Randazza painted the picture to the media, judges, attorneys, NPR and essentially the world that Crystal Cox was guilty of the felony crime of extortion. Of which he had not filed a criminal complaint, had not filed an attorney general complaint and had no adjudicated fact that Cox had engaged in any sort of extortionate behavior at any time ever. COX has never been adjudicated for extortion.

In fact Exhibit 17 shows clearly, without a doubt, that Randazza did not believe he was being extorted, but that in fact, he believed Cox was unreasonable and unethical for registering the domain name, but that she was simply asking for a job.

This Exhibit proves that Randazza, with full knowledge of it being false, interviewed and flat out lied, made false and defamatory statements to NPR, Forbes, the New York Times, WIPO, the Czech Courts, Tracy Coenen and the Fraud Files, Kenneth White attorney blogger of Popehat.com and numerous other well connected bloggers, and Media around the world. As well as made these false and defamatory statement in courts and on his own blog. KNOWING full well that it was false.

Cox alleges that this violates defamation, slander and libel laws and that she is due all allowable relief as a matter of law.


**6.** RANDAZZA gave blogger, attorney Kenneth P. White of Popehat.com Cox's personal, privileged, private email to her former attorney who told her to let him know if he could help her in any way, and he used this email to maliciously paint Cox in false light, deliberately not posting the whole email thread which showed that Randazza CLEARLY knew Cox was asking for a job, and not trying to extort him in ANY way..

Therefore because Cox would not simply turn over a domain name he thought she had no right to own, and had fired him in her landmark First Amendment case, he went on NPR, interviewed with the New York Times, Forbes, Popehat.com, and he viciously, deliberately, knowing it was false, lied, made false statements to WIPO who used their global clout to ruin the lives of Eliot

7

Bernstein and Crystal Cox and accuse them worldwide and nationwide, in legal blogs, in big and small media, that Crystal Cox and Eliot Bernstein (who never was even in the email) had extorted him, which is a felony crime.

This has led to discrimination and further retaliation against inventor Eliot Bernstein in his ongoing estate cases in Florida and his RICO case in the New York Courts.

8. Exhibit 18 shows Randazza asking Cox as his then potential client for files in her case.

9. Exhibit 18a shows that Randazza was working with Cox as a potential client, which under Nevada Law / Rule 1.18. Duties to Prospective Client. Exhibit 18a also shows that Randazza had enlisted Portland Lawyer Lake Perriguey to assist in the Oregon law part of the case with him.

10. WIPO decision based only on the false sworn statements of Cox's former attorney Marc Randazza. Cox claims this is defamatory against her and inventor Eliot Bernstein.
Marc J. Randazza vs. Reverend Crystal Cox, Eliot Bernstein. Case No. D2012-1525,

Marc Randazza's WIP case was unique because he lied to WIPO, perjuried himself with sworn statements. He made false statements about me, his former client and he won. I had won other cases where there was no collusion with insiders. Marc Randazza was friends and colleaugues with Peter L. Michaelson, a New Jersey attorney. They were buddies at trademark shows.

With Marc Randazza's filing to WIPO he flat out maliciously lied. And with no proof, only his stated word, a ONE panel decison was made. Meaning Peter L. Michaelson, Randazza's friend was the only panelist and ruled against me, Crystal Cox and used the WIPO ruling to further defame me and Eliot Bernstein. That ruling was then used in other court cases and cause me massive harm. It was and is highly unusual to have a one panel WIPO decision.

I, defendant Crystal Cox had 3 WIPO cases prior to this one, they were of domain names involving high profile Proskauer Rose attorneys. Every single one of those cases had a 3 panel decision making process, and I won each as follows:

I Won **WIPO Case Joseph Leccese v. Crystal Cox. Case No. D2011-0679**, January 2011,See Exhibit 3, long before Marc Randazza filed his WIPO claims and used his power and position of authority to violate my civil and constitutional rights, my due process rights, my rights as his former client and flat out stole my Personal Property.

This case set precedence, and listed other cases in support of the 3 panel decision. However when Marc Randazza filed his WIPO complaint and made false claims about his former client Crystal Cox, WIPO Sole Panelist Peter L. Michaelson, Randazza's friend ruled in his favor and helped Randazza defame me and retaliate against me.

8

Cox claims that Randazza defrauded WIPO with intent and that he monetarily gained from it as he stole intellectual property, blogs, content, domain names and top ranking search engine placement.

http://www.wipo.int/amc/en/domains/search/text.jsp?case=D2011-0679

I also won Gregg M. Mashberg v. Crystal Cox. WIPO Domain Name Decision: D2011-0677,Dated: June 30, 2011, see Exhibit 4, another High profile Proskauer Rose attorney. This case also had a 3 person panel. A sole panelist is highly unusual, and I allege that Marc Randazza acted in criminal and civil conspiracy with WIPO sole panelist Peter L. Michaelson. http://www.wipo.int/amc/en/domains/search/text.jsp?case=D2011-0677

I also won Crystal Cox, WIPO Case No. D2011-0678, Allen Fagin v. Crystal Cox, WIPO Case, Allenfagin.com,  No. D2011-0678. Exhibit 5, this too was a 3 person panel. http://www.wipo.int/amc/en/domains/search/text.jsp?case=D2011-0678

There was no extortion scheme, Randazza made that up in retaliation. Randazza lied in sworn statements to WIPO about me and about Eliot Bernstein.

11. Exhibit 19 shows that Marc Randazza agreed to representation of Cox.

"Subject RE: Discovery, Summary Judgement,
From mjr@randazza.com <mjr@randazza.com>
To Crystal L. Cox <savvybroker@yahoo.com>
Date Wed, Dec 14, 2011 at 5:06 PM
Crystal, I have reviewed the file, and I have pondered the issues, and I have decided that I will take your case. We need to talk about some of the issues of representation before finalizing it. But, I am game. When can you talk?"

## **MALPRACTICE CLAIMS**

### 1. **Cox claims she relied on the legal advice of Marc Randazza.**

Randazza, my former attorney obstructed my justice, violated my due process rights and my constitutional rights.  Marc Randazza was negligent in his legal representation of me, Crystal Cox and severely negligent in his duty of care, ethics and actions to harm me for years after my appeal, where he represented me.  This negligence caused me injury, defamed me, caused me irreparable harm, rendered my homeless, penniless and incited world wide hate against me.

2. Cox claims that as a matter of law and ethics, a lawyer shall use tactics that are legal, honest and respectful of courts and yet Randazza deliberately lied to the courts to paint her in false light, to ruin her life and business, and to sever her family and business connections.

3. Cox claims that Randazza used his clout, legal knowledge and credibility to abuse her, violate her due process rights, violate her constitutional rights and completely destroy her life, business, reputation and personal relations with deliberate intent and full knowledge of what he was portraying about Cox was not true. As the record clearly shows, Randazza himself did not even belief it, as Exhibit 17 clearly shows, he knew full well that Cox was ONLY asking for a job, and that he told Cox he did not mind that.

A lawyer shall act with integrity and professionalism, maintaining his overarching responsibility to ensure civil conduct. Yet Randazza clearly did not do this.

A lawyer's duty to the court relates to his status as a professional who serves, not only clients, potential clients and former clients but also the public interest. Historically, a professional was distinguished from a tradesperson by a public declaration – demonstrated today by the oath taken at admission to the Bar – to serve others and devote their intellect and efforts to the public good. Marc Randazza clearly failed in his duty to Cox, the court and the public.

## 3. Cox claims that with this, the above, Randazza has caused her irreparable harm and that she is due all allowable relief available to her as a matter of law.

A lawyer's duty to the court also relates to the profession's independence, or what has been described as "the high degree of autonomy that lawyers experience from external controls other than those imposed by self-regulation." Self-regulation is a privilege that comes with substantial obligations that are intended to protect the rights of individuals.

Randazza clearly has not maintained integrity as an officer of the court, but instead has used his power in the courts to retaliate against those whom he has a personal issue with or those who exercise their Free Speech rights and speak critical of him or his wife, as is our First Amendment Right.

Marc Randazza has used the power the courts have give him to issue false subpoena, scare and bully people into giving privileged, private information, and to file legal actions to use money, reputation and other tactics to force those he sues, litigants (targets) into taking

10

whatever action he is trying to force them into, be it a settlement, removing gripe sites, taking down parody or graphics that poke fun at him, report on his cases representing the porn industry or really anything he disapproves of. And this has caused Cox harm.

The duty to the court is also important because there are consequences for lawyers who do not uphold it. This is demonstrated by the penalties attached to civil and criminal contempt. Randazza has made a mockery of the court and has abused his position of power and authority.

A lawyer has a duty to use tactics that are legal, honest and respectful. This duty is often referred to as the duty of candour. Under this umbrella of a lawyer's duty to the court, lawyers are primarily responsible for ensuring that they do not employ strategies that will mislead the court; this includes misleading the court on evidentiary and legal points as well as making use of tactical strategies that are likely to affect a case.

4. Cox claims that Randazza deliberately gave many courts, media, legal bloggers, NPR, Forbes, New York Times, WIPO and more, false information, false sworn statement of facts and he deliberately gave the courts false information regarding Cox, his former client and did so in his wife's case through his law firm, against porn industry whistleblower Monica Foster aKa Alexandra Mayers, as well. See Las Vegas Clark County Nevada Civil Court case: A-14-699072-C dept 32. Marc Randazza sued her as well to silence her, remove online content speaking critical of him and to harass and intimidate her. Ronald Green and J. Devoy of Randazza Legal Group are also involved in that retaliation bullying lawsuit. See Randazza v. Mayers A-14-699072-C

In that case Randazza claimed that she had RandazzaNews.com and mad a graphic defaming his infant daughter, yet he accused me of the same thing in this case. ALL to silence whistleblowers reporting on him and calling him names.

Lawyers must respect the court. Respect comes in all forms – preparedness and timeliness are one aspect of consideration. Being familiar with the facts and law applicable to your case, and knowing your client's position is the most fundamental display of respect for the court process. This duty to the court is, in effect, an overlapping duty of competency we have to the client. A lawyer should not abuse the court process. A lawyer should not unreasonably raise or defend an action for which there is no legal justification.

11

Cox claims that Randazza sued her to bully her, intimidate her and suppress her speech. Cox claims that Randazza abused the court process with no real legal justification, and that this caused her irreparable harm.

5. Cox claims that Randazza knew her position in her appeal, yet went against her wishes and behind her back to strike a deal that would be good for the future and at that time current cases of his other clients, the large porn companies he represented. With this he completely violated her rights of dues process and duties owed to Cox as his former client, potential client, or current client.

Attorney Marc Randazza clearly disrespected the court process and, in his arrogance and disrespect of the court and the laws, completely violated Cox's rights as a former client, a litigant and a U.S. citizen.

When dealing with others, a lawyer shall be courteous, civil and act in good faith with all persons with whom he deals with during the course of practice. Yet Marc Randazza incited world wide hate against me, filed Amicus Briefs, went on NPR, filed sworn statements, spoke to big and small media and maliciously, deliberately with willful and wanton intent incited hated, spread defamatory malicious lies, and did not act civil, not courteous and NOT in good faith.

A lawyer's duty of civility extends to those individuals who are integral to our legal process – such as witnesses. Yet Marc Randazza threatened, bullied, sued, and maliciously attacked my church, those I worked for, ex's, those I minister to and did not act with civility at all.

Marc Randazza owed me , Cox, a **"standard of care"** in which he clearly breached.

Legal Malpractice is a breach by an attorney in the standard of care or in the standard of conduct that is applicable to all attorneys. Clearly Randazza breached his standard of care in regard to his former client Crystal Cox.

6. **Randazza has clear patterns and history of doing this same thing to other clients.** Cox claims that this court must rule in her favor as a matter of law, to prevent Randazza from doing this to other clients, whistleblowers, citizen journalists, bloggers and insiders.  As is clearly seen in **Exhibit 66**, whereby on June 3rd of 2015 Marc Randazza was found guilty of bribe and seriously violating the rights of his client.

12

## Nevada Rules of Professional Conduct Randazza Violated

### CLIENT-LAWYER RELATIONSHIP

Randazza did not abide by my decisions concerning representation.

Randazza did not consult with me before proposing a deal allegedly on my behalf and in my best interest with the opposition, and he sought EXTREME retaliation when I chose to longer have him represent me as his client. This is a Violation of Rule 1.2.

Randazza did not abide by my wishes of wanting to appeal and pursued a settlement with the opposition of which he did not include me in the details of this negotiation.

Randazza acted in representations of Cox, without informed consent. And therefore violated Rule 1.2

Randazza did not discuss with me any actions that he thought I may have taken that he thought were criminal, of which, as my attorney he is obligated to. Instead he used his power over the courts and his clout with the media to defame me, and abuse me massive stress and irreparable harm.

If he thought I engaged in any criminal activity, it was his lawful and ethical duty to discuss this with me, instead of simply tell the world and the courts I was guilty of a crime with no adjudication or due process.

**Rule 1.2.** Scope of Representation and Allocation of Authority Between Client and Lawyer.

(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decision concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

(c) A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

13

### Rule 1.5. Fees.

Randazza violated rule 1.5 as he told me he was representing me for FREE, Pro Bono, then he turned around and wanted money to travel, to file documents, for hotels and more. Knowing full well that I had NO MONEY.

## Rule 1.6. Confidentiality of Information.

Attorney Marc Randazza revealed ALL of my private information, strategy and secrets, not only to the opposition without informed consent but to the entire world. **This has caused me irreparable harm of which I am entitled to financial relief.**

I, Crystal Cox, Claim that Randazza violated Rule 1.5 in **revealing my information without informed consent as the chronology above clearly shows.**

Randazza also violated **Rule 1.5** in putting me in physical harm, inciting hate among his peers and the world. And encouraging threats, harassment and online attacks of me. As well as physical threats of coming to my town, of taking out my knee caps, text threatening of knowing where I live and more.

Randazza published my home address to the world and used court motions to attack me, then gave those to media to defame me and expose my personal information and home address to the world. All the while claiming I had harmed an infant child, lying about me and inciting world wide HATE.

Also under this rule, if he thought I had committed a crime then he went about handling it, completely unethical and in violation of my due process rights.

Randazza did not make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client. Therefore he **violated Rule 1.5**.

(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraphs (b) and (d).

(b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:
(1) To prevent reasonably certain death or substantial bodily harm;
(2) To prevent the client from committing a criminal or fraudulent act in furtherance of which the client has used or is using the lawyer's services, but the lawyer shall, where practicable, first make reasonable effort to persuade the client to take suitable action;
(3) To prevent, mitigate, or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services have been or are being used, but the lawyer shall, where practicable, first make reasonable effort to persuade the client to take corrective action;
(4) To secure legal advice about the lawyer's compliance with these Rules;
(5) To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer

14

and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or

(6) To comply with other law or a court order.

(7) To detect and resolve conflicts of interest arising from the lawyer's change of employment or from changes in the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.

(c) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.

(d) A lawyer shall reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to prevent a criminal act that the lawyer believes is likely to result in reasonably certain death or substantial bodily harm.

## Rule 1.7.   Conflict of Interest: Current Clients.

If Randazza had a conflict of interest or felt that Cox was a criminal and did not want to represent her, me, then he should not have done so. Instead of getting her private information, strategy and secrets and then ruining her life, as details above, clearly show.

Cox claims that it is **a conflict of interest for Randazza Legal Group** to represent Marc Randazza in suing his former client in the District of Nevada Randazza v. Cox case, as this law firm represented Cox and had a duty and obligation to her before representing another party to sue her, even if that party was one of their partners or own attorneys.

Randazza should not have sued me, nor represented himself doing so with the same law firm that represented me prior.

## Cox Claims that Rule 1.7 was clearly violated by Randazza

**Rule 1.7**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) The representation of one client will be directly adverse to another client; or

(2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) The representation is not prohibited by law;

(3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) Each affected client gives informed consent, confirmed in writing

15

## Rule 1.8.    Conflict of Interest: Current Clients: Specific Rules.

**Attorney Marc Randazza should not have engaged in any activity adverse to me, Crystal Cox, his former client and as seen above he engaged in many.**

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) The client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) The client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules.

(d) Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.

(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

(1) A lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and

(2) A lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:

(1) The client gives informed consent;

(2) There is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

(3) Information relating to representation of a client is protected as required by Rule 1.6.

(g) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

(h) A lawyer shall not:

(1) Make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or

(2) Settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.

(i) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) Acquire a lien authorized by law to secure the lawyer's fee or expenses; and

(2) Contract with a client for a reasonable contingent fee in a civil case.

(l) A lawyer shall not stand as security for costs or as surety on any appearance, appeal, or other bond or surety in any case in which the lawyer is counsel.

(m) While lawyers are associated in a firm, a prohibition in the foregoing paragraphs, with the exception of paragraph (j), that applies to any one of them shall apply to all of them.

[Added; effective May 1, 2006.]

Attorney Marc Randazza stole my intellectual property, defamed me intentionally and maliciously, and caused me serious hardship.

Marc Randazza did not have a contract where he lined out any fees, yet he expected me to pay for things of which I had no real understanding and claimed to be representing me Pro Bono, for FREE.

Marc Randazza used private information, privileged information against me.

Marc Randazza had no right to portray me to the media as he did.

Marc Randazza also violated the above rule in trying to negotiate deals, settlement and representation matters WITHOUT my consent or knowledge. I CLEARLY did not give Marc Randazza informed consent.

Cox claims that Marc Randazza violated Rule 1.8 in massive widespread conflicts of interest.

### Rule 1.9. Duties to Former Clients.

Marc Randazza of Randazza Legal Group represented me in pretty much the same issues exactly as RLG then represented Marc Randazza in claims as a Plaintiff against me. **This is a violation of this rule.**

Marc Randazza and his law firm **acted materially adverse to my interests.** And did so with full knowledge and deliberate intent. This violates Rule 1.9

Marc Randazza used inside and privileged information he gained while representing me, against me to sue me. **Which violates Rule 1.9.**

Marc Randazza used information against me to my disadvantage. Which violates this rule.

Marc Randazza acquired protected information from me then used this to defame me, set me up for a crime, paint me out to the world as a criminal, sue me, take my blogs and intellectual property, interfere with my appeal, violated my due process laws, violated my constitutional rights, suppress my speech, harass, bully and defame me and my sources and to try and STOP my Ninth Circuit appeal against my will and my rights. **This violates Rule 1.6 and 1.9.**

17

Marc Randazza revealed information about me, without my informed consent.

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:

(1) Whose interests are materially adverse to that person; and

(2) About whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

(3) Unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) Use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) Reveal information relating to the representation except as these Rules would permit or require with respect to a client.

### Rule 1.10.    Imputation of Conflicts of Interest.

**Cox claims that Marc Randazza and his law firm RLG violated 1.10 in representing, Marc Randazza and his wife and child in suing me, Crystal Cox, their former client.**

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm unless:

(1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) Any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

(c) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

(d) Reserved.

(e) When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless:

(1) The personally disqualified lawyer did not have a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9;

(2) The personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and



(3) Written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.

[Added; effective May 1, 2006.]

### Rule 1.12.    Former Judge, Arbitrator, Mediator or Other Third-Party Neutral.

Even if Marc Randazza did not believe he represented me, Crystal Cox, which he falsely claims, then he was at least acting as an arbitrator, mediator or other third party neutral in his counseling me, Crystal Cox, via phone and email, his email saying he would represent me, his negotiations with the opposition and his communications acting as my attorney with Eugene Volokh.

**Which Cox claims violates Rule 1.12.**

(a) Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent confirmed in writing.

(b) A lawyer shall not negotiate for employment with any person who is involved as a party or as lawyer for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer, or as an arbitrator, mediator or other third-party neutral. A lawyer serving as a law clerk to a judge or other adjudicative officer may negotiate for employment with a party or lawyer involved in a matter in which the clerk is participating personally and substantially, but only after the lawyer has notified the judge or other adjudicative officer.

(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

(1) The disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) Written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this Rule.

(d) An arbitrator selected as a partisan of a party in a multi-member arbitration panel is not prohibited from subsequently representing that party.

### Rule 1.18.    Duties to Prospective Client.

**Marc Randazza claims in sworn statements that he was not my, Cox's attorney.** Yet he emailed me that he would take representation, he attempted to broker deals, he advised me on the phone and in emails about court transcripts, he told many attorneys he represented me, he discussed filing court motions with attorney Eugene Volokh, and counseled me on my case.

Therefore it is no excuse to have harmed me, defamed me, interfered with my business and personal relationships, only because he thought he was not acting as my attorney prior. Clearly he owed me the same standard of care as a potential client. And Marc Randazza knew this full well as a seasoned attorney with his own law firm and in multiple states.

Cox claims that Marc Randazza violated Rule 1.18 and did not have her  informed consent for his disclosure of her private emails, negotiation tactics, strategy, nor to provide information that caused Cox harm. And to do so deliberately with malicious intent.

### Randazza claims, under oath, that he was not my, Cox's attorney.

Cox claims that Randazza was acting as her attorney.  However, if he were to convince this court that he was not my attorney, then clearly he was brokering deals allegedly on my behalf, clearly he was working with other attorneys such as Eugene Volokh and with the courts to file a motion for a new trial, as the email evidence shows, and in this was at the very least a third party neutral, a mediator, or I, Cox, was a potential client.

In that he owed me a duty to not harm me, not post my private emails to him, not paint me out to the world to be a criminal with no adjudicated facts, not offer to testify against me, not file amicus briefs in opposition to my best interest, not lie about me and defame me, protect  my rights and strategy in my case, and act with integrity as to my best interest.

### If Randazza was not my attorney, then he was negotiating with the opposition, giving them my secrets, strategy, strengths and weakness without authorization from me.

**Rule 1.18**

(a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

(1) Both the affected client and the prospective client have given informed consent, confirmed in writing, or:

(2) The lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and

(i) The disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(ii) Written notice is promptly given to the prospective client.

(e) A person who communicates information to a lawyer without any reasonable expectation that

the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, or for purposes which do not include a good faith intention to retain the lawyer in the subject matter of the consultation, is not a "prospective client" within the meaning of this Rule.

(f) A lawyer may condition conversations with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. If the agreement expressly so provides, the prospective client may also consent to the lawyer's subsequent use of information received from the prospective client.

(g) Whenever a prospective client shall request information regarding a lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:

(1) The lawyer or law firm shall promptly furnish (by mail if requested) the written information described in Rule 1.4(c).

(2) The lawyer or law firm may furnish such additional factual information regarding the lawyer or law firm deemed valuable to assist the client.

(3) If the information furnished to the client includes a fee contract, the top of each page of the contract shall be marked "SAMPLE" in red ink in a type size one size larger than the largest type used in the contract and the words "DO NOT SIGN" shall appear on the client signature line.

[Added; effective May 1, 2006; as amended; effective April 4, 2014.]

## COUNSELOR

### Rule 2.1.  Advisor.

**Cox claims that Marc Randazza violated Rule 2.** Even if Marc Randazza was NOT my attorney as he claims in court, then he was at the very east my counselor. Marc Randazza counseled me on my case, and yet turned around and deliberate caused me malicious, willful, wanton harm.

**If not a counselor then at least an Advisor, Third Party Neutral or an Intermediary. And still owed me a duty of care, in which he clearly violated.**

**Rule 2.1.  Advisor.**  In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.

[Added; effective May 1, 2006.]

Rule 2.1 (former Supreme Court Rule 167) is the same as ABA Model Rule 2.1.

### Rule 2.2.  Intermediary.

(a) A lawyer may act as intermediary between clients if:

(1) The lawyer consults with each client concerning the implications of the common representation, including the advantages and risks involved, and the effect on the attorney-client privileges, and obtains each client's consent to the common representation;

(2) The lawyer reasonably believes that the matter can be resolved on terms compatible with the clients' best interests, that each client will be able to make adequately informed decisions in the matter and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful; and

21

(3) The lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.

(b) While acting as intermediary, the lawyer shall consult with each client concerning the decisions to be made and the considerations relevant in making them, so that each client can make adequately informed decisions.

(c) A lawyer shall withdraw as intermediary if any of the clients so requests, or if any of the conditions stated in subsection 1 is no longer satisfied. Upon withdrawal, the lawyer shall not continue to represent any of the clients in the matter that was the subject of the intermediation.

[Added; effective May 1, 2006.]

### MODEL RULE COMPARISON—2006

Rule 2.2 (formerly Supreme Court Rule 168) is based on 1983 Model Rule 2.2. The ABA House of Delegates deleted Model Rule 2.2 and incorporated it into the comments to Model Rule 1.7 in 2002. The Rule has been retained in Nevada because Nevada has not adopted comments to the Rules and the Rule provides some guidance in clarifying conflict of interest concerns.

**Rule 2.3.  Evaluation for Use by Third Persons.**

(a) A lawyer may provide an evaluation of a matter affecting a client for the use of someone other than the client if the lawyer reasonably believes that making the evaluation is compatible with other aspects of the lawyer's relationship with the client.

(b) When the lawyer knows or reasonably should know that the evaluation is likely to affect the client's interests materially and adversely, the lawyer shall not provide the evaluation unless the client gives informed consent.

(c) Except as disclosure is authorized in connection with a report of an evaluation, information relating to the evaluation is otherwise protected by Rule 1.6.

[Added; effective May 1, 2006.]

### MODEL RULE COMPARISON—2006

Rule 2.3 (formerly Supreme Court Rule 169) is the same as ABA Model Rule 2.3.

**Rule 2.4.  Lawyer Serving as Third-Party Neutral.**

(a) A lawyer serves as a third-party neutral when the lawyer assists two or more persons who are not clients of the lawyer to reach a resolution of a dispute or other matter that has arisen between them. Service as a third-party neutral may include service as an arbitrator, a mediator or in such other capacity as will enable the lawyer to assist the parties to resolve the matter.

(b) A lawyer serving as a third-party neutral shall inform unrepresented parties that the lawyer is not representing them. When the lawyer knows or reasonably should know that a party does not understand the lawyer's role in the matter, the lawyer shall explain the difference between the lawyer's role as a third-party neutral and a lawyer's role as one who represents a client.

### ADVOCATE

#### Cox claims Marc Randazza acted as her advocate.

Randazza spoke with other attorneys, my colleagues, and he told me that people like me, Cox are important. He was an advocate for me and turned around and acted with contention, revenge and retaliation. Marc Randazza sued me in a frivolous, life altering oppressive lawsuit. He violated my First Amendment Rights, my rights of due process and acted in extreme against my best interest.

22

Marc Randazza put me in danger, rendered me homeless and with no way to rent a home nor to get clients and resume my life. as he painted me out as a scammer, and a felony criminal extortionist to the world. Therefore no one would hire me, rent to me and I lost all business and personal connections.

Marc Randazza violated Rule 3.1 in bringing claims against me. And in attempting to set me up for criminal claims.

**Rule 3.1.  Meritorious Claims and Contentions.**    A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

**Cox claims Marc Randazza violated rule 3.7** in offering to be deposed for the opposition in my appeal case.

**Rule 3.7.  Lawyer as Witness.**
          (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
          (1) The testimony relates to an uncontested issue;
          (2) The testimony relates to the nature and value of legal services rendered in the case; or
          (3) Disqualification of the lawyer would work substantial hardship on the client.
          (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.
          [Added; effective May 1, 2006.]

## TRANSACTIONS WITH PERSONS OTHER THAN CLIENTS

Marc Randazza violated Rule 4.1 and LIED deliberately to others regarding me.  As the above chronology clearly shows Marc Randazza knowingly made false statements of fact to others, including and not limited to:  WIPO, Forbes, NPR, the New York Times, the Ninth Circuit court, Florida District Court, Nevada State and Federal Court, multiple legal bloggers and law firms, forensic investigators, my friend, my ex's, my pastor, my church, my phone vendor, my domain registrar, and more Third Parties.

**Marc Randazza did this with deliberate intention and deliberate knowledge that the false statements of fact were false.**

 **Rule 4.1.  Truthfulness in Statements to Others.** 

In the course of representing a client a lawyer shall not knowingly:
          (a)  Make a false statement of material fact or law to a third person; or

23

(b) Fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

[Added; effective May 1, 2006.]

**Marc Randazza maliciously made statement on his blog and to large and small media outlets, radio, WIPO and courts that were not "Truthful" and therefore violated my, Cox's rights.**

Randazza made widespread false statements of material fact or law to a third person in regard to his former client, me, Crystal Cox. I claim this has caused me harm and that I am entitled to relief.

### Rule 4.4. Respect for Rights of Third Persons.

Cox claims that Marc Randazza deliberately and with clear intention used every mean he could to embarrass, delay, and burden third parties to get private personal information about me. He did this in regard to and not limited to Diana Grandmason, Alexandra Mayers, Stephanie DeYoung, my church, my Pastor, my church secretary, and more. He pressured and threatened them until they gave information to him.

**Rule 4.4**

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

(b) A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender.

**Marc Randazza also violated Rule 4.4** in taking my private email to him and sending it to media, to legal bloggers and claiming it was extortion. Knowing full well that the full email thread showed him saying that he knew I was asking for a job.

### LAW FIRMS AND ASSOCIATIONS

#### Rule 5.1. Responsibilities of Partners, Managers, and Supervisory Lawyers.

(a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

(b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

(1) The lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

24



(2) The lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

[Added; effective May 1, 2006.]

**Rule 5.2.    Responsibilities of a Subordinate Lawyer.**

(a) A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person.

(b) A subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty.

Marc Randazza and Randazza Legal Group violated Rule 5.1 and 5.2.

## INFORMATION ABOUT LEGAL SERVICES

**Cox Claims Marc Randazza violated Rule 7.1, 7.2** in misleading me that he was an advocate for the free speech of all. He made false statements of being a trademark and first amendment expert then used this law to attack me and as the District of Nevada case, docket entry 200 shows, Marc Randazza did not have a legitimate Trademark claim against me and violated my First Amendment Rights.

Marc Randazza violated my rights in violations of this rule as I was clearly mislead as to what he was an advocate for and what he was an expert in. Turned out he was not an expert in Trademark, First amendment or domain law.

**Rule 7.1.    Communications Concerning a Lawyer's Services.**    A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(a) Contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

(b) Is likely to create an unjustified or unreasonable expectation about results the lawyer can or has achieved, which shall be considered inherently misleading for the purposes of this Rule, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law;

(c) Compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated; or

(d) Contains a testimonial or endorsement which violates any portion of this Rule.

[Added; effective May 1, 2006; as amended; effective September 1, 2007.]

### MODEL RULE COMPARISON—2007

Rule 7.1 (formerly Supreme Court Rule 195) is the same as ABA Model Rule 7.1 except that paragraphs (b) through (d) are Nevada specific and have no counterpart in the Model Rule. The 2007 amendments changed language in paragraphs (b) and (d) only.

**Rule 7.2.    Advertising.**

(a) Subject to the requirements of Rule 7.1, a lawyer may advertise services through the public

25

media, such as a telephone directory, legal directory, newspaper or other periodical, billboards and other signs, radio, television and recorded messages the public may access by dialing a telephone number, or through written or electronic communication not involving solicitation as prohibited by Rule 7.3.

These Rules shall not apply to any advertisement broadcast or disseminated in another jurisdiction in which the advertising lawyer is admitted if such advertisement complies with the rules governing lawyer advertising in that jurisdiction and the advertisement is not intended primarily for broadcast or dissemination within the State of Nevada.

(b) If the advertisement uses any actors to portray a lawyer, members of the law firm, clients, or utilizes depictions of fictionalized events or scenes, the same must be disclosed. In the event actors are used, the disclosure must be sufficiently specific to identify which persons in the advertisement are actors, and the disclosure must appear for the duration in which the actor(s) appear in the advertisement.

(c) All advertisements and written communications disseminated pursuant to these Rules shall identify the name of at least one lawyer responsible for their content.

(d) Every advertisement and written communication that indicates one or more areas of law in which the lawyer or law firm practices shall conform to the requirements of Rule 7.4.

(e) Every advertisement and written communication indicating that the charging of a fee is contingent on outcome or that the fee will be a percentage of the recovery shall contain the following disclaimer if the client may be liable for the opposing parties' fees and costs: "You may have to pay the opposing parties' attorney fees and costs in the event of a loss."

(f) A lawyer who advertises a specific fee or range of fees shall include the duration said fees are in effect and any other limiting conditions to the availability of the fees. For advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than one year following publication.

(g) A lawyer may make statements describing or characterizing the quality of the lawyer's services in advertisements and written communications. However, such statements are subject to proof of verification, to be provided at the request of the state bar or a client or prospective client.

(h) Any statement or disclaimer required by these rules shall be made in each language used in the advertisement or writing with respect to which such required statement or disclaimer relates; provided, however, the mere statement that a particular language is spoken or understood shall not alone result in the need for a statement or disclaimer in that language.

(i) **Statement regarding past results.** If the advertisement contains any reference to past successes or results obtained, the communicating lawyer or member of the law firm must have served as lead counsel in the matter giving rise to the recovery, or was primarily responsible for the settlement or verdict. The advertisement shall also contain a disclaimer that past results do not guarantee, warrant, or predict future cases.

If the past successes or results obtained include a monetary sum, the amount involved must have been actually received by the client, and the reference must be accompanied by adequate information regarding the nature of the case or matter and the damages or injuries sustained by the client, and if the gross amount received is stated, the attorney fees and litigation expenses withheld from the amount must be stated as well.


## Cox Claims that Randazza has and had Duties to Cox as a former client

Cox claims that  Marc Randazza and Randazza Legal Group owed her a duty, a standard of care, and had obligations to me as a former client. Marc Randazza and Randazza Legal Group violated Rule 1.9 and seriously acted adversely against her.

26

## Rule 1.9.    Duties to Former Clients.

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:

(1) Whose interests are materially adverse to that person; and

(2) About whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

(3) Unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) Use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) Reveal information relating to the representation except as these Rules would permit or require with respect to a client.

[Added; effective May 1, 2006.]


## Rule 1.7.    Conflict of Interest: Current Clients.

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) The representation of one client will be directly adverse to another client; or

(2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) The representation is not prohibited by law;

(3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) Each affected client gives informed consent, confirmed in writing.

[Added; effective May 1, 2006.]

27



Marc Randazza, J. Devoy, Ronald Green and Randazza Legal Group violated Rule 1.7 in representing him and his family in suing me , a former client, and violated this rule with other aspects of this complaint. It was directly adverse for Randazza Legal Group to represent Marc Randazza, Jennifer Randazza and their daughter in claims against me, their former client.

Marc Randazza and Randazza Legal Group acted with serious conflicts of interest.

## CLIENT-LAWYER RELATIONSHIP

Marc Randazza and Randazza Legal Group did not provide competent representation to me as the record shows. Marc Randazza violated Rule 1.1 and 1.2.

Rule 1.1.   Competence.   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
[Added; effective May 1, 2006.]

Rule 1.2.   Scope of Representation and Allocation of Authority Between Client and Lawyer.
(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decision concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.
(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.
(c) A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.
(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

**Marc Randazza violated Rule 1.3 and was negligent in his diligence in representing me, COX,promptly informing me, communicating with me, respecting me and my wishes, being reasonable on consulting me regarding my objectives, and keeping me informed.**

**Rule 1.3.   Diligence.**   A lawyer shall act with reasonable diligence and promptness in representing a client.

28

Rule 1.3 (formerly Supreme Court Rule 153) is the same as ABA Model Rule 1.3.

Rule 1.4.   Communication.

(a) A lawyer shall:

(1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent is required by these Rules;

(2) Reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) Keep the client reasonably informed about the status of the matter;

(4) Promptly comply with reasonable requests for information; and

(5) Consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

### Cox claims that Randazza had a duty to Cox to keep information Confidential

**Marc Randazza violated Rule 1.6 in his disclosure of my secrets and strategy to the opposition in my case without my permission and with using private emails and information from me to him and him to me, as a weapon against me in courts and mass media to bully me, harass me, intimidate me and ruin my life and business.**

**Rule 1.6**.   Confidentiality of Information.

(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraphs (b) and (c).

(b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:

(1) To prevent reasonably certain death or substantial bodily harm;

(2) To prevent the client from committing a criminal or fraudulent act in furtherance of which the client has used or is using the lawyer's services, but the lawyer shall, where practicable, first make reasonable effort to persuade the client to take suitable action;

(3) To prevent, mitigate, or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services have been or are being used, but the lawyer shall, where practicable, first make reasonable effort to persuade the client to take corrective action;

(4) To secure legal advice about the lawyer's compliance with these Rules;

(5) To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or

29

(6) To comply with other law or a court order.

(c) A lawyer shall reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to prevent a criminal act that the lawyer believes is likely to result in reasonably certain death or substantial bodily harm.

[Added; effective May 1, 2006.]

## Rule 1.10, Imputation of Conflicts of Interest.

**Marc Randazza violated Rule 1.10 in knowingly representing a client in adverse to me, which in this case was his law firm representing him, his wife and his daughter as clients against me, their former client.**

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm unless:

(1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) Any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

(c) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

(d) Reserved.

(e) When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless:

(1) The personally disqualified lawyer did not have a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9;

(2) The personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(3) Written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.

[Added; effective May 1, 2006.]

**Even if Randazza were to oddly prevail at claiming he was not Coxs attorney, then he was at least a third party neutral.**

Rule 1.12.   Former Judge, Arbitrator, Mediator or Other Third-Party Neutral.

30

(a) Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent confirmed in writing.

(b) A lawyer shall not negotiate for employment with any person who is involved as a party or as lawyer for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer, or as an arbitrator, mediator or other third-party neutral. A lawyer serving as a law clerk to a judge or other adjudicative officer may negotiate for employment with a party or lawyer involved in a matter in which the clerk is participating personally and substantially, but only after the lawyer has notified the judge or other adjudicative officer.

(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

(1) The disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) Written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this Rule.

(d) An arbitrator selected as a partisan of a party in a multimember arbitration panel is not prohibited from subsequently representing that party.

[Added; effective May 1, 2006.]

**Randazza ADVISED COX on his very first conference call and even in Exhibit 20 as per what to do with court transcripts.**

## DAMAGE DONE

Cox claims that she is entitled to stated relief and does not have to proof actual damages. Cox claims that Randazza has caused her years of stress, has ruined family and close relationships, has damaged client and customer relationships, has ruined her reputation, ruined her real estate company, painted her out as a criminal which affected her court cases as well as her ability to rent a home, get a job, get clients or to have a peaceful life in any way.

Cox seeks and will settle for 100 Million dollars in damages from Marc Randazza as per her loss of income, suffering and irreparable harm to her life, relationships, reputation, career, and businesses.

## **Weaknesses in Crystal Cox's Counterclaims against Marc Randazza**

1. Counter Defendant Randazza claims he was not Cox's attorney and therefore owes her no duties as her attorney, and therefore his online statements were simply accusations to a private citizen, or a public figure in which he had an opinion about.

Marc Randazza claims that he is somehow protected by the First Amendment and defamation laws to claim, state, publish that Cox extorted him, and brand Cox and Bernstein as Felony Extortionists. He claims that he was not Cox's attorney and therefore owes no duty to Cox and is not, thereby guilty of defamation or malpractice.

**Randazza claims that Cox was already made out to be an extortionist before he posted that Cox was an Extortionist on his blog and before he told the world Cox had extorted him personal.**

Randazza's opinion is not adjudicated fact, even if he has some proof that Cox is guilty of extortion. If so Randazza should have went to the authorities and allowed his former client due process before posting that she was and is guilty of the felony crime of extortion.

Randazza must, as a citizen and as a lawyer and especially as Cox's former lawyer, talk to Cox about this matter and take the proof to the proper authorities so that Cox may have due process in a court of law. Once Cox has had due process and if she is found guilty through this process, then and only then can Marc Randazza post that Cox is an Extortionist, thereby guilty of the crime of extortion. Randazza cannot simply use a legal defense that he said Cox is an Extortionist because others were doing it. Randazza must prove it is fact before he posts that Cox is an Extortionist.

Even if the above was to be believed by this court, still Randazza falsely claimed Cox had a blog about his child, of which Cox never had. This defamation alone caused Cox massive damage as her friends, family, clients, customer, landlords all believed Randazza as he is an attorney and as such has clout in these matters.


**2.** Cox claims that Counter Defendant Marc Randazza posted false information about her online, knowingly and with malice as he had inside information into Cox's case and used this to cause her harm intentionally.

Cox claims that Exhibits show that Randazza offered her help, claimed to respect her, and essentially set her up. As she asked him for a job and he claimed, as Exhibits show, that he had no problem with Cox asking for a job, yet Randazza painted Cox out to the world as guilty of the felony crime of extortion with the very email asking him for a job, that he claimed in the email, in his own words that he had no issue with and specifically referred to Cox asking for a job.

32



3.  Counter Plaintiff Cox claims that Randazza was her attorney, she relied on information and advice he gave her. Cox claims that Randazza advocated for her, counseled her, negotiated on her behalf, co-counseled with Eugene Volokh in regard to her representation, and that he told other attorneys that he, indeed represented Crystal Cox in her Ninth Circuit appeal of Obsidian v. Cox.

4.  Cox alleges that Randazza advised her on ordering transcripts from the court, advised her on what actions to take moving forward in her appeal, negotiated with the opposition (brokered a deal), and he requested inside information and case documents / files from Crystal Cox.

5.  Cox claims that Exhibits show that Randazza admitted that he would "bow out" and let Eugene Volokh handle the case. Cox claims there would be no reason to stand down if he did not represent her.  Cox claims that the only reason he had a right to discuss her case details with Eugene Volokh and the opposition was that he represented her, as her attorney.

6.  Cox claims that exhibits show that Marc Randazza agreed to representation, and from this Cox believed that Randazza represented her.

7.  Exhibit 1 shows that Eugene Volokh, attorney and UCLA Law Professor clearly thought Marc Randazza was Crystal Cox's attorney. Volokh claimed that he had a long talk with Randazza and Randazza told him that he represented Cox.

Cox also claims to have had a lengthy phone call with Volokh regarding his conversations with Marc Randazza on representation, case strategy, and moving forward.

**8.  Exhibit 20** shows / proves that Marc Randazza was acting as my attorney, and in negotiations, talks and working with other attorneys on my behalf.

 Exhibit 20 shows that Marc Randazza was advising Crystal Cox. Cox claims to have relied on this advice.  Exhibit 20 shows that Randazza was working with attorney Eugene Volokh on Cox's behalf, and working with the courts, all on behalf of and in representation of Crystal Cox.

**9.  Exhibit 9,** Marc Randazza Answer to Interrogatories, shows that Randazza admits to acting as my (Crystal Cox's) attorney.

Cox alleges that Exhibit 9 further proves, by Randazza's signed admittance that he was trying to negotiate a settlement for Crystal Cox as her attorney and that he agreed to bow out as her attorney, in a conversation with attorney Eugene Volokh.

This exhibit 9a in full also shows that Randazza did not believe Cox extorted him, or was guilty of extortion or an extortionist nor did he have proof of this as a matter of law. Yet he deliberately,

33

willfully and wantonly posted on his legal blog that Cox had extorted him. Randazza also told Forbes, NPR, Popehat.com's attorney blogger Kenneth P. White, WIPO and countless others that Cox had extorted him and got them to post the story on their high profile, credible blogs and reports to deliberately, maliciously defame Cox.

Cox claims that Exhibit 9a in full, all interrogatories, also shows that Randazza admits to Cox not having a blog about his child. Yet he told Forbes, NPR,and other big and small media that she did have a blog about his child and used it to extort him.

Cox claims that Randazza knew this was not true and deliberately, wantonly and willfully with full knowledge it was not the truth, painted Cox in false light and led the world to believe Cox had harmed, defamed, harassed and had a blog about his infant child. This alone has ruined Cox's life, interpersonal relationships, business and family connections. And has made it so Cox is unable to rent a home and has been homeless for a year now.

Interrogatory answer Number One, Exhibit 9, discusses that Randazza knows that Cox cannot be considered an extortionist as a matter of law without first having a jury of her peers on this matter (page 4 line 12-14). Yet he knew Cox did not have a trial, nor even a complaint or investigation, as a matter of law in this regard, yet he deliberately and with malicious intent posted on his high profile legal blog that Cox is an Extortionist.

Counter Defendant Randazza claims Cox has a history of extortionate behavior. This is not true and is something he helped attorney David Aman portray to the media in regard to an excerpt of a settlement negotiation which according to rules of evidence was not admissible in court and certainly not legal to have been given to the media and spread like wildfire by Randazza with malicious intent to defame his former client Crystal Cox.

Cox has never committed extortion, never been under investigation for the crime of extortion and has never been convicted of extortion. Randazza, with full knowledge of the law, flat out claimed Cox was Guilty of Extortion on his legal blogs and he got his big media connections, small media, bloggers and attorney legal bloggers to say those same things in retaliation against Cox.

### There are no open investigation of Cox for extortion, and there have never been a criminal complaint, investigation or conviction of extortion against Cox.

There is no evidence, what so ever that I, Crystal Cox, have ever posted anything online to seek a payoff of any kind. I have never sought a financial advantage.

Randazza Admits to Being Cox's Attorneys in his Sworn Signed Interrogatory Answer (See Exhibit 9a)

INTERROGATORY NO. 21, Exhibit 9a, Shows that Randazza Admits to having spoke with

34

attorney, UCLA Law Professor Eugene Volokh and offering to "bow out" if Volokh were to take the case. The question becomes **why would Randazza believe he would have to bow out, if he claims he was never Cox's attorney in the first place.**

This is evidence to further prove Randazza represented Crystal Cox and told others that he represented Cox. Thereby violating Cox's right to confidentiality and laws to protect clients. Proving Cox has a valid malpractice claim.

This interrogatory answer, of which Randazza signed and swore too as true and correct, also shows Randazza admitting to negotiating a settlement on behalf of Cox, acting as her attorney.

The question then becomes what legal right did Randazza have to choose for me, make decision for me and to bow out as my attorney if he was not my attorney as he has claimed under sworn statement to this court in previous documents and motions?

This proves that Randazza was discussing a settlement with the opposition and therefore giving away my secrets, strategy, my strengths and weaknesses and meddling in my case without telling me what he was say, what settlement he was offering nor having a signed agreement with me.

Randazza clearly established an attorney client relationship with Cox and then used privileged information about Cox to defame her, ruin her life, discredit her and paint her in false light.

Randazza admits to discussing strategy with Volokh and did so without my permission or knowledge. He admits to acting as my attorney.


INTERROGATORY NO. 21: Exhibit 9a

Did you have phone conversations with Eugene Volokh and state that you represented Cox and discuss with him your strategy, or a deal you were trying to make with the opposition, Plaintiff's attorney David Aman?

RESPONSE TO INTERROGATORY NO. 21:

"Counterdefendant objects to Interrogatory No. 21 on the grounds that it is vague, ambiguous, overly broad, not limited in time and scope, and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Counterdefendant further objects because this interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same. Subject to and without waiving the foregoing objections, Counterdefendant responds as follows:

35

Counterdefendant spoke with Eugene Volokh in December 2011.

Randazza informed Volokh that if he was going to represent Cox, that Randazza would gladly bow out, and defer to Volokh to handle the case.

Volokh, however, said that he would prefer that Randazza co-counsel the case with him due to Volokh's stated lack of litigation experience. Counterdefendant and Volokh discussed possible strategies that he and Volokh thought might be good ideas during that call.

Counterdefendant and Volokh both discussed the fact that Cox's interests would be better served through settlement."

(Exhibit 9)

As seen above, Interrogatory 21, Randazza admitted to offering to co-counsel and that he spoke with attorney Eugene Volokh acting as Cox's attorney and as if he had the full legal authority to do so. Randazza offered to bow out. Why would he bow out if he did not believe or was not acting as Cox's attorney?

In the answer for Interrogatory 22, Randazza admits to discussing strategy with me, asking for files from me, discussing settlement options, Cox's goals for the litigation, and this clearly creates an attorney client relationship, especially seeings how Randazza acted on this information and contacted the Opposition and disclosed this information.

In Interrogatory 23 Randazza claims that I, Cox, gave him permission to discuss a settlement with Obsidian. Clearly in him presenting settlement offers to the opposition, he was acting as an attorney, in what he thought or represented himself as representing me. Why else would the opposition listen to him? He claimed to be my attorney.

Exhibit 17 also and again shows Marc Randazza knew he was my "actual attorney" or at the very least, my "potential attorney".

Exhibit 19 shows that Marc Randazza agreed to and knew he was Crystal Cox's attorney.

Exhibit 20, shows that attorney Eugene Volokh, clearly believed that Marc Randazza represented Crystal Cox, and had been told such by Randazza himself.

Exhibit 21 clearly shows Marc Randazza saying that he was trying to broker a deal on Cox's behalf. Exhibit 21 shows that Randazza wished that Cox, I succeed and claims to have respect for me, and people like me and says that I am important. Exhibit 21 shows that Randazza apologizes if I felt disrespected.

Exhibit 21 shows that Randazza had asked me for money, and did so with no presented and signed agreement as per Nevada policy for attorneys. Randazza claimed he was representing me for free then demanded money for his expenses.

And Exhibit 21 shows that Randazza offered to help Cox in any way she may need. Cox assumed this to be any legal questions she may have, anything to help her case or to help her personally such as asking for a job. Cox assumed Randazza would keep her confidences as they moved forward with him being fired and Eugene Volokh moving forward alone as Cox's attorney.

Randazza claims that Cox is guilty of Extortion, and that this is a legal reason, an affirmative defense as to him not being guilty of defamation. However, Cox claims that Randazza would have had to prove Cox was guilty of the crime of extortion when he posted on his blog and made statements to third parties that Cox is an Extortionist

Cox claims that Randazza is not immune from defamation claims even if he somehow magically proved that Cox and Bernstein are now guilty of extortion, of which he claims he can prove.

This trial is not about extortion, to prove such now has nothing to do with the fact that he made the statement 3-4 years ago. The statement Cox is an Extortionist, Eliot Bernstein is an extortionist, made by Cox's former attorney, would have had to have been true at the time he posted it and state it to third parties.

## Weakness in Oppositions Case (Randazza's Claims against Cox)

In November 2012, the Randazzas' sued Defendant Crystal Cox and Defendant Eliot Bernstein alleging violations of individual cyberpiracy protections for various registered websites under 15 U.S.C. § 8131, cybersquatting for various registered websites under 15 U.S.C. § 1125(d), their right of publicity under NRS 597.810, their common law right of publicity, intrusion upon seclusion, and civil conspiracy. The claims were based on allegations that Cox and Bernstein registered several domain names containing Plaintiffs' names, that Cox's blog posts contained objectionable characterizations of the Plaintiffs, and that these acts were designed to extort and harass the Randazzas and capitalize on and damage the goodwill Marc Randazza claims he built up in his own name as a prominent First Amendment attorney.

Cox claims that she registered the domain names to control public relations information when she thought Marc Randazza would represent her in another lawsuit.

Cox claims that her actions were in no way "extortion".

Cox claims that she has never been under investigation for extortion, never sued for extortion befor this lawsuit filed against her by her former attorney, and that she has never been convicted of the crime of extortion or ever engaged in acts of extortion in any way.

Cox claims that Randazza has no material, factual evidence that Cox's action were extortion or had any intention of being extortion in any way.

## Authentication of Evidence

Cox Claims that Plaintiff Randazza has no authenticated evidence against her to support their claims, as is clearly point out per Line 12 on page 3 of 20, through line 7, page 8 of 20 Court Order Docket Entry 200.

## Genuine issues of material fact preclude Plaintiffs' claims 1-3 relating to violations of individual cyberpiracy protections under 15 U.S.C. § 8131.

The Randazzas' first, second, and third claims arising under 15 U.S.C. § 8131 allege that Defendants' registration of the multiple domain names violates the provision that provides cyberpiracy protection for individuals.

In pertinent part, section 8131 provides that: [a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.

To prevail at trial under this theory, a plaintiff must show that the specific intent to profit existed at the time of the registration. Randazza cannot prove that Cox had a specific intent to profit at the time of registration.

The statute further provides a very limited exception for good-faith registrants: A person who in good faith registers a domain name consisting of the name of another living person, or a name substantially and confusingly similar thereto, shall not be liable under this paragraph if such name is used in, affiliated with, or related to a work of authorship protected under Title 17, including a work made for hire as defined in section 101 of Title 17, and if the person registering the domain name is the copyright owner or licensee of the work, the person intends to sell the domain name in conjunction with the lawful exploitation of the work, and such registration is not prohibited by a contract between the registrant and the named person.

The exception under this subparagraph shall apply only to a civil action brought under paragraph (1) and shall in no manner limit the protections afforded under the Trademark Act of 1946 (15 U.S.C. 1051 et seq.) or other provision of Federal or State law.

Genuine issues of material fact preclude entry of judgment in the Randazzas' favor on these first three cyberpiracy claims. They have failed to show by admissible evidence that at the time

the Defendants registered domain names there was a specific intent to profit by selling the domains to Plaintiffs or a third party.

At best, they have demonstrated only that Defendant Cox offered to sell Mr. Randazza a few of the domain names at some point after the domain names were registered. This ex post action does not prove the specific intent to profit at the time the domains were purchased. Even if the Court were to consider post-registration conduct, it still cannot infer intent at the time of registration because the evidence undermines that conclusion.

The Randazzas' own evidence suggests that Cox "bought [one domain name] - to control the search, and pr on [her] case, if [Mr. Randazza] represented [her]." This tends to show that Cox did not have a specific intent to profit at the time of the registration, creating a genuine dispute and precluding the Randazza's from prevailing at trial on these claims.

I, Defendant Crystal Cox have not "victimized" anyone in any bizarre pattern. I have reported on hundreds of people, corporations, companies, attorneys, cases, judges, cops, victims, and businesses over 10 years on my blogs.

## Genuine issues of material fact preclude the Randazza's from prevailing at trial on claims 4-5 for Cybersquatting under 15 U.S.C. § 1125(d).

The Randazzas' fourth and fifth claims allege that Defendants' registration of the domain names violates the provision that prohibits cybersquatting.

To prevail on a cybersquatting claim, a plaintiff must show that: "**(1)** the defendant registered, trafficked in, or used a domain name; **(2)** the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and **(3)** the defendant acted with bad faith intent to profit from that mark." Plaintiffs have failed to show and cannot show by admissible evidence essential elements of these cybersquatting claims, therefore Plaintiff will not prevail on these claims at trial.

Jennifer and Natalia Randazza's claims fail as a matter of law because they have not alleged or shown any facts to support common-law trademarks in their personal names. Thus, Jennifer and Natalia are not entitled, as a matter of law, to a ruling in their favor on these claims.

Assuming Marc Randazza could show a common law trademark in his name, he has not demonstrated Defendants acted with bad-faith intent to profit from that mark.

To determine whether Defendants acted in bad faith, the Court considers the nine nonexclusive factors outlined in § 1125(d)(1)(b): **(1)** the trademark or intellectual property rights of the defendants in the domain name; **(2)** the extent to which the domain name is the legal name of a person, **(3)** defendant's prior use of the domain name in connection with a bona fide offering of

goods and services,  (4) whether the defendant made a bona fide noncommercial fair use of the domain name,

(5) defendant's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site,

(6) whether the defendant offered to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name, (7) whether the defendant provided false contact information when registering the domain name, (8) whether the defendant registered multiple domain names which defendant knew were identical to or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, and (9) the extent to which the trademark incorporated into the domain name is distinctive.

Marc Randazza has not shown, by admissible evidence, that the non-exhaustive factors balance in his favor. Although some factors may balance in his favor, such as factors 1-3, others arguably do not, such as 4-7. As Plaintiffs have failed to prove an essential element of these claims, and cannot prove these essential elements at trial, Plaintiff's cannot prevail on these cause of actions at trial.

## Genuine issues of material fact preclude the Randazza's from prevailing at trial on  Claim 6 for Right of Publicity under NRS § 597.810.

Plaintiffs' sixth claim alleges that Defendants' registration of the domain names containing the entirety or part of the Randazzas' personal names violated their rights of publicity under Nevada law. NRS § 597.810 prohibits "[a]ny commercial use of the name, voice, signature, photograph or likeness of another by a person, firm or corporation without first having obtained written consent for the use. . . ." The statute defines "commercial use" as "the use of the name, voice, signature,  photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service."

Genuine issues of material fact also precludes Plaintiffs from prevailing at trial on this privacy claim.  As the Randazzas have failed to show, by admissible evidence, that Defendants intended to advertise, sell, or solicit the purchase of any product, merchandise, goods, or service. Indeed, Plaintiffs have offered and can offer no admissible evidence that tends to show any commercial use of the their names. Thus, Plaintiff CANNOT prevail on this claim.

40



### Claim 7 for Common Law Right of Publicity is legally untenable.

Plaintiffs' seventh claim alleges that Defendants' registration of the domain names containing the entirety or part of the Randazzas' personal names violated their common law rights of publicity. "Nevada has codified the right of publicity tort." Because "[t]he statute provides a 40 complete and exclusive remedy for right of publicity torts,"

Nevada law does not recognize a common law right of publicity. As Nevada law does not recognize this cause of action, Plaintiffs have failed to state a viable claim under this legal theory, and this claim has already been dismissed with prejudice, as seen in docket entry 200.

### Genuine issues of material fact precludes Plaintiff to prevail on Claim 8 for common law intrusion upon seclusion.

The Randazzas' eighth claim alleges that Defendants' registration of five of the domain names containing the entirety or part of their names amounted to a common law intrusion upon seclusion.

To recover for the tort of intrusion, a plaintiff must prove that there was an intentional intrusion (physical or otherwise) on his seclusion that would be highly offensive to a reasonable person.

"To have an interest in seclusion or solitude which the law will protect, a plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable."

Generally, there is a decreased expectation of privacy in the workplace and for individuals who have interjected themselves into the public sphere.

Genuine issues of material fact preclude Plaintiffs' to prevail at trial on this intrusion claim.

Plaintiffs Jennifer and Natalia have failed to show, by admissible evidence, that the mere registration of a domain name would be highly offensive to a reasonable person.

And Marc Randazza has failed to show that registering the domain names, coupled with the comments contained in the two admissible blog posts, would be highly offensive to the reasonable person, as a matter of law.

Marc Randazza has a decreased expectation of privacy in his workplace. By his own characterization, he is an attorney "renowned through the United States and the world for expertise in First Amendment, intellectual property, and Internet law." He authors "a blog about various legal issues," and the blog is an ABA-recognized top blog website.

On his blog, he goes to great lengths to explain "why [he has] the audacity to believe that [he is] qualified to teach [others] a thing or two." He touts himself as having "experience and expertise in all areas of First Amendment and 48 entertainment law matters." He boasts about "get[ting] to fight 'the good fight' – protecting all of our First Amendment freedoms," and openly proclaims that he has "represented adult entertainment establishments against socially conservative communities."

By talking about his experience and the clients he represents, Mr. Randazza invites commentary on his work as an attorney and criticism from those who oppose the positions of his clients.

Marc Randazza may be perceived to have interjected himself into the public sphere by making television and radio guest appearances, giving quotes and interviews in newspapers, magazines, and other publications, appearing at speaking engagements, and having an ABA-recognized Top blog website, all as reflected on his résumé.

Considering his intentional and deliberate professional exposure and interjection into the public sphere and the accompanying decrease in his privacy interests, he has not demonstrated, as a matter of law, that he had an actual or reasonable expectation that he would not be criticized based on his work as an attorney or that he would not be thought about unfavorably by people in opposition to his work.

The Randazzas have failed to establish essential elements of claim 8 and cannot establish these elements, therefore they cannot prevail on claim 8.

## Genuine issues of material fact preclude Plaintiff to prevail on claim 9 for Civil Conspiracy.

Plaintiffs' ninth claim alleges that Bernstein and Cox colluded to register the domain names containing the entirety or part of the Randazzas' names to violate their rights.

To state a valid claim for civil conspiracy, a plaintiff must show: (1) defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming the plaintiff; and (2) the plaintiff sustained damages as a result.

"A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts." Genuine issues of material fact also preclude the Randazzas' from prevailing on this claim.

They have not demonstrated, by admissible evidence, that Cox and Bernstein acted in concert. The only admissible evidence on this point is a blog post purportedly written by Cox. Plaintiffs claim that Cox "states that Bernstein is her business partner."

42

However, the proffered evidence does not compel that conclusion. The blog post refers in different places to the website MarcRandazza.me, that Bernstein is a co-defendant in this case, and that Cox and her business partner have been customers of Godaddy Inc. for several years.

The blog does not, as Plaintiffs suggest, identify or definitely reflect that Eliot Bernstein is the business partner Cox is referring to in the post. And, even if Bernstein were the partner Cox mentions, the post does not prove that Bernstein and Cox colluded to violate Plaintiffs' rights. For that reason, Plaintiff Randazza cannot prevail at trial on this claim.

(See Line 4-28 on page 9, and page 10 through 14 of Court Order Docket Entry 200)

**Randazza was Cox's Attorney; Cox claims that as her former attorney he cannot sue her on these claims. Cox claims that Randazza Legal Group could not represent Marc Randazza in sue a former client, as a matter of law and attorney ethics.**

The Randazzas claim that Cox was guilty of witness tampering, though the Randazzas were not witnesses in any of her cases and Marc Randazza is precluded by attorney ethics and law as to his limitations in testifying against a former client, especially in the very case he represented her in.

Cox claims that per Nevada Rules Randazza cannot sue her due to Rule. 1.6 Confidentiality of Information, Rule 1.7. Conflict of Interest: Current Clients, Rule 1.8. Conflict of Interest: Current Clients: Specific Rules, Rule 1.9. Duties to Former Clients, and more.

Attorney Marc Randazza should not have engaged in any activity adverse to me, his former client and as seen above he engaged in many.

Randazza owed Cox duties as a former client and cannot legally or ethically sue her as such. (Rule 1.9. Duties to Former Clients)

Marc Randazza and his law firm RLG violated 1.10 in representing, Marc Randazza and his wife and child in suing me, their former client.

### Rule 1.18.   Duties to Prospective Client.

Marc Randazza claims in sworn statements that he was not my attorney. Cox claims that even if Randazza were to prevail on that statement, then she was at least a prospective client and under rule 1.18 was and is owed duties and Randazza cannot sue Cox.

### COUNSELOR; Rule 2.1. Advisor.

Marc Randazza violated Rule 2. Even if Marc Randazza was NOT Cox's attorney as he claims in court, then he was at the very least her counselor. Cox claims that in this Randazza cannot lawfully sue her.

If not a counselor then at least an Advisor, Third Party Neutral or an Intermediary. And still owed me a duty of care, in which he clearly violated, and cannot sue.

**Rule 2.1. Advisor.** In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.

### Rule 2.2. Intermediary.

### ADVOCATE

Marc Randazza acted as my advocate. He spoke with other attorneys, my colleagues, and he told me that people like me are important. He was an advocate for me and turned around and acted with contention, revenge and retaliation.

Marc Randazza violated Rule 3.1 in bringing claims against me. And in attempting to set me up for criminal claims.

**Rule 3.1. Meritorious Claims and Contentions.** A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

### Rule 3.7. Lawyer as Witness.

### Randazza has Duties to Cox as a former client

Marc Randazza and Randazza Legal Group owed me a duty, a standard of care, and had obligations to me as a former client. Marc Randazza and Randazza Legal Group violated Rule 1.9 and seriously acted adversely against me. Cox claims that in this Randazza has no valid claims against her.

**Rule 1.9.   Duties to Former Clients.**

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:

(1) Whose interests are materially adverse to that person; and

(2) About whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

(3) Unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) Use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) Reveal information relating to the representation except as these Rules would permit or require with respect to a client.

[Added; effective May 1, 2006.]


**Rule 1.7.   Conflict of Interest: Current Clients.**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) The representation of one client will be directly adverse to another client; or

(2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.


Marc Randazza and Randazza Legal Group violated Rule 1.7 in representing him and his family in suing me , a former client, and violated this rule with other aspects of this complaint. It was directly adverse for Randazza Legal Group to represent Marc Randazza, Jennifer Randazza and their daughter in claims against me, their former client.

45

Marc Randazza and Randazza Legal Group acted with serious conflicts of interest.

## CLIENT-LAWYER RELATIONSHIP

Marc Randazza and Randazza Legal Group did not provide competent representation to me as the record shows. Marc Randazza violated Rule 1.1 and 1.2.

Rule 1.1.   Competence.   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

### Randazza had a duty to Cox to keep information Confidential

Marc Randazza violated Rule 1.6 and cannot sue her.

Rule 1.6.   Confidentiality of Information.

(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraphs (b) and (c).

### Rule 1.10.   Imputation of Conflicts of Interest.

Marc Randazza violated Rule 1.10 in knowingly representing a client in adverse to me, which in this case was his law firm representing him, his wife and his daughter as clients against me, their former client. Cox claims it is a conflict of interest to sue his former client.

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

46

**Even if Randazza were to oddly prevail at claiming he was not Coxs attorney, then he was at least a third party neutral.**

Rule 1.12.   Former Judge, Arbitrator, Mediator or Other Third-Party Neutral.
 Cox claims that Randazza was at least an Arbitrator or Mediator, even if her were to prevail on his claims that he was not Cox's attorney and that in this he cannot sue Cox.

**The First Amendment Rights at issue in this case must be Adjudicated before domain names**
**can be seized, blogs deleted, links broken, and intellectual property taken, irreparable damage**
**caused.**

## Lanham Act

**Randazza Cannot, as a  matter of law, use the Lanham Act to Shut down Blogs that Speak Critical of Him and his Law Firm, and his wife.  It is unlawful, unconstitutional and unethical.**

**Defendant Crystal Cox claims to have a legal right to own a Domain Name** and a blog with the
name of anyone in the title, as noted clearly in, case regarding the domain name
GlenBeckRapedAndMurderedAYoungGirl.com, in which Plaintiff Marc J. Randazza
represented the Domain Name owner and won the right for that person to continue owning
and using that Domain Name.

**It is Clear, Obvious and Blatant that Defendant Crystal Cox's blogs are critical of Marc Randazza,** she is very vocal about her feelings and experience regarding Plaintiff Marc
Randazza and her personal experience with Randazza.  There is no confusing similarities, there is a
distinct difference between the blogs and domain names used for these blogs then a SERVICE
connected to Randazza Legal Group.

Defendant Crystal Cox also posts tips she gets from Industry Insiders, Sources, Whistle
Blowers as she is MEDIA. There is no Trademark or "Mark" Violation and NO Reader would
assume that I am trying to lure them in to sell a similar, commercial product or service. It is
Obvious, Blatant and not Confusingly Similar in ANY way.

47

**Blogging is a Constitutionally protected activity, and Not a Trademark Violation.**
Randazza never had a Case with Merit against Crystal Cox and simply used this legal action to
bully a former client and to chill speech online that spoke critical of him and his law firm
Randazza Legal Group.


"Regarding this same issue of a personal name in a Domain Name, Plaintiff Marc
Randazza wrote the following quote which is a letter from Attorney Marc J. Randazza,
Plaintiff in this case, to Matthew A. Kaplan Opposing Counsel, and is personally signed
by Plaintiff Marc John Randazza." Exhibit 30

" View 1 states: **"The right to criticize does not extend to registering a domain name that is
identical or confusingly similar to the owner's registered trademark or conveys an
association**
**with the mark."**

View 2 states: **"Irrespective of whether the domain name as such connotes criticism, the
respondent has a legitimate interest in using the trademark as part of the domain name
of a**
**criticism site if the use is fair and noncommercial."**

Naturally, View 2 is the **prevailing view of American panelists** and panels that apply American
law
to UDRP proceedings. View 1 seems to be more popular with international panelists and panels
that apply European law."

Unfortunately, given that UDRP decisions regularly incorporate international legal principles, this
case could be assigned to a foreign panelist or to an American panelist who applies
transnational principles. I personally would find it distressing if the panel were to make a
decision
that completely disregards the U.S. Constitution in favor of a foreign perspective that adopts
View 1."

**"To be candid, we found the fact that Mr. Beck filed this action at all to be most
puzzling. Although, it was obvious why he did not file in a U.S. court given the law
surrounding nominative fair use of trademarks as fully explained in our Brief.
Naturally, a defamation claim as alluded to in Mr. Beck's complaint would be
humiliatingly doomed as well in a U.S. court. "**

The Document Goes on to Say:

"Accordingly, we found it to be most ironic that Mr. Beck, facing the fact that the

48

U.S. Constitution would stand in his way in a U.S. court, sought to bring this action
before an international domain name arbitration panel.
On March 20, 2009, he said on his show:

Let me tell you something. When you can't win with the people, you
bump it up to the courts. When you can't win with the courts, you
bump it up to the international level.

Of course, we levy no critique at Mr. Beck for seeking to vindicate his perceived
rights in this forum. We do not share his opinion as articulated on March 30, and we
respect his creativity in seeking an alternate avenue where his claims might have a
chance of success. Unfortunately, despite the general wisdom among UDRP
panelists, we find that occasionally they render decisions that make First
Amendment champions cringe."

**"We are certain that despite our disagreement with Mr. Beck's legal position, that all
parties involved hold equal reverence for the First Amendment.**

Therefore, I have prepared a proposed stipulation that will ensure that no matter which panelist
is
assigned to this case, the First Amendment will illuminate these proceedings like
rays of light from the Torch of Liberty."

**The Document (Exhibit 30) Goes on to Say:**

**"I am certain that neither party wishes to see First Amendment rights subordinated
to international trademark principles**, thus unwittingly proving Mr. Beck's point. Lest
this case become an example of international law causing damage to the
constitutional rights that both of our clients hold dear, I respectfully request that
your client agree to stipulate to the application of American constitutional law to
this case. "

Yet, this court continues to favor this SAME attorney as a Plaintiff arguing
the Opposite Defense to his own favor, in Randazza V. Cox.

The Document Goes on to Say:

"Irrespective of whether the domain name as such connotes criticism, **the
respondent has a legitimate interest in using the trademark as part of the domain
name of a criticism site if the use is fair and non-commercial."**

Eliot Bernstein nor Crystal L. Cox had commercial sites, nor were they in a
competing business. Eliot Bernstein got domain names in receivership of a debt

Crystal Cox owed him. Crystal Cox used the domain names to seriously criticize
Plaintiff / Counter Defendant Marc J. Randazza who she had personal experience of,
knowledge of, and who is a Public Figure.

**This Hypocrisy of Plaintiff / Counter Defendant Marc J. Randazza, proves yet again
that he knew this lawsuit was a frivolous waste of the courts time** and the
Taxpayers money, yet he sued anyway, in order to retaliate against a woman who
he had once represented and who he did not like or approve her on "online
speech", regarding her experience with him.

## "THE LANHAM ACT AS IT APPLIES TO DOMAIN NAME DISPUTES

The Lanham Act was originally enacted as the Trademark Act of 1946. It has been amended
several times. It is codified at 15 U.S.C. §§ 1051-1127.1

The Lanham Act provides remedies for both trademark infringement and trademark dilution.
There is now, in addition, the Anticybersquatting Consumer Protection Act of 1999.2 These are
all discussed below.

### A. INFRINGEMENT

Trademark infringement occurs when a non-owner uses another's trademark in a way that
causes actual confusion or a likelihood of confusion between the marks. Specifically, the Act
prohibits the use of marks that are "likely to cause confusion, or to cause a mistake, or to
deceive."

In order to establish infringement, a plaintiff must first show its own actual trademark use. That
is, it cannot simply register and then warehouse a trademark in hopes of someday bringing an
infringement suit. The plaintiff must also show that the trademark is distinctive. Finally, it must
show that the defendant's use of a mark is non-functional. A mark is non-functional when it is
not inherent to the purpose or description of what it is representing. (For example, "bandage" is
functional; "Band-Aid" is non-functional.)

### B. DILUTION

Trademark dilution is less concrete than infringement. In order to understand it, one must be
familiar with a number of terms of art. In a dilution case, there is a "senior user" and a "junior
user." The senior user is the entity that used the mark first, and is almost always the plaintiff in a
dilution case. The junior user is the entity that subsequently uses the mark. The junior user is
usually the defendant in a dilution case.
A dilution case involves use of a mark in a "commercial context." This means that the use in
question must actually be in the stream of commerce and could therefore make a profit for the

user.

Dilution deals with marks as a "source indicators." This term refers to the ability of a mark to identify a user and/or its products and services. One of the most important aspects of using marks as source indicators is the reputation of a user and how that affects the public's perception of the mark.

Dilution occurs when a junior user uses a senior trademark user's mark in a commercial context in a way that lessens the power of the senior user's mark as a source indicator.4
There are two forms of dilution.

The first is dilution by tarnishment, which is the diminishing of the power of the senior user's mark because of its association with the negative aspects or connotations of the junior user's use of the mark.

The second is dilution by blurring, which is when the power of the senior user's mark is decreased because of the blurring of the mark's distinctive quality caused by the existence of the junior user's mark.

In a dilution cause of action, the plaintiff must show that its mark is famous and that the junior user is using its mark in a commercial context. In order to determine whether a mark is famous, Congress set out eight nonexclusive factors that a court may consider.

There are three uses that Congress made non-actionable under the dilution section of the Lanham Act. They are, briefly, fair use of a famous mark for comparative advertising or promotion, noncommercial use, and all forms of news reporting and commentary.6

## C. CYBERPIRACY PREVENTION

The ACPA provides a cause of action similar to a dilution claim, but one with its own unique elements.

The first difference is that the plaintiff's mark need not be famous. It need only be protected.

A plaintiff can establish liability by showing the following. The plaintiff must show that the defendant has a bad faith intent to profit from the mark. The plaintiff must also show that the defendant has registered, trafficked in, or uses a domain name that is identical to, confusingly similar to, or in the case of a famous mark, is dilutive of the plaintiff's mark.

Congress provided nine non-exclusive factors for a court to consider in order to determine bad faith under this section.9

The ACPA applies not only to protected marks, but also to protected personal names.10 The

Cyberpiracy Protection for Individuals Act,which applies specifically to "any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name. . ."

Generally, the remedy for a trademark violation is injunctive. In the case of the ACPA, Congress allowed courts to order the cancellation or forfeiture of domain names that violate the trademark owner's rights.

## III. "SUCKS.COM" CASES UNDER THE LANHAM ACT

There have been two "sucks.com" cases decided under the Lanham Act. It is very unlikely that there will be any more.

In Bally Total Fitness Holding Corp. v. Faber,14 Bally brought a trademark infringement and dilution suit against Faber after Faber created and registered a website called www.compupix.com/ballysucks. This site, which no longer exists, was dedicated to complaints about Bally. The case was resolved before the ACPA was enacted.

The court immediately concluded that there was no likelihood of confusion between Bally and Ballysucks.com because they are not "related goods" and dismissed the infringement claim.

Although the court dismissed the infringement claim, it still discussed how the case would come out under the most common likelihood of confusion test, found in AMF Inc. v. Sleekcraft Boats.

The court most likely did this because this was the first case of its kind and the court wanted to establish some official position on the matter.

The Sleekcraft test uses eight factors to determine whether a defendant's use of a plaintiff's trademark creates a likelihood of confusion. The factors are:
Strength of the mark
Proximity of the goods
Similarity of the marks
Evidence of confusion
Marketing channels used
Type of goods and the degree of care likely to be exercised by the purchaser
Defendant's intent in selecting the mark
Likelihood of expansion of the product

The court found that Bally has strong marks, as evidenced by the amount of money spent on advertising and the fact that no other health club company uses the Bally mark. This factor came out in favor of Bally.

The court found that the similarity of marks factor leaned in favor of Faber. Bally argued that the marks are identical or that adding "sucks" on the end of "Bally" is a minor change. The court found that "sucks" is such a loaded and negative word that the attachment of it to another word cannot be considered a minor change.

Bally asserted that the goods were in close proximity because both used the Internet and because it had a complaint section on its own website. The court found, however, that the sites did not compete, even though they were both on the Internet. This is because Bally's is a commercial site while Faber's site is for the purpose of consumer commentary. The factor leaned in favor of Faber.

Bally presented no evidence of actual confusion. Bally argued that the confusion would be patently obvious due to the similarity of the marks. The court, however, found that a reasonably prudent user would not mistake Faber's site and the official Bally's site. This factor leaned in favor of Faber.

Bally argued that the marketing channels used, namely the Internet, were identical. The court found that the overlap of marketing channels was irrelevant because Faber's site was not a commercial use of the mark. This factor was neutral or slightly in favor of Faber.

Bally argues that an Internet user may accidentally access Faber's site when searching for Bally's site on the web. The court dismissed this because Faber does not actually use Bally's trademark. It further points out that an Internet user searching with a search engine may want all the information available on Bally's and is entitled to more than Bally's own site. This factor leaned in favor of Faber.

The court found, and Bally agreed to some extent, that in the context of consumer commentary, Faber was entitled to use Bally's mark. In fact, he had to use Bally's mark in some way to identify what he was criticizing. This factor was neutral.

Bally conceded that there was no likelihood of the two parties expanding into each other's lines of business. For this reason, the last factor leaned in favor of Faber.17

In concluding its discussion of likelihood of confusion, the court stated that "applying Bally's argument would extend trademark protection to eclipse First Amendment rights. The courts, however, have rejected this approach by holding that trademark rights may be limited by First Amendment concerns."

Under the dilution claim, Bally argued that there was dilution by tarnishment because Faber also had pornographic websites linked from the compupix.com site.

The court found that Faber had engaged in no commercial use of the Bally name due to the

53

nature of the website. The court also concluded that there was no tarnishment. In so deciding, the court said that if tarnishment existed in this case, "it would be an impossible task to determine dilution on the Internet."19 The court went on to point out that to include "linked sites as grounds for finding commercial use or dilution would extend the statute far beyond its intended purpose of protecting trademark owners from use that have the effect of 'lessening. . . the capacity of a famous mark to identify and distinguish goods or services.'"20

For these reasons, the court ruled in favor of Faber.

In the other "sucks.com" Lanham Act, Lucent Technologies, Inc. v. Lucentsucks.com,21 the court did not get beyond the jurisdictional issues to reach the merits. However, the court acknowledged in dicta that had the case reached the merits, the court probably would have reached a decision similar the one reached in Bally.22

The remaining "sucks.com" cases have been decided under the UDRP.

**RANDAZZA has fought and won many cases on behalf of those who own sucks sites, yet had this court give him MarcRandazzaSucks and RandazzaLegalGroupSucks.**

## IV. THE UNIFORM DOMAIN NAME DISPUTE RESOLUTION POLICY

On October 24, 1999, ICANN adopted its Uniform Domain Name Dispute Resolution Policy.23 Since then, the UDRP has been used by domain name dispute resolution panels, most notably those associated with WIPO, to rule on domain name disputes. A number of these disputes have involved "sucks.com" websites.

Part of the registration process for a getting a domain name includes acceptance of the UDRP. A domain name owner can lose its rights to the domain name if it violates the UDRP.24

Section 4 of the UDRP explains the mandatory administrative proceeding that any domain name owner could be subject to. This proceeding occurs when a third party complainant asserts that the domain name owner has used a domain name that is identical or confusingly similar to the complainant's mark, that the domain name owner does not have rights or legitimate interests in the name, and that the domain name has been registered and used in bad faith.25

The UDRP lists four non-exclusive factors to be considered in determining bad faith.26

The remedies sought in a UDRP proceedings are the cancellation of the domain name or the transfer of the domain name to the complainant owner of the mark.27

The UDRP proceeding does not prevent its loser from taking the case to court following the conclusion of the proceeding.28

54

## V. "SUCKS.COM" CASES UNDER THE UDRP

A number of "sucks.com" cases have been heard by panels using the UDRP's mandatory administrative procedure. These hearings have come out strongly in the opposite direction from the court cases under the Lanham Act.

At one point, in fact, nine of the eleven "sucks.com" cases heard under the UDRP, had been decided in favor of the original mark owner, with the other two hearings awaiting decisions.29 A notable recent example of a UDRP hearing is Diageo plc v. John Zuccarini, Individually and t/a Cupcake Patrol.30 Diageo, formerly known as Guinness plc, the owner of the company and brewery that produces Guinness beer, brought this proceeding against Zuccarini after Zuccarini registered eleven domain names, all variations on the theme of "Guinness beer sucks."31 Previously, Diageo had brought a hearing against Zuccarini for his registration of guinnes.com. It claimed that Zuccarini's registration of the eleven Guinness _____sucks.com sites were in direct retaliation for its having done this.32

In deciding on Zuccarini's liability, the panel33 first looked at the question of whether the domain names were identical or confusingly similar to Diageo's mark. Because the marks were not identical, the panel looked to whether they were confusingly similar. The panel decided that the domain names were confusingly similar.

In doing so, it relied on precedent from a previous hearing in which a panel held that "the confusingly similar test may be held to a different standard when used with Internet search engines."34

The panel also used the same Sleekcraft test for likelihood of confusion that the court used in Bally.35 However, the panel acknowledged that there were some difficulties in applying the test to a domain name dispute. Nevertheless, because neither party objected, the test was used.36

The panel found that Diageo had a very strong mark.

The panel found that although the parties were in different line of trade, the fact that there were beer references in a number of Zuccarini's domain names was enough to establish some kind of proximity.

The panel found that because the word "guinness" appeared at the beginning of each of the domain names, there was at least some similarity between the marks.

There was no evidence of actual confusion. However, the panel found that it was unrealistic to require such evidence, especially because Zuccarini's domain names had not actually been used for active websites.

When considering the marketing channels, the panel again pointed out the distinction between trademarks and domain names. It did accept, however, the assertion that a search using a search engine would likely point out the domain names in dispute.

The panel was unsure of how to interpret the question of the degree care exercised by the purchaser. Of particular concern was the fact that "sucks" is an American slang word and may not be familiar to all English speakers, let alone all Internet users. Because of this, the panel envisioned "circumstances where Internet users are not aware of the abusive connotations of the word and consequently associate the domain name with the owner of the trademark."

The panel found that Zuccarini had no legitimate reason to select the marks to use for the domain name and that there was no evidence of any likelihood that either party would expand its product lines.

Based on its consideration of the UDRP standards and the Sleekcraft factors, the panel decided that Zuccarini had no legitimate interest in the Guinness name, and that his registering the "sucks.com" websites was primarily to disrupt Diageo's business and was therefore done in bad faith.

Based on its findings, the panel ordered that all eleven domain names be transferred to Diageo.

While the panel did decide in favor of the Diageo, it did so at least in part because Zuccarini made no response to Diageo's allegations, which the panel felt established prima facie cases for the elements needed under the UDRP.

The Bally court focused in the end on the fact that First Amendment rights trump Trademark law. The panel in this case was more concerned by the fact that a test designed for trademark law was used in a decision also involving domain names, stating that "it is obvious that there remains many areas of doubt as to how the various elements of the test can be transposed in its application to disputes involving a comparison of domain names and trademarks

## The First AMENDMENT Trumps Trademark LAW

Crystal Cox claims that the First Amendment Trumps Trademark Law and that Randazza had no right to sue her, and did so only to harass her and retaliate against her.

Cox claims the First AMendment as her defense and claims that Randazza cannot prevail in a trial regarding his claims. Cox also claims that, as a First Amendment expert , Randazza knew this and still shut down her blogs, sued her maliciously in a frivolous, costly SLAPP lawsuit and abused the power of the courts to harass an ex- client who was speaking critical of him online.

56

And that Randazza spread malicious lies about Crystal Cox to other attorneys, sworn documents in court, WIPO, Forbes, NPR, the New York Times, legal bloggers, newspapers and online media.

## Defendant Crystal Cox claims that a Trademark, should not be used as a Censorship Tool.

### Second Circuit Finds that First Amendment Trumps Trademark

In 1989, the Second Circuit adopted a balancing test to weigh the value of an artist's First Amendment rights against the value of trademarks depicted in the artist's work. *Rogers v. Grimaldi*, 875 F.2d 994 (9th Cir. 1989). In June of 2012, the 11th Circuit adopted essentially the same test in *University of Alabama Board of Trustees v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. June 11, 2012).

### Fourth Circuit Finds that First Amendment Trumps Trademarks

The First Amendment Trumps Trademark Rights in Radiance Found, Inc. v. NAACP. The Fourth Circuit Court of Appeals ruled in favor of the columnist, issuing a strongly-worded opinion that criticized the NAACP's attempt to silence free speech. The decision can be found at Radiance Found., Inc. v. NAACP, No. 141568, — F.3d — (4th Cir. May 19, 2015)

In The Radiance Foundation, Inc. v. NAACP, the Fourth Circuit held that the NAACP did not have viable trademark infringement claims because the Defendant did not use the NAACP's marks "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). The court declined the NAACP's request that it broadly construe the Lanham Act to expose trademark liability to a wide array of noncommercial expressive and charitable activities, like the Defendant's solicitation of donations on its websites where the article was posted. "Such an interpretation would push the Lanham Act close against a First Amendment wall, which is incompatible with the statute's purpose and stretches the text beyond its breaking point."

The Fourth Circuit also found that the Defendant's use of the NAACP's marks did not create the likelihood of confusion required for trademark infringement, despite the fact that some consumers may be confused about the NAACP's true name and political positions. The court explained that "[t]rademark infringement provisions do not protect against confusion about the marks themselves because marks are not goods or services but instruments to identify goods and services…. Likewise, trademark infringement is not designed to protect mark holders from consumer confusion about their positions on political or social issues."

57

In addition, the Fourth Circuit held that the Defendant's use of the NAACP's marks fell squarely within the exceptions to trademark dilution included in the Lanham Act to avoid encroaching on free speech rights. Specifically, the article fell within the "fair use" exclusion that permits, among other things, use of a mark in connection with "identifying, parodying, criticizing, or commenting upon" the mark owner. 15 U.S.C. § 1125(c)(3)(A)(ii). The court also applied the "noncommercial use" exclusion because the article was not an advertisement. Id. at § 1125(c)(3)(C).

The Fourth Circuit decision is important for serving as a reminder that trademark law is "not [a] proper vehicle[] for combatting speech with which one does not agree." As the Second Circuit observed nearly three decades ago, in Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), courts "must construe the [Lanham] Act narrowly to avoid . . . a conflict" with "First Amendment values."

## First Amendment Trumps Trademark in Call of Duty Case

Novalogic, Inc. and Activision Blizzard – a California federal court held that Novalogic's attempt to enjoin Activision from using the phrase "Delta Force" and a Delta Force logo in "Call of Duty: Modern Warfare 3" is barred by the First Amendment. Novalogic v. Activision Blizzard et al. [No. 12-4011].

## Protectmarriage.com-Yes on 8, a Project of California Renewal v. Courage Campaign Case

The Eastern District of California demonstrates that the First Amendment may trump a trademark owner's objections to use of a similar mark by a political opponent. In the case of Protectmarriage.com-Yes on 8, a Project of California Renewal v. Courage Campaign, 93 U.S.P.Q.2d 1477 (E.D. Cal. 2010), the plaintiff, ProtectMarriage.com, is a nonprofit organization opposed to same-sex marriage in California. The plaintiff's logo consisted of the phrase "Yes on 8 Protect Marriage" and four stylized human figures: two adults and two children. Click here to view the logo.

The defendant, Courage Campaign Institute, is a nonprofit supporter of same-sex marriage and self-proclaimed frequent adversary of ProtectMarriage.com. The defendant created a logo-admittedly derived from the ProtectMarriage.com logo-depicting the silhouette of two women with two children, and used it for a website that provided news coverage of a lawsuit challenging the challenging an amendment to the California State Constitution that outlaws same-sex marriages. Click here to view the logo.

The plaintiff sought a temporary restraining order against the defendants' use of the modified logo. The defendant claimed that the use was protected on grounds of parody under the protections of the First Amendment.

The district court agreed with the defendant and held that First Amendment considerations outweighed the plaintiff's trademark rights. The court held first that, under Ninth Circuit law, contested marks used in connection with artistic works are not actionable under the Lanham Act, 15 U.S.C. § 1114 et seq., unless they have no artistic relevance to the underlying artistic works whatsoever or, if relevant, they are explicitly misleading as to the source or the content of the work. Protectmarriage.com, 93 U.S.P.Q.2d at 1479 (citing to Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989)).

## E.S.S. Entm't 2000 v. Rock Star Videos: First Amendment Trumps Trademark Rights

In E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc., 547 F.3d 1095 (9th Cir. 2008), the 9th Circuit U.S. Court of Appeals confirmed that when trademark rights clash with the First Amendment, the First Amendment usually wins – at least in cases involving artistic or creative endeavors. The court affirmed the grant of summary judgment in favor of the creators and publishers of the Grand Theft Auto series of video games against the owner of a Los Angeles strip club who claimed that the game infringed on the club's trademark and trade dress. Specifically, the court applied the Rogers v. Grimaldi two-prong analysis to find that the First Amendment protects the game's use of the club's mark in the face of a Lanham Act challenge.

Rock Star asserted that its use of The Play Pen's mark was protected by the First Amendment. Both the District and Circuit courts agreed, citing Rogers v. Grimaldi, 875 F.2d 994, 999 (2nd Cir. 1989) for the proposition that the Lanham Act infringement laws apply "to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression."

The court cited the two-prong analysis set forth in Rogers: "An artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable "unless the [use of the mark] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless [it] explicitly misleads as to the source of the content of the work."" E.S.S. Entertainment, 547 F.3d at 1099 (citing Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 902 (9th Cir. 2002) (citing Rogers, 875 F.2d at 999)).

As to the first prong, E.S.S. claimed that Rock Star's use of the mark had no artistic relevance to the game, in that The Play Pen is not a primary focus of the game. But the Circuit Court stated that E.S.S. missed the point because the amount of artistic relevance the use of the mark has to the overall product is irrelevant. "[O]nly the use of a trademark with 'no artistic relevance to the underlying work whatsoever' does not merit First Amendment protection... In other words, the

level of relevance merely must be above zero." E.S.S. Entertainment, 547 F.3d at 1100 (citing Mattel v. MCA Records, 296 F.2d at 902).

The court found that the game's inclusion of a strip club that may be similar in look and feel to The Play Pen does have artistic relevance to the game's goal of creating a fictional version of a particular urban area. Id.

As to the second prong, R.S.S. argued that even if there were artistic relevance, Rock Star's use explicitly misleads users regarding the source or content of the work, in violation of the very purpose of trademark law to avoid consumer confusion. The court explained the issue as determining "whether the Game would confuse its players into thinking that the Play Pen is somehow behind the Pig Pen or that it sponsors Rockstar's product." Id.

The court found no such confusion, largely because the Pig Pen was very generic, and its existence is purely incidental to the story of the game. The court wrote: "Nothing indicates that the buying public would reasonably have believed that ESS produced the video game or, for that matter, that Rockstar operated a strip club." Id.

### Brown v. Electronic Arts, Inc.

Brown v. Electronic Arts, Inc., involves James "Jim" Brown ("Brown"), the famous football player, who sued Electronic Arts ("EA"), the manufacturer distributor and seller of the Madden NFL series of football video games.

The video games allow users to control avatars representing professional players, and to participate in simulated games. Some versions of the games included likenesses of Brown.

Brown's claims under the Lanham Act, the main federal trademark law, are of particular interest here. Generally with trademarks, the basic test a mark's owner is asked to show is whether use of the competing mark is likely to cause confusion in the public's mind, and Brown's basic argument was that EA's use of his likeness without his permission was likely to cause confusion in the mind of the public as to whether he endorsed the video games.

However, there is always the understanding that granting exclusive use of marks limits constitutionally protected free speech. In evaluating the competing interests of protecting the public from deception and protecting freedom of expression, when the identifying material in question appears in an expressive work, Courts tend to shift the balance toward First Amendment considerations.

Because EA's videos are considered expressive works, the Court considered whether EA's use of Brown's likeness in the videos was relevant. Given EA's professed interest in creating a high level of realism for the various football teams portrayed, inclusion of Brown's likeness in the recreation of the '65 Cleveland Browns team was relevant.

60

Cox claims that it is and was clear that her sites were review sites, gripe sites, and parody sites. Randazza himself defends such sites on a regular basis yet he shut down Cox's sites.

## A Bit on Parody

Certain parodies of trademarks may be permissible if they are not too directly tied to commercial use. The basic idea here is that artistic and editorial parodies of trademarks serve a valuable critical function, and that this critical function is entitled to some degree of First Amendment protection.

The courts have adopted different ways of incorporating such First Amendment interests into the analysis. For example, some courts have applied the general "likelihood of confusion" analysis, using the First Amendment as a factor in the analysis. Other courts have expressly balanced First Amendment considerations against the degree of likely confusion.

Still other courts have held that the First Amendment effectively trumps trademark law, under certain circumstances. In general, however, the courts appear to be more sympathetic to the extent that parodies are less commercial, and less sympathetic to the extent that parodies involve commercial use of the mark.

So, for example, a risque parody of an L.L. Bean magazine advertisement was found not to constitute infringement. L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 28 (1st Cir. 1987). Similarly, the use of a pig-like character named "Spa'am" in a Muppet movie was found not to violate Hormel's rights in the trademark "Spam." Hormel Foods Corp. v. Jim Henson Prods., 73 F.3d 497 (2d Cir. 1996). On the other hand, "Gucchie Goo" diaper bags were found not to be protected under the parody defense Gucci Shops, Inc. v. R.H. Macy & Co., 446 F. Supp. 838 (S.D.N.Y. 1977). Similarly, posters bearing the logo "Enjoy Cocaine" were found to violate the rights of Coca-Cola in the slogan "Enjoy Coca-Cola Coca-Cola Co. v. Gemini Rising, Inc., 346 F. Supp. 1183 (E.D.N.Y. 1972). Thus, although the courts recognize a parody defense, the precise contours of such a defense are difficult to outline with any precision.

Such uses, as Cox used, of trademarks also do not constitute trademark dilution. Title 15 U.S.C. § 1125(c)(3) expressly excludes "noncommercial use[s] of a mark" from the dilution cause of action; as Mattel noted, this exclusion protects all uses other than "commercial speech" (i.e., commercial advertising). Mattel, 296 F.3d at 905-06

Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), and Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894 (9th Cir. 2002), make clear that such uses of trademarks in titles are not actionable even when some viewers are likely to be confused. In Rogers, a filmmaker was sued by Ginger Rogers for his use of the film title "Ginger and Fred." The film was not about Rogers and her film partner, Fred Astaire, but about two other dancers who imitated the duo onstage. Id. at 996-97.

61



Even if Randazza were to somehow prevail in the District of Nevada, the Ninth Circuit will not let Randazza use Trademark Law to suppress speech and violate the First Amendment Rights of Cox and Bernstein.

## More on The First Amendment Trumps Trademark Law

In this legal actions, it is important to take note that Marc Randazza, Crystal Cox's former attorney filed a Trademark lawsuit in order to shut down online content in which spoke critical of him

Attorney Marc Randazza, plain and simple, used Trademark Law to remove blogs, to steal domain names, to chill speech, to stop the flow of information and to redirect intellectual property.

It is unlawful, unconstitutional and unethical to use Trademark Law to remove online sites that Plaintiff Marc Randazza does not like or approve of

**Even if Plaintiff Could prove a Trademark, Defendants First Amendment Rights TRUMP Trademark Rights in this case.**

Regarding Plaintiff's Discussion of the Lanham Act, Though it does not seem to be a cause of action, Plaintiff lists Lanham in this complaint at various points.

The Supreme Court has recognized the threat to freedom of speech. In Cohen v. California, 403 U.S. 15, 25, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971), it was decided that the right to speak freely that is guaranteed by the First Amendment to the Constitution of the United States includes the right to criticize others, voice highly controversial opinions, and comment on public interest matters.

**The First Amendment also protects free speech of extreme statements and intentional exaggeration when it is clear the statements are insincere and done to frustrate the target,**
**and is not defamation but opinion, satire, or parody.**

In Hustler Magazine v. Falwell; Parody is NOT Defamation. There are many other cases in which discuss that Parody and Satire is not a Trademark or Defamation Issue. Plaintiff / Counter Defendant Marc Randazza DEFENDS Satire and Parody Blogs, Sites, Domain Names, Content, Radio, Television and More, Constantly,

The first step with free speech and the First Amendment and trademark law is whether the speech in question is commercial or noncommercial. Commercial speech is bound by the laws of the Lanham Act and is subject to less and sometimes no First Amendment protection.

Noncommercial speech is not bound by the Lanham Act or trademark law, and is guaranteed complete and full First Amendment protection. In fact, trademark law specifically exempts noncommercial speech so that the law will not infringe on the First Amendment. One case that supports this paragraph is Taubman Co. v. Webfeats, 319 F.3d 770, 77475 (6th Cir. 2003). Another supporting precedent is Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 101518 (9th Cir. 2004).

Pro Se Defendant Crystal L. Cox and Defendant Eliot Bernstein have made no money from the Seized Domain names. Pro Se Defendant Crystal L. Cox, is an Investigative Blogger, a Media Defendant and was giving Plaintiff Marc Randazza a bad review as she was a former client of Plaintiff Marc Randazza.

Pro Se Defendant Crystal L. Cox was reporting on / blowing the whistle on / investigative blogging on organized crime, porn industry hookers and human trafficking, video technology infringement (iViewit), gang stalkings, threats of violence, intellectual property theft, civil rights violations, civil and criminal conspiracy and more allegedly involving Plaintiff Marc Randazza and his Clients.

There are many cases supporting that negative consumer commentary is core speech protected by the First Amendment. Another case supporting this is, Bose Corp. v. Consumers Union, 466 U.S. 485 (1984) Many other cases treat criticisms of a company, their business practices, products and services, as speech protected by the First Amendment. Criticism would be pointless if the person cannot name the company they are bashing by using its trademarks. The Fourth Circuit explained that just because speech is critical of a corporation or company and
its business practices, it is not a sufficient reason to prevent or enjoin the speech.

If a trademark owner could "enjoin the use of his mark in a noncommercial context found to be negative or offensive, than a corporation could shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct." CPC Int'l., Inc. v. Skippy Inc., 214 F.3d 456, 462 (4th Cir. 2000) (quoting L.L. Bean v. Drake Publishers, 811 F.2d 26, 33 (1st Cir. 1987)).

Pro Se Defendant Crystal L. Cox has every lawful and constitutional right to criticize Plaintiff Marc
Randazza and his Law Firm Randazza Legal Group. Just because speech is critical of a corporation or company and its business practices, it is not a sufficient reason to prevent or enjoin the speech and wipe out massive blogs, links, domain names and content of Investigative Blogger Pro Se Defendant Crystal L. Cox.

Congress has decided that the Lanham Act ONLY applies to commercial speech. Under § 43 (15 U.S.C. §1125) explicitly defines that noncommercial use is not actionable. "The following shall not be actionable under this section: . . .

(B) Noncommercial use of the mark."

63

Pro Se Defendant Crystal L. Cox and Defendant Eliot Bernstein, had not commercial motives or "speech" soliciting money in regard to blogs, domains, online media, investigative news blogs in which exposed, created parody and satire, criticized, reviewed, report on Plaintiff / Counter Defendant Marc Randazza.

### Plaintiff Marc Randazza have used the Lanham Act to Suppress Free Speech, Intimidate a Reporter / Whistleblower, and to Steal Massive Content / Intellectual Property AND to Eliminate Search Engine Competition for FREE.

15 U.S.C. § 1125(a) (1). The Lanham Act defines "use in commerce" as meaning "bona fide use of a mark in the ordinary course of trade," such as using the mark in conjunction with services or goods in commerce. 15 U.S.C. § 1127. Without "use in commerce" "in connection with goods and services," there is no trademark infringement. Int'l Bancorp, LLC v. Societe des Bains de Mer et duInternational Bancorp, LLC, 329 F.3d 359, 363 (4th Cir. 2003); People for Ethical Treatment of Animals (PETA) v. Doughney, 263 F.3d 359, 365 (4th Cir. 2001); see also S. Rep. No. 100515, at 44 (1988), reprinted in 1988 U.S.C.C.A.N. 5577, 5607 ("Amendment of the definition of 'use in commerce' [in § 45 of the Lanham Act) is one of the most farreaching changes the legislation contains. . . .

The committee intends that the revised definition of 'use in commerce' be interpreted to mean commercial use which is typical in a particular industry."). Basically, the Lanham act excludes all noncommercial speech. Nissan, 378 F.3d at 101617; see also TMI, Inc. v. Maxwell, 368 F.3d 433, 43638 (5th Cir. 2004), and even excludes commercial speech that does not use marks "in connection with goods or services." PETA, 263 F.3d 359, 365 (4th Cir. 2001).
First Amendment Rights And Constitutional Law trump Trademark law.

**The first step with free speech and the First Amendment and trademark law is whether the**
**speech in question is commercial or noncommercial. Commercial speech is bound by the laws**
**of the Lanham Act and is subject to less and sometimes no First Amendment protection.**

Noncommercial speech is not bound by the Lanham Act or trademark law, and is guaranteed complete and full First Amendment protection. In fact, trademark law specifically exempts noncommercial speech so that the law will not infringe on the First Amendment. One case that supports this paragraph is Taubman Co. v. Webfeats, 319 F.3d 770, 77475 (6th Cir. 2003). Another supporting precedent is Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 101518 (9th Cir. 2004).

Despite many corporations using intimidation to try to silence people from speaking their minds and using lawsuits, and threats of lawsuits, the Constitution continuously protects free speech.

64



It excludes commercial speech precisely for the purpose of avoiding infringement of First Amendment rights.

Taubman, 319 F.3d at 77475 (6th Cir. 2003); Nissan, 378 F.3d at 101617.

Thus, when an action is brought against a noncommercial use of a trademark for either political or consumer commentary, such as the SLAPP cases with Walmart, Starbucks, and others, the courts do not usually hesitate to grant the defendant full First Amendment protection by holding that trademark law does not apply and that First Amendment protects such speech. See CPC Int'l, 214 F.3d at 46164 (4th Cir. 2000); Nissan, 378 F.3d at 101718 (9th Cir. 2004); L.L. Bean, 811 F.2d at 33.

Noncommercial Speech Is NOT Subject to Trademark Law AND Is Fully Protected by the First Amendment. Trademark law explicitly exempts noncommercial speech such as the alleged emails and website(s) precisely so that the law will not run afoul of the First Amendment. Taubman, 319 F.3d at 774 (6th Cir. 2003); Nissan, 378 F.3d at 101617 (9th Cir. 2004). Numerous cases show that consumer commentary is core speech protected by the First Amendment. See, e.g., Bose Corp. v. Consumers Union, 466 U.S. 485 (1984) (New York Times standard applied in libel action brought by a manufacturer claiming that consumer group had maligned its product). Many other cases similarly treat criticisms of a company's products or business practices as speech protected by the First Amendment.

**The criticisms would be pointless if they did not identify the company they were criticizing and by using its trademarks.**

The Fourth Circuit explained: This is an admittedly partisan account  and one that vexes [the plaintiff]. Yet just because speech is critical of a corporation and its business practices is not a sufficient reason to enjoin the speech. As the First Circuit stated, if a trademark owner could "enjoin the use of his mark in a noncommercial context found to be negative or offensive, then a corporation could shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct." CPC Int'l., Inc. v. Skippy Inc., 214 F.3d 456, 462 (4th Cir. 2000) (quoting L.L. Bean v. Drake Publishers, 811 F.2d 26, 33 (1st Cir. 1987)). Congress has therefore limited the application of the Lanham Act to commercial speech. First, § 43(c) expressly excludes non commercial use of marks from the entire section's reach: "The following shall not be actionable under this section: . . . (B) Noncommercial use of the mark." 15 U.S.C. § 1125(c) (4) (emphasis added). Section (c) (4) was added to the Act when it was amended in 1989. The House Judiciary
Committee made explicit that the purpose was to avoid any impact on noncommercial speech: The proposed change in Section 43(a) should not be read in any way to limit political speech, consumer or editorial comment, parodies, satires, or other constitutionally protected material.

## Noncommercial Speech Is NOT Subject to Trademark Law.

Ads placed on Domain Names and Blog in this case, as Plaintiff Marc Randazza knows full well, being an Expert in the Industry, are placed by Google and by GoDaddy and that Pro Se Defendant Crystal L. Cox and Defendant Eliot Bernstein have no control over such ads, and are not involved in a commercial endeavor in REPORTING on Plaintiff Marc Randazza and his Clients, and in reporting on the biggest

Technology Theft in the WORLD, iViewit Technology, and it's Founder, Inventor Eliot Bernstein. Plaintiff Marc Randazza has no Trademark on the name Marc Randazza, yet this court simply favored Plaintiff Marc Randazza and gave him what he wanted, and has thereby PERMANENTLY altered the search engines, removed content on massive blogs, changed thousands of links, and deleted blog / intellectual property of Pro Se Defendant Crystal L. Cox and Defendant Eliot Bernstein.

## Other Weakness in Randazza's Claims against Cox

Crystal Cox's, affirmative defenses create weakness in Randazza's claims against her.  As Cox and Bernstein had and have a First Amendment right to have blogs, websites and domain names in which speak critical of, parody, make fun of, review and report on Marc Randazza and his law Firm Randazza Legal Group.

**Blogging is a Constitutionally protected activity, and Not a Trademark Violation.**
Randazza never had a Case with Merit against Crystal Cox and simply used this legal action to bully a former client and to chill speech online that spoke critical of him and his law firm Randazza Legal Group.

Randazza filed this frivolous legal action to stop the flow of information, to chill speech and to remove online content in which spoke critical of him and his law firm.

Randazza did not ask for a retraction before entering into this, nearly 3 year costly litigation. Cox also intends to use retraction laws as an affirmative defense as it would have been at the very least prudent to ask for a retraction of information he found offensive before launching into a costly 3 years litigation.

Cox intends to use Trademark laws as an affirmative defense as it has been proven in court over and over that parody blogs, review sites, gripe sites, sucks sites and online speech that speaks critical of a company or individual is protected Free Speech and is the First Amendment right of the online speaker as a matter of law. And that it is not lawful or ethical to use Trademark law to chill speech, such as this 3 year litigation has done and intends to do.

Cox claims that Randazza has no Claim that will prevail in a court of law. See Exhibit 2 Summary Judgement in Randazza V. Cox DISTRICT OF NEVADA 2:12-cv-02040-JAD-PAL. Randazza has no legitimate claims and filed an expensive 5 years and counting retaliatory predatory lawsuit / legal action maliciously knowing he had no claim as he is a professional attorney.

Oct 23 2017

66

This is written upon my knowledge and opinion. I swear all of the above is true to the best of my ability. I declare the above to be true and correct

**/s/ Crystal L. Cox**
Crystal L. Cox, Pro Se
Counter Plaintiff / Defendant
October 23, 2017


### Certification of Service

On October  2017, Crystal Cox certifies mailing a copy of the above document  to:

Judge AUGUST B. LANDIS
U.S. Bankruptcy Court
District of Nevada
Foley Federal Building
300 Las Vegas Boulevard South
Third Floor, Courtroom #1
Las Vegas, NV 89101

Emailed to:  Matt@lzlawnv.com

**Subject:** RE: Quick question

**From:** Volokh, Eugene (VOLOKH@law.ucla.edu)

**To:** savvybroker@yahoo.com;

**Date:** Thursday, December 15, 2011 2:37 PM

Dear Ms. Cox: I had a long and, I hope, helpful conversation about the case with Mr. Randazza this morning, and my sense was that he thought he was indeed representing you. I'd like to make sure that you and he are on the same page about this, especially since it sounds like he's already investing a good deal of time and effort in the case. So please do talk to him about this, just to confirm that everything is set.

If he is your lawyer (and, as I said, it would be good for you if he were), I might well be able to participate in the case together with him, though I still haven't heard for sure from Mayer Brown LLP whether I can indeed do that. But I won't be able to help if it turns out that there are miscommunications between you and him about whether he is indeed representing you.

Eugene Volokh

**From:** savvybroker@yahoo.com [mailto:savvybroker@yahoo.com]
**Sent:** Thursday, December 15, 2011 2:01 PM
**To:** Volokh, Eugene
**Subject:** Re: Quick question

**please proceed i have NOT committed to marc.  what channel did u hear**

*Connected by DROID on Verizon Wireless*

Exhibit 1

-----Original message-----

**From:** "Volokh, Eugene" <VOLOKH@law.ucla.edu>
**To:** "Crystal L. Cox" <savvybroker@yahoo.com>
**Sent:** Thu, Dec 15, 2011 01:00:04 GMT+00:00
**Subject:** Quick question

Dear Ms. Cox:  I've heard through other channels that Marc Randazza will be handling your case.  If that's so, good for you – he's an experienced lawyer, and you need someone who can get on this right away.  Just let me know ASAP, please, whether that's so, so that I can call off the internal pro bono approval process here at the Mayer Brown LLP firm.  Many thanks,


Eugene Volokh

*Exhibit 1*

*Exhibit 1*

**Subject:**  Quick question

**From:**  Volokh, Eugene (VOLOKH@law.ucla.edu)

**To:**  savvybroker@yahoo.com;

**Date:**  Wednesday, December 14, 2011 5:00 PM

Dear Ms. Cox:  I've heard through other channels that Marc Randazza will be handling your case.  If that's so, good for you – he's an experienced lawyer, and you need someone who can get on this right away.  Just let me know ASAP, please, whether that's so, so that I can call off the internal pro bono approval process here at the Mayer Brown LLP firm.  Many thanks,

Eugene Volokh

Case 2:12-cv-02040-JAD-PAL   Document 263   Filed 04/08/15   Page 5 of 5

Exhibit 1

Exhibit 1

*Exhibit 2*

1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                          **DISTRICT OF NEVADA**

8

9   MARC J. RANDAZZA, an individual,
    JENNIFER RANDAZZA, an individual, and          Case No.: 2:12-cv-2040-JAD-PAL
10  NATALIA RANDAZZA, an individual,

11              Plaintiffs,
                                                   **Order Denying Motions for**
12                  v.                             **Summary Judgment (Docs. 75, 79)**
                                                   **and Various Other Relief**
13  CRYSTAL COX, an individual,                    **(Docs. 184, 195, 197)**

14              Defendant.

15

16          This cybersquatting case arises out of the alleged targeting of Plaintiffs Marc Randazza, his

17  wife Jennifer, and their young daughter Natalia, by Defendant Crystal Cox, a self-proclaimed

18  "investigative blogger." The Randazzas allege that Cox and Defendant Eliot Bernstein have engaged

19  in an online harassment campaign to extort them by registering dozens of internet domain names that

20  incorporate the Randazzas' names and then demanding they agree to purchase Cox's "reputation

21  management" services to remove this allegedly defamatory material from the internet and

22  rehabilitate their cyber reputations. Cox maintains that this lawsuit was instituted to harass her and

23  stifle her First Amendment freedoms of speech and expression.

24          The Randazza Plaintiffs move for summary judgment on their claims against Cox.[1] But as

25  one of those claims is legally untenable, and genuine issues of material fact preclude summary

26  _____

27          [1] Doc. 75.

28                                       Page 1 of 20

*Exhibit 2*

$Ex\,hi\,Bit\,2$

1  judgment on the remainder, their motion is denied. Cox has pending her own motion for summary

2  judgment on her original "Counter-Complaint,"[2] which has since been stricken[3] and supplanted (in

3  part) by a new amended counterclaim.[4] As the developments since the filing of Cox's motion have

4  rendered it moot, her motion for summary judgment is also denied. Cox has filed three other

5  motions requesting a variety of additional relief.[5] None of the motions comply with the rules of this

6  Court or are founded upon any authority, and the relief they seek has been denied by this Court

7  numerous times. These motions are also denied.

8                                          **Motions for Summary Judgment**

9          In November 2012, the Randazzas sued Cox and Bernstein alleging violations of individual

10  cyberpiracy protections for various registered websites under 15 U.S.C. § 8131, cybersquatting for

11  various registered websites under 15 U.S.C. § 1125(d), their right of publicity under NRS 597.810,

12  their common law right of publicity, intrusion upon seclusion, and civil conspiracy. The claims were

13  based on allegations that Cox and Bernstein registered several domain names containing Plaintiffs'

14  names, that Cox's blog posts contained objectionable characterizations of the Plaintiffs, and that

15  these acts were designed to extort and harass the Randazzas and capitalize on and damage the

16  goodwill Marc Randazza claims he built up in his own name as a prominent First Amendment

17  attorney.

18          Bernstein has not appeared or answered the allegations, but Cox has. She contends that she

19  registered the domain names to control public relations information when she thought Marc

20  Randazza would represent her in another lawsuit. Cox also strongly objects to Plaintiffs'

21  characterization of her motivation and actions as "extortion."

22          The tortured history of this case is rife with procedural maneuvering by both sides. All

23  _____

       [2] Doc. 79.

24

       [3] *See* Doc. 162.

25

       [4] Doc. 164. The Court has not evaluated whether the new pleading complies with the order

26  and reserves any answer to that question.

27      [5] Docs. 184, 195, 197.

28                                          Page 2 of 20

1 parties have disrupted the Court's timely management of its docket, wasted judicial resources, and
2 threatened the orderly administration of justice by sandbagging the docket with multiple impertinent,
3 legally unsupported, and frivolous filings. The instant motions were not spared from these tactics.
4 Despite Mr. Randazza's self-proclaimed prominence as a First Amendment attorney and being
5 represented by independent counsel, Plaintiffs have failed to authenticate more than half of their
6 proffered exhibits in support of their motion; and half of the authenticated ones are immaterial to this
7 motion. Equally confounding is that *pro se* Cox has submitted a 255-page nonsensical summary
8 judgment motion and a 183-page opposition to Plaintiffs' summary judgment motion, neither of
9 which includes any relevant legal authority or complies with this Court's rules of procedure and
10 evidence. In short, all parties have fallen far short of sustaining their initial summary judgment
11 burdens and both motions are denied.

12 **A. Authentication of Evidence**

13     The first step in analyzing these motions is to determine what evidence the Court may
14 consider in evaluating whether the parties met their respective burdens. In *Orr v. Bank of America*,
15 the Ninth Circuit Court of Appeals "made it clear that 'unauthenticated documents cannot be
16 considered in a motion for summary judgment.'"[6] To authenticate a document, the proponent must
17 offer "evidence sufficient to support a finding that the matter in question is what its proponent
18 claims.'"[7] As the summary judgment procedure is the pretrial functional equivalent of a directed-
19 verdict motion, it requires consideration of the same caliber of evidence that would be admitted at
20 trial;[8] thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion
21 or opposition without affirmatively demonstrating its authenticity.

22     Documents may be authenticated two ways: (1) through the personal knowledge of a party

23

24     [6] *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (citing *Orr v. Bank of
Am.*, 285 F.3d 764, 733 (9th Cir. 2002).
25

26     [7] *Las Vegas Sands*, 632 F.3d at 532-33 (quoting Fed. R. Evid. 901(a)).

27     [8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (citing *Bill Johnson's Restaurants, Inc.
v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

28

*Exhibit 2*

1  who attests that the document is what it purports to be; or (2) any other manner permitted by Federal

2  Rules of Evidence 901(b) (which provides ten methods of authentication) or 902 (identifying self-

3  authenticating documents that "require no extrinsic evidence of authenticity in order to be

4  admitted").[9]  Documents authenticated through personal knowledge must be attached to an affidavit

5  signed by a person with personal knowledge about the document (such as the drafter or signer of the

6  document, or the custodian of the document kept in the ordinary course of a business, depending on

7  the type of document and its particular relevance), or properly authenticated deposition testimony in

8  which the same information was elicited.[10]

9      Plaintiffs' proffered evidence falls into several categories, and the Court addresses each in

10  turn:

11      ***1.   Periodicals***

12      Plaintiffs offer at Exhibit B an article from *Forbes Magazine*.  Printed material "purporting to

13  be a newspaper or periodical" is self-authenticating.[11]  Thus, this article is self-authenticating.  Its

14  contents, however, are hearsay not subject to any exception.  Accordingly, the periodical is not

15  admissible for summary judgment purposes.

16      ***2.   Websites***

17      Few courts have considered how a website print-out or blog posting may be authenticated.

18  Those that have considered the issue have found "website print-outs [were] sufficiently authenticated

19

20  [9] Fed. R. Evid. 902 (listing domestic public documents that are sealed and signed or signed and certified; foreign public documents; certified copies of public records; official publications; newspapers and periodicals; trade inscriptions and the like; acknowledged or notarized documents;

21  commercial paper and related documents; presumptions under a federal statute; and certified domestic or foreign records of a regularly conducted activity.)

22

23  [10] *See Orr*, 285 F.3d at 773-74 ("documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."); *see also id.* at 774

24  (deposition transcripts are authenticated "by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted.  It is insufficient for a party to submit,

25  without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.'  Such an affidavit lacks

26  foundation even if the affiant-counsel were present at the deposition.").

27  [11] Fed. R. Evid. 902(6).

28      Page 4 of 20

*Exhibit 2*

1    where the proponent declared that they were true and correct copies of pages on the internet and the

2    print-outs included their webpage URL address and the dates printed."[12]

3            The websites contained in Exhibits E, K, Q, R, S, and T have been properly authenticated

4    under this standard because Plaintiff Marc Randazza has attested that they are true and correct copies

5    and the print-outs include the webpage URL address and the dates the websites were printed.[13]

6    However, Plaintiffs have not authenticated any of the purported website contents in Exhibits D, G,

7    M, O, and P. Although Mr. Randazza has attested that these exhibits are true and correct copies and

8    the print-outs include the webpage URL address, absent are the dates the webpages were printed.

9    Without the print dates, these website printouts have not been properly authenticated, and the Court

10   will not consider them.

11           **3.    *Letters, Emails, and Text Messages***

12           A document may be authenticated by personal knowledge "by a witness who wrote it, signed

13   it, used it, or saw others do so."[14] Although circumstantial evidence—like an email's context, email

14   address, or previous correspondence between the parties—may help to authenticate an email,[15] the

15   most direct method of authentication is a statement from its author or an individual who saw the

16   author compose and send the email.[16]

17           Plaintiffs have authenticated the letter sent from Mr. Randazza to Defendant Bernstein

18   presented in Exhibit A by Randazza's affidavit stating that he wrote and signed the letter. Similarly,

19   Mr. Randazza's curriculum vitae and the "About" page of his blog attached as Exhibits I and J have

20   been properly authenticated because Mr. Randazza is a person with personal knowledge and he

21

22   _____

23       [12]*Haines v. Home Depot U.S.A., Inc.*, No. 1:10–cv–01763–SKO, 2012 WL 1143648 *7 (E.D.
     Cal. April 4, 2012).

24       [13] *See* Docs. 75-1, 75-7, 75-13, 75-19, 75-20, 75-21, 75-22.

25       [14] *Orr*, 285 F.3d at 774 n.8 (citing references omitted).

26       [15] *United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000).

27       [16] *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012).

28

*Exhibit 2*

1    wrote his curriculum vitae and the "About" page of his own blog. Plaintiffs have also authenticated
2    via circumstantial evidence the emails between Cox and Mr. Randazza contained in Exhibit H
3    because the email contains sufficient indicia of authenticity by context, the email addresses, and
4    previous correspondence between the parties.

5        But Plaintiffs have not authenticated the purported emails between Cox and Dylan Energy
6    CEO Martin Cain contained in Exhibit C. Although Plaintiffs attempt to authenticate Exhibit C via
7    circumstantial evidence, there is a gap in the email chain. Mjr@randazza.com purportedly received
8    the forwarded email from matt.baer@dylanenergy.com; savvybroker@ yahoo.com (the email
9    associated with Cox) sent the email to dylanchpmc@verizon.net. Therefore, it is unclear how the
10   person in control of the email address matt.baer@dylanenergy.com came to be in possession of an
11   email originally addressed to dylanchpmc@verizon.net. Without some explanation of the gap in this
12   email chain by someone with personal knowledge, there is insufficient circumstantial indicia of
13   authenticity for the Court to consider this document.

14       Plaintiffs have not authenticated the text message screen shot in Exhibit A either. The screen
15   shot purporting to be a text-message exchange between Messrs. Randazza and Bernstein has not
16   been authenticated because it does not have circumstantial indicia of authenticity. It is unclear which
17   phone numbers sent or received the messages or to whom those phone numbers belonged when the
18   screen shot was taken, or who took the screen shot. Without this type of supporting evidence, the
19   Court cannot consider the text message in Exhibit A.

20       Finally, Exhibit L, which is a compiled listing made by the Plaintiffs of the allegedly
21   infringing domain names, is not evidence, and no realistic effort has been made to render it authentic
22   and worthy of evidentiary consideration.

23       **4.    *Administrative Agency Decisions***

24       Certified copies of public records are self-authenticating when the copy is certified as correct
25   by "the custodian or another person authorized to make the certification."[17] The WIPO

26

27       [17] Fed. R. Evid. 902(4).

28                          Page 6 of 20

1    Administrative Decision contained in Exhibit F has not been properly authenticated. Although Mr.

2    Randazza attests that it is a true and correct copy of the WIPO Administrative Panel Decision, he

3    lacks personal knowledge of the authenticity of this document because he did not write, sign, use it

4    or see others do so.[18]  It has not been established as a self-authenticating document because it is not

5    accompanied by a certification completed by "the custodian or another person authorized to make the

6    certification" under WIPO policy.  Finally, regardless of whether the document is authenticated and

7    admissible, the WIPO decision is not entitled to deference.[19]

8            **5.    *YouTube Video***

9            Exhibit N is a transcript of a YouTube video.  The single court having addressed how to

10   authenticate a Youtube.com video, albeit in a criminal context, found that videos from the online

11   video network are self-authenticating as a certified domestic record of a regular conducted activity if

12   their proponent satisfies the requirements of the business-records hearsay exception.[20]  To meet this

13   exception, the evidence must be accompanied by "a certification of their custodian or other qualified

14   person that satisfies three requirements: (A) that the records were 'made at or near the time by—or

15   from information transmitted by—someone with knowledge'; (B) that they were 'kept in the course

16   of a regularly conducted activity of a business'; and (C) that 'making the record was a regular

17   practice of that activity.'"[21]

18           The transcript of the YouTube video contained in Exhibit N has not been properly

19   authenticated.  Although Mr. Randazza has attested that it is a true and correct copy of a transcript of

20   a video posted on YouTube.com, he has not established that he is a person with personal knowledge

21   who prepared the transcript, nor has he established when it was prepared and that it is complete and

22

23           [18] *Orr*, 285 F.3d at 774 n.8 (citing references omitted).

24           [19] *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 26-27 (1st Cir. 2001)
         (recognizing that federal cybersquatting statutes "clearly contemplate[] judicial intervention and, in
25       fact, that the judicial outcome will override the" WIPO administrative decision).

26           [20] *United States v. Hassan*, 742 F.3d 104, 132-33 (4th Cir. 2014) (holding the YouTube video
         in question was self-authenticating under Federal Rule of Evidence 902 business records).

27           [21] *Id.* at 133.

28                                              Page 7 of 20

*Exhib.t 2*

1   accurate. To the extent that the YouTube.com video itself is offered as evidence, it similarly has not

2   been authenticated because Plaintiffs have not proffered the certificate of YouTube's custodian or

3   other qualified person verifying that the page had been maintained as a business record in the course

4   of regularly conducted business activities. Without this certification, the video has not been properly

5   authenticated and cannot be considered.

6       With these evidentiary limitations, the Court now turns to the merits of Plaintiffs' summary

7   judgment arguments.

8   **B.    Plaintiffs are not entitled to summary judgment on their claims.**

9       Summary judgment is appropriate when "the pleadings, depositions, answers to

10  interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine

11  issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22]  When

12  evaluating the propriety of summary judgment, the court views all facts and draws all inferences in

13  the light most favorable to the nonmoving party.[23]  If reasonable minds could differ on the material

14  facts at issue, summary judgment is not appropriate because the purpose of summary judgment is to

15  avoid unnecessary trials when the facts are undisputed[24] and "[c]redibility determinations, the

16  weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions,

17  not those of a judge."[25]

18      Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue

19  of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts

20  showing that there is a genuine issue for trial."[26]  The nonmoving party "must do more than simply

21

22      [22] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

23      [23] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

24      [24] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v.*
25  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

26      [25] *Anderson,* 477 U.S. at 255.

27      [26] *Id.* at 256; *Celotex*, 477 U.S. at 323.

28

*EX-2*

1  show that there is some metaphysical doubt as to the material facts,"[27] he "must produce specific

2  evidence, through affidavits or admissible discovery material, to show that" there is a sufficient

3  evidentiary basis on which a reasonable fact finder could find in his favor.[28]

4    **1.**  ***Genuine issues of material fact preclude summary judgment on Plaintiffs' claims***
     ***1-3 relating to violations of individual cyberpiracy protections under 15 U.S.C. §***
5       ***8131.***

6    The Randazzas' first, second, and third claims arising under 15 U.S.C. § 8131 allege that

7  Defendants' registration of the multiple domain names violates the provision that provides

8  cyberpiracy protection for individuals.[29]  In pertinent part, section 8131 provides that:

9      [a]ny person who registers a domain name that consists of the name of
    another living person, or a name substantially and confusingly similar
10     thereto, without that person's consent, with the specific intent to profit from
    such name by selling the domain name for financial gain to that person or
11     any third party, shall be liable in a civil action by such person.[30]

12 To prevail under this theory, a plaintiff must show that the specific intent to profit existed at the time

13 of the registration.[31]  The statute further provides a very limited exception for good-faith registrants:

14     A person who in good faith registers a domain name consisting of the name
    of another living person, or a name substantially and confusingly similar
15     thereto, shall not be liable under this paragraph if such name is used in,
    affiliated with, or related to a work of authorship protected under Title 17,
16     including a work made for hire as defined in section 101 of Title 17, and if
    the person registering the domain name is the copyright owner or licensee of
17     the work, the person intends to sell the domain name in conjunction with the
    lawful exploitation of the work, and such registration is not prohibited by a
18     contract between the registrant and the named person. The exception under
    this subparagraph shall apply only to a civil action brought under paragraph
19     (1) and shall in no manner limit the protections afforded under the
    Trademark Act of 1946 (15 U.S.C. 1051 et seq.) or other provision of

20

21

22     [27] *Orr*, 285 F.3d at 783 (internal citations omitted).

23

24     [28] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at
248-49.

25     [29] *See* 15 U.S.C. § 8131.

26     [30] *Id.* at § 8131(1)(A).

27     [31] *Id.*

28

1                          Federal or State law.[32]

2          Genuine issues of material fact preclude entry of judgment in the Randazzas' favor on these

3  first three cyberpiracy claims. They have failed to show by admissible evidence that *at the time* the

4  Defendants registered domain names *there was a specific intent to profit* by selling the domains to

5  Plaintiffs or a third party. At best, they have demonstrated only that Defendant Cox offered to sell

6  Mr. Randazza a few of the domain names *at some point after* the domain names were registered.

7  This *ex post* action does not prove the specific intent to profit at the time the domains were

8  purchased. Even if the Court were to consider post-registration conduct, it still cannot infer intent at

9  the time of registration because the evidence undermines that conclusion.[33] The Randazzas' own

10 evidence suggests that Cox "bought [one domain name] - to control the search, and pr on [her] case,

11 if [Mr. Randazza] represented [her]."[34] This tends to show that Cox did not have a specific intent to

12 profit at the time of the registration, creating a genuine dispute and precluding summary judgment on

13 these claims.

14
15                2.    *Genuine issues of material fact preclude summary judgment on claims 4-5 for*
                        *Cybersquatting under 15 U.S.C. § 1125(d).*

16         The Randazzas' fourth and fifth claims allege that Defendants' registration of the domain

17 names violates the provision that prohibits cybersquatting.[35] To prevail on a cybersquatting claim, a

18 plaintiff must show that: "(1) the defendant registered, trafficked in, or used a domain name; (2) the

19 domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3)

20 the defendant acted with bad faith intent to profit from that mark."[36] Plaintiffs have failed to show

21
22         [32] *Id.* at § 8131(1)(B).
23         [33] *See* Doc. 75-10, at 2.
24         [34] *Id.*
25         [35] *See* 15 U.S.C. § 1125(d).
26
27         [36] *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1219 (9th Cir. 2012) (citations
   and quotations omitted).
28

1    by admissible evidence essential elements of these cybersquatting claims, precluding entry of

2    judgment in their favor.

3         Jennifer and Natalia Randazza's claims fail as a matter of law because they have not alleged

4    or shown any facts to support common-law trademarks in their personal names. Thus, Jennifer and

5    Natalia are not entitled to summary judgment in their favor on these claims.

6         Assuming Mr. Randazza could show a common law trademark in his name, he has not

7    demonstrated Defendants acted with bad-faith intent to profit from that mark. To determine whether

8    Defendants acted in bad faith, the Court considers the nine nonexclusive factors outlined in §

9    1125(d)(1)(b): (1) the trademark or intellectual property rights of the defendants in the domain name;

10   (2) the extent to which the domain name is the legal name of a person, (3) defendant's prior use of

11   the domain name in connection with a bona fide offering of goods and services, (4) whether the

12   defendant made a bona fide noncommercial fair use of the domain name, (5) defendant's intent to

13   divert consumers from the mark owner's online location to a site accessible under the domain name

14   that could harm the goodwill represented by the mark, either for commercial gain or with the intent

15   to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship,

16   affiliation, or endorsement of the site, (6) whether the defendant offered to transfer, sell, or otherwise

17   assign the domain name to the mark owner or any third party for financial gain without having used,

18   or having an intent to use, the domain name, (7) whether the defendant provided false contact

19   information when registering the domain name, (8) whether the defendant registered multiple

20   domain names which defendant knew were identical to or confusingly similar to marks of others that

21   are distinctive at the time of registration of such domain names, and (9) the extent to which the

22   trademark incorporated into the domain name is distinctive.[37] Mr. Randazza has not shown by

23   admissible evidence that the non-exhaustive factors balance in his favor. Although some factors

24   may balance in his favor, such as factors 1-3, others arguably do not, such as 4-7. As Plaintiffs have

25   failed to prove an essential element of these claims, summary judgment is denied.

26

27      [37] *Id.*

*Ex - 2*

Case 16-01111-abl    Doc 36    Entered 11/02/17 16:17:49    Page 101 of 259
Case 2:12-cv-02040-JAD-PAL    Document 200    Filed 04/10/14    Page 12 of 20

*Exhibit 2*

1

2

    **3.**    ***Genuine issues of material fact preclude summary judgment on claim 6 for Right of Publicity under NRS § 597.810.***

3        Plaintiffs' sixth claim alleges that Defendants' registration of the domain names containing

4  the entirety or part of the Randazzas' personal names violated their rights of publicity under Nevada

5  law.  NRS § 597.810 prohibits "[a]ny commercial use of the name, voice, signature, photograph or

6  likeness of another by a person, firm or corporation without first having obtained written consent for

7  the use. . . ."[38]  The statute defines "commercial use" as "the use of the name, voice, signature,

8  photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of

9  advertising, selling or soliciting the purchase of any product, merchandise, goods or service."[39]

10        Genuine issues of material fact also preclude entry of judgment in Plaintiffs' favor on this

11  privacy claim.  The Randazzas have failed to show by admissible evidence that Defendants intended

12  to advertise, sell, or solicit the purchase of any product, merchandise, goods, or service.  Indeed,

13  Plaintiffs have offered no admissible evidence that tends to show any commercial use of the their

14  names.  Thus, summary judgment is also denied on this claim.

15

16

    **4.**    ***Claim 7 for Common Law Right of Publicity is legally untenable.***

17

        Plaintiffs' seventh claim alleges that Defendants' registration of the domain names

containing the entirety or part of the Randazzas' personal names violated their common law rights of

18

publicity.  "Nevada has codified the right of publicity tort."[40]  Because "[t]he statute provides a

19

complete and exclusive remedy for right of publicity torts," Nevada law does not recognize a

20

common law right of publicity.[41]  As Nevada law does not recognize this cause of action, Plaintiffs

21

have failed to state a viable claim under this legal theory, and this claim is dismissed with

22

23

24

    [38] NRS § 597.810

    [39] *Id.* at § 597.770(1).

25

26

    [40] *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1285 (9th Cir. 1995).

27

    [41] *Id.*

28

1  prejudice.[42]

2          **5.      *Genuine issues of material fact preclude summary judgment on claim 8 for***
3                    ***common law intrusion upon seclusion.***

4          The Randazzas' eighth claim alleges that Defendants' registration of five of the domain

5  names containing the entirety or part of their names amounted to a common law intrusion upon

6  seclusion.  To recover for the tort of intrusion, a plaintiff must prove that there was an intentional

7  intrusion (physical or otherwise) on his seclusion that would be highly offensive to a reasonable

8  person.[43]  "[T]o have an interest in seclusion or solitude which the law will protect, a plaintiff must

9  show that he or she had an actual expectation of seclusion or solitude and that that expectation was

10 objectively reasonable."[44]  Generally, there is a decreased expectation of privacy in the workplace

11 and for individuals who have interjected themselves into the public sphere.[45]

12         Genuine issues of material fact preclude entry of judgment in Plaintiffs' favor on this

13 intrusion claim.  Plaintiffs Jennifer and Natalia have failed to show by admissible evidence that the

14 mere registration of a domain name would be highly offensive to a reasonable person, and Mr.

15 Randazza has failed to show that registering the domain names, coupled with the comments

16 contained in the two admissible blog posts, would be highly offensive to the reasonable person as a

17 matter of law.  Mr. Randazza has a decreased expectation of privacy in his workplace.  By his own

18 characterization, he is an attorney "renowned through the United States and the world for expertise

19 in First Amendment, intellectual property, and Internet law."[46]  He authors "a blog about various

20

21

22         [42] *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (citing *Wong v. Bell*, 642
23 F.2d 359, 362 (9th Cir. 1981) (holding that a district court may dismiss claims *sua sponte* pursuant to
   Rule 12(b)(6), without notice, where a claimant could not possibly win relief.).

24         [43] *Berosini*, 895 P.2d at 1279.

25         [44] *Id.* (citations omitted).

26         [45] *Id.* at 1281 n.20.

27         [46]Doc. 75-1, at ¶ 1.

28                                              Page 13 of 20

$Exhibit\ 2$

1   legal issues," and the blog is an ABA-recognized top blog website.[47]  On his blog, he goes to great

2   lengths to explain "why [he has] the audacity to believe that [he is] qualified to teach [others] a thing

3   or two."[48]  He touts himself as having "experience and expertise in all areas of First Amendment and

4   entertainment law matters."[49]  He boasts about "get[ting] to fight 'the good fight' – protecting all of

5   our First Amendment freedoms," and openly proclaims that he has "represented adult entertainment

6   establishments against socially conservative communities."[50]

7        By talking about his experience and the clients he represents, Mr. Randazza invites

8   commentary on his work as an attorney and criticism from those who oppose the positions of his

9   clients.  Mr. Randazza may be perceived to have interjected himself into the public sphere by making

10  television and radio guest appearances, giving quotes and interviews in newspapers, magazines, and

11  other publications, appearing at speaking engagements, and having an ABA-recognized Top blog

12  website, all as reflected on his résumé.[51]  Considering his intentional and deliberate professional

13  exposure and interjection into the public sphere and the accompanying decrease in his privacy

14  interests, he has not demonstrated as a matter of law that he had an actual or reasonable expectation

15  that he would not be criticized based on his work as an attorney or that he would not be thought

16  about unfavorably by people in opposition to his work.  As the Randazzas have failed to establish

17  essential elements of this claim, summary judgment in their favor is simply not available.

18
19      **6.      *Genuine issues of material fact preclude summary judgment on claim 9 for Civil
        Conspiracy.***

20       Plaintiffs' ninth claim alleges that Bernstein and Cox colluded to register the domain names

21  containing the entirety or part of the Randazzas' names to violate their rights.  To state a valid claim

22

23      [47] Docs. 75-11, 75-20.

24      [48] Doc. 75-12.

25      [49] *Id.*

26      [50] *Id.*

27      [51] Docs. 75-11, 75-20.

28                                    Page 14 of 20

1  for civil conspiracy, a plaintiff must show: (1) defendants, by acting in concert, intended to

2  accomplish an unlawful objective for the purpose of harming the plaintiff; and (2) the plaintiff

3  sustained damages as a result.[52]  "A civil conspiracy claim operates to extend, beyond the active

4  wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the

5  wrongdoer's acts."[53]

6        Genuine issues of material fact also preclude entry of judgment in the Randazzas' favor on

7  this theory.  They have not demonstrated by admissible evidence that Cox and Bernstein acted in

8  concert.  The only admissible evidence on this point is a blog post purportedly written by Cox.

9  Plaintiffs claim that Cox "states that Bernstein is her business partner."[54]  However, the proffered

10  evidence does not compel that conclusion.  The blog post refers in different places to the website

11  MarcRandazza.me, that Bernstein is a co-defendant in this case, and that Cox and her business

12  partner have been customers of Godaddy Inc. for several years.[55]  The blog does not, as Plaintiffs

13  suggest, identify or definitely reflect that Eliot Bernstein is the business partner Cox is referring to in

14  the post.  And, even if Bernstein were the partner Cox mentions, the post does not prove that

15  Bernstein and Cox colluded to violate Plaintiffs' rights.  For that reason, summary judgment on this

16  claim is also not available.

17  **C.    Defendant Cox is not entitled to summary judgment on her claims.**

18        Cox has moved for summary judgment on her original "Counter-Complaint."[56]  That

19  "Counter-Complaint" has since been stricken, and Cox was given leave to re-file an amended

20

21

---

22    [52] *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (citing
   *Collins v. Union Fed. Savings & Loan*, 662 P.2d 610, 622 (Nev. 1983)).

23

24    [53] *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (quoting 16 Am.Jur. 2D
   Conspiracy § 57 (1998)).

25    [54] Doc. 75-1, at ¶ 29.

26    [55] *Id.*

27    [56] Doc. 79.

28                                   Page 15 of 20

1  counterclaim.[57]  "An amended complaint supercedes the original complaint and renders it without

2  legal effect."[58]  As Cox's claims in the original "Counter-Complaint" are without legal effect, the

3  motion for summary judgment on those original claims is now moot.  Accordingly, Cox's motion for

4  summary judgment on her dismissed, superseded "Counter-Complaint" claims is moot and denied.

**Cox's Motions for Various Relief**

6  **A.    Motion for Sanctions (#184)**

7       Cox has made a habit of filing "notices" combined with "motions" comprised of single-

8  spaced pages of allegations of miscellaneous conduct by the Randazzas and scores of other people

9  and entities both connected with and wholly disassociated from this litigation.  Document 184 is

10  another example of this type of filing by Cox.  From this generally nonsensical document, into which

11  Cox has cut and pasted a number of other documents for reasons unclear to this Court, the Court

12  divines Cox's request that Randazza—himself a lawyer—be sanctioned for "acting rogue as his own

13  attorney" in this litigation because he emailed her directly and offered to discuss settlement.  Doc.

14  184 at 13.  She also asks the Court to "Sanction Ronald Green and J. Malcom DeVoy of Randazza

15  Legal Group" and essentially order Randazza to hire different attorneys.

16       Cox offers absolutely no legal basis for this Court to award the relief she seeks.  Randazza is

17  not prohibited from emailing Cox, and Cox has no authority over whom Randazza retains as his

18  counsel.  This is also not the first time that Cox has asked for—and been denied— this relief.[59]  Cox

19  is again reminded that filing multiple, duplicative requests for the same relief is an abusive litigation

20  tactic that is sanctionable in this circuit.[60]  As Cox has been repeatedly warned about the impropriety

21  of this conduct, any future request for this same relief based upon these same allegations will be

22  denied without further discussion.

[57] Doc. 164.

[58] *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012).

[59] *See* Doc. 137.

[60] *See, e.g., Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992).

Page 16 of 20

Case 16-01111-abl    Doc 36    Entered 11/02/17 16:17:49    Page 106 of 259
Case 2:12-cv-02040-JAD-PAL    Document 200    Filed 04/10/14    Page 17 of 20
*Exhibit 2*

1    **B.    Motion to Relate Case to State Court Matter (#195)**

2        By document 195, Cox moves "to legally relate" a case filed and pending in the Eighth

3    Judicial District Nevada state court.[61] Cox asserts that the claim is "almost exactly similar" to this

4    one.[62] She attaches the complaint in that case reflecting that Opinion Corporation, represented by

5    Marc Randazza, has sued Nevada Corporate Headquarters, Inc. for abuse of process.[63]

6        Although the Local Rules of Practice allow parties to file a notice of related cases *pending in*

7    *this courthouse*,[64] the case Cox references is not pending in this court; it does not involve the same

8    parties, similar claims, the same property, transaction or event, or similar questions of law or fact.

9    And Cox offers no authority to support the notion that this Court can "legally relate" these two cases

10   for any purpose. As there is no legal basis for the relief Cox seeks by this motion, this request is

11   denied.

12       Cox also uses this document to again reiterate (without citing any legal authority in violation

13   of Local Rule 7-2(a)) her request that the Court "make" the Randazzas "get outside counsel."[65] For

14   the reasons set forth above, that request is again denied.

15   **C.    Motion for Reconsideration and for Legal Advice (#197)**

16       Document 197 is captioned a "Notice," "Reply," and "Motion to allow Cox to Counter Sue

17   Jennifer Randazza and x." Like documents 184 and 195, this one is primarily incoherent and

18   contains the same collection of many-times-reiterated allegations with little discernible connection to

19   this case. It is largely duplicative of documents 184 and 195 and a myriad of Cox's filings before

20   them. But it contains the additional statement, "Cox moves this court to allow Cox to counter sue

21   Jennifer Randazza and to either remove Jennifer and the minor or allow [Cox] to counter sue the

22

23       [61] Doc. 195.

24       [62] Doc. 195, at 1.

25       [63] Doc. 195-1, at 19.

26       [64] LR 7-2.1.

27       [65] Doc. 195, at 5.

28                                    Page 17 of 20

1    assets of BOTH."[66] Her desire to add counterclaims against these plaintiffs was apparently spurred

2    by a "settlement offer and threatening letter" sent to allegedly resolve the instant case.[67] Cox

3    characterizes the communications as "[a] ridiculous bullying settlement offer" "for money they know

4    [she doesn't] have and for complete lawless reasons."[68]

5        Although Cox offers no legal authority for her request, it appears that this is really a request

6    for reconsideration of the Court's February 14, 2014, Order permitting Cox to file a limited

7    counterclaim against Plaintiff Marc Randazza **only**.[69] There are at least two fatal problems with this

8    request. First, Cox has not demonstrated a valid basis for reconsideration. Reconsideration is

9    available under Rule 60(b) of the Federal Rules of Civil Procedure upon a showing of (1) mistake,

10    inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the

11    judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief from

12    the judgment.[70] A motion for reconsideration must set forth some valid reason why the court should

13    revisit its prior order and facts or law of a "strongly convincing nature" to support reversing the prior

14    decision.[71]

15        Cox has not even mentioned the Court's prior decision, let alone set forth facts or law of a

16

17        [66] Doc. 197 at 18; *see also id.* at 19.

18        [67] Doc. 197, at 20.

19        [68] *Id.* at 21.

20        [69] Doc. 162. Cox's counterclaim has a long history. After Plaintiffs filed the Complaint, Cox
     filed an "amended counterclaim" against Plaintiff Marc Randazza and several dozen non-parties.
21    Doc. 62. Judge Gloria Navarro struck the "counterclaim" as an improper third-party complaint
     based on inclusion of the non-parties, and Cox moved to reconsider that decision, pointing out that
22    the order swept within its ambit true counterclaims against the Plaintiff Marc Randazza, which
     should have been permitted. Docs 89, 116. The Court agreed and granted Cox's motion in part,
23    allowing her to file a new, proper compulsory and permissive counterclaim against Plaintiff Marc
     Randazza. Doc. 162. At that time, Cox did not seek to add any claims against Jennifer and Natalia
24    Randazza, *see* Doc. 116; she has since filed a new counterclaim. Doc. 165. The Court has not
     evaluated whether the new pleading complies with the order and reserves any answer to that
25    question.

26        [70] Fed. R. Civ. P. 60(b); *see also Stewart v. Dupnik*, 243 F.3d 549, 549 (9th Cir. 2000).

27        [71] *Frasure v. United States*, 256 F.Supp.2d 1180, 1183 (D. Nev. 2003).

28                                    Page 18 of 20

1  "strongly convincing nature" to justify reconsideration of it. Any allegedly improper actions taken

2  by Jennifer and Natalia Randazza's attorney in the prosecution of this case cannot be remedied with

3  otherwise baseless and retaliatory counterclaims. And the Court's review of the alleged "settlement

4  offer and threatening letter" shows no apparent impropriety.[72] Naturally, Cox disagrees with

5  Plaintiffs' position, but her disagreement does not make Plaintiffs' offer of settlement "ridiculous" or

6  "bullying." Cox's failure to satisfy the reconsideration standard requires the denial of her request.

7      Cox's failure to comply with Local Rule 15-1 is a second, independent reason for denial of

8  the request for permission to assert counterclaims against these plaintiffs. LR 15-1 contains the

9  requirement that a party asking for permission to file an amended pleading "attach the proposed

10  amended pleading" to the motion to amend.[73]  cox attaches no proposed amended counterclaim, and

11  she offers zero explanation of what claims she believes she could plead against these plaintiffs,

12  leaving this Court without any meaningful way to evaluate the merits of her request.

13      Cox has been cautioned that she must learn the rules of this Court if she is going to serve as

14  her own counsel in this case. She is again cautioned that her *pro se* status does not give her a pass

15  from compliance with all rules of this Court.[74] And she is again cautioned that her continued filing

16  of motions, notices, and requests without a valid, articulated legal basis will result in her filings

17  being stricken or summarily denied, and because of the lengthy history of these violations in this

18  case despite repeated warnings, **sanctions will also be assessed**.

19      Finally, this document contains the additional statement that "Cox moves this court to advise

20

21

22

23  [72] Doc. 197, at 16, 18, and 19. Cox has divided and included commentary throughout her quotes of the allegedly improper communication.

24  [73] L.R. 15-1(a).

25  [74] *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th
26  Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure."); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) ("[P]ro se litigants in
27  the ordinary civil case should not be treated more favorably than parties with attorneys of record.").

28                    Page 19 of 20

1  her on what to do" in this litigation.[75]  The Court cannot give legal advice or counsel pro se litigants,

2  save for recommending that they seek the advice of a trained attorney.  The United States Supreme

3  Court has itself acknowledged that requiring trial judges to explain the details of federal procedure or

4  act as a pro se litigant's counsel "would undermine district judges' role as impartial

5  decisionmakers."[76]  And the Ninth Circuit Court of Appeals has explained, for a judge to give advice

6  to a pro se litigant on the legal process "would entail the district court's becoming a player in the

7  adversary process rather than remaining its referee."[77]  The Court directs Cox to the *Pro Se*

8  *Assistance* tab on the district court's website: www.nvd.uscourts.gov and the suggests that she

9  contact the Nevada Bar Association (www.nvbar.org) for further guidance in locating self-help or

10  legal aid services.

11  **Conclusion**

12  Accordingly, **IT IS HEREBY ORDERED** that:

13      1.      Plaintiffs' Motion for Summary Judgment (Doc. 75) is DENIED;

14      2.      Defendant's Motion for Summary Judgment (Doc. 79) is DENIED as moot;

15      3.      Defendant's Motion to Sanction (Doc. 184) is DENIED;

16      4.      Defendant's Motion to Relate Case (Doc. 195) is DENIED; and

17      5.      Defendant's Motion to Allow Cox to Countersue Jennifer Randazza and x

18              (Doc. 197) is DENIED.

19  Dated: April 10, 2014.

20                                          _____

21                                          Jennifer A. Dorsey
                                            United States District Judge

22

23

24  _____

25  [75] Doc. 197 at 21.

26  [76] *Plier v. Ford*, 542 U.S. 225, 232 (2004).

27  [77] *Jacobsen*, 790 F.2d at 1366.

28                              Page 20 of 20


# WIPO

WORLD **INTELLECTUAL PROPERTY** ORGANIZATION

# WIPO Arbitration and Mediation Center

## ADMINISTRATIVE PANEL DECISION

## Joseph Leccese v. Crystal Cox

## Case No. D2011-0679

### 1. The Parties

Complainant is Joseph Leccese of New York, New York, United States of America represented by Proskauer Rose, LLP, United States of America.

Respondent is Crystal Cox of Eureka, Montana, United States of America.

### 2. The Domain Name and Registrar

The disputed domain name <josephleccese.com> (the "Domain Name") is registered with GoDaddy.com, Inc.

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on April 15, 2011. On April 18, 2011, the Center transmitted by e-mail to GoDaddy.com, Inc. a request for registrar verification in connection with the Domain Name. On April 18, 2011, GoDaddy.com, Inc. transmitted by e-mail to the Center its verification response confirming that Respondent is listed as the registrant.

The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified Respondent of the Complaint, and the proceedings commenced on April 27, 2011. In accordance with the Rules, paragraph 5(a), the due date for Response was May 17, 2011. Respondent did not submit any response. Accordingly, the Center notified Respondent's default on May 18, 2011. Respondent filed a Response on May 20, 2011. Complainant sought leave to file a supplemental submission to address certain alleged inaccuracies and legal assertions contained in the Response, but the Panel in its discretion chose not to entertain a supplemental submission since its decision ultimately rested on the Complaint (and annexes thereto) itself.

The Center appointed Robert A. Badgley, Andrew D.S. Lothian and Debra J. Stanek as panelists in this matter on June 20, 2011. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

### 4. Factual Background

Complainant contends that he is a "well-known and highly respected attorney" who has been practicing law for over 25 years, and is head of the Sports Law Group of Proskauer Rose, LLP. Complainant is one of the partners of the Proskauer law firm, and since January 2011 has been Chairman of the firm.

Complainant alleges further that he has been named a "Super Lawyer" by *New York Super Lawyers*, a "Leading Dealmaker in the Nation" by *Lawdragon 500*, one of "45 Stars of the Private Bar" by *The American Lawyer*, and repeatedly named as one of the *Best Lawyers in America* by that publication.

Complainant also alleges that he has been repeatedly quoted, interviewed, and profiled in the media, including *Sports Business Journal*, *The Atlanta Journal-Constitution*, *Legal Times*, *Bloomberg News*, *The New York Post*, *Metropolitan Corporate Counsel*, and *The Seattle Post-Intelligencer*. Complainant claims that he "practices law under his name, JOSEPH LECCESE," and he "renders legal services in exchange for fees."

Complainant notes that his name is featured on the Proskauer website, and appears on the firm's promotional materials such as client newsletters. His name is also "featured prominently on bills that are sent out to clients for Complainant's legal services". There is no allegation or proof, however, that Complainant enters into legal services contracts with clients in his own name, as opposed to as a lawyer of the Proskauer firm. Nor is there any allegation or proof that the clients pay Complainant, as opposed to paying the Proskauer firm.

The Domain Name was registered on October 4, 2010. The website to which the Domain Name resolves contains commentary highly critical of Complainant and the Proskauer law firm, as well as other Proskauer lawyers and other individuals. Respondent describes herself as an "Investigative Blogger," and it is alleged in the Complaint that Respondent is "parroting Eliot Bernstein, who has been engaged in a bizarre and defamatory campaign against Proskauer Rose and its attorneys for many years – despite losing at every turn". By way of background, the Complaint states that in 2007, Bernstein and another plaintiff sued numerous defendants in federal court alleging that the defendants had stolen technology. These defendants are also alleged to have contributed to the Enron bankruptcy and the presidency of George W. Bush. The Proskauer law firm was among the defendants named in the *Bernstein* suit. The suit was dismissed in 2008, and the appeal was dismissed in 2010.

According to the Complaint, Respondent also maintains a website at "www.crystalcox.com" at which further criticism of the Proskauer firm is levied.

## 5. Parties' Contentions

### A. Complainant

Complainant's main factual contentions are set forth in the Factual Background section above. Complainant argues that he has satisfied all three elements required for relief under the Policy, and he seeks a transfer of the Domain Name from Respondent. Complainant's specific arguments under the Policy will be taken up in the sections below as appropriate.

### B. Respondent

Respondent did not timely reply to Complainant's contentions, but did submit a Response after having been declared in default. The Panel has considered the Response, but nothing therein informs the Panel's decision in this proceeding.

## 6. Discussion and Findings

Paragraph 4(a) of the Policy lists the three elements which Complainant must satisfy with respect to the Domain Name:

(i) the Domain Name is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

(ii) Respondent has no rights or legitimate interests in respect of the Domain Name; and

(iii) the Domain Name has been registered and is being used in bad faith.

### A. Identical or Confusingly Similar

The first hurdle Complainant must clear is to establish that he has rights in a trademark to which the Domain Name is identical or confusingly similar. The asserted mark is Complainant's personal name, GREGG MASHBERG.

Complainant relies on the evidence set forth above in the Factual Background section, as well as certain previous decisions under the Policy. Complainant's entire argument is set forth below:

As a result of these commercial activities under Complainant's name, Complainant has developed trademark rights in his name. See, e.g., Roland Mouret v. Domains by Proxy, Inc. and Sonia Long, WIPO Case No. D2009-1435 (Complainant had trademark rights in his personal name, which he used in connection with his fashion design business); Kotak Mahindra Bank Limited v. Richard Brown, WIPO Case No. D2008-0243 (Complainant had developed trademark rights in his name through being a well-known business man and chairman of a bank). Respondent's use of Complainant's name on her web site provides further evidence that Complainant is known by his name and is identified with the legal services he offers through Proskauer Rose. See Kotak Mahindra Bank Limited v. Richard Brown, WIPO Case No. D2008-0243 ("Complainant's evidence is corroborated by Respondent's web page […] [this] text clearly identifies the Complainant with the bank and vice versa").

Although "the UDRP does not specifically protect personal names," the "consensus view" is that "in situations where an unregistered personal name is being used for trade or commerce, the complainant can establish common law trademark rights in the name." Chung Mong Koo v. Individual, WIPO Case No. D2005-1068. The evidence set forth above makes clear that the name JOSEPH LECCESE is being used for trade and commerce.

The Panel does not agree with Complainant's conclusion. There are certainly instances where an unregistered personal name may acquire common law trademark rights through use in commerce as a source identifier of goods or services. According to the WIPO Overview 2, the "consensus view" under section 1.7 (entitled "What needs to be shown for the complainant to successfully assert common law or unregistered trademark rights?") states as follows:

The complainant must show that the name has become a distinctive identifier associated with the complainant or its goods or services. Relevant evidence of such "secondary meaning" includes length and amount of sales under the trademark, the nature and extent of advertising, consumer surveys and media recognition. The fact that the secondary meaning may only exist in a small geographical area does not limit the complainant's rights in a common law trademark. For a number of reasons, including the nature of the Internet, the availability of trademark-like protection under passing-off laws, and considerations of parity, unregistered rights can arise for the purposes of the UDRP even when the complainant is based in a civil law jurisdiction. However, a conclusory allegation of common law or unregistered rights (even if undisputed) would not normally suffice; specific assertions of relevant use of the claimed mark supported by evidence as appropriate would be required.

The evidence in this case falls short. The record before the Panel suggests that Complainant is a highly respected, prominent lawyer who is a partner with a major law firm. There is insufficient evidence here that Complainant markets or provides services independently of the Proskauer law firm. Rather, it appears that the Proskauer firm is the platform on which Complainant provides his legal services.

Nor is there any evidence of record that Complainant has spent money advertising his name apart from the Proskauer firm, or billed clients in his own name. Further, there is insufficient evidence in the record that the legal community regards Complainant as the driving force behind, or alter ego of, the Proskauer firm.

For these reasons, Complainant's reliance on the *Roland Mouret* and *Kotak* cases is misplaced. Complainant's provided evidence does not come close to matching the evidence described by the panel in the decisions in those cases. In the *Kotak* case, complainant Uday Kotak apparently presented evidence that his name was so closely associated with the Kotak Mahindra Bank that he had protected trademark rights in his name. Further, his surname Kotak was also the first word in the bank's name. As the Panel in that case observed:

The uncontradicted evidence of the Complainant in this case is that the commercial community identifies the Complainant with the bank which he founded and which Kotak Mahindra Bank Limited continues to operate under his leadership. He is seen by the media and the public, particularly in India, as the alter ego and driving force behind the company.

Complainant's reliance on *Roland Mouret* fares no better. The complainant in that case used his personal name Roland Mouret in connection with his fashion design business. In that commercial context, a designer's personal name has obvious, and sometimes almost exclusive, value as a trademark. The context of an accomplished partner at a prominent, well-known law firm is generally not analogous.

In sum, the Panel does not find adequate support in this record that Complainant has acquired common law trademark rights in his personal name.

Accordingly, because the Panel finds that Policy paragraph 4(a)(i) has not been satisfied, there is no need to consider the other two elements of a successful complaint under the Policy.


**7. Decision**

For all the foregoing reasons, the Complaint is denied.


Robert A. Badgley
Presiding Panelist

Andrew D.S. Lothian
Panelist

Debra J. Stanek
Panelist

Date: June 30, 2011

# WIPO

WORLD **INTELLECTUAL PROPERTY** ORGANIZATION

# WIPO Arbitration and Mediation Center

## ADMINISTRATIVE PANEL DECISION

## Gregg M. Mashberg v. Crystal Cox

## Case No. D2011-0677

### 1. The Parties

Complainant is Gregg M. Mashberg of New York, New York, United States of America represented by Proskauer Rose, LLP, United States of America.

Respondent is Crystal Cox of Eureka, Montana, United States of America.

### 2. The Domain Name and Registrar

The disputed domain name <greggmashberg.com> (the "Domain Name") is registered with GoDaddy.com, Inc.

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on April 15, 2011. On April 18, 2011, the Center transmitted by e-mail to GoDaddy.com, Inc. a request for registrar verification in connection with the Domain Name. On April 18, 2011, GoDaddy.com, Inc. transmitted by e-mail to the Center its verification response confirming that Respondent is listed as the registrant.

The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified Respondent of the Complaint, and the proceedings commenced on April 27, 2011. In accordance with the Rules, paragraph 5(a), the due date for Response was May 17, 2011. Respondent did not submit any response. Accordingly, the Center notified Respondent's default on May 18, 2011. Respondent filed a Response on May 20, 2011. Complainant sought leave to file a supplemental submission to address certain alleged inaccuracies and legal assertions contained in the Response, but the Panel in its discretion chose not to entertain a supplemental submission since its decision ultimately rested on the Complaint (and annexes thereto) itself.

The Center appointed Robert A. Badgley, Andrew D.S. Lothian and Debra J. Stanek as panelists in this matter on June 20, 2011. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

### 4. Factual Background

Complainant contends that he is a "well-known and highly respected attorney" who has been practicing law for over 33 years, and is head of the Securities Litigation & Enforcement Group and former Chair of the Litigation & Dispute Resolution Department of Proskauer Rose, LLP. Complainant is one of the partners of the Proskauer law firm.

Complainant alleges further that he was ranked as a "star" in the Fourth Edition of *Benchmark Litigation: The Definitive Guide to America's Leading Litigation Firms and Attorneys*. Complainant also has been repeatedly named a "Super Lawyer" by *New York Super Lawyers* and repeatedly named as one of the *Best Lawyers in America* by that publication.

Complainant also alleges that he has been repeatedly quoted in the media, including *The New York Times Magazine*, *Bloomberg Newswires*, *The New York Daily News*, and the *ABA Journal*. Complainant claims that he "practices law under his name, GREGG MASHBERG," and he "renders legal services in exchange for fees."

Complainant notes that his name is featured on the Proskauer website, and appears on the firm's promotional materials such as "client alerts." His name is also "featured prominently on bills that are sent out to clients for Complainant's legal services." There is no allegation or proof, however, that Complainant enters into legal services contracts with clients in his own name, as opposed to as a lawyer of the Proskauer firm. Nor is there any allegation or proof that the clients pay Complainant, as opposed to paying the Proskauer firm.

The Domain Name was registered on October 27, 2010. The website to which the Domain Name resolves contains commentary highly critical of Complainant and the Proskauer law firm, as well as other Proskauer lawyers and other individuals. Respondent describes herself as an "Investigative Blogger," and it is alleged in the Complaint that Respondent is "parroting Eliot Bernstein, who has been engaged in a bizarre and defamatory campaign against Proskauer Rose and its attorneys for many years – despite losing at every turn". By way of background, the Complaint states that in 2007, Bernstein and another plaintiff sued numerous defendants in federal court alleging that the defendants had stolen technology. These defendants are also alleged to have contributed to the Enron bankruptcy and the presidency of George W. Bush. The Proskauer law firm was among the defendants named in the *Bernstein* suit. The suit was dismissed in 2008, and the appeal was dismissed in 2010.

According to the Complaint, Respondent also maintains a website at "www.crystalcox.com" at which further criticism of the Proskauer firm is levied.

## 5. Parties' Contentions

### A. Complainant

Complainant's main factual contentions are set forth in the Factual Background section above. Complainant argues that he has satisfied all three elements required for relief under the Policy, and he seeks a transfer of the Domain Name from Respondent. Complainant's specific arguments under the Policy will be taken up in the sections below as appropriate.

### B. Respondent

Respondent did not timely reply to Complainant's contentions, but did submit a Response after having been declared in default. The Panel has considered the Response, but nothing therein informs the Panel's decision in this proceeding.

## 6. Discussion and Findings

Paragraph 4(a) of the Policy lists the three elements which Complainant must satisfy with respect to the Domain Name:

(i) the Domain Name is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

(ii) Respondent has no rights or legitimate interests in respect of the Domain Name; and

(iii) the Domain Name has been registered and is being used in bad faith.

### A. Identical or Confusingly Similar

The first hurdle Complainant must clear is to establish that he has rights in a trademark to which the Domain Name is identical or confusingly similar. The asserted mark is Complainant's personal name, GREGG MASHBERG.

Complainant relies on the evidence set forth above in the Factual Background section, as well as certain previous decisions under the Policy. Complainant's entire argument is set forth below:

As a result of these commercial activities under Complainant's name, Complainant has developed trademark rights in his name. See, e.g., *Roland Mouret v. Domains by Proxy, Inc. and Sonia Long*, WIPO Case No. D2009-1435 (Complainant had trademark rights in his personal name, which he used in connection with his fashion design business); *Kotak Mahindra Bank Limited v. Richard Brown*, WIPO Case No. D2008-0243 (Complainant had developed trademark rights in his name through being a well-known business man and chairman of a bank). Respondent's use of Complainant's name on her web site provides further evidence that Complainant is known by his name and is identified with the legal services he offers through Proskauer Rose. See *Kotak Mahindra Bank Limited v. Richard Brown*, WIPO Case No. D2008-0243 ("Complainant's evidence is corroborated by Respondent's web page […] [this] text clearly identifies the Complainant with the bank and vice versa").

Although "the UDRP does not specifically protect personal names," the "consensus view" is that "in situations where an unregistered personal name is being used for trade or commerce, the complainant can establish common law trademark rights in the name." *Chung, Mong Koo and Hyundai Motor Company v. Individual*, WIPO Case No. D2005-1068. The evidence set forth above makes clear that the name GREGG MASHBERG is being used for trade and commerce.

The Panel does not agree with Complainant's conclusion. There are certainly instances where an unregistered personal name may acquire common law trademark rights through use in commerce as a source identifier of goods or services. According to the WIPO Overview 2, the "consensus view" under section 1.7 (entitled "What needs to be shown for the complainant to successfully assert common law or unregistered trademark rights?") states as follows:

The complainant must show that the name has become a distinctive identifier associated with the complainant or its goods or services. Relevant evidence of such "secondary meaning" includes length and amount of sales under the trademark, the nature and extent of advertising, consumer surveys and media recognition. The fact that the secondary meaning may only exist in a small geographical area does not limit the complainant's rights in a common law trademark. For a number of reasons, including the nature of the Internet, the availability of trademark-like protection under passing-off laws, and considerations of parity, unregistered rights can arise for the purposes of the UDRP even when the complainant is based in a civil law jurisdiction. However, a conclusory allegation of common law or unregistered rights (even if undisputed) would not normally suffice; specific assertions of relevant use of the claimed mark supported by evidence as appropriate would be required.

The evidence in this case falls short. The record before the Panel suggests that Complainant is a highly respected, prominent lawyer who is a partner with a major law firm. There is insufficient evidence here that Complainant markets or provides services independently of the Proskauer law firm. Rather, it appears that the Proskauer firm is the platform on which Complainant provides his legal services.

Nor is there any evidence of record that Complainant has spent money advertising his name apart from the Proskauer firm, or billed clients in his own name. Further, there is no evidence in the record that the legal community regards Complainant as the driving force behind, or alter ego of, the Proskauer firm.

For these reasons, Complainant's reliance on the *Roland Mouret* and *Kotak* cases is misplaced. Complainant's provided evidence does not come close to matching the evidence described by the panel in the decisions in those cases. In the *Kotak* case, complainant Uday Kotak apparently presented evidence that his name was so closely associated with the Kotak Mahindra Bank that he had protected trademark rights in his name. Further, his surname Kotak was also the first word in the bank's name. As the Panel in that case observed:

The uncontradicted evidence of the Complainant in this case is that the commercial community identifies the Complainant with the bank which he founded and which Kotak Mahindra Bank Limited continues to operate under his leadership. He is seen by the media and the public, particularly in India, as the alter ego and driving force behind the company.

Complainant's reliance on *Roland Mouret* fares no better. The complainant in that case used his personal name Roland Mouret in connection with his fashion design business. In that commercial context, a designer's personal name has obvious, and sometimes almost exclusive, value as a trademark. The context of an accomplished partner at a prominent, well-known law firm is generally not analogous.

In sum, the Panel does not find adequate support in this record that Complainant has acquired common law trademark rights in his personal name.

Accordingly, because the Panel finds that Policy paragraph 4(a)(i) has not been satisfied, there is no need to consider the other two elements of a successful complaint under the Policy.


## 7. Decision

For all the foregoing reasons, the Complaint is denied.


Robert A. Badgley
Presiding Panelist

Andrew D.S. Lothian
Panelist

Debra J. Stanek
Panelist

Dated: June 30, 2011



# WIPO

WORLD **INTELLECTUAL PROPERTY** ORGANIZATION

# WIPO Arbitration and Mediation Center

## ADMINISTRATIVE PANEL DECISION

## Allen Fagin v. Crystal Cox

## Case No. D2011-0678

### 1. The Parties

Complainant is Allen Fagin of New York, New York, United States of America represented by Proskauer Rose, LLP, United States of America.

Respondent is Crystal Cox of Eureka, Montana, United States of America, self-represented.

### 2. The Domain Name and Registrar

The disputed domain name <allenfagin.com> (the "Domain Name") is registered with GoDaddy.com, Inc.

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on April 15, 2011. On April 18, 2011, the Center transmitted by e-mail to GoDaddy.com, Inc. a request for registrar verification in connection with the Domain Name. On April 18, 2011, GoDaddy.com, Inc. transmitted by e-mail to the Center its verification response confirming that Respondent is listed as the registrant.

The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified Respondent of the Complaint, and the proceedings commenced on April 27, 2011. In accordance with the Rules, paragraph 5(a), the due date for Response was May 17, 2011. Respondent submitted a filing with the Center on May 20, 2011. Pursuant to Respondent's filings, the Center on May 20, 2011 invited Respondent to submit a list of candidates for co-panelist by May 25, 2011. Respondent did not submit any list in response to the Center's invitation. Complainant sought leave to file a supplemental submission to address certain alleged inaccuracies and legal assertions contained in the Response, but the Panel in its discretion chose not to entertain a supplemental submission since its decision ultimately rested on the Complaint (and annexes thereto) itself.

The Center appointed Robert A. Badgley, Andrew D.S. Lothian and Debra J. Stanek as panelists in this matter on June 20, 2011. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

*Exhibit 5*

## 4. Factual Background

Complainant contends that he is a "well-known and highly respected attorney" who has been practicing law for over 35 years. Complainant also alleges that "from 2005-2011 he was the Chairman of the law firm Proskauer Rose LLP, and thus the public face and voice of the firm". He is also the former co-Chair of the firm's Labor and Employment Law Department.

Complainant alleges further that he has been named a "Super Lawyer" by *New York Super Lawyers*, one of the "Top hundred best lawyers in New York" by *New York magazine*, the "Top employment litigator in the country" by the *National Law Journal*, and repeatedly named as one of the *Best Lawyers in America* by that publication.

Complainant also alleges that he has been repeatedly quoted in the media, including appearances on CNN and quotes in *The New York Times Magazine*, *Crain's New York Business*, *Business Week*, *US News and World Report*, *The New York Law Journal*, and the *ABA Journal*. Complainant claims that he "practices law under his name, ALLEN FAGIN, and he "renders legal services in exchange for fees."

Complainant notes that his name is featured on the Proskauer website, and his name is also "featured prominently on bills that are sent out to clients for Complainant's legal services". There is no allegation or proof however, that Complainant enters into legal services contracts with clients in his own name, as opposed to as a lawyer of the Proskauer firm. Nor is there any allegation or proof that the clients pay Complainant, as opposed to paying the Proskauer firm.

Respondent registered the Domain Name at latest on August 4, 2010. The website to which the Domain Name resolves contains commentary highly critical of Complainant and the Proskauer law firm, as well as other Proskauer lawyers and other individuals. Respondent describes herself as an "Investigative Blogger," and it is alleged in the Complaint that Respondent is "parroting Eliot Bernstein, who has been engaged in a bizarre and defamatory campaign against Proskauer Rose and its attorneys for many years – despite losing at every turn". By way of background, the Complaint states that in 2007 Bernstein and another plaintiff sued numerous defendants in federal court alleging that the defendants had stolen technology. These defendants are also alleged to have contributed to the Enron bankruptcy and the presidency of George W. Bush. The Proskauer law firm was among the defendants named in the *Bernstein* suit. The suit was dismissed in 2008, and the appeal was dismissed in 2010.

According to the Complaint, Respondent also maintains a website at <crystalcox.com> at which further criticism of the Proskauer firm is levied.

## 5. Parties' Contentions

### A. Complainant

Complainant's main factual contentions are set forth in the Factual Background section above. Complainant argues that he has satisfied all three elements required for relief under the Policy, and he seeks a transfer of the Domain Name from Respondent. Complainant's specific arguments under the Policy will be taken up in the sections below as appropriate.

### B. Respondent

Respondent did not timely reply to Complainant's contentions, but did submit a Response after having been declared in default. The Panel has considered the Response, but nothing therein informs the Panel's decision in this proceeding.

## 6. Discussion and Findings

Paragraph 4(a) of the Policy lists the three elements which Complainant must satisfy with respect to the Domain Name:

(i) the Domain Name is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

(ii) Respondent has no rights or legitimate interests in respect of the Domain Name; and

(iii) the Domain Name has been registered and is being used in bad faith.

### A. Identical or Confusingly Similar

The first hurdle Complainant must clear is to establish that he has rights in a trademark to which the Domain Name is identical or confusingly similar. The asserted mark is Complainant's personal name, ALLEN FAGIN.

Complainant relies on the evidence set forth above in the Factual Background section, as well as certain previous decisions under the Policy. Complainant's entire argument is set forth below:

As a result of these commercial activities under Complainant's name, Complainant has developed trademark rights in his name. See, e.g., *Roland Mouret v. Domains by Proxy, Inc. and Sonia Long*, WIPO Case No. D2009-1435 (Complainant had trademark rights in his personal name, which he used in connection with his fashion design business); *Kotak Mahindra Bank v. Richard Brown*, WIPO Case No. D2008-0243 (Complainant had developed trademark rights in his name through being a well-known business man and chairman of a bank). Respondent's use of Complainant's name on her web site provides further evidence that Complainant is known by his name and is identified with the legal services he offers through Proskauer Rose. See *Kotak Mahindra Bank v. Richard Brown*, WIPO Case No. D2008-0243 ("Complainant's evidence is corroborated by Respondent's web page...the text clearly identifies the Complainant with the bank and vice versa").

Although "the UDRP does not specifically protect personal names," the "consensus view" is that "in situations where an unregistered personal name is being used for trade or commerce, the complainant can establish common law trademark rights in the name." *Chung, Mong Koo and Hyundai Motor Company v. Individual*, WIPO Case No. D2005-1068. The evidence set forth above makes clear that the name ALLEN FAGIN is being used for trade and commerce.

The Panel does not agree with Complainant's conclusion. There are certainly instances where an unregistered personal name may acquire common law trademark rights through use in commerce as a source identifier of goods or services. According to the WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Second Edition, the "consensus view" under section 1.7 (entitled "What needs to be shown for the complainant to successfully assert common law or unregistered trademark rights?") states as follows:

The complainant must show that the name has become a distinctive identifier associated with the complainant or its goods or services. Relevant evidence of such "secondary meaning" includes length and amount of sales under the trademark, the nature and extent of advertising, consumer surveys and media recognition. The fact that the secondary meaning may only exist in a small geographical area does not limit the complainant's rights in a common law trademark. For a number of reasons, including the nature of the Internet, the availability of trademark-like protection under passing-off laws, and considerations of parity, unregistered rights can arise for the purposes of the UDRP even when the complainant is based in a civil law jurisdiction. However, a conclusory allegation of common law or unregistered rights (even if undisputed) would not normally suffice; specific assertions of relevant use of the claimed mark supported by evidence as appropriate would be required.

*Exhibit 5*    3/5

The evidence in this case falls short. The record before the Panel suggests that Complainant is a highly respected, prominent lawyer who is a partner with a major law firm. There is insufficient evidence here that Complainant markets or provides services independently of the Proskauer law firm. Rather, it appears that the Proskauer firm is the platform on which Complainant provides his legal services.

Nor is there any evidence of record that Complainant has spent money advertising his name apart from the Proskauer firm, or billed clients in his own name. Further, there is insufficient evidence in the record that the legal community regards Complainant as the driving force behind, or alter ego of, the Proskauer firm.

For these reasons, Complainant's reliance on the *Roland Mouret* and *Kotak* cases is misplaced. Complainant's provided evidence does not come close to matching the evidence described by the panel in the decisions in those cases. In the *Kotak* case, complainant Uday Kotak apparently presented evidence that his name was so closely associated with the Kotak Mahindra Bank that he had protected trademark rights in his name. Further, his surname Kotak was also the first word in the bank's name. As the Panel in that case observed:

The uncontradicted evidence of the Complainant in this case is that the commercial community identifies the Complainant with the bank which he founded and which Kotak Mahindra Bank Limited continues to operate under his leadership. He is seen by the media and the public, particularly in India, as the alter ego and driving force behind the company.

Complainant's reliance on *Roland Mouret* fares no better. Complainant in that case used his personal name Roland Mouret in connection with his fashion design business. In that commercial context, a designer's personal name has obvious, and sometimes almost exclusive, value as a trademark. The context of an accomplished partner at a prominent, well-known law firm is generally not analogous.

In sum, the Panel does not find adequate support in this record that Complainant has acquired common law trademark rights in his personal name.

Accordingly, because the Panel finds that Policy paragraph 4(a)(i) has not been satisfied, there is no need to consider the other two elements of a successful complaint under the Policy.


**7. Decision**

For all the foregoing reasons, the Complaint is denied.


Robert A. Badgley
Presiding Panelist

Andrew D.S. Lothian
Panelist

Debra J. Stanek
Panelist

Dated: June 30, 2011

EXhiBiTS

10/21/2017  Case 16-01111-abl  Doc 36  Entered 11/02/17 16:17:49  Page 123 of 259

Print

Exhibit 6

**Subject:** RE: Crystal L. Cox - Pro Se Defendant / Respondent Regarding: Case No. 2011-RRE-LIC-186

**From:** Harris, Don (doharris@mt.gov)

**To:** savvybroker@yahoo.com;

**Date:** Tuesday, February 4, 2014 5:48 PM


Ms. Cox,


I really cannot provide you any kind of legal advice, as I represent only the State of Montana. However, I will be referring to the Montana Administrative Procedure Act, which can be found at Mont. Code Ann. § 2-4-101 and following sections as well as Mont. Code Ann. § 37-1-101 and following sections in the event you request review of the final board action. I disagree with your characterization of the board's decision. I do not believe that you were disciplined for committing the criminal offense of extortion. Again, I say this not to offer advice or to discourage you from exercising your right to pursue judicial review of the action. The board's final order speaks for itself, and I leave it to you to interpret as you see fit.


Regards,


Don

Don Harris
Special Assistant Attorney General
Department of Labor and Industry
PO Box 200514
Helena MT 59620-0514
(406) 841-2316
doharris@mt.gov


**From:** Crystal L. Cox, in Love and Light [mailto:savvybroker@yahoo.com]
**Sent:** Tuesday, February 04, 2014 3:21 PM
**To:** Harris, Don
**Subject:** Re: Crystal L. Cox - Pro Se Defendant / Respondent Regarding: Case No. 2011-RRE-LIC-186


Also what is the appeal process, I would like to do that before I file legal action. As the ruling violated my first amendment rights to post on MartinCain.com and well it was not factual as to my representation and I will be filing legal action against the Realtors who lied Kyle Baughn and the other guy, as well as all board members. I would rather file an appeal first with my evidence and the threatening voicemails that Martin Cain sent back then. As the board claims i was enraged when really i was fighting for my rights and my life after his threats and attack, anyway the point is I am going to file action in this matter, and want to know the appeal process.

Exhibit 7

Case 16-01111-abl   Doc 36   Entered 11/02/17 16:17:49   Page 124 of 259
Case 15-14956-abl   Doc 6   Entered 08/28/15 14:09:07   Page 1 of 2

B9E (Official Form 9E) (Chapter 11 Individual or Joint Debtor Case) (12/12)  Case Number **15–14956–abl**

## UNITED STATES BANKRUPTCY COURT District of Nevada

### Notice of
### Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines

A chapter 11 bankruptcy case concerning the debtor(s) listed below was filed on 8/28/15.

You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below.
NOTE: The staff of the bankruptcy clerk's office cannot give legal advice. Case documents may be viewed at www.nvb.uscourts.gov.

**Important Notice to Individual Debtors:** Debtors who are individuals must provide government–issued photo identification and proof of social security number at the meeting of creditors. Failure to do so may result in dismissal of their case.

**Creditors — Do not file this notice in connection with any proof of claim you submit to the court.**
**See Reverse Side For Important Explanations**

Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
MARC JOHN RANDAZZA
aka MARCO RANDAZZA
10955 IRIS CANYON LANE
LAS VEGAS, NV 89135

| Case Number: | Social Security / Individual Taxpayer ID / Employer Tax ID / Other nos: |
|---|---|
| 15–14956–abl | xxx–xx–6762 |
| Judge: AUGUST B. LANDIS | |

Attorney for Debtor(s) (name and address):
ZACHARIAH LARSON
LARSON & ZIRZOW
810 S. CASINO CENTER BLVD. #101
LAS VEGAS, NV 89101
Telephone number:  (702) 382–1170

### Meeting of Creditors

Date: **October 1, 2015**                    Time: **01:00 PM**
Location: **300 Las Vegas Blvd., South, Room 1500, Las Vegas, NV 89101**

### Deadlines:
Papers must be *received* by the bankruptcy clerk's office by the following deadlines:

### Deadline to File a Proof of Claim:

For all creditors (except a governmental unit): **90 days after the date**    For a governmental unit: **180 days after order for relief entered**
**first set for the meeting of creditors**

### Creditor with a Foreign Address:

A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

### Deadline to File a Complaint to Determine Dischargeability of Certain Debts: 11/30/15

### Deadline to File a Complaint Objecting to Discharge of the Debtor:
*First date set for hearing on confirmation of plan.*
Notice of that date will be sent at a later time.

### Deadline to Object to Exemptions:
Thirty (30) days after the *conclusion* of the meeting of creditors.

### Creditors May Not Take Certain Actions:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

| **Address of the Bankruptcy Clerk's Office:** | **For the Court:** |
|---|---|
| 300 Las Vegas Blvd., South | Clerk of Court: |
| Las Vegas, NV 89101 | *Mary A Schott* |
| Telephone number:  (702) 527–7000 | Mary A. Schott |
| Hours Open:  Monday – Friday 9:00 AM – 4:00 PM | Date:  8/31/15 |

Exhibit 7

*Exhibit 7*

# EXPLANATIONS

B9E (Official Form 9E) (12/12)

| | |
|---|---|
| Filing of Chapter 11 Bankruptcy Case | A bankruptcy case under Chapter 11 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered. Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan. A plan is not effective unless confirmed by the court. You may be sent a copy of the plan and a disclosure statement telling you about the plan, and you might have the opportunity to vote on the plan. You will be sent notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the debtor's property and may continue to operate any business. |
| **Legal Advice** | The staff of the bankruptcy clerk's office cannot give legal advice. Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; starting or continuing lawsuits or foreclosures; and garnishing or deducting from the debtor's wages. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time and location listed on the front side. *The debtor (both spouses in a joint case) must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date specified in a notice filed with the court. The court, after notice and a hearing, may order that the United States trustee not convene the meeting if the debtor has filed a plan for which the debtor solicited acceptances before filing the case. |
| Claims | A Proof of Claim is a signed statement describing a creditor's claim. A PROOF OF CLAIM MAY BE FILED ELECTRONICALLY AT THE BANKRUPTCY COURT'S WEBSITE (http://www.nvb.uscourts.gov) or a Proof of Claim form ("Official Form B 10") can be obtained at the United States Courts website: (http://www.uscourts.gov/FormsAndFees/Forms/BankruptcyForms.aspx) or at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office. If your claim is scheduled and is *not* listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you file a Proof of Claim or you are sent further notice about the claim. Whether or not your claim is scheduled, you are permitted to file a Proof of Claim. If your claim is not listed at all *or* if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim or you might not be paid any money on your claim and may be unable to vote on a plan. A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial. **Filing Deadline for a Creditor with a Foreign Address:** The deadlines for filing claims set forth on the front of this notice apply to all creditors. If this notice has been mailed to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. *Do not include this notice with any filing you make with the court.* |
| Discharge of Debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See Bankruptcy Code § 1141(d). Unless the court orders otherwise, however, the discharge will not be effective until completion of all payments under the plan. A discharge means that you may never try to collect the debt from the debtor except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code § 523(a)(2), (4), or (6), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed on the front side. The bankruptcy clerk's office must receive the complaint and any required filing fee by that Deadline. If you believe that the debtor is not entitled to receive a discharge under Bankruptcy Code § 1141(d)(3), you must file a complaint with the required filing fee in the bankruptcy clerk's office not later than the first date set for the hearing on confirmation of the plan. You will be sent another notice informing you of that date. |
| Exempt Property | The debtor is permitted by law to keep certain property as exempt. Exempt property will not be sold and distributed to creditors, even if the debtor's case is converted to chapter 7. The debtor must file a list of all property claimed as exempt. You may inspect that list at the bankruptcy clerk's office. If you believe that an exemption claimed by the debtor is not authorized by law, you may file an objection to that exemption. The bankruptcy clerk's office must receive the objection by the "Deadline to Object to Exemptions" listed on the front side. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the list of the debtor's property and debts and the list of the property claimed as exempt, at the bankruptcy clerk's office or at www.nvb.uscourts.gov. |
| Creditor with a Foreign Address | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |

### Refer to Other Side for Important Deadlines and Notices

*Exhibit 7*

Exhibit 9

1  ANTHONY T. GARASI, ESQ.
   Nevada State Bar No. 11134
2  JARED G. CHRISTENSEN, ESQ.
   Nevada State Bar No. 11538
3  BREMER WHYTE BROWN & O'MEARA LLP
   1160 N. TOWN CENTER DRIVE
4  SUITE 250
   LAS VEGAS, NV 89144
5  TELEPHONE:  (702) 258-6665
   FACSIMILE:  (702) 258-6662
6  agarasi@bremerwhyte.com
   jchristensen@bremerwhyte.com
7
   Attorneys for Counterdefendant,
8  Marc Randazza

9
                    **UNITED STATES DISTRICT COURT**
10

11
   MARC J. RANDAZZA, an individual,        )  Case No. 2:12-cv-02040-JAD-PAC
12 JENNIFER RANDAZZA, an individual, and   )
   NATALIA RANDAZZA, a minor,              )
13                                         )
                Plaintiffs,                )
14                                         )
         vs.                               )
15 CRYSTAL L. COX, an individual, and ELIOT )
   BERNSTEIN, an individual,               )
16                                         )
                Defendants.                )
17 _____ )
                                           )
18 CRYSTAL L. COX, an individual,          )
                                           )
19              Counterclaimant,           )
         vs.                               )
20                                         )
   MARC J. RANDAZZA, an individual,        )
21                                         )
                Counterdefendant.          )
22 _____ )

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

Exhibit 9

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*Exhibit 9*

Case 16-01111-abl   Doc 36   Entered 11/02/17 16:17:49   Page 127 of 259
Case 2:12-cv-02040-JAD-PAL   Document 252   Filed 04/06/15   Page 22 of 44

1  interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,

2  Counterdefendant is not required to respond to the same. Subject to and without waiving the

3  foregoing objections, Counterdefendant responds as follows:

4      No.



5  **INTERROGATORY NO. 21:**

6      Did you have phone conversations with Eugene Volokh and state that you represented Cox and

7  discuss with him your strategy, or a deal you were trying to make with the opposition, Plaintiff's

8  attorney David Aman?



9  **RESPONSE TO INTERROGATORY NO. 21:**

10     Counterdefendant objects to Interrogatory No. 21 on the grounds that it is vague, ambiguous,

11 overly broad, not limited in time and scope, and seeks information which is neither relevant nor

12 reasonably calculated to lead to the discovery of admissible evidence.

13     Counterdefendant further objects because this interrogatory is in excess of the 25 allowable

14 interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,

15 Counterdefendant is not required to respond to the same. Subject to and without waiving the

16 foregoing objections, Counterdefendant responds as follows:

17     Counterdefendant spoke with Eugene Volokh in December 2011. Randazza informed Volkokh

18 that if he was going to represent Cox, that Randazza would gladly bow out, and defer to Volokh to

19 handle the case. Volokh, however, said that he would prefer that Randazza co-counsel the case with

20 him due to Volokh's stated lack of litigation experience. Counterdefendant and Volokh discussed

21 possible strategies that he and Volokh thought might be good ideas during that call.

22 Counterdefendant and Volokh both discussed the fact that Cox's interests would be better served

23 through settlement.



24 **INTERROGATORY NO. 22:**

25     Did you discuss with Cox at any time, on how you would proceed forward on her case, costs,

26 timelines, or any other negotiation strategy of any kind?

27 **RESPONSE TO INTERROGATORY NO. 22:**

28     Counterdefendant objects to Interrogatory No. 22 on the grounds that it is overbroad, vague,

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

18

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*Exhibit 9*

Exhibit 9

Case 16-01111-abl    Doc 36    Entered 11/02/17 16:17:49    Page 128 of 259
Case 2:12-cv-02040-JAD-PAL    Document 252    Filed 04/06/15    Page 43 of 44

1    **DECLARATION OF MARC J. RANDAZZA, ESQ.**

2    I, Marc J. Randazza, Esq., being over 18 years of age and competent to testify about the matters

3    contained in this declaration if called to do so at trial, and under the penalty of perjury states as

4    follows:

5        1.    That he has read the foregoing ANSWERS TO COUNTERCLAIMANT'S FIRST

6    SET OF INTERROGATORIES and knows that the contents thereof and the same are true of his

7    own knowledge, except for those matters therein stated on information and belief, and as to those

8    matters, he believes them to be true.

9

10

11    Dated: August 26, 2014

12                                        /s/ *Marc J. Randazza*

13                                        _____

                                          Marc J. Randazza, Esq.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9

Exhibit 9

Case 16-01111-abl    Doc 36    Entered 11/02/17 16:17:49    Page 129 of 259
Case 2:12-cv-02040-JAD-PAL    Document 252    Filed 04/06/15    Page 44 of 44

1

## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that on the 26th day of August, 2014, I served a copy of

3    the foregoing **COUNTERDEFENDANT MARC RANDAZZA'S ANSWERS TO**

4    **COUNTERCLAIMANT'S FIRST SET OF INTERROGATORIES** via the United States Mail

5    postage paid to the party listed below:

6

7    RANDAZZA LEGAL GROUP

8    Ronald D. Green, Esq.
     Nevada Bar No. 7360

9    Theresa M. Haar,
     Nevada Bar No. 12158

10   Attorneys for Plaintiff

11   and Via U.S. Mail and Email to party requesting notice:

12   Crystal L. Cox, Pro Se

13   PO Box 20277
     Port Townsend, WA 98368

14   SavvyBroker@yahoo.com

15

16

17                      An Employee of BREMER WHYTE
                        BROWN & O'MEARA, LLP

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

39

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9

*Exhibit 9a*

1   ANTHONY T. GARASI, ESQ.
    Nevada State Bar No. 11134
2   JARED G. CHRISTENSEN, ESQ.
    Nevada State Bar No. 11538
3   BREMER WHYTE BROWN & O'MEARA LLP
    1160 N. TOWN CENTER DRIVE
4   SUITE 250
    LAS VEGAS, NV 89144
5   TELEPHONE:  (702) 258-6665
    FACSIMILE:  (702) 258-6662
6   agarasi@bremerwhyte.com
    jchristensen@bremerwhyte.com
7
    Attorneys for Counterdefendant,
8   Marc Randazza

9                      **UNITED STATES DISTRICT COURT**

10

11  MARC J. RANDAZZA, an individual,           )  Case No. 2:12-cv-02040-JAD-PAC
12  JENNIFER RANDAZZA, an individual, and       )
    NATALIA RANDAZZA, a minor,                  )
13                                              )
              Plaintiffs,                       )
14                                              )
         vs.                                    )
15                                              )
    CRYSTAL L. COX, an individual, and ELIOT    )
16  BERNSTEIN, an individual,                   )
                                                )
17            Defendants.                       )
    _____         )
18                                              )
    CRYSTAL L. COX, an individual,              )
19                                              )
              Counterclaimant,                  )
20                                              )
         vs.                                    )
21                                              )
    MARC J. RANDAZZA, an individual,            )
22                                              )
              Counterdefendant.                 )
    _____         )

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

*Exhibit 9a*

*Exhibit 9a*

1    2.  Counterdefendant objects to each interrogatory in excess of the allowed 25 written

2  interrogatories, pursuant to Fed. R. Civ. P. 33(a). There are approximately 103 interrogatories,

3  including distinct subparts.

4    3.  Counterdefendant objects to each interrogatory to the extent it seeks information

5  protected by the attorney-client privilege or work product doctrine.

6    4.  Counterdefendant objects to each interrogatory to the extent it seeks information not

7  within the possession, custody, or control of Counterdefendant.

8    5.  Counterdefendant objects to each interrogatory to the extent it seeks to impose duties on

9  Counterdefendant beyond the scope of the Federal Rules of Civil Procedure.

10    6.  Counterdefendant objects to each interrogatory to the extent it seeks confidential,

11  proprietary, or sensitive business information.

12    7.  Counterdefendant objects generally to Counterclaimant's interrogatories to the extent

13  that they are vague, ambiguous, overly broad, incomprehensible, or seek to impose upon

14  Counterdefendant an unduly burdensome search for and disclosure of information that is neither

15  relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of

16  information or evidence admissible at trial.

17    8.  Counterdefendant further objects to all discovery propounded by Cox in this case as the

18  counterclaims are clearly claim precluded, and thus any discovery propounded has been done so as

19  an abuse of process and should subject Cox to sanctions.

20    9.  Counterdefendant hereby incorporates by reference these general objections into each

21  specific answer.

22    **ANSWERS TO INDIVIDUAL INTERROGATORIES**

23  **INTERROGATORY NO. 1:**

24    State whether you contend that Counter Plaintiff Crystal Cox has extorted you and your family,

25  is guilty of the crime of extortion and if so what laws has she violated and how has this harmed

26  you? Have you reported Cox to the authorities for the crime of extortion? If not, why?

27  **RESPONSE TO INTERROGATORY NO. 1:**

28    Counterdefendant objects to Interrogatory No. 1 on the grounds that the terms "extorted,"

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

3

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*Exhibit 9a*

*Exhibit 9a*

Case 16-01111-abl   Doc 36   Entered 11/02/17 16:17:49   Page 132 of 259
Case 2:12-cv-02040-JAD-PAL   Document 252   Filed 04/06/15   Page 8 of 44

1  "guilty," "crime of extortion," "laws" and "authorities" are vague and ambiguous.

2  Counterdefendant further objects because it is compound and seeks a contention relating to and/or

3  regarding a fact or application of law to fact and cannot be adequately answered until discovery has

4  been completed. It has long been established that answers to contention interrogatories should be

5  deferred until discovery has been completed. (*See In re Convergent Technologies Sec. Litig.*, 108

6  F.R.D. 328 (N.D. Cal. 1985); *Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497

7  (E.D. Wis. 1978).)

8        Counterdefendant further objects because Interrogatory No. 1 contains multiple subparts which

9  count as four (4) separate and distinct interrogatories in regard to the maximum number of

10  interrogatories permitted by F.R.C.P. 33(a). Subject to and without waiving the foregoing

11  objections, Counterdefendant responds as follows:

12        Counterdefendant is unable to state whether Counterclaimant is guilty of a crime and whether

13  she has violated the law. Such determination can only be made by a jury of her peers in a court of

14  law. Notwithstanding, Counterdefendant contends that Cox has a history of engaging in

15  extortionate behavior. In the *Obsidian* case, Cox obsessively posted defamatory information about

16  the Plaintiffs, then sought a financial advantage from the victims in exchange for cleaning up the

17  very reputational damage she caused, as recognized by the federal judge in that case, after a trial

18  was held on the merits of the case. The Ninth Circuit, in reviewing the lower court's record in the

19  *Obsidian* case, determined that "Cox apparently has a history of making similar allegations [to

20  those she made concerning Kevin Padrick] and seeking payoffs in exchange for retraction."

21  (*Obsidian Fin. Group, LLC*, 740 F. 3d at 1287.) The Ninth Circuit may not have used the precise

22  word "extortion," but the words it used fit squarely within the definition of that term.

23        Moreover, on July 5, 2013, the State of Montana Board of Realty Regulation also found that

24  Cox had engaged in extortionate behavior, thereby violating multiple rules of professional and

25  ethical conduct. Specifically, the Board found that Cox had violated the confidences of a client,

26  Martin Cain, by registering the domain name <martincain.com> and using it to post various false

27  statements about him, including an accusation that Mr. Cain hired a hit man to kill Cox. Thereafter,

28  Cox then contacted Mr. Cain and offered him the <martincain.com> website for $500,000.00.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

4

*Exhibit 9a*

EX - 9a

Case 16-01111-abl    Doc 36    Entered 11/02/17 16:17:49    Page 133 of 259
Case 2:12-cv-02040-JAD-PAL    Document 252    Filed 04/06/15    Page 9 of 44

1    Randazza contends that this is extortionate behaviour. In the instant dispute, Cox has engaged in

2    almost the exact conduct as detailed above against the Counterdefendant by registering a

3    multiplicity of domain names reflecting his name and then sought payment for her reputation

4    services, and sought to sell at least one of the domains to Randazza for an extortionate sum. The

5    "harm" from extortion or attempted extortion stems from the act itself. Randazza has discussed

6    this matter with the authorities in multiple jurisdictions, and to the best of Randazza's knowledge,

7    the matter is the subject of open investigations.

8    **INTERROGATORY NO. 2:**

9    Describe in detail the basis or bases on which you made the statement on any web page, blog,

10    publication, email, interview or any other third party statement before the filing of the *Randazza v.*

11    *Cox* lawsuit that "Cox is an Extortionist" or in any way that stated Crystal Cox was an extortionist

12    and had extorted you personally.

13    Describe in detail all parties to which you published or stated that Crystal Cox had extorted you

14    or was guilty of the crime of extortion against you and / or your family.

15    **RESPONSE TO INTERROGATORY NO. 2:**

16    Counterdefendant objects to Interrogatory No. 2 on the grounds that the terms "extortionist,"

17    "extorted," "guilty" and "crime of extortion" are vague and ambiguous. Counterdefendant further

18    objects because it is overly broad, not limited in time and scope, compound, and seeks a contention

19    relating to and/or regarding a fact or application of law to fact and cannot be adequately answered

20    until discovery has been completed. It has long been established that answers to contention

21    interrogatories should be deferred until discovery has been completed. (*See In re Convergent*

22    *Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-America Facilities, Inc. v.*

23    *Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).)

24    Counterdefendant further objects because it contains multiple subparts which count as at least

25    two (2) separate and distinct interrogatories in regard to the maximum number of interrogatories

26    permitted by F.R.C.P. 33(a). Subject to and without waiving the foregoing objections,

27    Counterdefendant responds as follows:

28    Counterdefendant stated that "Cox is an Extortionist" in a brief of amicus curiae in *Obsidian*

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

5

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9a

Case 16-01111-abl   Doc 36   Entered 11/02/17 16:17:49   Page 134 of 259
Case 2:12-cv-02040-JAD-PAL   Document 252   Filed 04/06/15   Page 10 of 44

9a

1 | *Finance v. Cox*, before the United States Court of Appeals for the Ninth Circuit and in a reply brief
2 | in the same case.

3 |     Furthermore, there is substantial evidence that Cox has a history of engaging in extortionate
4 | behavior. In the *Obsidian* case, Cox obsessively posted defamatory information about the
5 | Plaintiffs, then sought a financial advantage from the victims in exchange for cleaning up the very
6 | reputational damage she caused. The Ninth Circuit, in reviewing the lower court's record in the
7 | *Obsidian* case, determined that "Cox apparently has a history of making similar allegations [to
8 | those she made concerning Kevin Padrick] and seeking payoffs in exchange for retraction."
9 | (*Obsidian Fin. Group, LLC*, 740 F. 3d at 1287). The Ninth Circuit may not have used the precise
10 | word "extortion," but the words it used fit squarely within the definition of that term.

11 |     Moreover, on July 5, 2013, the State of Montana Board of Realty Regulation also found that
12 | Cox had engaged in extortionate behavior, thereby violating multiple rules of professional and
13 | ethical conduct. Specifically, the Board found that Cox had violated the confidences of a client,
14 | Martin Cain, by registering the domain name <martincain.com> and using it to post various false
15 | statements about him, including an accusation that Mr. Cain hired a hit man to kill Cox. Thereafter,
16 | Cox then contacted Mr. Cain and offered him the <martincain.com> website for $500,000. Further,
17 | Cox has engaged in almost the exact conduct as detailed above against the Counterdefendant in this
18 | matter by registering a multiplicity of domain names reflecting his name and then seeking payment
19 | for her reputation services. Finally, Reverend John Collins stated to Randazza on multiple
20 | occasions that Cox was threatening him and extorting him, and that he was actually paying Cox in
21 | order to prevent her from engaging in online character assassination of him in a manner calculated
22 | to destroy his ministry. Randazza has no reason to believe that Collins was not telling the truth.
23 | Further, Collins' wife and other members of his congregation confirmed these facts.

24 | **INTERROGATORY NO. 3:**

25 |     Identify (by name, email and last-known address and telephone number) each and every person
26 | about whom you have made any statements to on any website, any phone communication, any text
27 | or email, regarding Crystal Cox in any way at all before November of 2012, the filing date of
28 | Randazza v. Cox.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

6

Exhibit 9a

Case 16-01111-abl   Doc 36   Entered 11/02/17 16:17:49   Page 135 of 259
Case 2:12-cv-02040-JAD-PAL   Document 252   Filed 04/06/15   Page 11 of 44

9a

1 **RESPONSE TO INTERROGATORY NO. 3:**

2     Counterdefendant objects to Interrogatory No. 3 on the grounds that it is confusing, vague,

3 ambiguous, overly broad, unduly burdensome, not limited in time and scope, compound, and seeks

4 information which is neither relevant nor reasonably calculated to lead to the discovery of

5 admissible evidence.  Counterdefendant further objects because it contains multiple subparts which

6 count as separate and distinct interrogatories in regard to the maximum number of interrogatories

7 permitted by F.R.C.P. 33(a). Counterdefendant also objects because it seeks information protected

8 by the attorney/client privilege and/or work product privilege.  Without waiving such objections,

9 Randazza contends that any statements published on the Internet or otherwise remain published and

10 to the extent that Cox believes that such published statements are damaging to her reputation, it is

11 incumbent upon her to present them to the court in her counterclaim, not to seek to "discover a

12 case."

13 **INTERROGATORY NO. 4:**

14     Describe which provision of law was your basis for alleging on your legal blog and in other

15 publications that Crystal Cox had extorted you. Incidents before you filed Randazza v. Cox.

16 **RESPONSE TO INTERROGATORY NO. 4:**

17     Counterdefendant objects to Interrogatory No. 4 on the grounds that the terms "provision of

18 law" and "extorted" are vague and ambiguous. Counterdefendant further objects because it is

19 compound and seeks a contention relating to and/or regarding a fact or application of law to fact

20 and cannot be adequately answered until discovery has been completed. It has long been

21 established that answers to contention interrogatories should be deferred until discovery has been

22 completed. (*See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-*

23 *America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).)

24     Counterdefendant also objects because it contains multiple subparts which count as separate

25 and distinct interrogatories in regard to the maximum number of interrogatories permitted by

26 F.R.C.P. 33(a). Counterdefendant further objects to this interrogatory as improper, as Cox is asking

27 Counterdefendant for the basis for statements that she has not quoted, and that are either of her own

28 manufacture or of Judge Dorsey's paraphrasing. Subject to and without waiving the foregoing

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

7

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

9a

1   objections, Counterdefendant responds as follows:

2       Please see Answer to Interrogatory Nos. 1 & 2.

3   **INTERROGATORY NO. 5:**

4       Have you ever accused Crystal Cox of the crime of extortion on your blog, in publications to

5   third parties of any kind, in interviews or documents of any kind before the date of November

6   2012?

7   **RESPONSE TO INTERROGATORY NO. 5:**

8       Counterdefendant objects to Interrogatory No. 5 on the grounds that the term "crime of

9   extortion" it is vague and ambiguous. Counterdefendant further objects because it is overly broad

10  and seeks a contention relating to and/or regarding a fact or application of law to fact and cannot be

11  adequately answered until discovery has been completed. It has long been established that answers

12  to contention interrogatories should be deferred until discovery has been completed. (*See In re*

13  *Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-America Facilities,*

14  *Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).) Counterdefendant further objects

15  because it contains multiple subparts which count as separate and distinct interrogatories in regard

16  to the maximum number of interrogatories permitted by F.R.C.P. 33(a). Subject to and without

17  waiving the foregoing objections, Counterdefendant responds as follows:

18      No.

19  **INTERROGATORY NO. 6:**

20      Have you painted Cox in false light as an extortionist or one who has attacked a three year old?

21  **RESPONSE TO INTERROGATORY NO. 6:**

22      Counterdefendant objects to Interrogatory No. 6 on the grounds that the terms "painted," "false

23  light," "extortionist," and "attacked" are vague and ambiguous. Counterdefendant further objects

24  because it is compound and seeks a contention relating to and/or regarding a fact or application of

25  law to fact and cannot be adequately answered until discovery has been completed. It has long been

26  established that answers to contention interrogatories should be deferred until discovery has been

27  completed. (*See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-*

28  *America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).) Counterdefendant

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

8

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*9a*

1  also objects because it contains multiple subparts which count as separate and distinct

2  interrogatories in regard to the maximum number of interrogatories permitted by F.R.C.P. 33(a).

3  Subject to and without waiving the foregoing objections, Counterdefendant responds as follows:

4      No.

5  **INTERROGATORY NO. 7:**

6      Has Crystal Cox ever had a blog about your children, to your knowledge? Has Cox ever written

7  or posted anything online about your children? Did you state that Cox had a blog about your then 3

8  year old daughter to third parties or publish such statements to third parties? Did Crystal Cox have

9  a blog about your children?

10  **RESPONSE TO INTERROGATORY NO. 7:**

11      Counterdefendant objects to Interrogatory No. 7 on the grounds that the term "blog" is vague

12  and ambiguous. Counterdefendant further objects because it is compound and seeks a contention

13  relating to and/or regarding a fact or application of law to fact and cannot be adequately answered

14  until discovery has been completed. It has long been established that answers to contention

15  interrogatories should be deferred until discovery has been completed. (*See In re Convergent*

16  *Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-America Facilities, Inc. v.*

17  *Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).)

18      Counterdefendant also objects because it contains multiple subparts which count as three (3)

19  separate and distinct interrogatories in regard to the maximum number of interrogatories permitted

20  by F.R.C.P. 33(a). Subject to and without waiving the foregoing objections, Counterdefendant

21  responds as follows:

22      Cox previously registered and owned the website NataliaRandazza.com, which corresponds to

23  the name of Counterdefendant's then three-year-old daughter in an effort to harass

24  Counterdefendant, to extort Counterdefendant, and, through her own admission, to attempt to

25  intimidate Counterdefendant from responding to a lawfully issued subpoena and in order to attempt

26  to intimidate Counterdefendant from testifying at a trial. Cox admits having registered

27  <nataliarandazza.com> in ECF 209-1 at page 6.

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

9

*Exhibit 9a*

*9a*

*Exhibit 9a*

1  **INTERROGATORY NO. 8:**

2      Have you Spoke with, made third party statements to Bob Garfield of NPR in a publicly

3  broadcast interview and accused Counter Plaintiff Cox of extortion or any other crimes against you

4  or your family before Nov. of 2012?

5  **RESPONSE TO INTERROGATORY NO. 8:**

6      Counterdefendant objects to Interrogatory No. 8 on the grounds that the terms "extortion" and

7  "any other crimes" are vague and ambiguous. Counterdefendant further objects because it is

8  compound and seeks a contention relating to and/or regarding a fact or application of law to fact

9  and cannot be adequately answered until discovery has been completed. It has long been

10  established that answers to contention interrogatories should be deferred until discovery has been

11  completed. (*See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-*

12  *America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).) Counterdefendant

13  also objects because it contains multiple subparts which count as separate and distinct

14  interrogatories in regard to the maximum number of interrogatories permitted by F.R.C.P. 33(a).

15  Subject to and without waiving the foregoing objections, Counterdefendant responds as follows:

16      Counterdefendant was interviewed by Bob Garfield. The transcript of the interview with Bob

17  Garfield speaks for itself and is available at <onthemedia.org/story/198049-combating-bad-speech-

18  more-speech/transcript/>.

19  **INTERROGATORY NO. 9:**

20      Have you ever stated to a blogger, a news journalist, a radio broadcaster or anyone else you

21  know or knew would report to a third party, that Cox had a blog about your 3 years old child and

22  that Cox had extorted you or your family?

23  **RESPONSE TO INTERROGATORY NO. 9:**

24      Counterdefendant objects to Interrogatory No. 9 on the grounds that the terms "report to a third

25  party" is vague and ambiguous. Counterdefendant further objects because it is overbroad,

26  compound, and seeks a contention relating to and/or regarding a fact or application of law to fact

27  and cannot be adequately answered until discovery has been completed. It has long been

28  established that answers to contention interrogatories should be deferred until discovery has been

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

10

*Exhibit 9*

Case 16-01111-abl    Doc 36    Entered 11/02/17 16:17:49    Page 139 of 259
Case 2:12-cv-02040-JAD-PAL    Document 252    Filed 04/06/15    Page 15 of 44

9a

1  completed. (*See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-*

2  *America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).)

3      Counterdefendant also objects because it contains multiple subparts which count as two (2)

4  separate and distinct interrogatories in regard to the maximum number of interrogatories permitted

5  by F.R.C.P. 33(a). Subject to and without waiving the foregoing objections, Counterdefendant

6  responds as follows:

7      Although Cox had previously registered and owned the website <nataliarandazza.com>, in the

8  name of Counterdefendant's daughter to harass Counterdefendant. Further, Counterdefendant does

9  not recall making any statements to a blogger, a news journalist, a radio broadcaster or anyone else

10  he knew would report to a third party that Cox had extorted him or his family. If Cox is in

11  possession of any such publications or statements, if they are authentic, they speak for themselves.

12  Cox has admitted registering <nataliarandazza.com> at ECF 209-1 at page 6.

13  **INTERROGATORY NO. 10:**

14      Have you ever stated or published to a third party that Cox had extorted you was guilty of the

15  crime of extortion or that Cox had posted false statements about you and asked for money to

16  remove those statements?

17  **RESPONSE TO INTERROGATORY NO. 10:**

18      Counterdefendant objects to Interrogatory No. 10 on the grounds that the terms "guilty," "crime

19  of extortion" are vague and ambiguous. Counterdefendant further objects because it is overbroad,

20  compound and seeks a contention relating to and/or regarding a fact or application of law to fact

21  and cannot be adequately answered until discovery has been completed. It has long been

22  established that answers to contention interrogatories should be deferred until discovery has been

23  completed. (*See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-*

24  *America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).)

25      Counterdefendant also objects because it contains multiple subparts which count as two (2)

26  separate and distinct interrogatories in regard to the maximum number of interrogatories permitted

27  by F.R.C.P. 33(a). Subject to and without waiving the foregoing objections, Counterdefendant

28  responds as follows:

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

11

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Case 16-01111-abl   Doc 36   Entered 11/02/17 16:17:49   Page 140 of 259
Case 2:12-cv-02040-JAD-PAL   Document 252   Filed 04/06/15   Page 32 of 44

9a

1   **INTERROGATORY NO. 41:**

2     Before November 2012, Did you speak with Martin Cain, or make statements to third party

3   Martin Cain that Cox was guilty of the crime of extortion and had committed this crime against

4   you?

5   **RESPONSE TO INTERROGATORY NO. 41:**

6     Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

7   33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

8   respond to the same.   Subject to and without waiving the foregoing objections, Counterdefendant

9   responds as follows:

10     No.

11   **INTERROGATORY NO. 42:**

12     Did you at any time, report to authorities such as and not limited to; the police, FBI, DOJ,

13   Attorney General or any other authority that Cox had extorted you or harmed your family in some

14   way?

15   **RESPONSE TO INTERROGATORY NO. 42:**

16     Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

17   33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

18   respond to the same. Further, any disclosure could jeopardize ongoing investigations, and thus will

19   not be responded to without clearance from law enforcement.

20   **INTERROGATORY NO. 43:**

21     Have you ever threatened the life of Counter Plaintiff Crystal Cox to anyone or have you told

22   anyone ever to harm or that you would harm Cox or any of her sourced, such as Monica Foster,

23   Alexandra Melody?

24   **RESPONSE TO INTERROGATORY NO. 43:**

25     Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

26   33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

27   respond to the same. This interrogatory is argumentative as it requires the adoption of an

28   assumption. This interrogatory is irrelevant to the subject matter of this case, and the information

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

27

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9

1   This interrogatory is irrelevant to the subject matter at hand. Subject to and without waiving the

2   foregoing objections, Counterdefendant responds as follows:

3      No.

4   **INTERROGATORY NO. 39:**

5      Did you speak with Roxanne Grinage or P. Stephen Lamont in regard to Cox being an

6   Extortionist, before the filing of Randazza v. Cox?

7   **RESPONSE TO INTERROGATORY NO. 39:**

8      Objection. This interrogatory is impermissibly compound and in excess of the 25 allowable

9   interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,

10  Counterdefendant is not required to respond to the same. Subject to and without waiving the

11  foregoing objections, Counterdefendant responds as follows:

12     No.

13  **INTERROGATORY NO. 40:**

14     Did you tell Cox to send you documents in her case and that you would look into those

15  documents to make sure she had preserved the case properly and that you would contact the Media

16  Bloggers Association to make sure there was no conflicts of interest, and then get back to Cox

17  before you would represent her or pursue representation in any way?

18  **RESPONSE TO INTERROGATORY NO. 40:**

19     Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

20  33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

21  respond to the same. This interrogatory is compound and consists of four distinct interrogatories

22  pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. This interrogatory is overbroad.

23  The "Media Bloggers Association" does not exist. Subject to and without waiving the foregoing

24  objections, Counterdefendant responds as follows:

25     No. But, Counterdefendant did emphasize to Cox that he would have to do research and

26  determine whether representation would be possible or desirable before agreeing to represent Cox,

27  as has already been made clear in multiple places in the record in this case.

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

26

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9

*Exhibit 9a*

Case 16-01111-abl    Doc 36    Entered 11/02/17 16:17:49    Page 142 of 259
Case 2:12-cv-02040-JAD-PAL    Document 252    Filed 04/06/15    Page 33 of 44

1  sought is not reasonably calculated to lead to the discovery of admissible evidence. This

2  interrogatory is compound and consists of two distinct interrogatories pursuant to Rule 33(a) of the

3  Federal Rules of Civil Procedure. Further, this interrogatory is unintelligible. Subject to and

4  without waiving the foregoing objections, Counterdefendant responds as follows:

5      No.

6  **INTERROGATORY NO. 44:**

7      Have you ever spoke to Montana attorney Taylor Kai Groenke (Kai Groenke), regarding Cox

8  and if so what was the nature of this conversation?  What were the dates and times.

9  **RESPONSE TO INTERROGATORY NO. 44:**

10     Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

11 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

12 respond to the same.  Subject to and without waiving the foregoing objections, Counterdefendant

13 responds as follows:

14     No.

15 **INTERROGATORY NO. 45:**

16     Did you advise David Aman, Plaintiff attorney in Obsidian v. Cox on how to seize Cox's

17 assets, where her vulnerabilities were and on using Lara Pearson as a "receiver" to go after Cox's

18 assets?

19 **RESPONSE TO INTERROGATORY NO. 45:**

20     Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

21 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

22 respond to the same.  Subject to and without waiving the foregoing objections, Counterdefendant

23 responds as follows:

24     No.

25 **INTERROGATORY NO. 46:**

26     Did you speak with Sheriff Daniel Staton, Marshall Ross or discuss them with David Aman in

27 any way regarding Cox?

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

28

*Exhibit 9*

*Exhibit 9a*

1 | **RESPONSE TO INTERROGATORY NO. 46:**

2   Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

3 | 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

4 | respond to the same.

5 | **INTERROGATORY NO. 46** [sic – improper numbering in original]:

6   Did you advise attorney David Aman on how to auction off Crystal Cox's right to appeal her

7 | ninth circuit? Did you engage in any conversation with David Aman regarding having a Portland

8 | Sheriff auction off her right to appeal in exchange for her 2.5 million judgment?

9 | **RESPONSE TO INTERROGATORY NO. 46:**

10   Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

11 | 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

12 | respond to the same. Subject to and without waiving the foregoing objections, Counterdefendant

13 | responds as follows:

14   No.

15 | **INTERROGATORY NO. 47:**

16   Did you have any communication at all with Judge Marco Hernandez regarding Crystal Cox

17 | extorting you or having engaged in some criminal or unethical actions against you in any way?

18 | **RESPONSE TO INTERROGATORY NO. 47:**

19   Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

20 | 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

21 | respond to the same. This interrogatory is overbroad. This interrogatory is irrelevant to the subject

22 | matter of this case, and the information sought is not reasonably calculated to lead to the discovery

23 | of admissible evidence.

24 | **INTERROGATORY NO. 48:**

25   Have you ever hired a private detective, friend or other party to follow Cox, watch Cox, or

26 | investigate Cox in anyway?

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

29

*Exhibit 9a*

**RESPONSE TO INTERROGATORY NO. 48:**

Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same.

**INTERROGATORY NO. 49:**

Did you, Marc Randazza, make a deal of any kind, that after the Plaintiff, Obsidian forcible secured the Domain Name MarcRandazza.com, by using your recommended receiver Lara Pearson that you would get control or ownership of this Domain Name?

**RESPONSE TO INTERROGATORY NO. 49:**

Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same. Furthermore, this interrogatory is unintelligible.

**INTERROGATORY NO. 50:**

Did you email Crystal Cox and Say, "Ok, you made your point. So what do you want?" If So, Marc Randazza, What did you Mean By this Email?

**RESPONSE TO INTERROGATORY NO. 50:**

Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same. Subject to and without waiving the foregoing objections, Counterdefendant responds as follows:

Yes. Counterdefendant was aware of Cox's criminal behavior in the past, and Cox's extortionate activities, and rather than engage in further interaction with Cox, Counterdefendant preferred to "cut to the chase," and find out what Cox wanted, and intended to provide it to her, in order to avoid further contact with Cox.

**INTERROGATORY NO. 51:**

Did you make any kind of deal via phone, email, text, letter or any other form of communication to or with Tonkon Torp Law Firm or David Aman, or Plaintiff Obsidian Finance Group or Kevin Padrick in any way, to assist in securing the Domain Name MarcRandazza.com?

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

30

*Exhibit 9a*

*Exhibit 9a*

**RESPONSE TO INTERROGATORY NO. 51:**

Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same. Subject to and without waiving the foregoing objections, Counterdefendant responds as follows:

No.

**INTERROGATORY NO. 52:**

Did you contact Tonkon Torp Law Firm, or David Aman, or Plaintiff Obsidian Finance Group or Kevin Padrick via phone, email, text, letter or any other form of communication and discuss any personal information regarding your phone call, interview with Crystal Cox, leading Crystal Cox to believe you may represent her as Counsel in an Appeal for Obsidian v. Cox?

**RESPONSE TO INTERROGATORY NO. 52:**

Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same. Further, this interrogatory is irrelevant to the subject matter of this case, and the information sought is not reasonably calculated to lead to the discovery of admissible evidence. Further, this interrogatory is largely unintelligible. Subject to and without waiving the foregoing objections, Counterdefendant responds as follows:

No.

**INTERROGATORY NO. 53:**

Did you make this statement to Ms. Cox, "You have no right to register a domain name that corresponds to my real name. Please hand that domain name over to me, and please do not presume to think it is okay to register other people's names as domain names."?

Marc Randazza Did you represent Isaac Eiland-Hall in a WIPO Domain Name Dispute Regarding the domain name, www.GlennBeckRapedAndMurderedAYoungGirlIn1990.com"?

Do you believe that Isaac Hall had a legal right to have registered and own the domain name www. GlennBeckRapedAndMurderedAYoungGirlIn1990.com"?

BREMER WHYTE BROWN &
O'MEARA LLP
1180 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

31

*Exhibit 9*

*Exhibit 9a*

1   Did you argue, as legal counsel, the right for Isaac Eiland-Hall to own a domain name that
2   corresponds to the real name of Glenn Beck?

3   **RESPONSE TO INTERROGATORY NO. 53:**

4   Objection. This interrogatory is impermissibly compound and in excess of the 25 allowable
5   interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,
6   Counterdefendant is not required to respond to the same. Further, this interrogatory is largely
7   unintelligible. Subject to and without waiving the foregoing objections, Counterdefendant responds
8   as follows:

9   Yes to subpart 1; No to subpart 2; Yes to subpart 3; No to subpart 4.

10   **INTERROGATORY NO. 54:**

11   What did you mean by this statement to Ms. Cox "I'm not interested in WIPO. You want to
12   make an enemy of me, really?"?

13   **RESPONSE TO INTERROGATORY NO. 54:**

14   Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule
15   33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to
16   respond to the same. Further, this interrogatory is largely unintelligible. Subject to and without
17   waiving the foregoing objections, Counterdefendant responds as follows: The statement speaks for
18   itself.

19   **INTERROGATORY NO. 55:**

20   Did you say this to Crystal Cox, "I do not find it to be acceptable that someone else has
21   registered by name for any purpose, and thus I can't possibly see any reason for you to have control
22   over that domain whatsoever-"?

23   In your Expert Opinion, Does Crystal Cox have a legal and constitutional right to buy and own
24   a domain name, with another person's name in the Domain Name?

25   **RESPONSE TO INTERROGATORY NO. 55:**

26   Objection. This interrogatory is impermissibly compound and in excess of the 25 allowable
27   interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,
28   Counterdefendant is not required to respond to the same. Further, this interrogatory is largely

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

32

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*Exhibit 9*

1     The statements of Counterdefendant made on his blog remain publically available and speak for

2 itself if reviewed in its entirety. Furthermore, Counterdefendant is unaware of any statements of

3 record that do not speak for themselves.

4 **INTERROGATORY NO. 11:**

5     Have you Spoke with, made third party statements to Tracy Coenen of the Fraud Files and

6 accused Counter Plaintiff Cox of extortion or any other crimes against you or your family before

7 Nov. of 2012?

8 **RESPONSE TO INTERROGATORY NO. 11:**

9     Counterdefendant objects to Interrogatory No. 11 on the grounds that the terms "third party

10 statements," "extortion," and "any other crimes" are vague and ambiguous. Counterdefendant

11 further objects because it is compound and seeks a contention relating to and/or regarding a fact or

12 application of law to fact and cannot be adequately answered until discovery has been completed. It

13 has long been established that answers to contention interrogatories should be deferred until

14 discovery has been completed. (*See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328

15 (N.D. Cal. 1985); *Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis.

16 1978).) Counterdefendant also objects because it contains multiple subparts which count as two (2)

17 separate and distinct interrogatories in regard to the maximum number of interrogatories permitted

18 by F.R.C.P. 33(a). Subject to and without waiving the foregoing objections, Counterdefendant

19 responds as follows:

20     Any non-privileged statements made to Tracy Coenen of The Fraud Files Blog are published on

21 that blog, publicly available at <sequenceinc.com/fraudfiles/tag/crystal-cox/> and speak for

22 themselves.

23 **INTERROGATORY NO. 12:**

24     Have you Spoke with attorney and legal blogger Kenneth P. White and accused Counter

25 Plaintiff Cox of extortion or any other crimes against you or your family before Nov. of 2012?

26 **RESPONSE TO INTERROGATORY NO. 12:**

27     Counterdefendant objects to Interrogatory No. 12 on the grounds the terms "extortion" and

28 "other crimes" are vague and ambiguous. Counterdefendant further objects because it is compound

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

12

*Exhibit 9a*

1   and seeks a contention relating to and/or regarding a fact or application of law to fact and cannot be

2   adequately answered until discovery has been completed. It has long been established that answers

3   to contention interrogatories should be deferred until discovery has been completed. (*See In re*

4   *Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-America Facilities,*

5   *Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).)

6        Counterdefendant also objects because it contains multiple subparts which count as two (2)

7   separate and distinct interrogatories in regard to the maximum number of interrogatories permitted

8   by F.R.C.P. 33(a). Counterdefendant further objects because it seeks information protected by the

9   attorney/client privilege and/or work product privilege.

10       Any conversations with Kenneth P. White are protected by the attorney/client privilege.

11  **INTERROGATORY NO. 13:**

12       Have you Spoke with attorney and legal blogger for Reuters, William Peacock and accused

13  Counter Plaintiff Cox of extortion or any other crimes against you or your family before Nov. of

14  2012?

15  **RESPONSE TO INTERROGATORY NO. 13:**

16       Counterdefendant objects to Interrogatory No. 13 on the grounds that the terms "extortion" and

17  "other crimes" are vague and ambiguous. Counterdefendant further objects because it is compound

18  and seeks a contention relating to and/or regarding a fact or application of law to fact and cannot be

19  adequately answered until discovery has been completed. It has long been established that answers

20  to contention interrogatories should be deferred until discovery has been completed. (*See In re*

21  *Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-America Facilities,*

22  *Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).)

23       Counterdefendant also objects because it contains multiple subparts which count as two (2)

24  separate and distinct interrogatories in regard to the maximum number of interrogatories permitted

25  by F.R.C.P. 33(a). Subject to and without waiving the foregoing objections, Counterdefendant

26  responds as follows:

27       Counterdefendant never spoke with William Peacock prior to November 2012.

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

13

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

1  **INTERROGATORY NO. 14:**

2      Have you Spoke with journalist Kashmir Hill of Forbes and accused Counter Plaintiff Cox of

3  extortion or any other crimes against you or your family before Nov. of 2012?

4  **RESPONSE TO INTERROGATORY NO. 14:**

5      Counterdefendant objects to Interrogatory No. 14 on the grounds that the terms are "extortion"

6  and "other crimes" are vague and ambiguous. Counterdefendant further objects because it is

7  compound and seeks a contention relating to and/or regarding a fact or application of law to fact

8  and cannot be adequately answered until discovery has been completed. It has long been

9  established that answers to contention interrogatories should be deferred until discovery has been

10  completed. (*See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-*

11  *America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).)

12      Counterdefendant also objects because it contains multiple subparts which count as two (2)

13  separate and distinct interrogatories in regard to the maximum number of interrogatories permitted

14  by F.R.C.P. 33(a). Subject to and without waiving the foregoing objections, Counterdefendant

15  responds as follows:

16      To the best of Counterdefendant's recollection, he never spoke with Kashmir Hill prior to

17  November 2012.

18  **INTERROGATORY NO. 15:**

19      Have you Spoke with any journalist, blogger, legal blog, editor, radio broadcaster, or publisher

20  of any kind and told them Crystal Cox was an extortionist?

21  **RESPONSE TO INTERROGATORY NO. 15:**

22      Counterdefendant objects to Interrogatory No. 15 on the grounds it is vague and ambiguous.

23  Counterdefendant further objects because it is overly broad, not limited to time and scope, unduly

24  burdensome, compound, and seeks a contention relating to and/or regarding a fact or application of

25  law to fact and cannot be adequately answered until discovery has been completed. It has long been

26  established that answers to contention interrogatories should be deferred until discovery has been

27  completed. (*See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-*

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

14

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*Exhibit 9a*

1 │ *America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).) Subject to and

2 │ without waiving the foregoing objections, Counterdefendant responds as follows:

3 │     Statements made by Counterdefendant and are directly attributable to Counterdefendant, are

4 │ generally available on the Internet, in publications that have been entered into evidence in this case

5 │ already. Any such statements should be easily located by Cox and provided for authentication.

6 │ **INTERROGATORY NO. 16:**

7 │     What, by name and location, journalists, law bloggers, tv reporters, bloggers, law bloggers or

8 │ any other media or publisher of any kind have you spoke with, called, texted, emailed, or

9 │ communicated to in any way about Crystal Cox in general, Crystal Cox having a blog attacking

10 │ your children or Crystal Cox being an extortionist before the Nov. 2012 filing date of Randazza v.

11 │ Cox?

12 │ **RESPONSE TO INTERROGATORY NO. 16:**

13 │     Counterdefendant objects to Interrogatory No. 16 on the grounds that it is vague, ambiguous

14 │ and confusing. Counterdefendant further objects because it is overly broad, compound, and seeks a

15 │ contention relating to and/or regarding a fact or application of law to fact and cannot be adequately

16 │ answered until discovery has been completed. It has long been established that answers to

17 │ contention interrogatories should be deferred until discovery has been completed. (*See In re*

18 │ *Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *Mid-America Facilities,*

19 │ *Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497 (E.D. Wis. 1978).)

20 │     Counterdefendant also objects because it contains multiple subparts which count as three (3)

21 │ separate and distinct interrogatories in regard to the maximum number of interrogatories permitted

22 │ by F.R.C.P. 33(a). Subject to and without waiving the foregoing objections, Counterdefendant

23 │ responds as follows:

24 │     Counterdefendant was interviewed by Bob Garfield. The transcript of the interview with Bob

25 │ Garfield speaks for itself and is available at http://www.onthemedia.org/story/198049-combating-

26 │ bad-speech-more-speech/transcript/.  The results of any other interviews would be readily available

27 │ online, as to the best of Counterdefendant's knowledge, all statements made to any bloggers or

28 │ journalists were quoted in their articles, and those articles remain online.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

15

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*Exhibit 9*

1 **INTERROGATORY NO. 17:**

2     Did you make it clear, or state in any way to any members of the First Amendment bar that you

3 represented Crystal Cox in her appeal?

4 **RESPONSE TO INTERROGATORY NO. 17:**

5     Counterdefendant objects to Interrogatory No. 17 on the grounds that it is vague, ambiguous

6 and confusing. Counterdefendant further objects because it seeks a contention relating to and/or

7 regarding a fact or application of law to fact and cannot be adequately answered until discovery has

8 been completed. It has long been established that answers to contention interrogatories should be

9 deferred until discovery has been completed. (*See In re Convergent Technologies Sec. Litig.*, 108

10 F.R.D. 328 (N.D. Cal. 1985); *Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497

11 (E.D. Wis. 1978).)

12     Counterdefendant further objects because this interrogatory is in excess of the 25 allowable

13 interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,

14 Counterdefendant is not required to respond to the same. Subject to and without waiving the

15 foregoing objections, Counterdefendant responds as follows:

16     The "First Amendment bar" does not exist. Further, Counterdefendant has never claimed to

17 represent Cox in her appeal or in any capacity.

18 **INTERROGATORY NO. 18:**

19     Did you negotiate terms of any deal in any way acting as Cox's attorney, discuss a deal with

20 Plaintiff's attorney David Aman?

21 **RESPONSE TO INTERROGATORY NO. 18:**

22     Counterdefendant objects to Interrogatory No. 18 on the grounds that it is vague, ambiguous,

23 overly broad, and not limited in time and scope. Counterdefendant further objects because this

24 interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal

25 Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same.

26 Subject to and without waiving the foregoing objections, Counterdefendant responds as follows:

27     Counterdefendant did not negotiate any terms or make any deals with David Aman or hold

28 himself out as Cox's attorney. Furthermore, this has already been definitively answered in Mr.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 254-8885

16

*Exhibit 9*

*Exhibit 9a*

1 | Aman's declaration, previously submitted to the Court. (*See* Declaration of David Aman, attached

2 | as **Exhibit A**.)

3 | **INTERROGATORY NO. 19:**

4 |     Did you take any actions, what so ever, in any way that was an action acting as Cox's attorney?

5 | **RESPONSE TO INTERROGATORY NO. 19:**

6 |     Counterdefendant objects to Interrogatory No. 19 on the grounds is vague, ambiguous,

7 | confusing, not limited in time and scope, and seeks a contention relating to and/or regarding a fact

8 | or application of law to fact and cannot be adequately answered until discovery has been

9 | completed. It has long been established that answers to contention interrogatories should be

10 | deferred until discovery has been completed. (*See In re Convergent Technologies Sec. Litig.*, 108

11 | F.R.D. 328 (N.D. Cal. 1985); *Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497

12 | (E.D. Wis. 1978).)

13 |     Counterdefendant further objects because this interrogatory is in excess of the 25 allowable

14 | interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,

15 | Counterdefendant is not required to respond to the same. Subject to and without waiving the

16 | foregoing objections, Counterdefendant responds as follows:

17 |     No.

18 | **INTERROGATORY NO. 20:**

19 |     Did you tell Crystal Cox that higher ups in the Porn Industry said to you, what are you going to

20 | do about Crystal cox, or the Crystal Cox Case?

21 | **RESPONSE TO INTERROGATORY NO. 20:**

22 |     Counterdefendant objects to Interrogatory No. 20 on the grounds that it is vague, ambiguous,

23 | overly broad, not limited in time and scope, and seeks information which is neither relevant nor

24 | reasonably calculated to lead to the discovery of admissible evidence. Counterdefendant further

25 | objects because it seeks information protected by the attorney/client privilege and/or work product

26 | privilege. Counterdefendant further objects because the question is virtually unintelligible. "The

27 | Porn Industry" lacks a definition, and "higher ups in the porn industry" lacks a definition.

28 |     Counterdefendant further objects because this interrogatory is in excess of the 25 allowable

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

17

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*Exhibit 9*

1  interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,
2  Counterdefendant is not required to respond to the same. Subject to and without waiving the
3  foregoing objections, Counterdefendant responds as follows:

4      No.



5  **INTERROGATORY NO. 21:**

6      Did you have phone conversations with Eugene Volokh and state that you represented Cox and
7  discuss with him your strategy, or a deal you were trying to make with the opposition, Plaintiff's
8  attorney David Aman?



9  **RESPONSE TO INTERROGATORY NO. 21:**

10     Counterdefendant objects to Interrogatory No. 21 on the grounds that it is vague, ambiguous,
11 overly broad, not limited in time and scope, and seeks information which is neither relevant nor
12 reasonably calculated to lead to the discovery of admissible evidence.

13     Counterdefendant further objects because this interrogatory is in excess of the 25 allowable
14 interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,
15 Counterdefendant is not required to respond to the same. Subject to and without waiving the
16 foregoing objections, Counterdefendant responds as follows:

17     Counterdefendant spoke with Eugene Volokh in December 2011. Randazza informed Volkokh
18 that if he was going to represent Cox, that Randazza would gladly bow out, and defer to Volokh to
19 handle the case. Volokh, however, said that he would prefer that Randazza co-counsel the case with
20 him due to Volokh's stated lack of litigation experience. Counterdefendant and Volokh discussed
21 possible strategies that he and Volokh thought might be good ideas during that call.
22 Counterdefendant and Volokh both discussed the fact that Cox's interests would be better served
23 through settlement.



24 **INTERROGATORY NO. 22:**

25     Did you discuss with Cox at any time, on how you would proceed forward on her case, costs,
26 timelines, or any other negotiation strategy of any kind?

27 **RESPONSE TO INTERROGATORY NO. 22:**

28     Counterdefendant objects to Interrogatory No. 22 on the grounds that it is overbroad, vague,

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

18

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9

1  **COUNTERDEFENDANT MARC RANDAZZA'S ANSWERS TO**

2  **COUNTERCLAIMANT'S FIRST SET OF INTERROGATORIES**

3       Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Counterdefendant Marc J.

4  Randazza ("Counterdefendant"), by and through his attorneys of record hereby responds to

5  Counterclaimant Crystal Cox's First Set of Interrogatories, as follows:

6  **INTRODUCTION**

7       These responses are made solely for the purpose of, and in relation to, this action. Each

8  response is given subject to all appropriate objections (including, but not limited to, objections

9  concerning competency, relevancy, materiality, propriety, and admissibility), which would require

10 the exclusion of any statement contained herein if the interrogatory were asked of, or any statement

11 contained herein were made by, a witness present and testifying in court. All such objections and

12 grounds therefore are reserved and may be interposed at the time of trial.

13      The parties on whose behalf these responses are given have not yet completed their

14 investigation of the facts relating to this action, have not yet completed their discovery in this

15 action, and have not yet completed their preparation for trial. Consequently, the following

16 responses are given without prejudice to the responding parties' right to produce, at the time of

17 trial, subsequently-discovered material.

18      Except for facts explicitly admitted herein, no admission of any nature whatsoever is to be

19 implied or inferred. The fact that any interrogatory herein has been answered should not be taken as

20 an admission, or a concession, of the existence of any facts set forth or assumed by such

21 interrogatory, or that such answer constitutes evidence of any fact thus set forth or assumed. All

22 responses must be construed as given on the basis of present recollection.

23  **GENERAL OBJECTIONS APPLICABLE TO ALL RESPONSES**

24      1.  Counterdefendant objects to Counterclaimant's First Set of Interrogatories in their

25 entirety on the grounds that the same were impermissibly served by email on July 24, 2014 in

26 violation of the Federal Rules of Civil Procedure.

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-8865

2

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*Exhibit 9*

1  ambiguous, and seeks information which is neither relevant nor reasonably calculated to lead to the
2  discovery of admissible evidence. Counterdefendant further objects because this interrogatory is in
3  excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil
4  Procedure. As a result, Counterdefendant is not required to respond to the same. Subject to and
5  without waiving the foregoing objections, Counterdefendant responds as follows:

6  During the initial conversation with Cox and Michael Spreadbury, Counterdefendant did
7  discuss general strategy, possible settlement options, Cox's goals for the litigation, and procedure
8  of her case, and possible costs, as is clearly discussed in Spreadbury's declaration, previously
9  submitted to the Court. (Declaration of Michael Spreadbury, attached as **Exhibit B**.)

10 **INTERROGATORY NO. 23:**

11 Did you discuss Cox's strategy, her plan moving forward in her Obsidian v. Cox appeal?

12 **RESPONSE TO INTERROGATORY NO. 23:**

13 Counterdefendant objects to Interrogatory No. 23 on the grounds that it is vague, ambiguous,
14 and seeks information which is neither relevant nor reasonably calculated to lead to the discovery
15 of admissible evidence. Counterdefendant further objects on the basis that the interrogatory does
16 not state "with whom" Counterdefendant might have discussed strategy, rendering it unintelligible.
17 Counterdefendant further objects because this interrogatory is in excess of the 25 allowable
18 interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,
19 Counterdefendant is not required to respond to the same. Subject to and without waiving the
20 foregoing objections, Counterdefendant responds as follows:

21 During the initial conversation with Cox and Michael Spreadbury, Counterdefendant did
22 discuss general strategy as fully discussed in Spreadbury's declaration. (Exh. B.) Randazza
23 presented some different options to Cox, including proposing a settlement that could result in a
24 modification of Judge Hernandez' order, which would serve the public interest, but that might not
25 be in Cox's interest. Cox responded positively, stating "I don't care if they nail me to a cross." In
26 that call, Cox authorized Randazza to propose creative solutions to Obsidian's counsel, prior to
27 accepting representation.

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

19

Exhibit 9

1  **INTERROGATORY 24:**

2      Did you ask Crystal Cox to email you her files and documents in her case, as part of your

3  moving forward on possible representation as her attorney?

4  **RESPONSE TO INTERROGATORY NO. 24:**

5      Counterdefendant objects to Interrogatory No. 24 on the grounds that it is vague, ambiguous,

6  and seeks information which is neither relevant nor reasonably calculated to lead to the discovery

7  of admissible evidence. Counterdefendant further objects because this interrogatory is in excess of

8  the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As

9  a result, Counterdefendant is not required to respond to the same. Subject to and without waiving

10  the foregoing objections, Counterdefendant responds as follows:

11      Given that the contents of the *Obsidian* case were too voluminous to be e-mailed,

12  Counterdefendant asked Cox to deposit the publically available documents into a dropbox, in order

13  to review, before determining whether to undertake representation. Cox then denied knowing what

14  a dropbox is, and instead emailed voluminous emails containing nothing more than the publicly

15  available documents from *Obsidian v. Cox*. Randazza did not open these emails as they were sent

16  counter to Randazza's instructions.

17  **INTERROGATORY NO. 25:**

18      Did you tell Eugene Volokh, attorney and UCLA Law Professor that you represented Crystal

19  Cox, had put in time and material and had a negotiation on the table with Plaintiff "Obsidian" and

20  their attorney David Aman?

21  **RESPONSE TO INTERROGATORY NO. 25:**

22      Counterdefendant objects to Interrogatory No. 25 on the grounds that it is vague, ambiguous,

23  and seeks information which is neither relevant nor reasonably calculated to lead to the discovery

24  of admissible evidence. Counterdefendant further objects because this interrogatory is in excess of

25  the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As

26  a result, Counterdefendant is not required to respond to the same. Subject to and without waiving

27  the foregoing objections, Counterdefendant responds as follows:

28      No.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

20

Exhibit 9

1

2 **INTERROGATORY NO. 26:**

3    Did you tell First Amendment Bar members that you were representing Crystal Cox?

4 **RESPONSE TO INTERROGATORY NO. 26:**

5    Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

6 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

7 respond to the same. This interrogatory is overbroad and irrelevant to the subject matter and the

8 information sought is not reasonably calculated to lead to the discovery of admissible evidence.

9 Counterdefendant further objects as the "First Amendment Bar" does not exist. Subject to and

10 without waiving the foregoing objections, Counterdefendant responds as follows:

11    No.

12 **INTERROGATORY NO. 27:**

13    Did you, at any time represent yourself as Crystal Cox's attorney, representing her in her

14 Obsidian v. Cox appeal in any way, to any one?

15 **RESPONSE TO INTERROGATORY NO. 27:**

16    Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

17 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

18 respond to the same. This interrogatory calls for legal conclusion. Subject to and without waiving

19 the foregoing objections, Counterdefendant responds as follows:

20    No.

21 **INTERROGATORY NO. 28:**

22    Did you enter into any discussions with any attorney or party to negotiate a deal of any kind for

23 the benefit of, or affecting the interest of Crystal Cox's Obsidian v. Cox appeal to the ninth circuit?

24 **RESPONSE TO INTERROGATORY NO. 28:**

25    Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

26 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

27 respond to the same. This interrogatory is overbroad. Subject to and without waiving the foregoing

28 objections, Counterdefendant responds as follows:

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

21

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

EXHIBIT 9

Case 16-01111-abl    Doc 36    Entered 11/02/17 16:17:49    Page 158 of 259
Case 2:12-cv-02040-JAD-PAL    Document 252    Filed 04/06/15    Page 27 of 44

9a

1    No.

2    **INTERROGATORY NO. 29:**

3    As a Legal Expert, Do you claim that Crystal Cox is guilty of the crime of extortion?  That Cox

4    extorted you and if so what proof do you have of this and what laws do you allege Cox to have

5    violated?

6    **RESPONSE TO INTERROGATORY NO. 29:**

7    Objection. This interrogatory is both improperly compound and in excess of the 25 allowable

8    interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,

9    Counterdefendant is not required to respond to the same.  Further, it requests an expert opinion, not

10    a party response.  Nevertheless, it is Counterdefendant's contention that Cox has violated many

11    laws in the past including forgery, witness intimidation, perjury, harassment, extortion, and witness

12    intimidation (among others).

13    **INTERROGATORY NO. 30:**

14    As a First Amendment and defamation expert, do you allege that you did not defame Crystal

15    Cox, paint her in false light or make knowingly false statements to third parties that defamed her,

16    painted her in a false light and caused her harm?

17    **RESPONSE TO INTERROGATORY NO. 30:**

18    Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

19    33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

20    respond to the same. This interrogatory is compound and consists of three distinct interrogatories

21    pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. This interrogatory is overbroad.

22    Further, it calls for an expert response, and not a party response.  Subject to and without waiving

23    the foregoing objections, Counterdefendant responds as follows:

24    Counterdefendant has never painted Cox in a false light or defamed her, and all statements

25    made about Cox were either provably true, believed to be true, or statements of opinion that cannot

26    be proven true or false.

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

22

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9

1 **INTERROGATORY NO. 31:**

2     As a Legal Expert, do you allege that you did not engage in any actions that could be taken by

3 Cox or anyone else that was legal representation of Cox, as her attorney?

4 **RESPONSE TO INTERROGATORY NO. 31:**

5     Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

6 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

7 respond to the same. This interrogatory calls for a legal conclusion. This interrogatory calls for an

8 expert opinion, not a party response.  Subject to and without waiving the foregoing objections,

9 Counterdefendant responds as follows:

10     Counterdefendant has never engaged in any actions that would be interpreted as constituting

11 legal representation of Cox.

12 **INTERROGATORY NO. 32:**

13     Did you, at any time state to a third party that Crystal Cox had extorted you and was guilty of

14 extortion?

15 **RESPONSE TO INTERROGATORY NO. 32:**

16     Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

17 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

18 respond to the same.

19 **INTERROGATORY NO. 33:**

20     Do you know of any investigations or convictions of Cox for the crime of Extortion?

21 **RESPONSE TO INTERROGATORY NO. 33:**

22     Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

23 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

24 respond to the same. Further, this interrogatory is overbroad and calls for legal conclusions. Subject

25 to and without waiving the foregoing objections, Counterdefendant responds as follows:

26     Counterdefendant knows that Cox has been investigated for a number of crimes, including

27 misuse of telecommunications systems, extortion, forgery, and theft.  According to Reverend John

28 Collins, he has been in contact with a prosecutor who is investigating Cox for extortion.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-8605

23

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9

**INTERROGATORY NO. 34:**

Do you allege that you did not accuse Cox nor publish statements of accusation of extortion to any third party regarding Cox before November 2012 when you filed the Randazza v. Cox Lawsuit?

**RESPONSE TO INTERROGATORY NO. 34:**

Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same. Further, the interrogatory is largely unintelligible and Counterdefendant cannot make enough sense of it to answer it.

**INTERROGATORY NO. 35:**

Did you post, publish or state to any third party, before November of 2012 that Crystal Cox was an Extortionist or insinuate in any way that Cox was guilty of criminal behavior or that Cox had attacked a 3 year old?

**RESPONSE TO INTERROGATORY NO. 35:**

Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure and is impermissibly compound. As a result, Counterdefendant is not required to respond to the same. However, Cox has made such statements herself in evidence in this case.

**INTERROGATORY NO. 36:**

As an expert in defamation law, do you allege that you have not violated defamation laws in regard to Crystal Cox?

**RESPONSE TO INTERROGATORY NO. 36:**

Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same. This interrogatory is argumentative. This interrogatory calls for legal conclusion. Further the interrogatory is nonsensical and unintelligible.

Exhibit 9

1    **INTERROGATORY NO. 37:**

2       Did you state on any blog or to any third party that Crystal Cox was an extortionist, involved in

3    criminal activity or had extorted you personally?  Before the filing of Randazza v. Cox in Nov. of

4    2012?

5    **RESPONSE TO INTERROGATORY NO. 37:**

6       Objection. This interrogatory is impermissibly compound and in excess of the 25 allowable

7    interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result,

8    Counterdefendant is not required to respond to the same.

9    **INTERROGATORY NO. 38:**

10      Did you have a personal or professional relationship with Peter L. Michaelson before filing a

11   third party statement to WIPO that Cox is an Extortionist?

12   **RESPONSE TO INTERROGATORY NO. 38:**

13      Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

14   33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

15   respond to the same. This interrogatory is overbroad. This interrogatory is irrelevant to the subject

16   matter of the case at hand, and is unintelligible. Subject to and without waiving the foregoing

17   objections, Counterdefendant responds as follows:  Randazza has never filed a third party statement

18   to WIPO.

19   **INTERROGATORY NO. 38** [sic – improper numbering in original]:

20      Did you employ or call in favors to any blogger, lawyer or other party to publish statements to

21   third parties that Cox was an Extortionist or had engaged in criminal activities to harm a three year

22   old?

23   **RESPONSE TO INTERROGATORY NO. 38:**

24      Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

25   33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

26   respond to the same. This interrogatory is compound and consists of two distinct interrogatories

27   pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. This interrogatory is overbroad.

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

25

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

*Exhibit 9*

1  unintelligible. Subject to and without waiving the foregoing objections, Counterdefendant responds

2  as follows:

3      Yes to subpart 1. Regarding subpart 2, it calls for an expert opinion, not a party opinion,

4  nevertheless, the response is:  No.

5  **INTERROGATORY NO. 56:**

6      Is it illegal to email a prior associate or contact and ask for a job, or if they know anyone

7  needing a particular service?

8  **RESPONSE TO INTERROGATORY NO. 56:**

9      Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

10  33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

11  respond to the same. Further, this interrogatory is largely unintelligible and calls for a conclusion of

12  law.    Subject to and without waiving the foregoing objections, Counterdefendant responds as

13  follows:

14      In a vacuum, no, but in the context of extortion, yes.

15  **INTERROGATORY NO. 57:**

16      Did you email Crystal Cox and tell her to email or contact you any time if she needed anything,

17  as you felt people like her were needed in the world?

18  **RESPONSE TO INTERROGATORY NO. 57:**

19      Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

20  33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

21  respond to the same. Subject to and without waiving the foregoing objections, Counterdefendant

22  responds as follows:

23      Counterdefendant did send such an email because Counterdefendant was aware at that time that

24  Cox is criminal without any ethics or scruples (as evidenced by her behavior), and has been the

25  subject of multiple criminal complaints, civil complaints, restraining orders, and criminal

26  investigations, and it seemed prudent to lead Cox to believe that Counterdefendant was unaware of

27  her status as a sociopathic criminal.  Randazza did not wish to create any scenarios that could

28  jeopardize Eugene Volokh's representation at that time, as Randazza considers Volokh to be a

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

33

Exhibit 9

1  friend, and was acting at that time to be supportive of him. Therefore, Randazza was polite and

2  professional in this email, and chose to hide his true feelings about Cox at that time.

3  **INTERROGATORY NO. 58:**

4      Did you contact Plaintiff's Attorney David Aman of Tonkon Torp and offer to Give a

5  Deposition in Regard to Crystal Cox, Pro Se Defendant in Obsidian v. Cox?

6  **RESPONSE TO INTERROGATORY NO. 58:**

7      Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

8  33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

9  respond to the same. Subject to and without waiving the foregoing objections, Counterdefendant

10  responds as follows:

11      No.

12  **INTERROGATORY NO. 59:**

13      Did you lead Crystal Cox to believe you were considering representing her to get information

14  to take to the Plaintiff to negotiate a Deal and then NOT get back to Crystal Cox on this Matter?

15  **RESPONSE TO INTERROGATORY NO. 59:**

16      Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

17  33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

18  respond to the same. Furthermore, this interrogatory is unintelligible. Subject to and without

19  waiving the foregoing objections, Counterdefendant responds as follows:

20      Counterdefendant is without any knowledge as to what he led Crystal Cox to believe.

21  Furthermore, Cox is incapable of telling the truth, as she is a pathological liar, a sociopath, and a

22  criminal. Therefore, any statement about what a person with such personality defects would believe

23  would be utter speculation without any foundation.

24  **INTERROGATORY NO. 60:**

25      Did you make any kind of deal or offer to make, negotiate a deal of ANY kind, via phone,

26  email, text, letter or any other form of communication with Tonkon Torp Law Firm or David

27  Aman, or Plaintiff Obsidian Finance Group or Kevin Padrick in any way, claiming that you

28  represented Crystal Cox in any way?

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

34

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9

*Exhibit 9a*

1 **RESPONSE TO INTERROGATORY NO. 60:**

2      Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

3  33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

4  respond to the same. Further, this interrogatory is compound and consists of two distinct

5  interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure and is duplicative of

6  prior interrogatories. Subject to and without waiving the foregoing objections, Counterdefendant

7  responds as follows:

8      No.

9 **INTERROGATORY NO. 61:**

10      Did You, at any time conspire or discuss in any way the securing of ownership of the Domain

11  Name MarcRandazza.com through any conversation, paperwork, emails, communications with

12  Plaintiff Kevin Padrick, or Plaintiff's Attorney David S. Aman of Tonkon Torp Law Firm?

13      Did You, at any time discuss with Plaintiff Kevin Padrick, or Plaintiff's Attorney David S.

14  Aman of Tonkon Torp Law Firm in regard to you, Marc Randazza or any Associate of yours

15  owning the Domain Name MarcRandazza.com if you agreed to be Subpoenaed or Testify in regard

16  to the Assets of Crystal Cox?

17      Did You Initiate contact, at any time with Plaintiff Kevin Padrick, or Plaintiff's Attorney David

18  S. Aman of Tonkon Torp Law Firm in regard to the Domain Name MarcRandazza.com and offer to

19  Testify against Crystal Cox in any way?

20      Did You initiate contact, at any time with Plaintiff Kevin Padrick, or Plaintiff's Attorney David

21  S. Aman of Tonkon Torp Law Firm in regard to any negotiations on behalf of a legal matter,

22  lawsuit, judgment or case regarding

23 **RESPONSE TO INTERROGATORY NO. 61:**

24      Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

25  33(a) of the Federal Rules of Civil Procedure. Further it contains multiple unintelligible sub-parts

26  that Counterdefendant cannot untangle into a coherent question. As a result, Counterdefendant is

27  not required to respond to the same, and given the unintelligible and compound nature of the

28  interrogatory, Counterdefendant declines to do so.

BREMER WHYTE BROWN &
O'MEARA LLP
1180 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 254-6665

35

*Exhibit 9*

1  **INTERROGATORY NO. 62:**

2      Did Crystal Cox have a blog with your daughters name on it, or a blog post in any way that you

3  personally, under oath witnessed, or saw?

4  **RESPONSE TO INTERROGATORY NO. 62:**

5      Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule

6  33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to

7  respond to the same.  Subject to and without waiving the foregoing objections, Counterdefendant

8  responds as follows:

9      Cox registered nataliarandazza.com, which corresponds to Counterdefendant's daughter's

10  name, Natalia Randazza.  Further, Counterdefendant has seen blog posts by Cox in which Cox

11  refers to Natalia's mother as "a slut."

12  **INTERROGATORY NO. 63:**

13      Did you give Forbes a photo of your daughter and claim that Crystal Cox had a blog regarding

14  your daughter?

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

36

Exhibit 9

**RESPONSE TO INTERROGATORY NO. 63:**

Objection. This interrogatory is in excess of the 25 allowable interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure. As a result, Counterdefendant is not required to respond to the same. Further, this interrogatory is irrelevant to the subject matter of this case, and the information sought is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Counterdefendant responds as follows:

No.

Dated: August 26, 2014                        BREMER WHYTE BROWN & O'MEARA LLP

By: _____
    Anthony T. Garasi, Esq.
    State Bar No. 11134
    Jared G. Christensen, Esq.
    State Bar No. 11538
    Attorneys Counterdefendant Marc
    Randazza

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

37

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

Exhibit 9

## DECLARATION OF MARC J. RANDAZZA, ESQ.

I, Marc J. Randazza, Esq., being over 18 years of age and competent to testify about the matters contained in this declaration if called to do so at trial, and under the penalty of perjury states as follows:

1.     That he has read the foregoing ANSWERS TO COUNTERCLAIMANT'S FIRST SET OF INTERROGATORIES and knows that the contents thereof and the same are true of his own knowledge, except for those matters therein stated on information and belief, and as to those matters, he believes them to be true.

Dated:  August 26, 2014

/s/ *Marc J. Randazza*

_____

Marc J. Randazza, Esq.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

38

H:\1163\001\Disc\Written Discovery\Counterdefendant's Responses\2014-08-20 Randazza's Answer to First Set of Interrogatories.docx

EXHIBIT 9

1                              **CERTIFICATE OF SERVICE**

2         The undersigned hereby certifies that on the 26th day of August, 2014, I served a copy of

3 the foregoing **COUNTERDEFENDANT MARC RANDAZZA'S ANSWERS TO**

4 **COUNTERCLAIMANT'S FIRST SET OF INTERROGATORIES** via the United States Mail

5 postage paid to the party listed below:

6 RANDAZZA LEGAL GROUP

7

8 Ronald D. Green, Esq.
   Nevada Bar No. 7360

9 Theresa M. Haar,
   Nevada Bar No. 12158

10 Attorneys for Plaintiff

11 and Via U.S. Mail and Email to party requesting notice:

12 Crystal L. Cox, Pro Se

13 PO Box 20277
   Port Townsend, WA 98368

14 SavvyBroker@yahoo.com

15

16

17                 An Employee of BREMER WHYTE
                BROWN & O'MEARA, LLP

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

                                    39

EX Hibit 9

YAHOO! MAIL

**Subject**   RE: from Crystal L. Cox

**From**   mjr@randazza.com <mjr@randazza.com>

**To**   Crystal L. Cox <savvybroker@yahoo.com>

**Date**   Tue, Jan 17, 2012 at 6:52 AM

Crystal,

Perhaps you just don't understand how deeply offensive it is to me that you would register that without even telling me, let alone asking me.  You had no *right* to do that.

Do you think that just by being my *potential* client, or even my *actual* client that it somehow created a right for you to register *my name* to "protect the story?"  Don't you think that I have a) the ability to do that myself, and b) the right to decide whether or not you would use my name for your own exclusive use – to talk about YOUR story?  Even if you thought that this was okay, which seems strange to me, why on earth would you think that you continue to have any justification for having that domain?

Asking me for a job, or a recommendation?  That doesn't bother me in the least.  In fact, if you had displayed any ethics, I'd be game to do so.

But, why on earth would you think that it is reasonable to tell someone that a) you registered THEIR name for YOUR own purposes, and THEN b) ask for a job?  It is (a) that makes an enemy of me.  (b) is completely reasonable.

I'm sure you paid a few bucks for the domain.  I'd be pleased to reimburse you what it cost you.  But, I do not find it to be acceptable that someone else has registered my name for any purpose.  I certainly do not agree with your justification for doing it in the first place.  Nevertheless, any justification you MIGHT have had dissolved when it became certain that I was not going to represent you, I have no connection to this case at all, and thus I can't possibly see any reason for you to have any control over that domain whatsoever – unless the purpose is to simply make an enemy of me.

—— Original Message ——
Subject: Re: from Crystal L. Cox
From: "Crystal L. Cox" <savvybroker@yahoo.com>
Date: Mon, January 16, 2012 6:48 pm
To: "Marc J. Randazza" <mjr@randazza.com>

How in the world did I make an enemy, I got it to protect the story, and the search term as I thought you were going to represent me, and wanted to control the negativity I knew I would get about it.  That's what I do, I never did anything negative against you. And you do care of WIPO, i read one of your bio things braggin about a WIPO case you won for someone.

No offense.. if asking you for a job, or to recommend a job made you an enemy, nothing I can do about that, certainly was

EX-17

NOT my intention in any way.


**Crystal L. Cox**
**Broker Owner**


**Search Engine Reputation Manager**
**Investigative Blogger**
**Good Life International Distributor**

Peace and Love to You !!!

-------------------------------------------------

**From:** Marc J. Randazza <mjr@randazza.com>
**To:** Crystal L. Cox <savvybroker@yahoo.com>
**Sent:** Monday, January 16, 2012 5:59 PM
**Subject:** Re: from Crystal L. Cox

I'm not interested in WIPO.  You want to make an enemy of me, really?

Marc John Randazza

On Jan 16, 2012, at 3:23 PM, "Crystal L. Cox" <savvybroker@yahoo.com> wrote:

> Really? Well Marc, Look at my WIPO case with Proskauer Rose, WIPO sure
> seems to think its Ok.  I thought it was perfectly legal to do so.  I have registered
> others name in fair competition and real estate for years.  I registered others
> names to promote them, some to expose them, and others as investments in the
> future. Many smart internet marketers register others names, it is not illegal
> Marc. Sorry I upset you, never mind. I was simply looking for people to promote
> as I need a job.  Guess you don't need such a service, all you had to do was say
> no thank you.  I am sure that you get tons of spam emails daily asking you to
> hire them, we all do.  You could have just ignored it.

*Exhibit 17*

I manage that name at this time. And have an option to buy it back in 6 months pending my discretion. It is certainly not against the law to register the domain name of others.

I was Pro Se with my Proskauer Rose case and I won, having many of their attorney names as a dotcom. Real free to file with WIPO, and be sure and name me in that case as well as the current registered name, as I proudly and smartly registered the domain name. We are happy to go to WIPO over it.

there are others but here is the chairman of Proskauer Rose, WIPO Case

http://www.wipo.int/amc/en/domains/search/text.jsp?case=D2011-0679


**Crystal L. Cox**
**Broker Owner**
**YOU WRITE WHAT**
**YOU'RE TOLD!**



**THANKS, CORPORATE NEWS!**
We Couldn't Control The People Without You

**Search Engine Reputation Manager**
**Investigative Blogger**
**Good Life International Distributor**

Peace and Love to You !!!

---

**From:** "mjr@randazza.com" <mjr@randazza.com>
**To:** Crystal L. Cox <savvybroker@yahoo.com>
**Sent:** Monday, January 16, 2012 2:36 PM
**Subject:** RE: from Crystal L. Cox

Crystal,

You have no right to register a domain name that corresponds to my real name. Please hand that domain name over to me, and please do not presume to think it is okay to register other people's names as domain names.

Marc John Randazza*
Randazza Legal Group

6525 West Warm Springs Rd. Ste. 100
Las Vegas, Nevada 89118
Toll Free: 888-667-1113
email: mjr (at) randazza (dot) com
eFax: 305.437.7662

Other Offices: Miami, Phoenix & Toronto
http://www.randazza.com

* Licensed in AZ, CA, FL, MA, and NV

—— Original Message ——
Subject: from Crystal L. Cox
From: "Crystal L. Cox" <savvybroker@yahoo.com>
Date: Mon, January 16, 2012 2:30 pm
To: "mjr@randazza.com" <mjr@randazza.com>

Hi Marc, hope this email finds you doing well.  When I thought we may
work together
i bought http://www.marcrandazza.com/ - to control the search, and pr
on my case,
if you represented me.. I manage it now, as ownership is well.. a different
story now
due to my current judgement..

I am confident with the case, and leaving it to the highest and best
good..

I do however need to make money, so I am asking you if you or anyone
you know could
use a very good search engine reputation manager.  Not sure if you ever
researched that
for your online presence.. not sure of what you think of David Aman
excusing me of extortion,
thing is search management is something tons of people due and for
thousands a month per search term..
and so when he sent a cease and desist and filed a lawsuit, i offered it as

a way to settle and not
spend a year fighting, he turned it down, then a year later accused me of
a crime.. its simply not
how it happened..

Anyway if you know anyone needing a very good search engine
reputation manager please let me know..

**Crystal L. Cox**
**Broker Owner**
**YOU WRITE WHAT**
**YOU'RE TOLD!**



**THANKS, CORPORATE NEWS!**
We Couldn't Control The People Without You

**Search Engine Reputation Manager**
**Investigative Blogger**
**Good Life International Distributor**

Peace and Love to You !!!

Exhibit 18

# YAHOO! MAIL

**Subject**  RE: Fw: Obsidian Finance v. Cox 3:11-CV-00057-HZ

**From**  mjr@randazza.com <mjr@randazza.com>

**To**  Crystal L. Cox <savvybroker@yahoo.com>

**CC**  J. DeVoy <jmd@randazza.com>

**Date**  Sat, Dec 10, 2011 at 3:05 PM

Crystal,

Can you set up a dropbox for this all?  This is going to take me hours to download it all and organize it.  A dropbox would be way easier.

> ——— Original Message ———
> Subject: Fw: Obsidian Finance v. Cox 3:11-CV-00057-HZ
> From: "Crystal L. Cox" <savvybroker@yahoo.com>
> Date: Sat, December 10, 2011 2:31 pm
> To: "mjr@randazza.com" <mjr@randazza.com>
>
>
> **Crystal L. Cox**
> **Broker Owner**
>
> 
>
> **Search Engine Reputation Manager**
> **Investigative Blogger**
> **Good Life International Distributor**
>
> Peace and Love to You !!!
>
> ——— Forwarded Message ———
> **From:** "Michelle_Rawson@ord.uscourts.gov" <Michelle_Rawson@ord.uscourts.gov>
> **To:** Crystal L. Cox <savvybroker@yahoo.com>
> **Sent:** Monday, December 5, 2011 1:04 PM
> **Subject:** Obsidian Finance v. Cox 3:11-CV-00057-HZ
>
>
> Hi there,

Just in case you need these and didn't get copies, or don't have access via PACER.  These are the rest of the trial documents.

*Exhibit 18*

 **Michelle Rawson**
**(503) 326-8051**
Courtroom Deputy for
**The Honorable MARCO A. HERNANDEZ**
**United States District Court Judge**

# YAHOO! MAIL

**Subject**  RE: Discovery, Summary Judgement,

**From**    mjr@randazza.com <mjr@randazza.com>

**To**      Crystal L. Cox <savvybroker@yahoo.com>

**Date**    Wed, Dec 14, 2011 at 5:06 PM

Crystal,

I have reviewed the file, and I have pondered the issues, and I have decided that I will take your case. We need to talk about some of the issues of representation before finalizing it. But, I am game.

When can you talk?

―――― Original Message ――――
Subject: Discovery, Summary Judgement,
From: "Crystal L. Cox" <savvybroker@yahoo.com>
Date: Sat, December 10, 2011 2:54 pm
To: "mjr@randazza.com" <mjr@randazza.com>

## Crystal L. Cox
**Broker Owner**



**Search Engine Reputation Manager**
**Investigative Blogger**
**Good Life International Distributor**

**Peace and Love to You !!!**

# YAHOO! MAIL

**Subject**  [FWD: Trial transcripts]

**From**  mjr@randazza.com <mjr@randazza.com>

**To**  Crystal Cox <savvybroker@yahoo.com>

**Date**  Thu, Dec 15, 2011 at 5:50 PM

Crystal,

See below.  You should do this if you want to move forward.

—— Original Message ——
Subject: Trial transcripts
From: "Volokh, Eugene" <VOLOKH@law.ucla.edu>
Date: Thu, December 15, 2011 12:34 pm
To: "Marc Randazza (mjr@randazza.com)" <mjr@randazza.com>

By the way, I forgot to say:  If you think we should indeed file a motion for a new trial,
we'll probably need transcripts of the trial and of the Nov. 28 hearing (docket #89) that's
referenced in the Nov. 30 opinion.  I talked yesterday to the court reporter to ask her
about her timetable and cost for this, and she said that for a 1-week turnaround, the cost
is a bit under $5/page, the Nov. 28 hearing is about 30 pages, and the trial is about 200
pages, though she could omit the voir dire, which would save 30-40 pages.

Given the turnaround, the coming Christmas holidays, and the early January due date for
the motion for a new trial (Jan. 5, I think), it would probably be best to ask for the
transcripts today – if you think having the transcripts would be useful to preparing the
motion for a new trial – since any delay will mean we won't get them until Dec. 27 or so
(given the Christmas days off).  You can reach the court reporter at
nancy_walker@ord.uscourts.gov .  All the best,

Eugene

# YAHOO! MAIL

$Exhibit\ 18a$

| | |
|---|---|
| **Subject** | RE: Phone conference 12/10/11 |
| **From** | mjr@randazza.com <mjr@randazza.com> |
| **To** | Michael Spreadbury <mspread@hotmail.com> |
| **CC** | crystal <crystal@crystalcox.com> |
| **Date** | Sat, Dec 10, 2011 at 1:32 PM |

Great. Call me on my home land line at 702-685-0555

—— Original Message ——
Subject: Phone conference 12/10/11
From: Michael Spreadbury <mspread@hotmail.com>
Date: Sat, December 10, 2011 1:27 pm
To: <mjr@randazza.com>
Cc: crystal <crystal@crystalcox.com>

Mr. Randazza,

I just conversed with Ms. Cox, and we will attempt a conference within the half hour. Most likely within 15 minutes.
Thank you.


2:30 PM Mountain time presently.


Michael Spreadbury

$Exhibit\ 18a$

*18a*

# YAHOO! MAIL

| | |
|---|---|
| **Subject** | RE: Fw: Obsidian Finance v. Cox 3:11-CV-00057-HZ |
| **From** | mjr@randazza.com <mjr@randazza.com> |
| **To** | Crystal L. Cox <savvybroker@yahoo.com> |
| **CC** | J. DeVoy <jmd@randazza.com> |
| **Date** | Sat, Dec 10, 2011 at 3:05 PM |

Crystal,

Can you set up a dropbox for this all?  This is going to take me hours to download it all and organize it.  A dropbox would be way easier.

—— Original Message ——
Subject: Fw: Obsidian Finance v. Cox 3:11-CV-00057-HZ
From: "Crystal L. Cox" <savvybroker@yahoo.com>
Date: Sat, December 10, 2011 2:31 pm
To: "mjr@randazza.com" <mjr@randazza.com>

## Crystal L. Cox
## Broker Owner



## Search Engine Reputation Manager
## Investigative Blogger
## Good Life International Distributor

**Peace and Love to You !!!**

—— Forwarded Message ——
**From:** "Michelle_Rawson@ord.uscourts.gov" <Michelle_Rawson@ord.uscourts.gov>
**To:** Crystal L. Cox <savvybroker@yahoo.com>
**Sent:** Monday, December 5, 2011 1:04 PM
**Subject:** Obsidian Finance v. Cox 3:11-CV-00057-HZ

Hi there,

*Exhibit 18*

$Exhibit 18A$

# YAHOO! MAIL

**Subject**   RE: representation for Blog owner

**From**   mjr@randazza.com <mjr@randazza.com>

**To**   Michael Spreadbury <mspread@hotmail.com>

**CC**   crystal <crystal@crystalcox.com>

**Date**   Sat, Dec 10, 2011 at 12:51 PM

Early next week is a mess.  I have hearings in Phoenix and Miami.  Today is really good though.


—— Original Message ——
Subject: RE: representation for Blog owner
From: Michael Spreadbury <mspread@hotmail.com>
Date: Sat, December 10, 2011 12:48 pm
To: <mjr@randazza.com>
Cc: crystal <crystal@crystalcox.com>

Mr. Randazza,

Thank you for your response.  Ms. Cox and I would like to call you early next week.  Please indicate if any day
or time is more preferable to you.


Michael Spreadbury
(406) 363-3877


From: mjr@randazza.com
To: mspread@hotmail.com
CC: rlgall@randazza.com; lake@law-works.com
Subject: RE: representation for Blog owner
Date: Sat, 10 Dec 2011 12:12:52 -0700

Michael,

Thank you for your inquiry.

Please call me.  Please have Ms. Cox on the line.


Marc John Randazza*
Randazza Legal Group

6525 West Warm Springs Rd. Ste. 100
Las Vegas, Nevada 89118

$Exhibit 18$

Toll Free: 888-667-1113
email: mjr (at) randazza (dot) com
eFax: 305.437.7662

*Exhibit 189*

Other Offices: Miami, Phoenix & Toronto
http://www.randazza.com

---

* Licensed in MA, FL, CA, and AZ only. (Not admitted in NV)

—— Original Message ——
Subject: representation for Blog owner
From: Michael Spreadbury <mspread@hotmail.com>
Date: Sat, December 10, 2011 9:57 am
To: <mjr@randazza.com>

Mr. Marc Randazza *esq.*,
Randazza Law of Massachusetts, California, Arizona, & Florida

Dear Mr. Randazza,

I was fortunate to read the correspondence you sent on behalf of Ms. Alkon, a blogger who recounted an encounter with a TSA agent on her blog, your subsequent response to allegations by the TSA agent of Emotional Distress, and the request to cease publishing information on the encounter.

As a contributor to Crystal Cox's blogs, this correspondence seeks representation for her. As you are probably aware, Ms. Cox's issue in a Oregon US District Court has made national attention in the past few weeks. To protect the speech of all blog writers in the United States, an effective appeal to The 9th Circuit Court of Appeals in the *Obsidian Finance* case needs to be crafted. Due to your passion to assist Ms. Alkon, I would request that your firm take the *Obsidian Finance* case, or establish a credible source that will.

The Wall St. Journal, Businessweek, New York Times, and several others have made precedent that Americans have seen; a chill of free speech for blog writers; not what America needs at this juncture in our history. Absent the facts, many have said the US District Judge misapplied a "shield law" applies only to trained journalists or their outlets, and not (as the Oregon Statutes is written) to those who otherwise communicate to the public as blog writers, such as Ms. Cox does freely.

I humbly assert that positive attention gained by representing, and defending Ms. Cox would more than pay for the services provided in her defense.

Thank you for your consideration of this request.


Michael Spreadbury

contact info for Ms. Cox; crystal@crystalcox.com

*Exhibit 189*

Crystal,

Can you set up a dropbox for this all?  This is going to take me hours to download it all and organize it.  A dropbox would be way easier.

—— Original Message ——
Subject: Fw: Obsidian Finance v. Cox 3:11-CV-00057-HZ
From: "Crystal L. Cox" <savvybroker@yahoo.com>
Date: Sat, December 10, 2011 2:31 pm
To: "mjr@randazza.com" <mjr@randazza.com>

## Crystal L. Cox
**Broker Owner**



**Search Engine Reputation Manager**
**Investigative Blogger**
**Good Life International Distributor**

**Peace and Love to You !!!**

—— Forwarded Message ——
**From:** "Michelle_Rawson@ord.uscourts.gov" <Michelle_Rawson@ord.uscourts.gov>
**To:** Crystal L. Cox <savvybroker@yahoo.com>
**Sent:** Monday, December 5, 2011 1:04 PM
**Subject:** Obsidian Finance v. Cox 3:11-CV-00057-HZ

Hi there,

Just in case you need these and didn't get copies, or don't have access via PACER.  These are the rest of the trial documents.

Exhibit 18c

# YAHOO! MAIL

| | |
|---|---|
| **Subject** | RE: Fw: Obsidian Finance v. Cox 3:11-CV-00057-HZ |
| **From** | mjr@randazza <mjr@randazza.com> |
| **To** | Crystal L. Cox <savvybroker@yahoo.com> |
| **Date** | Sat, Dec 10, 2011 at 3:32 PM |

http://lmgtfy.com/?q=dropbox

—— Original Message ——
Subject: Re: Fw: Obsidian Finance v. Cox 3:11-CV-00057-HZ
From: "Crystal L. Cox" <savvybroker@yahoo.com>
Date: Sat, December 10, 2011 3:16 pm
To: "mjr@randazza.com" <mjr@randazza.com>

I don't know how to do that.

Not sure what you mean, Sorry.


**Crystal L. Cox**
**Broker Owner**



**Search Engine Reputation Manager**
**Investigative Blogger**
**Good Life International Distributor**

**Peace and Love to You !!!**

_____

**From:** "mjr@randazza.com" <mjr@randazza.com>
**To:** Crystal L. Cox <savvybroker@yahoo.com>
**Cc:** J. DeVoy <jmd@randazza.com>
**Sent:** Saturday, December 10, 2011 4:05 PM
**Subject:** RE: Fw: Obsidian Finance v. Cox 3:11-CV-00057-HZ

Exhibit 18B

# YAHOO! MAIL

**Subject**  RE: Discovery, Summary Judgement,

**From**  mjr@randazza.com <mjr@randazza.com>

**To**  Crystal L. Cox <savvybroker@yahoo.com>

**Date**  Wed, Dec 14, 2011 at 5:06 PM

Crystal,

I have reviewed the file, and I have pondered the issues, and I have decided that I will take your case. We need to talk about some of the issues of representation before finalizing it. But, I am game.

When can you talk?

—— Original Message ——
Subject: Discovery, Summary Judgement,
From: "Crystal L. Cox" <savvybroker@yahoo.com>
Date: Sat, December 10, 2011 2:54 pm
To: "mjr@randazza.com" <mjr@randazza.com>

## Crystal L. Cox
## Broker Owner



**Search Engine Reputation Manager**
**Investigative Blogger**
**Good Life International Distributor**

**Peace and Love to You !!!**

*Exhibit /8*

Just in case you need these and didn't get copies, or don't have access via PACER.  These are the rest of the trial documents.

 **Michelle Rawson**
**(503) 326-8051**
Courtroom Deputy for
**The Honorable MARCO A. HERNANDEZ**
**United States District Court Judge**

$\mathcal{E}\mathcal{X}\hbar\mathcal{B}\mathcal{A}\mathcal{B}$

# YAHOO! MAIL

**Subject**   RE: from Pre Se Defendant Crystal L. Cox

**From**   mjr@randazza.com <mjr@randazza.com>

**To**   Crystal L. Cox <savvybroker@yahoo.com>

**Date**   Fri, Dec 16, 2011 at 12:55 PM

Crystal,

I want to address a few things:

First and foremost, if you feel that I did not treat you respectfully, I humbly apologize. I do not wish to leave that un-discussed. People like you are important for the future of citizen journalism, and I wish to see you succeed.

I also want to correct a misperception here. I did not tell anyone that I represented you, for certain. I did tell the opposing counsel that I thought a deal might be brokered - but that I wanted to speak to him first (to test his waters with respect to a possible mutually agreeable resolution).

Finally, I want to make it clear that our discussion about money was in terms of "costs." I thought that I made it clear that my bills, my fees (my income) would be waived. All that I was asking you about being able to pay was out of pocket reimbursement of expenses.

Despite the contents of this email, I wish to let you know that I am sill willing to lend a hand in any way - even in the background.

-Marc


—— Original Message ——
Subject: from Pre Se Defendant Crystal L. Cox
From: "Crystal L. Cox" <savvybroker@yahoo.com>
Date: Fri, December 16, 2011 9:21 am
To: VOLOKH@law.ucla.edu, "mjr@randazza.com" <mjr@randazza.com>

Marc and Eugene,

I hope this email finds you doing well. I just want to clarify a few things as respectfully as I can.

Marc, it was nice talking with you, I do feel your working in the best interest of bloggers. After our conversation I sent documents, not even all, as you needed them another way, I never heard different and I prayed about our connection and its of the "greater good" and well Marc, when on the phone with me you told me I messed this up, thing is I am divinely led, and I did a great job, and in losing I got voice to the victims I fight for. I DID NOT MESS UP.

I filed tons of document, not the way you would of but they are in the public record, and also this trial, to me as it stands will be used to assist me in filing a Federal RICO Lawsuit and a Whistleblower Lawsuit, as I got them to perjury themself. And my goal is justice

*Exhibit 21*

for all, and though an attorney may have got me out of this early, thing is there would have been someone else to sue me, or another to get sued to bring about the change in bloggers rights that this will bring. I did NOT mess up, and its important to me to be respected as the strong, intelligent, woman that I am, as my intention is really of the light, is good and ya sometimes I seem over the top but I am all heart on this, and my victims I will fight to the death for.

That's just who and what I am. You, Marc do not seem to respect me, or treat me as if I am worthy, equal to you, and it feels like you want your client, or possibly women in general to take a back seat to you and that's not me. And to confirm all this for me as I prayed for a sign, I heard thru several channels that you were saying you represented me, but did not give me the decency or respect to tell me or even keep me in the loop.

To not even email me back that you read any of the documents, to not contact me and then I hear your representing me. You said you may have a conflict and would let me know, you did not let me know and then seemed to tell others your were representing me, and you wanted money I don't have. To me, after working 7 years at this, facing judges set me up, cops set me up, attorneys screw me over, death threats, being drugged, and extreme duress and persecution over all this for so long, well, you telling others you represent me BEFORE telling me, well that is on the wrong side of the moral and ethical compass to me. And is opposite of the equal rights, women's rights, lesbian rights, bloggers rights, citizen journalists rights, victims rights that I fight for.

Marc I got your forward last night, thing is I know the exact dollar amount of the transcripts, have known for over a week, and i know the court clerk email, been in this a year now. So that proves again you think me clueless, i have no money to get the transcripts at this time.

Eugene spoke highly of you and even recommended you, thing is I will not speak with anyone on this from the law aspect expect Eugene, if he can't represent me, I will not appeal. As Eugene represents what I fight for, and no disrespect marc just a tip for your future, Eugene emailed me here and there and let me know what was going on, he listened to me, respected me and never once told me I messed up or EVER assumed anything about me. Nor did he speak of my journalistic standards as an issue, as you did. He never hesitated in wanted to represent me, it was simply a matter of if he could. He is Kind to me, smart and treats me with dignity and respect, you do not. Sorry that Simple.

So Just wanted you to know a bit why, and confirm, Marc Randazza does NOT represent me in ANY way. Eugene Volokh represents me, and if he can't then so be it, I will leave that in the hands of the Great Spirit. I will not lose my voice, my dignity, and respect in this. I know my Truth though many others are trashing me, I know my truth.

The New York Times and Forbes are legally defaming me and inspiring a lynch mob

based on one email that they refuse to discuss my side or even investigate the truth. I want to file lawsuits against them, and I intend to fight back.

I do not want to sit down and shut up, I do not want a back seat in this, though I dont want to interfere or tell an attorney whats best, thing is I know the clerks, the case, the documents and I just want respect for what I have done and not told I messed up.

I have lost my home phone, and internet, I am to be evicted on Monday, I keep fighting and blogging and I will no matter what. This last year I lost everything that was dear to me, and my life as I knew it, corruption has done everything to shut me down. So no disrespect Marc, I just don't like the way you treated me.

take care and keep up the great work for the better good of all victims of a corrupt justices system that makes victims out to be criminals. The Lie will NOT stand as the TRUTH on my watch. I am certain of my Fight, my Mission per say.

Blessings to You

In Love and Light,


**Crystal L. Cox**
**Broker Owner**



**Search Engine Reputation Manager**
**Investigative Blogger**
**Good Life International Distributor**

**Peace and Love to You !!!**

# MARC J. RANDAZZA, P.A.

### FIRST AMENDMENT ❖ TRADEMARK ❖ COPYRIGHT ❖ DOMAIN NAME LAW ❖ INTERNET LAW

**MARC J. RANDAZZA**
*Licensed to practice in FL, MA,*
*in all federal courts in MA and FL,*
*before the 1st, 9th, and 11th Circuit Courts of Appeal,*
*before the Court of Appeals for the Federal Circuit,*
*and before the United States Supreme Court*

Email: marc@MJRPA.com

**PLEASE REPLY VIA EMAIL OR FAX**

**SENT VIA EMAIL**
**SEPTEMBER 29, 2009**

2 S Biscayne Boulevard, Suite 2600
Miami, Florida 33131
Tel: 305.479.2491
Fax: 305.437.7662

P.O. Box 5516
Gloucester, Massachusetts 01930
Tel: 978.865.4101

Matthew A. Kaplan, Esq.
*mkaplan@cdas.com*
Fax: 212-974-8474

### *Re: Proposed Stipulation in WIPO Case No. D2009-1182*

Dear Mr. Kaplan,

As you may be aware, from reading our Response in this case, there is a split of authority in the WIPO decisions as to how criticism sites should be examined. See "WIPO Overview of WIPO Panel Views on Selected UDRP Questions," at Paragraph 2.4.

View 1 states: "The right to criticize does not extend to registering a domain name that is identical or confusingly similar to the owner's registered trademark or conveys an association with the mark."

View 2 states: "Irrespective of whether the domain name as such connotes criticism, the respondent has a legitimate interest in using the trademark as part of the domain name of a criticism site if the use is fair and non-commercial."

Naturally, View 2 is the prevailing view of American panelists and panels that apply American law to UDRP proceedings. View 1 seems to be more popular with international panelists and panels that apply European law.

Unfortunately, given that UDRP decisions regularly incorporate international legal principles, this case could be assigned to a foreign panelist or to an American panelist who applies transnational principles. I personally would find it distressing if the panel were to make a decision that completely disregards the U.S. Constitution in favor of a foreign perspective that adopts View 1.

To be candid, we found the fact that Mr. Beck filed this action at all to be most puzzling. Although, it was obvious why he did not file in a U.S. court given the law surrounding

nominative fair use of trademarks as fully explained in our Brief. Naturally, a defamation claim as alluded to in Mr. Beck's complaint would be humiliatingly doomed as well in a U.S. court. See *Greenbelt Coop. Pub. Ass'n. v. Bresler*, 398 U.S. 6 (1970) (when it is apparent, in the context of a statement, that its meaning is figurative and hyperbolic, the falsity of the literal meaning does not equal a knowing falsehood or reckless disregard for the truth, thus a public figure can not prove actual malice as a matter of law); *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) (although this was an intentional infliction of emotional distress claim, by the time it got to the U.S. Supreme Court, the initial action included a defamation claim. The preposterous nature of the parodic claims led the jury to find against Falwell); *Dworkin v. L.F.P., Inc.*, 839 P.2d 903 (Wyo. 1992) (plaintiff referred to as "shit-squeezing sphincter," and "a cry baby who can dish out criticism but clearly can't take it"); *Lampkin-Asam v. Miami Daily News, Inc.*, 408 So. 2d 666 (Fla. 3d DCA 1981) (even otherwise defamatory words are hyperbolic, and thus protected speech when taken "in their proper context."); *Horsley v. Rivera*, 292 F.3d 695, (11th Cir. 2002) (a claim that plaintiff was an "accomplice to homicide" protected as rhetorical hyperbole when taken in context); *Fortson v. Colangelo & NY Post*, 434 F.Supp.2d 1369 (S.D. Fla. 2006) (when words literally accuse plaintiff of a crime, there is no defamation when the context makes it clear that it is rhetorical and parodical speech).

Accordingly, we found it to be most ironic that Mr. Beck, facing the fact that the U.S. Constitution would stand in his way in a U.S. court, sought to bring this action before an international domain name arbitration panel. On March 30, 2009, he said on his show:

> *Let me tell you something. When you can't win with the people, you bump it up to the courts. When you can't win with the courts, you bump it up to the international level.*

Of course, we levy no critique at Mr. Beck for seeking to vindicate his perceived rights in this forum. We do not share his opinion as articulated on March 30, and we respect his creativity in seeking an alternate avenue where his claims *might* have a chance of success.[1] Unfortunately, despite the general wisdom among UDRP panelists, we find that occasionally they render decisions that make First Amendment champions cringe.

We are certain that despite our disagreement with Mr. Beck's legal position, that all parties involved hold equal reverence for the First Amendment. Therefore, I have prepared a proposed stipulation that will ensure that no matter which panelist is assigned to this case, the First Amendment will illuminate these proceedings like rays of light from the Torch of Liberty.

I hate to presume anything about anyone, but I presume that Mr. Beck will agree to this stipulation. It would be an interesting day indeed if Mr. Beck preferred to risk that a panelist would apply *French law*[2] to a case between two Americans over a matter of public discourse.

---

[1] We must all admit that Mr. Beck *could* prevail in the UDRP action.

[2] To be clear, we have nothing but respect for the French legal system. Nevertheless, the Gallic commitment to free speech rights is not as broad as ours.

I recall that Beck publicly called Harold Koh, the Dean of Yale Law School, a "threat to American democracy" for his views on transnational law.  Beck said of Koh:

> *he wants to subordinate the American Constitution to foreign and*
> *international rules. We see that in his attack on First Amendment*
> *free speech principles, which he finds opprobrious.*

Similarly, Mr. Beck said it best when he warned of the dangers of allowing international legal principles to trump our cherished constitutional rights:

> *Once we sign our rights over to international law, the Constitution*
> *is officially dead.*

I am certain that neither party wishes to see First Amendment rights subordinated to international trademark principles, thus unwittingly proving Mr. Beck's point.  Lest this case become an example of international law causing damage to the constitutional rights that both of our clients hold dear, I respectfully request that your client agree to stipulate to the application of American constitutional law to this case.

I have attached a proposed stipulation for your review.

Sincerely,

Marc John Randazza

*Before the:*

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

*Mercury Radio Arts, Inc.*
*And Glenn Beck*
*COMPLAINANT*

-v-

*IsaacEiland-Hall*
*PanamaCity PC*
*RESPONDENT*

**Disputed Domain Name:**
*Glennbeckrapedandmurderedayounggirlin1990.com*

*WIPO Case No. D2009-1182*

## STIPULATION

WHEREAS, the parties to this dispute are all U.S. Citizens

WHEREAS, the parties to this dispute desire to ensure that U.S. law and U.S. Constitutional principles are given controlling weight in the above-styled proceeding,

**The Parties hereby stipulate to the following measures in this action**

1. The Parties hereby stipulate that the U.S. Constitution, including (and especially) the First Amendment thereto should apply to these proceedings and should govern the Panel's decision in this case.

2. The Parties hereby stipulate that the Panel shall not enter a decision in this case that would be contrary to the protections afforded to American citizens under the First Amendment, regardless of any international principles previously adopted by other UDRP panels or other international bodies.

_____
Matthew A. Kaplan
Attorney for Complainant

_____
Marc J. Randazza
Attorney for Respondent

1

*Exhibit 33*

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| OBSIDIAN FINANCE GROUP, LLC; KEVIN D. PADRICK, *Plaintiffs-Appellees*, v. CRYSTAL COX, *Defendant-Appellant.* | No. 12-35238 D.C. No. 3:11-cv-00057-HZ |
| OBSIDIAN FINANCE GROUP, LLC; KEVIN D. PADRICK, *Plaintiffs-Appellants*, v. CRYSTAL COX, *Defendant-Appellee.* | No. 12-35319 D.C. No. 3:11-cv-00057-HZ OPINION |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted
November 6, 2013—Portland, Oregon

Filed January 17, 2014

Exhibit 33

2        OBSIDIAN FINANCE GROUP V. COX

Before: Arthur L. Alarcón, Milan D. Smith, Jr.,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[*]

### Defamation

The panel affirmed in part and reversed in part the district court's judgment awarding compensatory damages to a bankruptcy trustee on a defamation claim against an Internet blogger.

The panel held that *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) (holding that the First Amendment required only a "negligence standard for private defamation actions"), is not limited to cases with institutional media defendants. The panel further held that the blog post at issue addressed a matter of public concern, and the district court should have instructed the jury that it could not find the blogger liable for defamation unless it found that she acted negligently. The panel held that the bankruptcy trustee did not become a "public official" simply by virtue of court appointment, or by receiving compensation from the court. The panel remanded for a new trial on the blog post at issue, and affirmed the district court's summary judgment on the other blog posts that were deemed constitutionally protected opinions.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Eugene Volokh (argued), Mayer Brown LLP, Los Angeles, California, for Defendant-Appellant/Cross-Appellee.

Robyn Ridler Aoyagi, Steven M. Wilker (argued), and David S. Aman, Tonkon Torp LLP, Portland, Oregon, for Plaintiffs-Appellees/Cross-Appellants.

Bruce D. Brown, Gregg P. Leslie, and Jack S. Komperda, Arlington, Virginia, for Amicus Curiae The Reporters Committee for Freedom of the Press.

Thomas C. Goldstein, Goldstein & Russell, P.C., Washington, D.C., for Amicus Curiae SCOTUSblog.com.

## OPINION

HURWITZ, Circuit Judge:

This case requires us to address a question of first impression: What First Amendment protections are afforded a blogger sued for defamation? We hold that liability for a defamatory blog post involving a matter of public concern cannot be imposed without proof of fault and actual damages.

## I.

Kevin Padrick is a principal of Obsidian Finance Group, LLC (Obsidian), a firm that provides advice to financially distressed businesses. In December 2008, Summit Accommodators, Inc. (Summit), retained Obsidian in connection with a contemplated bankruptcy. After Summit

filed for reorganization, the bankruptcy court appointed Padrick as the Chapter 11 trustee. Because Summit had misappropriated funds from clients, Padrick's principal task was to marshal the firm's assets for the benefit of those clients.

After Padrick's appointment, Crystal Cox published blog posts on several websites that she created, accusing Padrick and Obsidian of fraud, corruption, money-laundering, and other illegal activities in connection with the Summit bankruptcy. Cox apparently has a history of making similar allegations and seeking payoffs in exchange for retraction. *See* David Carr, *When Truth Survives Free Speech*, N.Y. Times, Dec. 11, 2011, at B1. Padrick and Obsidian sent Cox a cease-and-desist letter, but she continued posting allegations. This defamation suit ensued.

## A.

The district court held that all but one of Cox's blog posts were constitutionally protected opinions because they employed figurative and hyperbolic language and could not be proved true or false. *Obsidian Fin. Grp., LLC v. Cox*, 812 F. Supp. 2d 1220, 1232–34 (D. Or. 2011). The court held, however, that a December 25, 2010 blog post on bankruptcycycorruption.com made "fairly specific allegations [that] a reasonable reader could understand . . . to imply a provable fact assertion"—i.e., that Padrick, in his capacity as bankruptcy trustee, failed to pay $174,000 in taxes owed by Summit. *Id.* at 1238. The district judge therefore allowed that single defamation claim to proceed to a jury trial. The jury found in favor of Padrick and Obsidian, awarding the former $1.5 million and the latter $1 million in compensatory damages.

**B.**

In a pretrial memorandum, Cox—then representing herself—raised two First Amendment arguments concerning the liability standards that should govern this case. First, Cox argued that because the December 25 blog post involved a matter of public concern, Padrick and Obsidian had the burden of proving her negligence in order to recover for defamation, and that they could not recover presumed damages absent proof that she acted with *New York Times Co. v. Sullivan* "actual malice"—that is, that she knew the post was false or acted with reckless disregard of its truth or falsity. *See* 376 U.S. 254, 280 (1964). Cox alternatively argued that Padrick and Obsidian were public figures, and thus were required to prove that Cox made the statements against them with actual malice. *Id.*

On the day before trial, the district court rejected both arguments in an oral decision. In a written decision, issued two days later, the judge explained that Padrick and Obsidian were not required to prove either negligence or actual damages because Cox had failed to submit "evidence suggestive of her status as a journalist." *Obsidian Fin. Grp., LLC v. Cox*, No. 3:11-cv-00057-HZ, 2011 WL 5999334, at *5 (D. Or. Nov. 30, 2011). The district court also ruled that neither Padrick nor Obsidian was an all-purpose public figure or a limited public figure based upon Padrick's role as a bankruptcy trustee, finding that they had not injected themselves into a public controversy, but rather that Cox had "created the controversy . . . ." *Id.* at *4.

After closing arguments, the district court instructed the jury that under Oregon law, "Defendant's knowledge of whether the statements at issue were true or false and

defendant's intent or purpose in publishing those statements are not elements of the claim and are not relevant to the determination of liability." The court further instructed that the "plaintiffs are entitled to receive reasonable compensation for harm to reputation, humiliation, or mental suffering even if plaintiff does not present evidence that proves actual damages . . . because the law presumes that the plaintiffs suffered these damages." The jury verdicts in favor of Padrick and Obsidian followed.

Cox—now represented by counsel—moved for a new trial. In its order denying that motion, the district court acknowledged that Cox had argued that "she was entitled to certain First Amendment protections, including requiring plaintiffs to establish liability by proving that [she] acted with some degree of fault, whether it be negligence or 'actual malice.'" *Obsidian Fin. Grp., LLC v. Cox*, No. 3:11-cv-00057-HZ, 2012 WL 1065484, at *7 (D. Or. Mar. 27, 2012). But, the judge again rejected Cox's arguments that Padrick and Obsidian "were public figures, and that the blog post referred to a matter of public concern," and thus concluded that a showing of fault was not required to establish liability, and that presumed damages could be awarded. *Id.* at *4.

Cox appeals from the denial of her motion for a new trial. Obsidian and Padrick cross-appeal, contending that their defamation claims about the other blog posts should have gone to the jury. We have jurisdiction over both appeals pursuant to 28 U.S.C. § 1291. We reverse the denial of a motion for a new trial if the district court has made a mistake of law. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). We "review de novo whether a jury instruction misstates the law." *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) (quotation marks and

citation omitted). And we review a grant of summary judgment de novo. *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012).

## II.

Cox does not contest on appeal the district court's finding that the December 25 blog post contained an assertion of fact; nor does she contest the jury's conclusions that the post was false and defamatory. She challenges only the district court's rulings that (a) liability could be imposed without a showing of fault or actual damages and (b) Padrick and Obsidian were not public officials.

## A.

After the district court's orders on the issues raised in her pretrial memorandum, Cox—then still representing herself—did not propose specific jury instructions. When asked by the district court whether she wished to do so, she stated that she had no objection to the court's proposed jury instructions, which were consistent with its earlier First Amendment rulings. Padrick and Obsidian argue that Cox therefore waived any First Amendment objections to the jury instructions.

We disagree. To preserve an argument about a jury instruction for appeal, a party generally must make a specific contemporaneous objection to the instruction "on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). But, "when the trial court has rejected plaintiff's posted objection and is aware of the plaintiff's position, further objection by the plaintiff is unnecessary." *Loya v. Desert Sands Unified Sch. Dist.*, 721

F.2d 279, 282 (9th Cir. 1983) (citing *Brown v. Avemco Inv. Corp.*, 603 F.2d 1367 (9th Cir. 1979)); *see also Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir. 2005) ("In light of its definitive ruling on a motion in limine and subsequent warning about rehashing the issue, the district court was fully informed of Burlington's position on the jury instructions . . . .").

The district court here was fully informed before trial of Cox's First Amendment arguments and had rejected them definitively before the close of evidence. "[A]ny further objection would have been superfluous and futile . . . ." *Dorn*, 397 F.3d at 1189. Indeed, in denying Cox's new trial motion, the district judge specifically noted that he had instructed the defendant to raise her legal arguments in her trial memorandum, and that he understood those arguments to be that "she was entitled to certain First Amendment protections, including requiring plaintiffs to establish liability by proving that defendant acted with some degree of fault, whether it be negligence or 'actual malice.'" *Obsidian Fin. Grp., LLC v. Cox*, 2012 WL 1065484, at *7. In ruling on the new trial motion, the district court initially suggested that Cox had waived those arguments by not objecting to the jury instructions, but in the end again treated them on the merits and rejected them. Under the facts of this case, Cox preserved the issues raised in her motion for new trial for review.

## B.

The Supreme Court's landmark opinion in *New York Times Co. v. Sullivan* began the construction of a First Amendment framework concerning the level of fault required for defamation liability. 376 U.S. 254. *Sullivan* held that

when a public official seeks damages for defamation, the official must show "actual malice"—that the defendant published the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280. A decade later, *Gertz v. Robert Welch, Inc.*, held that the First Amendment required only a "negligence standard for private defamation actions." 418 U.S. 323, 350 (1974). This case involves the intersection between *Sullivan* and *Gertz*, an area not yet fully explored by this Circuit, in the context of a medium of publication—the Internet—entirely unknown at the time of those decisions.

**1.**

Padrick and Obsidian first argue that the *Gertz* negligence requirement applies only to suits against the institutional press. Padrick and Obsidian are correct in noting that *Gertz* involved an institutional media defendant and that the Court's opinion specifically cited the need to shield "the press and broadcast media from the rigors of strict liability for defamation." 418 U.S. at 348. We conclude, however, that the holding in *Gertz* sweeps more broadly.

The *Gertz* court did not expressly limit its holding to the defamation of institutional media defendants. And, although the Supreme Court has never directly held that the *Gertz* rule applies beyond the institutional press, it has repeatedly refused in non-defamation contexts to accord greater First Amendment protection to the institutional media than to other speakers. In *Bartnicki v. Vopper*, for example, in deciding whether defendants could be held liable under a statute banning the redistribution of illegally intercepted telephone conversations, the Court expressly noted that "we draw no distinction between the media respondents and" a non-

institutional respondent. 532 U.S. 514, 525 & n.8 (2001). Similarly, in *Cohen v. Cowles Media Co.*, the Court held that the press gets no special immunity from laws that apply to others, including those—such as copyright law—that target communication. 501 U.S. 663, 669–70 (1991). And in *First National Bank of Boston v. Bellotti*, a case involving campaign finance laws, the Court rejected the "suggestion that communication by corporate members of the institutional press is entitled to greater constitutional protection than the same communication by" non-institutional-press businesses. 435 U.S. 765, 782 n.18 (1978); *see also Henry v. Collins*, 380 U.S. 356, 357 (1965) (per curiam) (applying *Sullivan* standard to a statement by an arrestee); *Garrison v. Louisiana*, 379 U.S. 64, 67–68 (1964) (applying *Sullivan* standard to statements by an elected district attorney); *Sullivan*, 376 U.S. at 286 (applying identical First Amendment protection to a newspaper defendant and individual defendants).

The Supreme Court recently emphasized the point in *Citizens United v. Federal Election Commission*: "We have consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." 558 U.S. 310, 352 (2010) (internal quotations omitted). In construing the constitutionality of campaign finance statutes, the Court cited with approval, *id.*, the position of five Justices in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, that "in the context of defamation law, the rights of the institutional media are no greater and no less than those enjoyed by other individuals engaged in the same activities." 472 U.S. 749, 784 (1985) (Brennan, J., dissenting); *id.* at 773 (White, J., concurring in the judgment) ("[T]he First Amendment gives no more protection to the

press in defamation suits than it does to others exercising their freedom of speech.").[1]

Like the Supreme Court, the Ninth Circuit has not directly addressed whether First Amendment defamation rules apply equally to both the institutional press and individual speakers.[2] But every other circuit to consider the issue has held that the First Amendment defamation rules in *Sullivan* and its progeny apply equally to the institutional press and individual speakers. *See, e.g.*, *Snyder v. Phelps*, 580 F.3d 206, 219 n.13 (4th Cir. 2009), *aff'd*, 131 S. Ct. 1207 (2011) ("Any effort to justify a media/nonmedia distinction rests on unstable ground, given the difficulty of defining with precision who belongs to the 'media.'"); *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000) (holding that "a distinction drawn according to whether the defendant is a member of the media or not is untenable"); *In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632, 642 (8th Cir. 1986); *Garcia v. Bd. of Educ.*, 777 F.2d 1403, 1410 (10th Cir. 1985); *Avins v. White*, 627 F.2d 637, 649 (3d Cir. 1980); *Davis v. Schuchat*, 510 F.2d 731, 734 n.3 (D.C. Cir. 1975).

We agree with our sister circuits. The protections of the First Amendment do not turn on whether the defendant was a trained journalist, formally affiliated with traditional news entities, engaged in conflict-of-interest disclosure, went

---

[1] *Dun & Bradstreet* held that presumed and punitive damages are constitutionally permitted in defamation cases without a showing of actual malice when the defamatory statements at issue do not involve matters of public concern. *See* 472 U.S. at 763.

[2] *But cf. Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 n.4 (9th Cir. 1998) (citing *Gertz* in a defamation case in which the lead defendant was not a member of the institutional media).

beyond just assembling others' writings, or tried to get both sides of a story. As the Supreme Court has accurately warned, a First Amendment distinction between the institutional press and other speakers is unworkable: "With the advent of the Internet and the decline of print and broadcast media . . . the line between the media and others who wish to comment on political and social issues becomes far more blurred." *Citizens United*, 558 U.S. at 352. In defamation cases, the public-figure status of a plaintiff and the public importance of the statement at issue—not the identity of the speaker—provide the First Amendment touchstones.

We therefore hold that the *Gertz* negligence requirement for private defamation actions is not limited to cases with institutional media defendants. But this does not completely resolve the *Gertz* dispute. Padrick and Obsidian also argue that they were not required to prove Cox's negligence because *Gertz* involved a matter of public concern[3] and this case does not.

## 2.

The Supreme Court has "never considered whether the *Gertz* balance obtains when the defamatory statements involve no issue of public concern." *Dun & Bradstreet*, 472

---

[3] *Gertz* dealt with a libel claim brought by a Chicago lawyer who had been accused by the magazine of the John Birch Society of taking part in a Communist campaign to discredit local law enforcement agencies. *See Dun & Bradstreet*, 472 U.S. at 756.

U.S. at 757 (plurality opinion).[4]  But even assuming that *Gertz* is limited to statements involving matters of public concern, Cox's blog post qualifies.

The December 25 post alleged that Padrick, a court-appointed trustee, committed tax fraud while administering the assets of a company in a Chapter 11 reorganization, and called for the "IRS and the Oregon Department of Revenue to look" into the matter.  Public allegations that someone is involved in crime generally are speech on a matter of public concern. *See, e.g., Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1298 (11th Cir. 2008) (noting that accusations of "alleged violations of federal gun laws" by gun stores were speech on "a matter of public concern"); *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) (holding that allegations of "fraud in the art market" involve "a matter of public concern").  This court has held that even consumer complaints of non-criminal conduct by a business can constitute matters of public concern. *See Gardner v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009) (finding that a business owner's refusal to give a refund to a customer who bought an allegedly defective product was a matter of public concern); *Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*, 544 F.3d 959, 965 (9th Cir. 2008) (treating claim that a mobile home park operator charged excessive rent as a matter of public concern).

Cox's allegations in this case are similarly a matter of public concern.  Padrick was appointed by a United States Bankruptcy Court as the Chapter 11 trustee of a company that had defrauded its investors through a Ponzi scheme.  That company retained him and Obsidian to advise it shortly

---

[4] *Dun & Bradstreet* dealt only with the *Gertz* rule on presumed damages, not the *Gertz* negligence standard. *See* 472 U.S. at 754–55.

before it filed for bankruptcy. The allegations against Padrick and his company raised questions about whether they were failing to protect the defrauded investors because they were in league with their original clients.

Unlike the speech at issue in *Dun & Bradstreet* that the Court found to be a matter only of private concern, Cox's December 25 blog post was not "solely in the individual interest of the speaker and its specific business audience." 472 U.S. at 762 (plurality opinion). The post was published to the public at large, not simply made "available to only five subscribers, who, under the terms of the subscription agreement, could not disseminate it further . . . ." *Id.* And, Cox's speech was not "like advertising" and thus "hardy and unlikely to be deterred by incidental state regulation." *Id.*

Because Cox's blog post addressed a matter of public concern, even assuming that *Gertz* is limited to such speech, the district court should have instructed the jury that it could not find Cox liable for defamation unless it found that she acted negligently. *See Gertz*, 418 U.S. at 350. The court also should have instructed the jury that it could not award presumed damages unless it found that Cox acted with actual malice. *Id.* at 349.

## C.

Cox also argues that Padrick and Obsidian are "tantamount to public officials," because Padrick was a court-appointed bankruptcy trustee. She contends that the jury therefore should have been instructed that, under the *Sullivan* standard, it could impose liability for defamation only if she

acted with actual malice.[5]  *See* 376 U.S. at 279–80.  We disagree.

Although bankruptcy trustees are "an integral part of the judicial process," *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986), neither Padrick nor Obsidian became public officials simply by virtue of Padrick's appointment.  Padrick was neither elected nor appointed to a government position, and he did not exercise "substantial . . . control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).  A Chapter 11 trustee can be appointed by the bankruptcy court for cause or when the best interests of the estate or creditors dictate.    11 U.S.C. § 1104(a).  But, an appointed trustee simply substitutes for, and largely exercises the powers of, a debtor-in-possession. 11 U.S.C. § 1107(a).  No one would contend that a debtor-in-possession has become a public official simply by virtue of seeking Chapter 11 protection, and we can reach no different conclusion as to the trustee who substitutes for the debtor in administering a Chapter 11 estate.

We also reject Cox's argument that Padrick and Obsidian were "tantamount to public officials" because they received compensation from the court for their efforts.  In *Gertz*, the Supreme Court held that there is "no such concept" as a "de facto public official," 418 U.S. at 351, and that a lawyer who had served briefly on several housing committees appointed by the mayor of Chicago, but who had never held "any remunerative   governmental   position,"   could   not   be

---

[5] Cox argued in her pretrial memorandum that Padrick and Obsidian were public figures, but contended in her motion for a new trial that Padrick was a public official.  She raises only the public official argument on appeal.

16          OBSIDIAN FINANCE GROUP V. COX

considered a public official. *Id.* Bankruptcy trustees do not receive remuneration from the government. Their compensation is drawn from the assets of the Chapter 11 estate they administer. *See* 11 U.S.C. § 326(a). They are not rendered public officials by virtue of that compensation, any more than is an expert witness compensated by the estate.

## III.

Padrick and Obsidian argue on cross-appeal that the district court erred in granting Cox summary judgment as to her other blog posts. Among other things, those posts accuse Padrick and Obsidian of engaging in "illegal activity," including "corruption," "fraud," "deceit on the government," "money laundering," "defamation," "harassment," "tax crimes," and "fraud against the government." Cox also claimed that Obsidian paid off "media" and "politicians" and may have hired a hit man to kill her.

In *Milkovich v. Lorain Journal Co.*, the Supreme Court refused to create a blanket defamation exemption for "anything that might be labeled 'opinion.'" 497 U.S. 1, 18 (1990). This court has held that "while 'pure' opinions are protected by the First Amendment, a statement that 'may . . . imply a false assertion of fact' is actionable." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) (quoting *Milkovich*, 497 U.S. at 19). We have developed a three-part test to determine whether a statement contains an assertion of objective fact. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990). The test considers "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is

susceptible of being proved true or false." *Partington*, 56 F.3d at 1153.

As to the first factor, the general tenor of Cox's blog posts negates the impression that she was asserting objective facts. The statements were posted on obsidianfinancesucks.com, a website name that leads "the reader of the statements [to be] predisposed to view them with a certain amount of skepticism and with an understanding that they will likely present one-sided viewpoints rather than assertions of provable facts." *Obsidian Fin. Grp.*, 812 F. Supp. 2d at 1232. The district judge correctly concluded that the "occasional and somewhat run-on[,] almost 'stream of consciousness'-like sentences read more like a journal or diary entry revealing [Cox's] feelings rather than assertions of fact." *Id.* at 1233.

As to the second factor, Cox's consistent use of extreme language negates the impression that the blog posts assert objective facts. Cox regularly employed hyperbolic language in the posts, including terms such as "immoral," "really bad," "thugs," and "evil doers." *Id.* (quoting blog posts). Cox's assertions that "Padrick hired a 'hit man' to kill her" or "that the entire bankruptcy court system is corrupt" similarly dispel any reasonable expectation that the statements assert facts. *Id.*

And, as to the third factor, the district court correctly found that, in the context of a non-professional website containing consistently hyperbolic language, Cox's blog posts are "not sufficiently factual to be proved true or false." *Id.* at 1234. We find no error in the court's application of the *Unelko* test and reject the cross-appeal.

18          OBSIDIAN FINANCE GROUP V. COX

## IV.

We reverse the district court's judgment against Cox concerning the December 25, 2010 blog post and remand for a new trial consistent with this opinion.   We affirm the district court's summary judgment on Cox's other blog posts. All parties are to bear their own costs on appeal.

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

*Exhibit 66*

Hon. Stephen E. Haberfeld
JAMS
555 W. 5th St. , 32nd Fl.
Los Angeles, CA 90013
Tel: 213-253-9704
Fax: 213-620-0100

Arbitrator


JAMS

| | |
|---|---|
| MARC J. RANDAZZA, | ) JAMS No. 1260002283 |
| Claimant, | ) |
| | ) INTERIM ARBITRATION AWARD |
| v. | ) |
| | ) |
| EXCELSIOR MEDIA CORP., a Nevada | ) |
| Corp.; LIBERTY MEDIA HOLDINGS, LLC, | ) |
| a California limited liability company; and | ) |
| JASON GIBSON, individually | ) |
| Respondents. | ) |
| | ) |

I, THE UNDERSIGNED ARBITRATOR --- in accordance with the
arbitration provision in Section 8 of the Contract For Employment Agreement As
General Counsel Between Marc J. Randazza and Excelsior Media Corp., dated
June 6/10, 2009 ("employment agreement"), and based upon careful
consideration of the evidence, the parties' written submissions and applicable
law, and good cause appearing --- make the following findings, conclusions,
determinations ("determinations") and this Interim Arbitration Award, as
follows:

in the back seat of his car on August 9, 2012 was not genuinely or deeply felt and was made primarily for tactical reasons. Therefore, the end of Mr. Randazza's employment was not and was not the product of anything retaliatory, in violation of public policy (e.g., engaging in protected activity), as a matter of law.

Moreover, the preponderance of the evidence is that Mr. Randazza had advance notice of the filming of a pornographic video in his office and that he did not either object or indicate that the noticed shoot was in any way objectionable or offensive to him. That evidence is the playful exchange of texts between Messrs. Randazza and Gideon concerning the intended shoot and the testimony of the director of the shoot, Chaz Vorrias, who testified that he advised Mr. Randazza of the shoot in advance and received no objection from Mr. Randazza.[8]

M.    Contrary to the strong impression created by Mr. Randazza's pre-Arbitration Hearing narrative of allegations, there was no evidence that any photograph(s) of his wife or children or anything personal of or concerning Mr. Randazza or any member of his family, or in any way reasonably violative of their respective personal privacy, were used or visible in the video. The (possible) visibility of a painting on the wall of Mr. Randazza's office, which was painted by Mr. Randazza's wife, is not to the contrary.

In the circumstances, there was no action taken which was either statutorily offensive or hostile.

N.    Mr. Randazza's California Labor Code-based claims --- for Excelsior's failure to (1) pay him his final wages in August 2012 (2nd Claim) or (2) reimburse and indemnify his for business expenses incurred by him in during 2012 (1st Claim) --- fail as a matter of law. The same is true for Mr. Randazza's

---

[8] Mr. Vorrias testimony was not unfair surprise, Mr. Vorrias's admitted deletion of his emails with Mr. Randazza was done without knowledge of their significance in connection with the dispute underlying this arbitration and, in the event, is not attributable to either Excelsior or Liberty, because he was not a managing agent of either entity.

employment,[12] (2) Mr. Randazza is not entitled to any payment for expenses in connection with the annual International Trademark Association Conference, which he did not attend, and (3) Mr. Randazza's bonuses were to be paid on "net" amount, not "gross" amounts, as contended by Mr. Randazza. In the event, E/L has been legally excused from any obligation to make any further contractual payment, by reason of Mr. Randazza's material breaches of contract with respect to the his obligations under the same contract, Mr. Randazza's employment agreement. That is so under contract law principles --- separate and apart from equitable principles, which are also applicable to contract claims, including the equitable doctrine of unclean hands, which is applicable to Mr. Randazza's contract claims.

Q.    Turning to E/L's counterclaims, Mr. Randazza owed fiduciary duties to E/L, because he was their in-house general counsel and their attorney of record in judicial civil actions, and an E/L executive and employee. As such, Mr. Randazza owed E/L, as his clients, employers and principals, the highest duty of loyalty and honesty in the performance of his professional and executive obligations. That duty --- among other things --- included legal and ethical duties of acting honestly and solely for the benefit of his clients/employers/principals, avoiding acting inconsistently with those duties, and where actual or potential conflicts of interests existed to make full written disclosure of the same and to obtain informed written consents from his clients/principals as to each and every such conflict of interest. Each and all of Mr. Randazza's ethical duties owed to his principals/clients was a legal fiduciary duty owed to them. Mr. Randazza violated those fiduciary duties owed by him to E/L, as his principals/clients/employers --- including by the following:

---

[12] See Pars. 5(A), (B) and (G), supra, concerning Mr. Randazza's having voluntarily ended his E/L employment, including via and as evidenced by written and verbal and non-verbal conduct. Mr. Randazza was contractually entitled to payment equivalent to 12-week severance only if his employment was involuntarily terminated.

Counsel and outside counsel of record, and (4) Mr. Randazza's continuing and undisclosed (and thus unconsented-to) legal work for clients (e.g., Bang Bros., XVideos, XNXX, Porn Garian, Titan Media, Kink), whose interests were actually and potentially adverse to E/L's interests.[14]

R.    The Arbitrator respectfully disagrees with Mr. Randazza's expert witnesses, who respectively testified that, under both Nevada and California rules of ethics and/or professional responsibility, there were no violations of fiduciary duty, if and because they concluded that there was no resulting harm.

The "fact of damage" or proximate cause is not an essential element of either "duty" or "breach of duty" --- but rather a separate element of a claim or cause of The Arbitrator's disagreement with Mr. Randazza's expert witnesses centers

Whether or not Mr. Randazza's breaches of fiduciary duty proximately resulted in damages sustained by Excelsior, Liberty or both of them --- as a matter of sound public policy --- Mr. Randazza should not be allowed to retain any pecuniary or legal benefit resulting from or closely connected to those breaches.

For example, Mr. Randazza has included in his defense of his admitted deletion of files and other legal information via multiple wipings of company-owned computers the assertion that Respondents have not been able to show any damage resulting from those multiple wipings. This is another of Mr. Randazza's assertions in this arbitration of "No harm, no foul" --- which the Arbitrator has not accepted, primarily because of the violations of duties constituting and/or including fiduciary duties. Ethical and other violations of

---

[14] Mr. Randazza's legal work for non-E/L clients --- independent of the violations of Mr. Randazza's ethical and fiduciary duties --- were significantly beyond the contractually-permitted scope under his employment agreement. The Arbitrator may award the equivalent to amounts of funds ordered to be immediately turned over by Mr. Randazza to E/L. See Interim Arbitration Award, Par.

Mr. Grady's payment was used for <u>Oron</u> litigation expenses, Mr. Randazza did not disclose the receipt of the Grady $5,000 payment to E/L. In the circumstances, and under principles of unjust enrichment, all compensation paid to or for the benefit of Mr. Randazza should have been paid directly to E/L or turned over to E/L by Mr. Randazza --- neither of which was done, immediately or ever.

V.   Mr. Randazza materially breached his employment agreement with Excelsior by (1) acting as an attorney in connection with the TNAFlix litigation and the MegaUpload case, his concurrent representation of XVideos and/or XNXX during his employment by Excelsior and (2) spending significantly excessive time on non-Excelsior/Liberty matters beyond contractually-permitted time under his employment agreement with Excelsior and by failing to wind down his non-Excelsior/Liberty legal activities, as also provided in Mr. Randazza's employment agreement.[16]

The extent of Mr. Randazza's contractual material breaches made them also breaches of fiduciary duty --- regardless of whether or not those breaches of fiduciary duty were conflicts of interests, as some were.

W.   Disgorgement of compensation paid by E/L to Mr. Randazza is an available remedy, which is appropriate in the circumstances of Mr. Randazza's clear and serious violations of fiduciary duty owed to E/L, and within the Arbitrator's discretion, based on the evidence in this arbitration.[17]

---

[16] Mr. Randazza materially breached his employment agreement with Excelsior by maintaining a private law practice, with billed hours shown to be in excess of that permitted by that agreement, performing non-E/L legal services during the time he could and should have been performing services as E/L's General Counsel, and by failing or refusing, consistent with ethical duties and requirements, to reduce and taper off to zero his professional services for clients other than his employer, E/L.

The extent of Mr. Randazza's contractual material breaches made them also breaches of fiduciary duty --- regardless of whether or not those breaches of fiduciary duty were conflicts of interests, as some were.

[17] See <u>Burrow v. Arce</u>, 997 S.W.2d 229 (Tex. 1999) ("<u>Burrow</u>")(remedy of forfeiture/disgorgement upheld, including court discretion to determine whether some or all compensation paid to attorney who breached fiduciary duty of loyalty owed to

sense, however, that Mr. Joseph Garin came close to opining that causation and/or "fact of damage" caused by an assumed breach of an ethical/fiduciary duty is or should be a prerequisite to the imposition of disgorgement, with which opinion the Arbitrator respectfully disagrees (if that is Mr. Garin's opinion).[20] In so opining, Mr. Garin (as did Mr. Randazza's California expert witness, Ms. Ellen Peck) testified that --- based on information provided by Mr. Randazza --- there was not a single instance of an ethical violation, with which the Arbitrator also respectfully agrees, based on all of the evidence adduced at hearing.

See Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999) and Restatement of Agency 3d, Sec. 8.01 comment d(2).

X.      While Mr. Randazza's obtaining Mr. Gideon's signature on the promissory note for Mr. Randazza's $25,000 loan to E/L for Hong Kong legal fees was rife with ethical infirmities, in the exercise of the Arbitrator's discretion, the Arbitrator will not void the underlying loan. However --- again in the exercise of the Arbitrator's discretion --- the Arbitrator will limit the benefit of that decision to allowing Mr. Randazza to assert an offset, under this paragraph, to any and all amounts awarded on E/L's counterclaims, up to a maximum amount of $25,000 (i.e., no interest) --- which right of offset shall be conditional upon Claimant's transfer to Respondent Liberty of all Oron settlement-related and other E/L funds held in Claimant's attorney trust account,[21] plus interest at the legal rate of ten percent (10%) per annum from August 29, 2012.

Y.      E/L are the prevailing parties in this arbitration. As such one or both of Respondents is or may be entitled to contractual attorneys fees under the employment agreement.[22]

---

[20] Mr. Garin conceded, on cross-examination, that Section 37 of the Restatement 3rd of The Law Governing Lawyers does not say that a showing of actual monetary loss is required for disgorgement of attorney compensation.
[21] See Interim Arbitration Award, Pars. 4 & 5, at p. 28, infra.
[22] See Interim Arbitration Award, Pars. 8 at pp. 28-29, infra.

Mr. Gideon to authorize a settlement financially favorable to Mr. Randazza, based on Mr. Randazza's belief at the time --- and ultimately proven incorrect --- that Mr. Gideon would so settle, rather than have to litigate true or false allegations relating to his own sexuality, sexual activity, and the pornographic nature of E/L's business. Mr. Randazza's miscalculation, as aforesaid, led to an

---

where the Arbitrator was seated. Mr. Randazza almost always listened to questions and answered in that position --- leaning well forward and looking down or straight ahead into "middle distance" in the direction of the wall behind where the Arbitrator was seated. Mr. Randazza rarely answered a question on cross-examination with sustained eye contact with either the questioning attorney or the Arbitrator.

The Arbitrator has determined, based on the evidence, that Mr. Randazza solicited the bribe in the first instance, attempted to negotiate with Oron's counsel ways and means whereby it would be concealed from and not become known by E/L, and disclosed it to E/L, per Mr. Gideon, for the first time only on August 13, 2012, when the settlement documentation prepared and presented for Mr. Gideon's signature on behalf of E/L by Oron's counsel surfaced a $75,000 retainer payment to Mr. Randazza.

The Arbitrator has further determined that E/L never gave Mr. Randazza permission or consent to solicit, negotiate or accept the $75,000 bribe,* or any bribe or any other payment other than payment of all proceeds being solely for the benefit of and deposited to the account of his clients/principals, E/L.

[*On August 13, 2013, Mr. Gideon handwrote an arrow and "Who gets this" next to the $75,000 payment provision in the copy of the execution copy of the Oron settlement agreement presented to him by Mr. Randazza. The Arbitrator credits that notation as being first notice and genuine surprise expressed by Mr. Gideon about any Oron settlement payment not being made directly to E/L.

[That notation also was the genesis of a rapid unraveling of the theretofore close professional and personal relationship, symbolized by Mr. Gideon's sharply reducing communications with Mr. Randazza and Mr. Randazza's repeated and ultimately unsuccessful efforts to salvage his situation, by attempting to re-establish direct contact with Mr. Gideon. As previously stated, the Arbitrator has not accepted Mr. Randazza's central contention and narrative that this state of affairs, triggered on August 13, 2012, was manufactured by Mr. Gideon and served as a convenient or other pretext for an earlier-decided termination of Mr. Randazza's employment.]

The Arbitrator has not accepted that E/L's knowledge of or informed consent to any such situation can be implied by non-objection and silence in response to an unspecific, Delphic allusion in one of Mr. Randazza's emails prior to August 13, 2012 or to Mr. Randazza's after-the-fact, self-serving reference to alleged earlier communications, wherein Mr. Randazza claimed in the later email to have "fully disclosed...overtures about that."

In addition, except for admissions, anything which Mr. Randazza and his opposing counsel in the Oron litigation, Val Gurvitz, communicated to each other lacked credibility, because Mr. Randazza testified that he and Mr. Gurvitz routinely lied to each other in their settlement communications.

H.     In his August 29, 2012 email to Mr. Gideon, Mr. Randazza stated
that he could no longer represent the Company, i.e., E/L. [5]  In the circumstances
then known, Mr. Gideon and other E/L executives with whom he consulted
reasonably, and not hastily,[6] concluded from their review of Mr. Randazza's
August 29, 2012 email that Mr. Randazza had resigned from his employment.
Their conclusion was proven accurate by facts which became known after Mr.
Randazza's departure.  Any actions taken by them based on that reasonable
belief did not result in any involuntary termination of Mr. Randazza's E/L
employment.

I.     The lack of absolute, unquestionable, pristine clarity in     Mr.
Randazza's August 29, 2012 carefully worded and crafted email that he     was
resigning his employment was deliberate.

J.     In addition to Mr. Randazza's disputed, disproved and unproved
allegations of sexual conduct engaged in or authorized by is important evidence
which established that Mr. Randazza was not either (1) a target of any
discriminatory or conduct which created a hostile work environment, because of
his being a heterosexual or "straight" male, or (2) offended by any of the sexually-
related conduct of which he has complained.

K.     Prior to and subsequent to agreeing to go "in house" as E/L's
general counsel, Mr. Randazza was outside counsel to several companies
engaged in Internet pornography, including videos and stills available on openly
homosexual websites.  Since at least the date of the commencement of his
employment as E/L's inside general counsel through his last day of E/L
employment, Mr. Randazza knew of and was not in any way uncomfortable with
Mr. Gideon's gay sexual orientation --- which was also that of most, but not all,

---

[5] Mr. Randazza also said he could "potentially" work to wind up his E/L pending
matters.  The Arbitrator interprets the inclusion of that to be part of Mr. Randazza's
crafted effort to both resign and leave open his attempt to engage Mr. Gideon directly.
[6] The Arbitrator has not accepted Mr. Randazza's assertion that "Respondents hastily
decided to call that [August 29, 2012 email] a resignation." Mr. Randazza's Reply at p.
7:20-21.

ultimately successful counterattack by E/L, via counterclaims in this arbitration, centering on ethical and legal challenges to Mr. Randazza's conduct as E/L's general counsel and litigation counsel during his employment by E/L. Mr. Randazza's alleged misconduct consisted of engaging in ethically-prohibited negotiations with adverse parties, including concerning monetary "bribes" to "conflict (Mr. Randazza) out" from future litigation, further damaging E/L's recovery in the <u>Oron</u> litigation by knowingly forwarding illegally "hacked" computer data to counsel for another company, without authorization and in contravention of an E/L settlement agreement, engaging in other prohibited conflicts of interest, including representing competitors of E/L, not disclosing and not obtaining informed written client consents from E/L where actual or potential conflicts of interest arose, working and not disclosing that he was working as a practicing lawyer on non-E/L matters during his employment significantly in excess of what was contractually permitted, spoliation of evidence to cover up the foregoing and his undisclosed intention to resign from E/L's employment, including via planning and causing the deletion of legal files and other relevant data from E/L-owned computers, taking control of client funds, in form of <u>Oron</u> litigation settlement proceeds, and refusing to unconditionally release the same to E/L.

G.    As stated above, Mr. Randazza voluntarily ended his employment by E/L. The principal evidence of that consisted of (1) Mr. Randazza's August 29, 2012 email to Mr. Gideon, (2) days before sending Mr. Gideon his August 29 email, Mr. Randazza cleaned out his personal belongings from his office, (3) shortly after Noon on August 28 --- and more than 24 hours before sending his August 29 email to Mr. Gideon --- Mr. Randazza had his corporate laptop computer "wiped" the first of four times during his last week of employment, and (4) before that, Mr. Randazza was overheard to say "Fuck this shit, I quit," following a company "happy hour" event.

Mr. Randazza's part.[3] For those reasons, the Arbitrator has determined that Mr. Randazza failed to sustain his burden of proof required to establish his claims of and relating to anything having to do with sex --- e.g., sexual harassment, hostile work environment, constructive termination, retaliatory termination, etc.

F.    As stated above --- and as picked up and amplified later in the Determinations portion of this Award --- since the outset of the arbitration, Mr. Randazza made highly-charged, sexually-based "core allegations" and his claimed strong reactions to them in support of his statutory and contractual claims, which were in the main disproved or not proved. That failure of proof undermined and impaired Mr. Randazza's credibility concerning all of his

/////
/////
/////

testimony and his claims and related contentions.[4] The evidence established at hearing was that Mr. Randazza intended that his allegations would induce

_____

[3] The same is true with respect to Mr. Randazza's contention(s) that Mr. Gideon's discovery of Mr. Randazza having been involved with and negotiating a $75,000 "bribe" in connection with a settlement of the Oron litigation was a pretext for an earlier-formed intention by Mr. Gideon to end Mr. Randazza's E/L employment.

[4] Mr. Randazza's credibility was also undermined by the variance between his testimony and positions at hearing and his written Nevada State Bar submission concerning the Oron litigation $75,000 bribe --- including what, if anything, Mr. Gideon knew about it and when, and who solicited the bribe in the first instance.

Mr. Randazza's credibility was also undermined by the variance between his testimony and his EEOC submission. At hearing, Mr. Randazza admitted that the EEOC complaint contained errors, but tried to explain them away by saying that he did not prepare it. That is not a sufficient excuse or explanation, in the circumstances.

Resolving a credibility-related issue presented in the post-hearing briefs concerning asserted testimonial evasiveness implied by Mr. Randazza's body positioning and whether he had eye contact with the Arbitrator (as asserted by Mr. Randazza in his Reply), throughout his extensive testimony at hearing and primarily on cross-examination, the Arbitrator observed that Mr. Randazza sat sideways in his chair, relative to Claimant's counsel's table --- with his back to (i.e., 180 degrees away from) his own counsel and 90 degrees away from Respondent's counsel --- albeit with his seated body positioned toward the part of the wall behind and to Mr. Randazza's left from

claim for payment of all of his wage-related claims --- including payment of raises, bonuses and repayment of his $25,000 loan. That is because --- at all times relevant to those California Labor Code claims, since June 2011, Mr. Randazza worked and lived in Nevada, to which Mr. Randazza relocated, as did E/L, in order to continue as E/L's general counsel.  As stated or indicated in a pretrial ruling bearing on the same issue, (1) the California Labor Code, presumptively, does not apply extraterritorially,[9] and does not apply to the facts and circumstances of this case, and relatedly, (2) that determination, concerning Mr. Randazza's  non-contractual claims, is unaffected by the California-as-governing-substantive-law provision of Mr. Randazza's employment agreement with Excelsior, which applies and controls only as to breach-of-contract claims and not, as in this instance, Mr. Randazza's statutory claims.[10]

In the event, Mr. Randazza was properly compensated for all services as to which he has asserted statutory and contractual claims.[11]

O.    Mr. Randazza's claim for unpaid wages and penalties under Nevada NRS Sec.608.050 (3rd Claim) fails as a matter of law, because there is no private right of action for enforcement of that statute.  It is therefore not necessary to decide whether the a claim has been stated under that statute.

P.    As to Mr. Randazza's contractual claims --- which are governed by the Employment Agreement, including the provision that California law governs its interpretation and enforcement, etc. --- (1) Mr. Randazza is not entitled to a contractual severance payment, because he voluntarily resigned his

---

[9] Sullivan v. Oracle Corp.  , 51 Cal.4th 1191, 12016 (2011); Wright v. Adventures Rolling Cross Country, Inc., 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. 2012) (presumption against extraterritorial application of state law applies to unpaid wage claims under California Labor Code, plus "situs of the work" is the most important factor in determining extraterritoriality, trumping residency and where wages are paid).
[10] See, e.g., Narayan v. EGL, Inc. , 616 F.3d 895, 899 (9th Cir. 2010).
[11] For example, Mr. Randazza's bonuses were to be based on net and gross amounts (which he acknowledged prior to the end of his employment), claimed compensation raises were discretionary. Whatever Mr. Randazza was paid as compensation and bonuses is subject to the remedy of disgorgement.

(1) engaging in negotiations for monetary bribes to be paid to him --- including the "Oron $75,000" which Mr. Gideon noticed, without Mr. Randazza's affirmative disclosure of it ---- which would result in his being "conflicted out" of future litigation or any disputes with parties then and/or in the future with

/////
/////
/////

interests adverse to E/L's interests (e.g., Oron, TNA),[13] (2) taking control for his personal benefit of, and refusing to relinquish control over, Oron settlement funds --- all of which ought to have been for the benefit and under the direction and control of his principals/clients E/L, before and after the end of his employment and representations on behalf of E/L --- (3) Mr. Randazza's ordering and causing the deliberate "wiping" of his and legal assistant's corporate laptops, as an integral part of his planned resignation as E/L's General

---

[13] It is irrelevant that none of Mr. Randazza's negotiations concerning bribes --- including the Oron bribe --- resulted in an actual bribe payment. See Mr. Randazza's Reply at pp.4:24-5:1: "Yet despite years of discovery in this matter, Respondents have not been able to point to a single 'bribe' paid to Mr. Randazza, or a single consummated deal between him and the opposing party."* The Arbitrator has accepted, as an admission by Mr. Randazza that "he repeatedly engaged in these 'bribe' negotiations," but the Arbitrator has not accepted Mr. Randazza's testimony and further contention that he did so "because they were par for the course in dealing with counsel for infringers and because engaging in them was the best way to soften up the other side and get more money for respondents." Id., at p. 5:2-5.

In this arbitration, Mr. Randazza has established a virtually unbroken pattern of asserting a legal/fiduciary variant of the sports cliché, "No harm, no foul." The Arbitrator has not accepted those assertions --- including, for example, a professional or fiduciary duty has been violated, whether spoliation has been committed, etc.

In the circumstances, Mr. Randazza's generalized and unspecified claims of privacy --- in attempted justification of his ordered complete and multiple wipings of company-owned computers --- cannot be accorded weight or credibility. By the same token, that ordered conduct raises an inference that whatever was deleted was known and intended by Mr. Randazza to be harmful to him and any claims and contentions which he might make in any dispute with E/L --- i.e., deliberate spoliation, in addition to conversion.

Mr. Randazza cannot escape liability for spoliation or conversion --- or, additionally, violation of his fiduciary duties as an employee, executive and general counsel of E/L, by reason of the same conduct --- by claiming, as he has, that Respondents have not shown any specific or tangible injury by reason of his conduct in causing company-owned computers to be completely wiped of all data prior to their resisted and belated return. In the circumstances --- and paraphrasing former Defense Secretary Donald Rumsfeld --- neither Respondent should bear any burden or responsibility to come forward with any evidence of damage, when they do not know what they do not know. As stated above --- with his actual exclusive knowledge of what was on the computers' hard drives, before and because he ordered them to be completely wiped and, in the instance of his returned laptop, multiply wiped before ultimate return --- Mr. Randazza committed spoliation of evidence, as well as improper conversion of his employer's files, data and equipment and, in so doing, also violated his fiduciary duties owed to E/L.

S. The closure of the Nevada State Bar's file on the grievance filed by E/L has not been given any weight in this arbitration. The reasons for that are manifold, several of the most significant of which include the following: (1) the State Bar did not reach the merits of E/L's grievance, (2) even if it would have, the standard of evaluation would have been "clear and convincing evidence," rather than the standard applicable in this arbitration of "preponderance of the evidence," (3) Mr. Randazza's response to E/L's grievance contained at least one

17

material misrepresentation acknowledged during an evidentiary session in this arbitration (that he stopped representing XVideos in 2009), (4) the Nevada State Bar closed its file with an express statement that it has "no authority to take any action which could affect the outcome of any civil disputes or litigation, (5) many of the issues and much of the evidence presented in this arbitration (identities of represented entities, retainer and billing records, emails, etc.) was not available to be presented by E/L in support of its grievance (e.g., Mr. Randazza's assisting Datatech, including via forwarding fruits of a disclosed (unnamed) computer "hacker").

     T.     E/L was damaged in at least the amount of $275,000, by reason of the <u>Oron</u> resettlement, as a direct and proximate result of events being set in motion by Mr. Randazza's violations of fiduciary duty and other duties, by his having secretly negotiated a $75,000 bribe to conflict himself out from suing Oron in the future.

     U.     Mr. Randazza was unjustly enriched in the amount of $60,000. Of that amount, $55,000 was paid to and received by Mr. Randazza's law firm, rather than E/L, in connection with (1) Mr. Randazza's ostensibly <u>pro bono</u> representation in connection with the so-called "<u>Righthaven</u> cases," of which E/L was generally aware and consented to (A) with the understanding and on the condition that Mr. Randazza was acting as a faithful, compensated E/L employee, including in compliance with his employment agreement, with costs of the representation advanced by E/L, including compensation as employees of Mr. Randazza and his legal assistant Erika Dillon, and (2) unaware that compensation was to be or actually paid to Mr. Randazza, via his law firm, until after the fact, indeed after Mr. Randazza's resignation from E/L employment.[15] Mr. Randazza also received $5,000 from James Grady, in connection with E/L's <u>Oron</u> litigation. Although Mr. Randazza testified, without corroboration, that

---

[15] Of the $60,000 paid and received, (A) $55,000 was court-awarded attorneys' fees, which were paid to Mr. Randazza's law firm, and (B) $5,000 was paid by James Grady.

The chilled relations, including greatly reduced communication, was in stark contrast with the custom and practice of Messrs. Gibson and Randazza, practically right up to August 13, 2012, being in regular, frequent, cordial and occasionally sexually-peppered communication with each other by face-to-face meetings, texting and emails.

That Mr. Gideon's reaction was not feigned or a pretext for anything asserted by Mr. Randazza in his competing narrative are shown by the following:

1.      A sudden and significant reduction of those previously primarily electronic (i.e., email and text) communications --- beginning only after Mr. Gideon learned of the $75,000 bribe --- with Mr. Randazza sending Mr. Gideon unresponded-to emails attempting to attempting to salvage and revive his communications and relationship with Mr. Gideon.

2.      Mr. Randazza beat a hasty retreat, in an attempt to salvage the situation by offering to pay the bribe money over to E/L, when initially confronted by Mr. Gideon concerning the "bribe" provision in the Oron settlement agreement, presented for Mr. Gideon's signature.

3.      Mr. Gideon did not timely sign the execution copy of the Oron settlement agreement, as negotiated and presented to him by Mr. Randazza.

D.      The ending of Mr. Randazza's employment E/L was not --- as contended by Mr. Randazza --- (1) constructive discharge, proximately caused by Mr. Gibson becoming distant and out-of-communication with Mr. Randazza, which made it difficult or impossible for Mr. Randazza to get needed instructions or direction in his employment by E/L as their general counsel, leading to Mr. Randazza's August 29, 2012 email of resignation from employment, or (2) retaliatory termination, which was caused by Mr. Randazza's having "expressed his feelings" of having been "upset, betrayed, offended, and

4

## DETERMINATIONS

1.      The determinations in this Interim Arbitration Award include factual determinations by the Arbitrator, which the Arbitrator has determined to be true and necessary to this award.  To the extent that the Arbitrator's determinations differ from any party's positions, that is the result of determinations as to relevance, burden of proof considerations, and the weighing of the evidence.

2.      The Arbitrator has jurisdiction over the subject matter and over the parties to the arbitration which are as follows:  Claimant and Counter-Respondent Marc J. Randazza ("Mr. Randazza"), Respondents and Counterclaimants Excelsior Media Corp. ("Excelsior"), Liberty Media Holdings, LLC ("Liberty"), and Respondent Jason Gibson. [1]

3.      On February 9, 10, 11, 12 and 13, 2015, the Arbitrator held in-person evidentiary sessions on the merits of the parties' respective claims, counterclaims and contentions. All witnesses who testified did so under oath and subject to cross-examination.  All offered exhibits were received in evidence.

4.      This Interim Arbitration Award is timely rendered.  See Order of June 1, 2015.

5.      The following is a summary of the Arbitrator's principal merits determinations:

---

[1] Except as otherwise stated or indicated by context, "E/L" shall be used to reference Excelsior and Liberty, collectively and interchangeably for convenience in this Interim Arbitration Award, only.  Nothing should be inferred or implied that there is any determination, or basis for any determination, that either or both of those entities are "alter egos" of Jason Gibson or of any person or entity.  Mr. Randazza failed to sustain his burden of proof that either Excelsior or Liberty were or are "alter egos" of Respondent Jason Gideon or of any person or entity.  Mr. Gideon will be dismissed as a party in this arbitration. See Interim Arbitration Award, Par. 9, at p. 29, infra .

A.    Mr. Randazza voluntarily ended his employment by Excelsior and Liberty.

B.    Mr. Randazza's employment by Excelsior and Liberty was not involuntarily terminated by Excelsior, Liberty or at all.[2]

C.    Whether or not Mr. Randazza's employment by E/L was terminated voluntarily by Mr. Randazza or involuntarily by E/L, the principal proximate cause for the ending of Mr. Randazza's employment was Mr. Randazza's breaches of fiduciary duty and the covenant of good faith and fair dealing, implied in his employment agreement, as an employee, executive and general counsel of E/L. The precipitating events which led to the end of Mr. Randazza's employment was Mr. Gideon's having first learned on August 13, 2012 that Mr. Randazza had been involved in and successfully concluded negotiations for a bribe in the amount of $75,000, to be paid to Mr. Randazza by the other side in connection with resolution of high-importance litigation, commonly referred to as the "Oron litigation," which had been initiated and pursued on behalf of E/L by Mr. Randazza, as E/L's counsel of record.    The first indication of that was Mr. Gideon's noticing a provision included in an execution copy of an Oron settlement agreement, presented to him for signature by Mr. Randazza on that date, and Mr. Gideon's inquiring of Mr. Randazza about that provision.

After initial contacts with Mr. Randazza concerning what Mr. Gideon discovered in the Oron settlement agreement, communications and relations between Messrs. Gideon and Randazza noticeably chilled during Mr. Randazza's remaining employment, which ended on August 29, 2012.

---

[2] While not accepting Mr. Randazza's "core contentions" concerning the end of his employment by E/L, the Arbitrator agrees with Mr. Randazza's assertion that "The nature of Mr. Randazza's departure from Excelsior is central to several of his causes of action, and crucial to the defenses Respondents raise" --- including whether there was a breach of contract, wrongful termination, constructive termination and/or retaliatory termination. Reply at p. 7:12-15. As also stated elsewhere herein, none of those claims were proven.

stressed" anything of a sexual nature whatsoever --- including, as highlighted during hearing, a pornographic video shot in Mr. Randazza's office in April, 2012 or a homosexual oral copulation allegedly performed by Mr. Gideon and another E/L executive in the backseat of Mr. Randazza's car, which allegedly greatly upset Mr. Randazza while he was driving his passengers back from a party aboard Mr. Gideon's boat on August 9, 2012.

     E.     The immediately foregoing Determination's repeated use of the word "allegedly" is because it is not necessary to resolve a conflict of evidence as to whether the alleged sexual act in Mr. Randazza's car actually occurred or the degree of upset it caused Mr. Randazza, if it actually occurred.  That is because the Arbitrator has determined that --- contrary to Mr. Randazza's central contentions in this arbitration --- the factual and legal cause of the end of Mr. Randazza's employment had nothing whatsoever to do with anything having to do with alleged sexual activity in Mr. Randazza's car --- alone or taken together with a pornographic shoot which, without dispute, occurred in his office, without prior notice to Mr. Randazza, but which the evidence shows did not occur as alleged, was not strongly or even negatively reacted to by Mr. Randazza as initially alleged and did not, as shot or shown, include a photograph of Mr. Randazza's family, as initially presented by Mr. Randazza.

     The foregoing determination includes that anything relating to sex --- including in connection with a filmed video in Mr. Randazza's E/L office or in the back seat of his car --- had nothing whatsoever to do with any decision --- which the Arbitrator has determined was neither made or considered --- to terminate Mr. Randazza's E/L employment. 2012. There was no E/L contrived pretext or any retaliation by E/L in connection with the cessation of Mr. Randazza's E/L employment, which was entirely voluntary on

/ / / / /
/ / / / /

5

of E/L's other executives --- and the frequent seasoning of business and socially-related conversation and written communications with crude gay and other sexual terms, references and allusions, which Mr. Randazza also used.[7]  Mr. Randazza was not embarrassed to be seen or filmed in full undress at a poolside business-social event at Mr. Gideon's home.  Mr. Randazza permitted and encouraged his children to have warm personal relationships with Mr. Gideon, who they called "Uncle."

      L.     The evidence was that the only complaints which          Mr. Randazza had concerning the pornographic filming in his offices in April 2012 --- four months before the end of his employment --- were that (1) he was not given the courtesy of advance notice of the shoot and (2) after the shoot was completed, Mr. Randazza's office was not restored to just the way it had been before the office was prepped for filming.

      The preponderance of disputed evidence was not that Mr. Randazza complained to Mr. Gideon centering on or in any way reasonably relating to sexual discrimination or harassment or a hostile work environment based on sex, including "male-on-male" sex, which has been recognized as a basis for a legal claim.   Accordingly, allegedly involuntary termination of Mr. Randazza's employment, based on Mr. Randazza's April 2012 complaint about the filming of pornography in his office --- which did not constitute statutorily "protected activity" --- is not includible as a component for a statutory claim that he had been fired in retaliation for making that complaint.  Mr. Randazza's complaint about the allegedly personally offensive oral copulation of Mr. Gideon

---

[7] For example, Mr. Randazza admitted that he used the term "butthurt" --- which he alleged that Mr. Gideon used to demean his expression of feelings about the pornographic filming in his office.  In a series of texts about the shoot, Mr. Randazza texted, in a crude possible sexual/legal "double entendre," "Don't jizz on my briefs."  Mr. Randazza has admitted that "The Arbitrator has seen many texts and emails from Mr. Randazza with informal, rough, vulgar content." Reply at p. 10:9-10. In making a different point, Mr. Randazza concedes by assertion that "Respondents [have] conceded that jokes and banter were common in the office."

fiduciary duties do not require "fact of harm" to be shown by a preponderance of the evidence or otherwise.

Moreover, in the circumstances of (1) multiple ethical violations having been shown to have been committed by Mr. Randazza --- including negotiating for and in the instance of the Oron settlement agreeing to a "bribe" to be conflicted out of future litigation with adverse settling parties and other conflicts of interest --- and (2) Mr. Randazza's ethical challenges shown in this arbitration, there should be a presumption of "fact of harm" caused to E/L by Mr. Randazza's conduct and, additionally, a presumption of Mr. Randazza's intention to harm his clients by wiping everything off of his and his legal assistant's company-owned computers.

As E/L's inside general counsel and employee, Mr. Randazza had a legal and fiduciary duty --- no later than when his employment ceased, regardless of whether or not with or without cause and/or by whom ended --- to deliver every file and other piece of data and/or information --- complete, intact and undeleted, unmodified and immediately accessible and usable by E/L. That included all files and data stored on the computers entrusted to Mr. Randazza and his legal assistant Erika Dillon for their use by and on behalf of E/L. Because of his noncompliance, indeed resistance to compliance with those duties, they continued and continue to the day of the rendering of this award --- including beyond Mr. Randazza's belated and resisted turnover of one of the laptop computers --- because another laptop entrusted to Mr. Randazza remains unreturned. Those continuing fiduciary duties owed by him to E/L exist, including by reason of his exclusive control over the computers and thus superior knowledge of what was on each computer's hard drive before and after he had everything on the returned laptops completely and multiply deleted --- including prior and in contemplation of his planned resignation on August 29, 2012.

/ / / / /

/ / / / /

/ / / / /

There is no requirement that causation or "fact of damage" be shown.[18]  There is

no valid reason to distinguish between an executive who is "in house" general

---

client to be forfeited or disgorged, where clear and serious violation(s) of fiduciary duty
shown).

[18] That is because, among other reasons, one of the primary purposes of a remedy like
forfeiture/disgorgement for breaches of fiduciary duty is to deter, not reward and to
remove incentives of fiduciary disloyalty --- including by denying the benefits of
disloyalty, regardless of provable or even actual harm to the principal, including after
payment of compensation.  As the Texas Supreme Court pertinently stated in Burrow in
connection with the remedy of forfeiture/disgorgement as a deterrent and disincentive
for an attorney or other agent to breach of fiduciary duty:

"Pragmatically, the possibility of forfeiture of compensation discourages an agent
from taking personal advantage of his position of trust in every situation,
no matter the circumstances, whether the principal may be injured or not.
The remedy of forfeiture removes any incentive for an agent to stray from his duty of
loyalty based on the possibility that the principal will be unharmed or may have
difficulty proving the existence of amount of damages."

The California cases cited by Claimant are distinguishable.  Frye v. Tenderloin
Housing Clinic, Inc., 38 Cal.4th 23 (2006)("Frye"),  Slovensky v. Friedman, 142 Cal.App.
4th 1518 (2006) ("Slovensky").  The appellate court's conclusion in Slovensky was based
on its misreading and/or misstatement of the Supreme Court's holding and the basis
and reasoning for its holding in Frye --- which was, in effect, a "one-off" opinion strongly
driven by the facts and public policy considerations articulated and emphasized by the
Supreme Court in the opinion.  The Slovensky court's mistake is highlighted by its
reliance on what it called the "Frye rule" --- which was no such thing, or at least not as
stated and relied on by the court in Slovensky.

There would be little or no reason for the remedy of disgorgement, if there was a so-
called "Frye rule" as misstated by the Slovensky court and urged by Mr. Randazza.
If fact of damage and extent of damages must be proven by a preponderance of the
evidence, in order to obtain disgorgement, that remedy would be rendered duplicative
of the remedy of compensatory damages, except in name only.  Moreover, the strong
public policy to deter and remove any incentive for clear and serious violations of
fiduciary duty - where injury to the client or other principal might be difficult or
impossible to prove, as a matter of compensable damages - would be severely
undermined.

In Frye , the California Supreme Court appears to have been offended by the
plaintiff/client's overreach in the circumstances.  The Court determined not that the
remedy of disgorgement was legally unavailable but, rather, that its application --- in the

counsel and other corporate executives with respect to the availability of the remedy of forfeiture/disgorgement of compensation for breaches of fiduciary duty.[19]  While it might be less easy to determine the appropriate amount of disgorgement --- because, for example, the compensation paid is not a fixed percentage, as in an all-or-nothing legal or brokerage contingency fee arrangement, contractual hourly arrangements, etc. --- that is not a disqualifying factor or consideration.  Considerations of proportionality and non-overlap with an award under other remedies are applicable.

Disgorgement will be applied to E/L-paid compensation received by Mr. Randazza in connection with litigation and other engagements on behalf of non-E/L clients --- in material breach of contract, while employed by E/L and beyond the significantly limited scope of his employment agreement (in terms of subject matter and time) and/or, in all events, in violation of his professional and fiduciary duties owed to his principal/client/employer, E/L. See Par. 1(V), above.

None of the expert witnesses who testified concerning breaches of legal ethics and fiduciary duties by attorneys and remedies for such breaches opined that disgorgement is unavailable in all instances. The Arbitrator had the

---

special context of a technical failure to properly register for the practice of law by a public interest non-profit organization, engaged in what the Court considered to be important, worthy public interest work, expressly supported by the Court (including by affirming very substantial statutory attorneys' fees awards, as stated in that opinion) — was "grossly disproportionate to the wrongdoings" of the defendant there and therefore "would constitute a totally unwarranted windfall" to the plaintiff there. 38 Cal.4th, at p. 50.  Frye, therefore, is distinguishable from the facts of this case.

Because the basis for its opinion was wrong, Slovensky is distinguishable or, more aptly, inapplicable to Mr. Randazza's proven clear and serious ethical and fiduciary breaches in this case.

[19] See Zakibe v. Ahrens & McCarron, Inc., 28 S.W.3d 373, 385-386 (Mo. Ct. App. 2000) (executive's breaches of fiduciary duty resulted affirmed forfeiture of his right to "all compensation, including bonuses and severance pay to which he may have been entitled"); Riggs Investment Management Corp. v. Columbia Partners, LLC, 966 F. Supp. 1250, 1266-1267 (DDC 1997) (former chairman and CEO of corporation forfeited all salary, bonuses and other compensation paid from the time disloyal action began, as determined by the appellate court, to date of end of employment six months later).

INTERIM ARBITRATION AWARD

Based upon careful consideration of the evidence, the applicable law, the parties' written submissions, the Determinations hereinabove set forth, and good cause appearing, the Interim Arbitration Award in this arbitration is as follows:

1.      Claimant and Counter-Respondent Marc J. Randazza ("Claimant") shall take nothing by any of his claims set forth in his Amended Arbitration Demand.

2.      Claimant shall pay Respondent(s) the following sums and amounts, as and for monetary damages in connection with Respondents' counterclaims.   Said amounts are exclusive and non-duplicative of any amount separately and additionally awarded to Respondents as part of the remedy of disgorgement. See below.

Said amount includes the amount of $275,000, plus pre-award interest from August 13, 2012, at the legal rate of ten percent (10%) per annum, as and for monetary damages in connection with the resettlement of the Oron litigation, as a direct and proximate result of Claimant's violations of fiduciary duty in connection with his negotiating for a $75,000"bribe" (to conflict him out of future representation against Oron) as part of the resolution of the Oron litigation.

Said amount will include the amount of $60,000, by which amount Claimant was unjustly enriched --- in that Claimant (via his law firm), rather than either Respondent received (A) $60,000 in connection with Claimant's ostensibly pro bono representation in connection with the Righthaven cases, while compensated for Claimant's time spent on the representation as employee, in the course of his employment, as to which representation the costs were advanced by Claimant's employer, and (B) received from James Grady in connection with the Oron litigation.

Said amount will include the amount of $3,215.98 --- as and for Respondents' expenses reasonably incurred in connection with QUIVX forensic

examination and attempted restoration of data on employer-owned laptop computers and an iPhone used and returned, as applicable, by Claimant and Erika Dillon. In addition, an amount yet to be determined, in the exercise of the Arbitrator's discretion, will be awarded for Claimant's spoliation and conversion of Excelsior's and Liberty's files and other data contained on employer-owned laptop computers entrusted to Claimant and Erika Dillon during their employment by Respondents or either of them. The additional amount awarded will be set forth in a further and/or amended interim arbitration award and/or in the final arbitration award.

     3.    Claimant shall pay Respondent Excelsior the amount of $197,000.00 --- as and for disgorgement of an appropriate amount of Claimant's employment compensation (including salary and bonuses) paid under his employment agreement).

     The awarded amount under this paragraph is non-duplicative of and does not overlap with any amount award as monetary damages under any other paragraph of this Interim Award.

     The amount awarded under this paragraph does not include disgorgement based on Claimant's post-employment violations of fiduciary duty. That is because it appears to the Arbitrator that they are instances of Respondents having rights without a remedy --- as the limits of case law on disgorgement do not extend to post-employment violations of fiduciary duty.

     Disgorgement shall be based on Claimant's violations of fiduciary duty ---including as acting as an attorney in connection with the TNAFlix litigation and the MegaUpload case, Claimant's concurrent representation of XVideos and/or XNXX during his employment by Excelsior and spending excessive, undisclosed, time on non-Excelsior/Liberty matters far beyond contractually-permitted time under his employment agreement.

     4.    Claimant is hereby ordered forthwith (i.e., within ten (10) days of the date of the issuance of this Interim Arbitration Award) to turn over to

Respondents all <u>Oron</u>-related funds and, further, an additional $30,000 of non-<u>Oron</u>-related client funds of Respondents --- which funds have been held in Claimant's attorney trust account --- plus pre-award interest at the legal rate of ten percent (10%) per annum from August 29, 2012.

5.    An accounting of Claimant's attorney trust account is hereby ordered --- including to ensure compliance with Paragraph 4 hereof. The accounting shall be performed by a qualified third-party accountant and/or accounting firm appointed and/or approved by the Arbitrator. The cost and expense of which shall be borne solely by Claimant --- although Respondents may advance the funds necessary for the accounting, subject to ordered reimbursement by Claimant. Claimant is hereby ordered to cooperate fully with the ordered accounting.

6.    Claimant is hereby ordered to return the as-yet-unreturned company-owned laptop to Respondents' counsel forthwith --- and in no event later than ten (10) days from the date of the issuance of this Interim Arbitration Award.

7.    Respondent shall be awarded as damages or costs reasonably incurred with this litigation, expenses reasonably incurred by QVIX or similarly qualified expert vendor --- up to a maximum of $3,500 --- in connection with the vendor's performance of successful and/or attempted retrieval of data a report to the Arbitrator of what, if anything was deleted from the computer and when.

8.    Respondents and Counterclaimants Excelsior Media Corp. and Liberty Media Holdings, LLC shall be afforded the right in this arbitration to establish their rights --- if any, and according to proof --- to contractual attorney's fees and costs.

Counsel for the parties are ordered to immediately commence and diligently conduct and conclude meet-and-confer communications and to submit to the Arbitrator within ten (10) days of the issuance of this Interim Arbitration

Award an emailed proposed briefing and hearing schedule for any application for contractual attorney's fees and costs.

       9.     Respondent Jason Gideon will be dismissed as a party to this arbitration.

      Subject to further order and/or a further and/or amended interim arbitration award, and the Final Arbitration Award, this Interim Arbitration Award, including the Determinations hereinabove set forth, is intended to be in full settlement of all claims, issues, allegations and contentions, on the merits, submitted by any party against any adverse party in this arbitration. Subject to the immediately preceding sentence, claims and requests for relief not expressly granted in this Interim Arbitration Award are hereby denied.

Dated: June 3, 2015

                                        STEPHEN E. HABERFELD
                                           Arbitrator

*Exhibit 34*

In the
United States Court of Appeals
for the Ninth Circuit

Nos. 12-35238, 12-35319

OBSIDIAN FINANCE GROUP, LLC, *ET AL*.,

Plaintiffs-Appellees and Cross-Appellants,

v.

CRYSTAL COX,

Defendant-Appellant and Cross-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
No. 3:11-cv-00057-HZ
The Honorable Marco A. Hernandez

## PETITION FOR REHEARING

Eugene Volokh
Mayer Brown LLP
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu
*Attorney for Defendant-*
*Appellant/Cross-Appellee*

*Exhibit 34*

# TABLE OF CONTENTS

Table of Contents.......................................................................... i

Table of Authorities ..................................................................... ii

Petition for Rehearing ................................................................. 1

*Exhibit 34*

# TABLE OF AUTHORITIES

**Statutes and Rules**

Fed. R. Evid. 201 ......................................................................................... 1

**Articles**

Dan Levine, *Blogger Gets Same Speech Protections as
    Traditional Press: U.S. Court*, Reuters, Jan. 17, 2014,
    http://www.reuters.com/article/2014/01/17/us-usa-blogger-
    ruling-idUSBREA0G1HI20140117 .......................................................... 2

David Carr, *When Truth Survives Free Speech*, N.Y. Times,
    Dec. 11, 2011, at B1 ................................................................................. 1

http://www.
    nbcnews.com/id/54102454/ns/technology_and_science-tech_
    and_gadgets/ ............................................................................................ 2

*Exhibit 34*

## PETITION FOR REHEARING

Appellant Crystal Cox does not ask this Court to modify the substance of its opinion. She does, however, respectfully request that the Court amend its opinion to withhold the sentence that now says,

> Cox apparently has a history of making similar allegations and seeking payoffs in exchange for retraction. See David Carr, *When Truth Survives Free Speech*, N.Y. Times, Dec. 11, 2011, at B1.

A judicial assertion of misconduct by a named person, even a judicial assertion modified with the word "apparently," could be based on the record in a case, or on authoritative findings by another court. But it ought not be based on a newspaper column, which was written without the benefit of cross-examination, sworn testimony, or the other safeguards of the judicial process. The claims in the columnist's assertion are neither facts found by a factfinder nor facts subject to judicial notice under Fed. R. Evid. 201.

Moreover, while the *New York Times* column does discuss Cox's offering her consulting services to appellees in this case, it does not make any such allegations about other cases. There thus seems to be no "history" of "seeking payoffs" claimed in the article. The "history" that the column is positing appears to be only a history of Cox's "making similar allegations."

1

*Ex - 34*

Unfortunately but unsurprisingly, some media outlets have not only re-
peated this sentence, but even omitted the term "apparently" in doing so.
The widely reprinted Reuters wire service, for instance, wrote,

> According to the court's opinion, Cox has a history of making allega-
> tions of fraud and other illegal activities "and seeking payoffs in ex-
> change for retraction."

Dan Levine, *Blogger Gets Same Speech Protections as Traditional Press:
U.S. Court*, Reuters, Jan. 17, 2014, http://www.reuters.com/article/2014/01/
17/us-usa-blogger-ruling-idUSBREA0G1HI20140117; *see also, e.g.*, http://
www.nbcnews.com/id/54102454/ns/technology_and_science-tech_and_
gadgets/ (NBC News republication of the Reuters article). Of course, some
such media omissions of qualifiers (such as "apparently") are inevitable.
Still, they highlight the fact that, when a statement is made in a Court of Ap-
peals opinion—with the authority such opinions possess—journalists might
perceive the statement as a factual finding, and not just a report of what a
newspaper column has alleged.

Judicial opinions are perceived as extraordinarily reliable sources of in-
formation. This reliability stems from the assumption that statements in the
opinion, especially statements that allege misconduct, generally rest on ad-
judicated facts. Because of this, Cox respectfully requests that this particular

2

allegation, which relies solely on a claim made in a newspaper column, be redacted from the opinion.

Respectfully submitted,

s/ Eugene Volokh
Eugene Volokh

Counsel for Defendant-Appellant and Cross-Appellee Crystal Cox

January 31, 2014

3

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations of 9th Cir. R. 40-1(a) because the petition contains 428 words.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman typeface.

Dated: January 31, 2014

s/ Eugene Volokh
Eugene Volokh

Counsel for Defendant-Appellant and
Cross-Appellee Crystal Cox

Search — Supreme Court of the United States

No. 13-9731
Title:              Crystal Cox, Petitioner
                   v.
                   Obsidian Finance Group, LLC, et al.
Docketed:          April 16, 2014
Lower Ct:          United States Court of Appeals for the Ninth Circuit
  Case Nos.:       (12-35238, 12-35319)
  Decision Date:   January 17, 2014
  Rehearing Denied: March 5, 2014

~~~Date~~~    ~~~~~~~Proceedings and Orders~~~~~~~~~~~~~~~~~~~~~
Apr 8 2014    Petition for a writ of certiorari and motion for leave to proceed in forma pauperis filed. (Response due May 16, 2014)
Apr 21 2014   Waiver of right of respondents Obsidian Finance Group, LLC, et al. to respond filed.
May 7 2014    DISTRIBUTED for Conference of May 22, 2014.
May 27 2014   Petition DENIED.


~~Name~~~~~~~~~~~~~~~~~~~~~          ~~~~~~~Address~~~~~~~~~~~~~~~~~          ~~Phone~~~
**Attorneys for Petitioner:**
Crystal L. Cox                       P.O. Box 2027
                                     Port Townsend, WA 98368

Party name: Crystal Cox
**Attorneys for Respondents:**
Steven M. Wilker                     Tonkon Torp LLP                         (503) 802-2040
  Counsel of Record                  888 SW Fifth Avenue, Suite 1600
                                     Portland, OR 97204
                                     steven.wilker@tonkon.com

Party name: Obsidian Finance Group, LLC, et al.

Exhibit 35

No. _____

IN THE
SUPREME COURT OF THE UNITED STATES

CRYSTAL COX,
Petitioner

v.

OBSIDIAN FINANCE GROUP LLC;
Kevin D. Padrick,
Respondents

On Petition for Writ of Certiorari
To The United States Court Of Appeals
For The Ninth Circuit

PETITION FOR A WRIT OF CERTIORARI

Reverend Crystal L. Cox,
Pro Se
PO Box 2027
Port Townsend, WA, 98368
406-624-9510

---

## INTRODUCTION

Petitioner requests this court to issue a ruling that requires the Ninth Circuit to redact criminal allegations of Petitioner in a Ninth Circuit civil court ruling dated January 17th, 2014, Obsidian v. Cox, Ninth Circuit Case Number; 12-35319; D.C. No. 3:11-cv-00057- HZ.

This issue is a matter that affects all members of the public.

Ninth Circuit Judges; Judge Arthur L. Alarcón, Judge Milan D. Smith, Jr.,and Judge Andrew D. Hurwitz, stated:

". Cox apparently has a history of making similar
allegations and seeking payoffs in exchange for retraction.
See David Carr, When Truth Survives Free Speech, N.Y.

1

Times, Dec. 11, 2011, at B1. Padrick and Obsidian sent Cox
a cease-and-desist letter, but she continued posting
allegations. This defamation suit ensued."

Defendant Crystal Cox has no history of posting anything online and seeking a retraction for a payment. This is not based in fact, and has NEVER happened, as the court record clearly shows.

Cox was never "determined" by any court to have posted allegation, then sought a retraction, then continued posting and was sued. This is factually incorrect. Cox alleges the Ninth Circuit violated her constitutional rights in alleging criminal activity and has stated in error, the events leading up to her defamation suit.

Cox asks this court to rule that criminal allegations be redacted from the Obsidian v. Cox Ninth Circuit ruling dated January 17th, 2014.

Petitioner Cox understands that it is at the sole judicial discretion of this court to hear this matter. Cox prays that this court will hear this matter as these judicial actions will potentially chill speech and violate the rights of other citizen journalists, whistleblowers and anti-corruption bloggers such as Cox.

## QUESTIONS PRESENTED

### Petitioner requests this court to decide the following questions:

Does Petitioner, Defendant, Litigants in a Civil Case have a Human Right, Constitutional Right, and right under U.S. Code to be Considered Innocent until Proven Guilty?

Do Ninth Circuit Judges have the legal authority to issue an opinion on criminal allegations in a civil case in which the criminal allegation is not a matter of record in the lower court, has not been adjudicated and is not a material factor of the case?

Does Petitioner, Litigants, in a Civil Case have a legal right to due process of law, in cases where Judges RULE that Litigants, such as petitioner have committed crimes of which Petitioner was not on trial for nor was a matter of record in the lower court ?

Do Ninth Circuit Judges have to find a Defendant Guilty of a Crime, Beyond a Reasonable Doubt, or to have been Adjudicated of that crime in a U.S Court, BEFORE they rule that a litigant such as petitioner is guilty of this criminal behavior or criminal activities?

Do litigants, such as petitioner, have a Fourteenth Amendment Rights, Bill of Rights and Due Process of Law Rights that have to be adjudicated for a crime before a Ninth Circuit Judicial Panel can issue an "opinion" in a highly publicized, higher court, esteemed ruling, regarding that alleged crime?

Do Ninth Circuit Judges have a lawful right to use a New York Times article as adjudicated fact and material evidence to issue a ruling that a litigant in a civil case is guilty of criminal activity?

Is it Lawful for Ninth Circuit Judges to use gossip, hearsay and the rantings of a New York Times Journalist as adjudicated fact, and use this as factual evidence in a Ninth Circuit Ruling?

Can the Court of Appeals Prejudice a Litigant with false and defamatory language in a ruling?

Does a litigant have a right to have the language in the ruling challenged or reviewed by an independent Court, (for example, the Supreme or another Appellate Court not involved in the decision with the defamatory and legally abusive language that prejudices the rights of the litigant in rehearing) ?

Does the court have the right to defame and slander litigants and deny due process?

Do judges have the right to convict litigants of crimes in judicial rulings based on New York Times articles?

Do Judges have a right to deny due process in lower courts by issuing a ruling that convicts litigants of crimes, thereby prejudicing them with a jury of their peers, as they return to have a new trial?

Do judges involved in a slanderous, possibly criminally defamatory statement have a legal and constitutional right to rule on whether they rehear this issue of them acting inappropriately and unlawful in that very ruling?

Is it lawful and within the constitutional rights of a Defendant such as Petitioner, for a panel of judges to use a New York Times article to convict a litigant in a civil trial of a crime of which they have not been adjudicated of?

## PARTIES

The Petitioner is an Activist Litigant making a stand for the rights of all Citizen Journalists, Anti-Corruption Bloggers. Petitioner is an Anti-Corruption Blogger, and a resident of Washington State.

3

The Respondent is Obsidian Finance Group, a Portland Oregon Financial Company and Kevin D. Padrick, Bankruptcy Trustee and Oregon Attorney.

## PETITION FOR A WRIT OF CERTIORARI

Petitioner respectfully petition for a writ of certiorari to review the judgment of the United States Court of Appeals for the Ninth Federal Circuit.

## OPINIONS BELOW

Petitioner Crystal L. Cox, et al., respectfully pray that this Court grant a writ of certiorari to review the judgment and opinion of the Ninth Circuit United States Court of Appeals entered on January 17th, 2014, (9th Cir. 2014), (Appendix A) and denial of motion to rehear said ruling, (Appendix B)

The opinion of the United States district court appears at Appendix C to this petition is reported at Dckt Entry 123, "OPINION & ORDER: Defendant's motion for new trial 105 is denied. Signed on 3/27/2012 by Judge Marco A. Hernandez. See 34-page opinion & order attached. (mr) (Entered: 03/28/2012)"

On January 31, 2014, Case: 12-35238 01/31/2014; ID: 8961401 DktEntry: 48, (Appendix E) Cox filed a Petition for Rehearing asking the Ninth Circuit Judges to withhold the sentence that says;

"Cox apparently has a history of making similar allegations
and seeking payoffs in exchange for retraction.
See David Carr, When Truth Survives Free Speech ,
N.Y. Times, Dec. 11, 2011, at B1." - See Case; 12-35238,
Ninth Circuit Appeals Court, ID; 8961401, DktEntry 48."

On March 5th 2014, (Appendix B) Filed order (ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ) The panel unanimously voted to deny Crystal Cox's petition for panel rehearing. Fed. R. App. P. 35. The petition for panel rehearing and the petition for rehearing en banc are DENIED. [9003449] [12-35238, 12-35319] (BJB)

The opinion of the United States district court appears at Appendix D to the petition is reported at Dkt Entry 95, Obsidian v. Cox, DC; "OPINION: Based on the evidence presented at the time of trial, I conclude that plaintiffs are not public figures, defendant is not "media," and the statements at issue were not made on an issue of public concern. Thus, there are no First Amendment implications. Defendant's other defenses of absolute privilege, Oregon's Shield Law, Oregon's Anti-SLAPP statute, and Oregon's retraction statutes, are not applicable. See 13-page opinion

4

attached. Signed on 11/30/2011 by Judge Marco A. Hernandez. Copy of opinion mailed and emailed to defendant. (mr) (Entered: 11/30/2011)"

---

## TABLE OF CONTENTS

| | |
|---|---|
| Questions Presented | Page 2 |
| Parties | Page 3 |
| PETITION FOR A WRIT OF CERTIORARI | Page 4 |
| Opinions Below | Page 4 |
| Jurisdiction | Page 12 |
| Statutory Provisions and Regulations Involved | Page 7 |
| Statement of the Case | Page 7 |
| Conclusion | Page 13 |

## APPENDIX

**A** - January 17th, (9th Cir. 2014) Ninth Circuit Ruling Stating Extortionate Language; Obsidian v. Cox, Ninth Circuit Case Number; 12-35319; D.C. No. 3:11-cv-00057- HZ.

**B** - Denial of Motion to Rehear; On March 5th 2014, DENIED. [9003449] [12-35238, 12-35319] (BJB)

**C** - Denial of New Trial, Dckt Entry 123, "OPINION & ORDER: Defendant's motion for new trial 105 is denied; Also included Extortion, Criminal allegations by District Court Judge.

**D** - Lower Court Ruling; Dkt Entry 95, Obsidian v. Cox, DC; "OPINION

**E** - Motion to Rehear, Eugene Volokh Attorney, January 31, 2014; Ninth Circuit: 12-35238; ID: 8961401 DktEntry: 48

## TABLE OF AUTHORITIES

5

*Exhibit 35*

## Due Process of Law

Cassel, Douglass W., Jr. 2003. "Detention Without Due Process." Chicago Daily Law Bulletin 149 (March 13).

Israel, Jerold H. 2001. "Free-Standing Due Process and Criminal Procedure: the Supreme Court's Search for Interpretive Guidelines." Saint Louis University Law Journal 45 (spring).

Pennock, J. Roland, and John W. Chapman. 1977. Due Process. New York: New York University Press.

*Allgeyer v. Louisiana*, 165 U.S. 578, 17 S. Ct. 427, 41 L. Ed. 832

In gitlow v. new york, 268 U.S. 652, 45 S. Ct. 625, 69 L. Ed. 1138 (1925), the Court ruled that the liberty guarantee of the Fourteenth Amendment's Due Process Clause protects First Amendment free speech from State Action. In near v. minnesota, 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357 (1931), the Court found that Freedom of the Press was also protected from state action by the Due Process Clause, and it ruled the same with regard to freedom of religion in Cantwell v. Connecticut, 310 U.S. 296, 60 S. Ct. 900, 84 L. Ed. 1213 (1940).

*Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)

GIDEON V. WAINWRIGHT, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)

In 2002, the Court found that arbitrary actions by a trial judge in a murder case violated the due process rights of the defendant (*Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 820 [2002]).

## Criminal Procedure

Arkin, Marc M. 1992. "Rethinking the Constitutional Right to a Criminal Appeal." University of California at Los Angeles Law Review 39.

Israel, Jerold H., Yale Kamisar, and Wayne R. LaFave. 1993. Criminal Procedure and the Constitution: Leading Supreme Court Cases and Introductory Text. St. Paul, Minn.: West.

PMBR. 1993. "Criminal Procedure." Multistate Workbook. vol. 2. Multistate Legal Studies.

Sonneborn, Liz. 2004. *Miranda v. Arizona: The Rights of the Accused.* New York: Rosen.
Tomkovicz, James J. 2002. *The Right to the Assistance of Counsel: A Reference Guide to the United States Constitution.* Westport, Conn.: Greenwood Press.

## Constitutional and Statutory Provisions Involved

22 U.S. Code, Human Rights
28 U.S. Code, Human Rights

42 U.S. Code

42 U.S.C. 1983
42 U.S.C.A. § 1983

Due Process Clause of the Fourteenth Amendment.

38 U.S.C.

First Amendment of U.S Constitution

# REASONS WHY THIS WRIT SHOULD ISSUE

To establish firm guidelines for all district court, judges and appellate courts that it is not
constitutional, ethical nor lawful to render rulings that accuse litigants of criminal activity of which
they have not had due process of law in regard to.

To guarantee the rights, liberty, equality, freedom, due process rights, and free speech rights
under the U.S. Constitution for all citizens, pro se litigants, anti-corruption bloggers, citizen
journalists and whistleblowers alike.

To guarantee the First and Fourteenth Amendment rights of all.

To guarantee the rights of due process and the Bill of Rights to all.

To end extreme prejudice by local, state, and federal judges whom use their power and position
to silence, intimidate, suppress speech, bully, paint in false light, slander and defame litigants
who expose corruption in the judicial system and of whom they have extreme prejudice in
regard to.

## STATEMENT OF THE CASE

*Exhibit 35*

This case involves wrongful, non-adjudicated allegations of criminal conduct made by Ninth Circuit Judges ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ against Petitioner, Defendant Cox and clearly violating her constitutional rights, human rights, and rights to due process, as a matter of law.

ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ Stated that Petitioner Cox;

*" has a history of making similar allegations*
*and seeking payoffs in exchange for retraction."*

Which thereby leads the public at large, media and the lower court in her pending $10 Million dollar Civil Case, to believe that Cox has been under investigation by authorities and found guilty of the crime of extortion or blackmail. As it is ILLEGAL to make allegations and seek a payoff to retract those allegations.

Cox prays this Court orders the Ninth Circuit to redact the above statement.

Petitioner Cox alleges that it is not fair, ethical, equitable in rights, constitutional, nor appropriate as a matter of law and rules of procedure for Ninth Circuit judges or District Court Judges to state unrelated allegations, rumor and speculation in an esteemed higher court ruling, that is published to the world and affects the life of Petitioner forever, as well as affects all whistleblowers, citizen journalists and anti-corruption bloggers like her.

Petitioner Cox alleges that it is an abuse of power and process, and an extreme violation of her human and civil rights, for Judges to use hearsay and rumors as adjudicated fact in an esteemed, higher court process, and to seek revenge, retaliate, and use extreme prejudice against Petitioner and litigants like her by using a prestigious court ruling to paint Petitioner in false light, slander and defame Petitioner and cause her a lifetime of irreparable harm.

Petitioner alleges that it is the duty of Ninth Circuit judges to report anyone they deem a danger to the public. If ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ believe Cox to have a history of extortionate or blackmailing conduct, then it is their duty as public servants to order a criminal investigation by the proper authorities and it is NOT their duty, nor legal right to simply, flat out state, that Cox has a history of these criminal actions and thereby defame and slander Cox and put her under extreme prejudice as she heads back to the lower court Pro Se to face a $10 Million dollar civil court proceeding.

Petitioner and bloggers, whistleblowers, citizen journalists like her, face extreme prejudice in the courts, as they are oftentimes exposing judges, attorneys and people in powerful positions such as CEO's and Politicians.

8

This court ruling, essentially gives the rights to all Judges at every level of our court system, and essentially all institutional press "traditional journalists" to simply accuse litigants of crimes, activities, or unethical behavior, based on gossip and hearsay of an institutional press journalists such as Kashmir Hill of Forbes or David Carr of the New York Times, and have that be stated in a Ninth Circuit ruling as adjudicated fact.

Petitioner alleges that it violates her constitutional rights and the rights of those who engage in the same online activity as her, for Judges to essentially take "pot shots", add in gossip and hearsay into a ruling and thereby slander, defame and ruin the life of the litigant. Especially in cases such as the petitioner where she faces a retrial in a $10 million dollar civil case where she is indigent and cannot afford an attorney and this criminal accusation prejudices her lower court ruling before the trial even begins.

Petitioner alleges that allowing Ninth Circuit judges to state arbitrary allegations and accusations in authoritative higher court opinions, will potentially chill the online speech of all bloggers, whistleblowers, citizen journalists. As they will fear the same thing happening to them.

**This is a critical first amendment issue. And a critical issue of due process laws, the fourteenth amendment, civil rights and human rights.**

Petitioner alleges that she has a constitutional right to due process in the criminal justice system and that it violates her constitutional rights for higher court, esteemed judges to rule on matters of her alleged criminal activity BEFORE she has been adjudicated or under investigation by the proper courts and legal procedure in the criminal justice system.

These accusations by Ninth Circuit judges prejudice the litigants such as petitioner in the re-trial at the D.C. level and put them under extreme prejudice in all matters of their life, even things as simple as renting a home or getting a job. Those researching litigants such as petitioner find a higher court ruling, issued by esteemed judges in a powerful position of which the public at large deems to be of the utmost authority, in which accuses the litigant of criminal activities, of extortionate behavior. This is a violation of Petitioners rights of due process and constitutional rights, as she now faces extreme prejudice, hate, inequality and duress in all aspects of her life. She is deemed a criminal, when she has not had due process in the criminal justice system. This precedence now makes it so that judges everywhere can do this same thing to essentially punish, retaliate against whistleblowers, citizen journalists and anti-corruption bloggers.

Does Petitioner, Defendant, Litigants in a Civil Case have a Human Right, Constitutional Right, and right under U.S. Code to be Considered Innocent until Proven Guilty? Petitioner alleges that she has a constitutional right for it to be proven, as a matter of law, "beyond a reasonable doubt" that she is guilty of a crime, before Judges are allowed, by law, to state those allegations in a court ruling, a court opinion.

9

Beyond a reasonable doubt is the highest standard of proof that must be met in any trial. In civil litigation, the standard of proof is either proof by a preponderance of the evidence or proof by clear and convincing evidence. There was neither in the Ninth Circuit appeal of Obsidian v. Cox.

Petitioner Cox alleges that Judges must have "Clear and Convincing Proof" beyond a reasonable doubt BEFORE they are, by law allowed to state such allegations in a higher court ruling.

Cox was not on trial for crimes or civil matters involving allegations, investigations or even a cause of action regarding posting content or allegations of others online and then seeking a payoff to remove those allegations, (aKa Extortion or Blackmail). Cox was on trial for defamation, and that this was the only cause of action. There was no "seeking a payoff" to remove allegations, as a material factor of Obsidian v. Cox nor a factor in this case what so ever, therefore it was not a matter of record and cannot legally be brought into the Ninth Circuit proceeding, and certainly not, as a matter of law and constitutional rights, be stated in a Ninth Circuit court of appeals ruling, opinion.

Petitioner Cox alleges that her Due Process of Law, Fourteenth Amendment Rights, and her rights under the Bill of Rights, have been violated by Judges accusing her of criminal activity in rulings / opinions in civil cases of which these crimes have nothing to do with. Cox alleges this is retaliation for her exposing corruption that involves judges, and people with financial and political power.

Petitioner Cox alleges that she has a fundamental, constitutional guarantee that all legal proceedings will be fair and that one will be given notice of the proceedings and an opportunity to be heard before the government acts to take away one's life, liberty, or property. Yet Cox was not given notice of the crimes alleged, nor a way to present her side. Cox was not given due process, as a matter of law and constitutional rights and Cox has thus lost her life as she knew it, her liberty and has lost personal property in this matter.

The due process clause of the Fifth Amendment asserts that no person shall "be deprived of life, liberty, or property, without due process of law." This amendment restricts the powers of the federal government and applies only to actions by it. Petitioner Cox was not given due process, and was simply ruled guilty of criminal activities, with a New York Times article as material evidence in the matter and was thereby "deprived of life, liberty, or property, without due process of law."

The Due Process Clause of the Fourteenth Amendment,declares,"[N]or shall any State deprive any person of life, liberty, or property, without due process of law" (§ 1). Yet petitioner Cox was not given due process in the criminal justice system nor has Cox been adjudicated for or even under investigation for the crime of extortion, yet high court judges accused Cox of extortionate behavior in a ruling of a civil case, a defamation case, unrelated in it's material fact, evidence

10

and testimony to the crime of extortion and to of having "a history of making similar allegations and seeking payoffs in exchange for retraction.", which is essentially the felony crime of blackmail, or extortion.

The Due Process Clause of the Fourteenth Amendment has also been interpreted by the U.S. Supreme Court in the twentieth century to incorporate protections of the Bill of Rights, so that those protections apply to the states as well as to the federal government. Thus, the Due Process Clause serves as the means whereby the Bill of Rights has become binding on state governments as well as on the federal government.

The Due Process Clause of the Fourteenth Amendment is intended to protect individuals such as Petitioner from arbitrary actions by state as well as federal governments, which includes the arbitrary actions of an esteemed higher court judicial panel in accusing petition and future litigants like her, of criminal activity of which was not a material factor in her case, and was simply hearsay by a traditional journalist of the institutional press, in this case a New York Time journalist, David Carr.

Due process requires that the procedures by which laws are applied must be evenhanded, and in this case there was severe prejudice and inequality and Cox has thereby suffered harm, and wishes this court to remedy this ruling to protect future anti-corruption bloggers, citizen journalists and whistle blowers such as herself.

Petitioner Cox alleges that, under 42 U.S.C.A. § 1983, and other human rights and civil rights laws, and constitutional amendments, that the actions of these judges deprived her of "fundamental fairness" and of Civil Rights under the Due Process Clause. And now has the potential to do so to ALL future anti-corruption bloggers, citizen journalists and whistle blowers such as herself. And with this gives far reaching, unconstitutional powers to the institutional press and traditional journalists to publish gossip, hearsay and allegations and have Ninth Circuit judges and judges across the land, use these traditional journalists "opinion", "writings", "allegations" as adjudicated facts, hard and fast evidence, and sworn testimony that gives them the right to issue opinions and rulings that flat out accuse litigants such as petitioner of criminal activity of which they have not had due process of law in regard to.

The Bill of Rights contains provisions that are central to procedural due process. These protections give a person a number of rights and freedoms including the right to be told of the crime being charged; the right to cross-examine witnesses; the right to be represented by an attorney; freedom from Cruel and Unusual Punishment; and the right to demand that the state prove any charges Beyond a Reasonable Doubt. Petitioner Cox was deprived of these rights, as Judges simply portrayed to the world she was guilty of criminal acts without having due process and without being told of the crime being charged; the right to cross-examine witnesses; the right to be represented by an attorney; freedom from Cruel and Unusual Punishment; and the right to demand that the state prove any charges Beyond a Reasonable Doubt.

The Decision of the Ninth Circuit to allow statement of non-adjudicated criminal accusations to be put into a ruling in a civil case, whereby the litigant has not had due process for those allegations is Clearly Incorrect.

Ninth Circuit Judges ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ erred in stating that Cox had a history of these criminal activities and erred in stating the New York Times as their evidence of fact and material facts of law.

Petitioner Cox alleges that Ninth Circuit Judges do not have a lawful, constitutional right to issue an opinion on criminal allegations in a civil case in which the criminal allegation is not a matter of record in the lower court, has not been adjudicated and is not a material factor of the case.

Petitioner Cox alleges that she was denied a legal right to due process of law in this ruling that slandered and defamed her, and painted her in false light, thereby affecting the rest of her life.

Petitioner Cox alleges that Ninth Circuit Judges ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ did not find Cox guilty of these allegations beyond a reasonable doubt nor did they adjudicate Cox, charge Cox with these allegations nor use adjudicated facts in issuing their judicial authority (opinion), (ruling). And that it was an error to rule that Cox had a history of such criminal actions when Cox was not allowed due process and constitutional rights regarding these allegations.

Petitioner Cox alleges that Ninth Circuit Judges ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ violated her Fourteenth Amendment Rights, Bill of Rights and Due Process of Law Rights by alleging Cox committed these criminal actions of which she had not been charged by a lower court nor the criminal justice system, as a matter of law.

Petitioner Cox alleges that Ninth Circuit Judges ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ prejudiced her substantial rights, and this was not a harmless error as Cox now faces extreme hate, prejudice, slander and defamation and has a other judicial proceedings that are now prejudiced against her.

If  Ninth Circuit Judges ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ believed Cox to have committed theses Criminal acts, they SHOULD go through due process of law. Judges are NOT above the law.

## JURISDICTION

The date on which the U.S. Court of Appeals decided my case was January 17th, 2014 and da timely petition for rehearing was denied by the U.S. Court of Appeals on On March 5th 2014.

The jurisdiction of this Court is invoked under 28 U. S. C. § 1254(1)

# CONCLUSION

I Pray that this esteemed panel, this court, send a clear message to the Ninth Circuit, and essentially all Appellate Judges and all judges across our court system, that it is not ok, not ethical, not constitutional nor lawful to ad lib, make criminal allegations, introduce new case information into the appeal process, slander and defame litigants, and abuse the power of their process and esteemed role to retaliate against whistleblowers, citizen journalists, and anti-corruption bloggers in every town in the United States and essential the world.

The Obsidian v. Cox, Ninth Circuit ruling is known well, worldwide and is the most prominent case to date of a blogger making a court rule on whether a blogger has rights equal to a journalist when it comes to the First Amendment, Shield Laws, Retraction Laws and Free Speech Rights. This is a massive human rights and civil rights issue, as now all who expose corruption and break news, report on what is really happening in small towns, big cities and essential everywhere, have the same rights in the courtroom as does traditional journalists and the institutional press aKa big media.

Therefore it is imperative that this ruling does not be tainted with giving those same traditional journalists of the institutional press, super powers to have that same blogger alienated, outcast, painted in false light, prejudiced in other court proceedings, and have the world at large believe them to be a criminal and therefore not taken serious that in which they are exposing or reporting on.

This ruling that gave equality, seemed to have took it away in the very same ruling.

Petition Cox has NEVER, not even once in her life, posted anything online with the intention of seeking a payment for a retraction. Cox has NEVER asked for money to remove anything she has posted online, and yet Ninth Circuit Judges ARTHUR L. ALARCON, MILAN D. SMITH, JR. and ANDREW D. HURWITZ are claiming, in a Ninth Circuit ruling that Cox has a "History" of doing such actions, seriously criminal, unconstitutional and unethical action. As if Cox has a pattern and history of illegal, unethical behavior, of which there is NO History or Pattern. If these judges are allowed to put these unsubstantiated, unadjudicated, extremely biased and prejudice criminal allegations into a ruling in a civil case, then this will chill the speech of those in the future wishing to, wanting, or trying to expose corruption in their area of expertise, town, or state.

13

In Truth Petitioner Cox has dedicated her life, lost everything and been under extreme threats, retaliation, and extreme prejudice for nearly a decade, all because she did the right thing and stood up for others, for strangers and used her internet marketing skills to give voice to the victims of corrupt detectives, county commissioners, judges, cops, politicians, real estate companies, banks, finance companies, and victims of human trafficking, pedophilia, rape, and severe abuse.

Cox was RULED guilty of a crime of which she was not on trial for, was not adjudicated for and was not under investigation for. A crime that was NOT a material factor in Obsidian Finance Group v. Crystal Cox. It is not legal, due process, nor constitutional for these judges to have stated these false, unadjudicated allegations.

Petitioner respectfully request that the Ninth Circuit Court amend its opinion to withhold the sentence that now says, Cox apparently has a history of making similar allegations and seeking payoffs in exchange for retraction. See David Carr, When Truth Survives Free Speech , N.Y. Times, Dec. 11, 2011, at B1. A judicial assertion of misconduct by a named person, even a judicial assertion modified with the word "apparently," could be based on the record in a case, or on authoritative findings by another court. But it ought not be  based on a newspaper column, which was written without the benefit of cross-examination, sworn testimony, or the other safeguards of the judicial  process. The claims in the columnist's assertion are neither facts found by a factfinder nor facts subject to judicial notice under Fed. R. Evid. 201.

Adding this statement to the Obsidian v. Cox ruling dated January 17th, 2014 is Legally Flawed and Has Far-Reaching Consequences, and is thereby Warranting Review in This Case.

This issue affects all who are reporting news, all citizen journalists, all victims of corruption at every level and all whistleblowers. If a Ninth Circuit panel can rule that any individual has committed crimes without that person having been investigated or given due process for those allegations, and use a New York Times article as evidence of those crimes, then this potentially affects every citizen in the United States and is a very important issue for all lawmakers, citizens, and the judicial process as a whole.

The Court should grant the petition.

Respectfully submitted,

Reverend Crystal L. Cox,

14

PETITIONER, Crystal L. Cox, Pro Se

VS.

Obsidian Finance Group

PROOF OF SERVICE

I, Crystal L. Cox, do swear or declare that on this date, April 8th, 2014, as required by Supreme Court Rule 29 I have served the enclosed MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS and PETITION FOR A WRIT OF CERTIORARI on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents in the United States mail properly addressed to each of them and with first-class postage prepaid, or by delivery to a third-party commercial carrier for delivery within 3 calendar days.

The names and addresses of those served are as follows:

Clerk of the Supreme Court
Supreme Court of the United States
1 First Street, N.E.
Washington, D.C. 20543-0001

AND

eMailed to Opposing Counsel at
david.aman@tonkon.com
robyn.aoyagi@tonkon.com
steven.wilker@tonkon.com

I declare under penalty of perjury that the foregoing is true and correct.
Executed on April 8th, 2014