**RANDAZZA LEGAL GROUP, PLLC**
Ronald D. Green (NV Bar No. 7360)
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

Attorney for Judgment Creditor

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11<br><br>Adv. No. 16-1111-abl |
| MARC JOHN RANDAZZA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CRYSTAL L. COX, an individual,<br><br>Defendant. | **MOTION FOR ORDER PURSUANT TO NRS 21.320**<br><br>Date:   April 19, 2022<br>Time:  10:00 a.m. |

1.      Plaintiff, Marc John Randazza, as Judgment Creditor ("Mr. Randazza" or "Plaintiff"), hereby submits his motion (the "Motion") against Defendant and Judgment Debtor, Crystal L. Cox ("Ms. Cox"), seeking an Order pursuant to NRS 21.320 transferring certain domain names and websites owned by Ms. Cox to Mr. Randazza, to be applied toward the satisfaction of the judgment against her in this matter. This Motion is made and based on the points and authorities herein, the *Declaration of Marc John Randazza* (the "Randazza Decl.") previously filed in this action at Adv. ECF No. 28, and the *Declaration of Ronald D. Green*, *Jr.* (the "Green Decl.") all filed in support of this Motion, the dockets in this adversary proceeding (the "Adversary Proceeding") and Mr. Randazza's underlying bankruptcy case, the docket in the related adversary

proceeding involving the same parties, being Adv. No. 07-1005, and any arguments of counsel made at the time of any hearing on this Motion.

2.     This Court awarded Mr. Randazza judgment against Ms. Cox in the amount of $452,740.59. Although the Court issued a Writ of Execution and Mr. Randazza attempted to take discovery in furtherance thereof, Mr. Randazza has been unable to identify any tangible property owned by Ms. Cox because she has refused to respond to the propounded discovery requests. However, Mr. Randazza is aware of numerous websites and domain names owned by Ms. Cox, several of which are currently controlled by his law firm, Randazza Legal Group, PLLC, pursuant to a preliminary injunction issued by the U.S. District Court for the District of Nevada. These intangible assets cannot be levied and sold through the Writ of Execution, but they may be transferred to Mr. Randazza and applied toward partial satisfaction of the judgment under NRS 21.320.

**I. JURISDICTION AND VENUE**

3.     On August 28, 2015 (the "Petition Date"), Mr. Randazza filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the above-captioned court, thereby commencing his bankruptcy case (the "Chapter 11 Case"). Mr. Randazza was authorized to operate his businesses and manage his property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees were appointed in the Chapter 11 Case, and no request was made for the appointment of a trustee or examiner.

4.     The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C), (I) and (O). Pursuant to Local Rule 7008.1, Mr. Randazza consents to the entry of final orders and judgments by the bankruptcy judge in this matter. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

## II. STATEMENT OF FACTS

**A.     Factual Background**

5.     In or about December 2011, Ms. Cox registered <marcrandazza.com> and attempted to extort money from him by couching her demand for payment in the form of offering "reputation management" services. (Adv. ECF No. 28 at ¶ 12; Adv. ECF No. 28-1 at Ex. 10).

6.     Mr. Randazza declined to submit to Ms. Cox's extortion. On March 12, 2012, Ms. Cox sought to increase the extortionate pressure by attacking Mr. Randazza's then-wife by registering <jenniferrandazza.com>. (Adv. ECF No. 28 at ¶ 13; Adv. ECF No. 28-1 at Ex. 11). When that did not have the desired effect, Ms. Cox then went after Mr. Randazza's then **three-year-old daughter**, N.R., by registering a domain name that was only the three-year-old girl's name. (Id. Ex. 12). Ms. Cox's tactic of going after Mr. Randazza's minor daughter was also reported in an article by Kashmir Hill entitled "Ugly New Reputation-Smearing Tactic: Going After a Toddler's Internet Footprint," which Forbes printed on April 2, 2012. (*See* Adv. ECF No. 28-1 at Ex. 13.)

7.     On September 19, 2012, Ms. Cox offered to sell the Plaintiff's domain name for $5,000,000 with the title of her post taunting "Here Kitty Kitty..." (Adv. ECF No. 28 at ¶ 17; Adv. ECF No. 28-2 at Ex. 24; September 19, 2012 blog post, attached as **Exhibit 1**);[1] *Randazza v. Cox*, No. 2:12-cv-02040-GMN-PAL, 2012 U.S. Dist. LEXIS 178048, at *4 (D. Nev. Dec. 14, 2012). Such a valuation is preposterous and lacks any reasonable relationship to the actual value of the domain name.

8.     Prior to this, Ms. Cox made a video, published on the video sharing web site YouTube, in which she clearly stated that her reason for this campaign was to keep Mr. Randazza from testifying in a federal case. (Transcript of April 3, 2012 YouTube video posted by Crystal Cox, "Marc Randazza Kashmir Hill Forbes Attacks Blogger Crystal Cox. Crystal Cox Extortion Allegations," contained in Declaration of Alex J. Shepard ["Shepard Decl."], attached as **Exhibit 2**

---

[1] Available at: http://attorneyviolatedmylegalrights.blogspot.com/2012/09/marc-randazza-domain-name-for-sale-here.html (last accessed Dec. 10, 2020).

at ¶¶ 4-5.) She additionally published a blog post on April 13, 2012 in which she admitted that she registered domain names including Mr. Randazza's name for the purpose of intimidating Mr. Randazza to keep him from giving testimony in the same case. (April 13, 2012 blog post, "Crystal Cox, Pro Se Blogger Claims that marc Randazza Extorted Her, Set Her Up, Put her in False Light, and Violated her Rights of Due Process and Law," attached as **Exhibit 3**, at 9-10 of 11.)[2]

9. On November 19, 2012, Ms. Cox threatened that the campaign would expand to Mr. Randazza's sister. (Adv. ECF No. 28 at ¶ 16; Adv. ECF No. 28-2 at Ex. 23).

10. Ms. Cox obsessively registered dozens of domain names containing the Randazza family's names or surnames to extort and harass them and capitalize upon and damage the goodwill that Mr. Randazza has in his name. Specifically, Ms. Cox registered more than thirty infringing domain names (collectively, the "Infringing Domain Names"), some of which were listed under a proxy, Eliot Bernstein ("Mr. Bernstein"). (Adv. ECF No. 28 at ¶ 19; Adv. ECF No. 28-2 at Exs. 25-27).

B. **Relevant Procedural History**

11. On November 28, 2012, Mr. Randazza, as well as his then-wife, on behalf of themselves and their minor daughter (collectively, the "Randazzas"), filed a *Complaint* (the "2040 Complaint") against Ms. Cox and Mr. Bernstein in the United States District Court for the District of Nevada (the "District Court"), thereby commencing Case No. 2:12-cv-2040-JAD-PAL (the "2040 Case"). (Adv. ECF No. 27-1 at Exs. 9 and 10; ECF No. 1).[3] The 2040 Complaint arose out of Ms. Cox's registration and use of the above-referenced domain names ("Infringing Domain Names"). The Randazzas' 2040 Complaint alleged the following claims for relief: (a) violation of individual cyberpiracy protections - 15 U.S.C. § 8131; (b) cybersquatting - 15 U.S.C. § 1125(d); (c) right of publicity - NRS 597.810; (d) common law right of publicity; (e) common law right of intrusion upon seclusion; and (f) civil conspiracy. (Adv. ECF No. 28 at ¶ 31).

---

[2] Available at: http://crystalcoxcorruptionreport.blogspot.com/2012_04_01_archive.html (last accessed Dec. 10, 2020).
[3] Unless otherwise specifically noted, all references to an ECF No. shall refer to the 2040 Case.

12. Shortly after commencing the 2040 Case, the Randazzas filed a motion for temporary restraining order, which sought to freeze the Infringing Domain Names pending the outcome of the 2040 Case. (ECF Nos. 2 and 4). After the parties briefed this matter (ECF Nos. 8 and 12), the District Court issued a temporary restraining order in the Randazzas' favor. (Adv. ECF No. 27-2 at Ex. 11; ECF No. 14). Specifically, the Court found that Ms. Cox and Mr. Bernstein "**have embarked on a campaign of cyber-extortion**." (ECF No. 14 at p. 8; Adv. ECF No. 28 at ¶ 32). Therefore, there is a Federal court finding, which is the law of the case, that Ms. Cox and her proxy engaged in extortion.

13. The parties filed additional pleadings in furtherance of a preliminary injunction. (ECF Nos. 28, 29, and 30). Following a hearing, Judge Navarro issued a preliminary injunction, thereby transferring the Infringing Domain Names to Mr. Randazza's control upon the posting of a bond, which he did post. (Adv. ECF No. 27-2 at Ex. 12; ECF Nos. 35 and 41). This preliminary injunction remains in place, which Ms. Cox continued to violate. (Adv. ECF No. 28 at ¶ 33).

14. Ms. Cox raised certain counterclaims in the 2040 Case. In the course of pre-petition litigation, Ms. Cox's only counterclaims remaining in the 2040 Case against Mr. Randazza were for legal malpractice, as pled in her February 21, 2014 counterclaim (ECF No. 164), and for defamation, but as modified and re-drafted by the District Court's May 21, 2014 Order (ECF No. 208). Ms. Cox's remaining counterclaims are referred to herein as the "2040 Counterclaim." (Adv. ECF No. 28 at ¶ 53).

15. Ms. Cox was served with proper notice of commencement of Mr. Randazza's Chapter 11 Case at her Port Townsend address. (BK ECF No. 10; Adv. ECF No. 31 at ¶ 3).

16. On September 30, 2015, Ms. Cox, acting *pro se*, filed what she called an *Objection to Discharge of Debt* (the "Discharge Objection") (BK ECF No. 29) in Mr. Randazza's Chapter 11 Case; however, she did not file it as a complaint and thus it did not commence a separate adversary proceeding, nor did she seek, obtain, or serve a summons upon Mr. Randazza to answer the Discharge Objection. Instead, Ms. Cox's Discharge Objection was a fugitive, improper filing that she has never properly noticed or served on Mr. Randazza. (Adv. ECF No. 31 at ¶ 4).

17. Also on September 9, 2015, Ms. Cox filed a *Proof of Claim* (the "Proof of Claim"), being claim No. 4-1, in Mr. Randazza's Chapter 11 Case in the amount of $10,000,000.00; however, she did not attach any supporting documentation to her Proof of Claim or any calculation as to how she arrived at her claim figure. Instead, the only indication of the alleged basis for her claim(s) was a general reference to the 2040 Case (as previously defined), and without any detail. (Adv. ECF No. 31 at ¶ 5).

18. Ms. Cox's Discharge Objection did not list any address for which to contact her, but her Proof of Claim lists the same pre-petition Port Townsend P.O. Box and the same email address of savvybroker@yahoo.com she had used in the 2040 case. Ms. Cox has never provided any notice of change of address with the Court in Mr. Randazza's Chapter 11 Case. (Adv. ECF No. 31 at ¶ 6).

19. On October 5, 2016, Mr. Randazza instituted this Adversary Proceeding by filing his *Complaint* (Adv. ECF No. 1), which he thereafter amended as of right on October 16, 2016 by his FAC. The FAC included an objection to Ms. Cox's Proof of Claim, a request that the Court issue a declaration dismissing her Discharge Objection, and claims against Ms. Cox for abuse of process and civil extortion. (Adv. ECF No. 31 at ¶ 7).

20. On October 17, 2016, Mr. Randazza timely requested issuance of a summons (Adv. ECF No. 7), which was issued on October 18, 2016 (Adv. ECF No. 8). Mr. Randazza served the summons on Ms. Cox with a copy of the FAC on October 19, 2016, via first class mail (Adv. ECF No. 9), at the Port Townsend P.O. Box address listed in her Proof of Claim, as well as via substitute service to her known e-mail address <savvybroker@yahoo.com> listed in her Proof of Claim, and the other email address she used in the pre-petition litigation <crystal@crystalcox.com>. ***Notably, Ms. Cox conversed with Plaintiff's then-counsel regarding this Adversary Proceeding and the FAC via this email account.*** (Adv. ECF No. 18, Ex. 1; Adv. ECF No. 31 at ¶ 8).

21. Ms. Cox failed to answer or otherwise plead to the FAC within 30 days of service, as required pursuant to Rule 12/Bankruptcy Rule 7012. Indeed, Ms. Cox failed to ever answer or otherwise plead in this Adversary Proceeding, and she never appeared at any of the many hearings

1  set by the Court. (Adv. ECF No. 31 at ¶ 10).

2  22.  On October 19, 2016, Plaintiff filed a motion to refer the entire 2040 Case to this Court (ECF No. 306), which the District Court granted in part on December 2, 2016, by referring only Ms. Cox's 2040 Counterclaim to this Court, not the entire 2040 Case, thus leaving Mr. Randazza's claims against Mr. Cox still pending before the District Court. (ECF No. 307). Ms. Cox's referred 2040 Counterclaim was thereafter docketed in this Court as Adversary Case No. 17-01005, which is a separate adversary proceeding from this Adversary Proceeding. (Adv. ECF No. 31 at ¶ 11).

23.  On February 14, 2017, the Court held a scheduling conference in this Adversary Proceeding, and Ms. Cox failed to appear (Adv. ECF No. 11). The Court continued the matter for status to May 9, 2017. Ms. Cox was properly noticed on the scheduling conference via the summons served on her, as well as via an email from Plaintiff's counsel. (Adv. ECF No. 31 at ¶ 12, Ex. 2).

24.  On May 9, 2017, the Court held another status hearing in this Adversary Proceeding, and Ms. Cox again failed to appear (Adv. ECF No. 16). The Court again continued the matter for status to June 12, 2017. (Adv. ECF No. 31 at ¶ 13).

25.  On May 9, 2017, the Plaintiff filed and served a *Three Day Notice of Intent to Take Default* (Adv. ECF No. 15) on Ms. Cox, which, just like the FAC, was served via first class mail at the address listed on her Proof of Claim, and also via substitute service at her email addresses. (Adv. ECF No. 31 at ¶ 14, Ex. 3).

26.  On June 12, 2017, the Court held a third hearing in this Adversary Proceeding, and Ms. Cox again failed to appear (Adv. ECF No. 19). The Court again continued the matter for status to September 12, 2017. Although under no legal obligation to do so, Plaintiff's counsel sent an email to Ms. Cox advising her of the continuance. (Adv. ECF No. 31 at ¶ 15, Ex. 4).

27.  On June 12, 2017, Plaintiff filed a *Request for Default* (Adv. ECF No. 17), which was supported by an *Affidavit of Matthew C. Zirzow* (Adv. ECF No. 18). Attached to this affidavit was an email dialogue Mr. Randazza's counsel had with Ms. Cox, which confirms her awareness

and receipt of the FAC, scheduling issues in the Adversary Case, and Mr. Randazza's seeking a default against her for her failure to timely answer or otherwise plead to the FAC. (Adv. ECF No. 31 at ¶ 16).

28.   On June 13, 2017, the Clerk made an *Entry of Default* against Ms. Cox (Adv. ECF No. 20), and Plaintiff gave *Notice of Entry of Default* to Ms. Cox (Adv. ECF No. 21) that same day. These were also served on Ms. Cox as previously referenced (Adv. ECF No. 22), as well as by email. (Adv. ECF No. 31 at ¶ 17, Ex. 5).

29.   On September 8, 2017, and, again, although under no legal obligation to do so, Plaintiff's counsel advised Ms. Cox of the next status hearing via email, and also that he would be proceeding with seeking a default judgment against her. (Adv. ECF No. 31 at ¶ 18, Ex. 6).

30.   On September 12, 2017, the Court held a fourth hearing in this Adversary Proceeding, and Ms. Cox again failed to appear. The Court again continued the matter for further status to November 14, 2017 (Adv. ECF No. 23). (Adv. ECF No. 31 at ¶ 19). This was later continued to November 28, 2017, which was then taken off calendar. (Adv. ECF Nos. 38 & 43).

31.   On October 20, 2017, Plaintiff filed a Motion for Default Judgment against Defendant, with accompanying documentation. (Adv. ECF Nos. 26-31). Ms. Cox filed an objection thereto on November 2, 2017. (Adv. ECF No. 36). Plaintiff thereupon filed a reply memorandum and supporting declaration on November 21, 2017. (Adv. ECF Nos. 40-41).

32.   On December 6, 2017, this Court issued an Order Granting Plaintiff's Motion for Judgment by Default Entered by the Court, awarding Plaintiff compensatory and punitive damages totaling $452,740.59. (Adv. ECF No. 44).  Judgment was issued thereon in that amount. (Adv. ECF No. 45). Defendant's appeal thereof was dismissed on April 26, 2018 for lack of prosecution. (Adv. ECF No. 77). On April 30, 2018, this Court issued an order denying and dismissing Defendant's motions to reconsider and motion to set aside default. (Adv. ECF No. 74).

33.   After having patiently waited for Defendant to make an effort to satisfy the judgment, on June 24, 2019, Plaintiff sought the issuance of a writ of execution (Adv. ECF No. 82), which was issued on August 2, 2019 (Adv. ECF No. 85).

34.     In furtherance thereof, pursuant to Fed. R. Bankr. P. 7069 & Fed. R. Civ. P. 69(b), on September 19, 2019, Plaintiff served written discovery requests upon Defendant to seek to identify assets against which he could execute. (*See* Interrogatories to Judgment Debtor, attached as **Exhibit 4**; Request for Production of Documents to Judgment Debtor, attached as **Exhibit 5**.) Such was served upon all known addresses, physical and electronic, used by Defendant during this litigation, during other litigation, and as Plaintiff could otherwise discover.

35.     To date, Defendant has failed to answer these discovery requests. (*See* Declaration of Ronald D. Green ["Green Decl."], attached as **Exhibit 6**, at ¶ 5.)

**C.    Ms. Cox's Digital Assets**

36.     Although Defendant has a broad digital footprint, Plaintiff is not aware of the location or status of any tangible assets owned by her. (*See* Green Decl. at ¶ 6.)

37.     Ms. Cox, in a Facebook post dated December 25, 2017, identified a PayPal account owned by her with the associated email address of <BBGoddessChurch@gmail.com>. The current amount therein is unknown, but, based on her pleas for donations, is believed to be negligible. (*See* Green Decl. at ¶ 7; December 25, 2017 Facebook post, attached as **Exhibit 7**.)[4]

38.     As noted above, in the course of the 2040 Case, Plaintiff obtained a preliminary injunction transferring certain domain names and blogs owned by Defendant to him. These were controlled on her behalf by GoDaddy and Google. (*See* Green Decl. at ¶ 8.)

39.     That preliminary injunction released to Plaintiff's full control the domain names <marcjrandazza.com>, <marcjohnrandazza.com>, <marcrandazza.com>, <marcrandazza.mobi>, <marcrandazza.info>, and <marcrandazza.biz> ("collectively "Released Domains"). (*See* ECF No. 41 at p. 12.) Randazza had previously been awarded these domain names in a WIPO Arbitration. *See Marc J. Randazza v. Reverend Crystal Cox, Eliot Bernstein*, WIPO Case No. D2012-1525 (Nov. 30, 2012).

40.     The preliminary injunction also transferred to Plaintiff the domain names

---

[4]   Available at: https://www.facebook.com/CrystalCoxCaseFreeSpeechRightsForBloggers/posts/1984020618281291 (last accessed Apr. 16, 2020).

1  <marcrandazza.me>, <fuckmarcrandazza.com>, <marcrandazzasucks.com>,
2  <marcrandazzaisalyingasshole.com>, <marcrandazza.biz>, <marcrandazzaparody.com>,
3  <exposemarcrandazza.com>, <randazzalegalgroupsucks.com>, <trollmarcrandazza.com>,
4  <hypocritemarcrandazza.com>, <crystalcoxmarcrandazza.com>,
5  <marcjohnrandazza.blogspot.com>, <randazzalegalgroup.blogspot.com>,
6  <marcrandazzaviolatedmylegalrights.blogspot.com>, <markrandazza.blogspot.com>,
7  <marcrandazza.blogspot.com>, <jenniferrandazza.blogspot.com>,
8  <marcrandazzafreespeech.blogspot.com>, <marcrandazzaegomaniac.blogspot.com>,
9  <marcjrandazza-lawyer.blogspot.com>, <marc-randazza.blogspot.com>,
10 <marcrandazzawomensrights.blogspot.com>, <marcrandazza-asshole.blogspot.com>,
11 <marcrandazzatips.blogspot.com>, <marcrandazzaabovethelaw.blogspot.com>,
12 <marcrandazzaliedaboutcrystalcox.blogspot.com>, and <janellerandazza.blogspot.com>
13 (collectively "Transferred Domains"). (*See id*. at p. 12-13.)

14    41.    Plaintiff inquired of both GoDaddy and Google as to levy of Defendant's remaining interests in those domain names and blogs previously seized and her interests in all other domain names and blogs operated by her. (*See* Green Decl. at ¶ 11.)

17    42.    GoDaddy indicated it "will comply with any Order issued by a court of competent jurisdiction regarding the final disposition of the domain name or website at issue." (*See* email from Kelly R dated September 19, 2019, attached as **Exhibit 8**; GoDaddy Subpoena Policy, attached as **Exhibit 9**.)[5]

21    43.    Google has also indicated that it would require an order directing Google to transfer account ownership. (*See* email from Ryan Anderson dated September 24, 2019, attached as **Exhibit 10**.)

24    44.    Aside from the above domain names, Mr. Randazza is aware of the following additional domains registered by Ms. Cox: <outlesbian.com>. Green Decl. at ¶ 14.

---

[5] Available at: https://www.godaddy.com/legal/agreements/subpoena-policy (last accessed Apr. 16, 2020).

45. Aside from the above BlogSpot domains, Mr. Randazza is aware of the following additional domains registered by Ms. Cox: <metaphysicalconsultant.blogspot.com>; <spiritualmentoronline.blogspot.com>; <energyhealingremote.blogspot.com>; <porttownsendusa.blogspot.com>; <outporttownsend.blogspot.com>; <crystalcoxrealestate.blogspot.com>; and <porttownsendlisting.blogspot.com>. Green Decl. at ¶ 15.

46. Ms. Cox is also in possession of at least four accounts on the video streaming web site YouTube, found at:

    i. https://www.youtube.com/user/TheCrystalWizard/videos;
    ii. https://www.youtube.com/channel/UCw5nzn4a2zODJ7wMmUFzqmA;
    iii. https://www.youtube.com/channel/UC62wjwkPWPm9i4aBWOpRlRw; and
    iv. https://www.youtube.com/channel/UC2pQXHGhVXx8ogMuToqoAgg.

Green Decl. at ¶ 16.

47. Permanent transfer of these assets would not compensate Mr. Randazza much financially, but since their only use by Cox was in order to engage in extortion and the crime of witness intimidation, they are not of much value to Ms. Cox. However, their final transfer is of value to Mr. Randazza, as it would put an end to at least part of the extortion and witness intimidation in which Cox engaged, and thus the fact that they will satisfy some of the financial judgment against her will be of great value.

### III. LEGAL AUTHORITY

48. Defendant has no known tangible assets to levy and sell to satisfy the judgment.

49. Fed. R. Bankr. P. 7069/Fed. R. Civ. P. 69(a)(1) sets a general proposition that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise." Thus, Plaintiff seeks this Court's intervention to permit him to satisfy the judgment, at least in part, through Defendant's intangible, digital assets, through orders that Google and GoDaddy insist upon.

50. Similarly, Fed. R. Bankr. P. 7069/Fed. R. Civ. P. 69(a)(1) states that "[t]he

procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

51. Under Nevada law:

> The judge or master may order any property of the judgment debtor not exempt from execution, in the hands of such debtor or any other person, or due to the judgment debtor, to be applied toward the satisfaction of the judgment.

NRS 21.320.

52. The U.S. Court of Appeals for the Ninth Circuit has approved the use of this provision of Nevada law, finding that "Nevada Revised Statute § 21.320 provides that a judge may order property of a judgment debtor applied to the satisfaction of a judgment." *Quiroz v. Dickerson*, 714 F. App'x 646, 648 (9th Cir. 2017) citing *Greene v. Eighth Jud. Dist. Ct. of Nev.*, 115 Nev. 391 (1999).

53. NRS 21.320 permits the judicial assignment of intangible assets. *See, e.g., Gallegos v. Malco Enters. of Nev.*, 127 Nev. 579, 582 (2011) (allowing use of NRS 21.320 order to obtain judicial assignment of a right of action).

54. To the extent Ms. Cox has any residual interest in the Released Domains, Mr. Randazza is entitled to an assignment of that interest in satisfaction of the judgment.

55. Similarly, as the Transferred Domains were merely transferred to Mr. Randazza's control, if the preliminary injunction is not converted in the 2040 Case to a permanent injunction and is dissolved, they would likely revert to the control of Ms. Cox. Thus, Mr. Randazza may be assigned Ms. Cox's interest in those Transferred Domains in satisfaction of the judgment.

56. In the preliminary injunction in the 2040 case, a value of $100 was placed on each such domain, and such would be an appropriate value here, reducing the outstanding judgment amount accordingly. (*See* ECF No. 41 at p. 13.)

57. Plaintiff has independently researched the domain names subject to this Motion and concluded that certain domain names may be valued in excess of $100. *See* Declaration of Trey A. Rothell, attached as **Exhibit 11**, at ¶ 7. A spreadsheet showing the valuations for each respective

domain name or other property is attached hereto as **Exhibit 12**. For the purposes of valuing each domain name or intangible property, the value proposed by Plaintiff is the greater of $100.00 or the appraised value of the domain name.

58. Plaintiff is also aware that Defendant owns or controls the following domains: <adamsteinbaugh.blogspot.com>, <attorneyviolatedmylegalrights.blogspot.com>, <crystalcoxclaimsagainstmarcrandazza.blogspot.com>, <crystalcoxmedia.blogspot.com>, <crystalcoxvmarcrandazza.blogspot.com>, <crystalcoxsueslyingattorney.blogspot.com>, <corruptlawfirms.blogspot.com>, <districtofnevada2-13-cv-00297-jcm-njk.blogspot.com>, <stateofnevadacase212-cv-02040-gmn-pal.blogspot.com>, <ethiccomplaint.wordpress.com>, <kennethpwhite.blogspot.com>, <marcrandazzabankruptcy.blogspot.com>, <fraudonthecourts.blogspot.com>, <freespeechsuppression.blogspot.com>, <investigativeblogger.blogspot.com>, <crystalcoxcorruptionblogger.wordpress.com>, <rabidevil-lawyer.blogspot.com>, <unconstitutionalattorney.blogspot.com>, <unethicalscumattorney.blogspot.com>, <marcrandazzavictims.blogspot.com>, <marcrandazzalied.blogspot.com>, <lyingattorneyparodyblog.blogspot.com>, <randazzalegalgroupies.blogspot.com>, <crystalcoxreport.blogspot.com>, <investigativeblogger.blogspot.com>, <ninthcircuitcrystalcoxappeal.blogspot.com>, <crystalcox.com>, <exposepetermichaelson.blogspot.com>, <obsidianfinancesucks.com>, <coxvrandazza.blogspot.com>, <richardwalje.blogspot.com>, <mattzirzowreport.blogspot.com>, <anti-corruptionnewsonline.blogspot.com>, <unconstitutionaltro.blogspot.com>, <corruptionbloggers.blogspot.com>, <josephrakofsky.blogspot.com>, <philliphumm.blogspot.com>, <crystalcox.blogspot.com>, <chillingeffectlawsuit.blogspot.com>, <petersivere.blogspot.com>, <judicialhellhole.blogspot.com>, <jeffreybewkes.blogspot.com>, <ceopaulotellini.blogspot.com>, <reliancechurch.com>, <outlesbian.com>, <metaphysicalconsultant.blogspot.com>, <spiritualmentoronline.blogspot.com>, <energyhealingremote.blogspot.com>, <porttownsendusa.blogspot.com>,

1  <outporttownsend.blogspot.com>, <crystalcoxrealestate.blogspot.com>, and
2  <porttownsendlisting.blogspot.com> (collectively "Cox Domains").

3  59. This is a total of 52 domains, which should be valued at less than $100 each, since
4  the ones at blogspot.com are free and the other four are subject to a $20.00 registration fee.
5  However, in the interest of being as generous as possible and adhering to the finding by the district
6  court, Mr. Randazza is prepared to value each domain at the greater of $100.00 or the appraised
7  value of the domain name.

8  60. Aside from her domain names, Ms. Cox also possesses at least four accounts on the
9  video streaming website YouTube, found at:

10   i. https://www.youtube.com/user/TheCrystalWizard/videos;
11   ii. https://www.youtube.com/channel/UCw5nzn4a2zODJ7wMmUFzqmA;
12   iii. https://www.youtube.com/channel/UC62wjwkPWPm9i4aBWOpRlRw; and
13   iv. https://www.youtube.com/channel/UC2pQXHGhVXx8ogMuToqoAgg.

14  61. Similar to the Cox Domains, each of these YouTube accounts should be valued at
15  $100, and thus satisfy an additional indebtedness of $400.

16  62. Accordingly, the total value of all property sought herein subject to satisfying the
17  judgment is $17,178.00. *See* **Exhibit 12**.

18  63. Although some of the Cox Domains relate to the dispute with Ms. Cox, Plaintiff is
19  entitled to execute judgment upon any non-exempt property owned by her—bank accounts,
20  vehicles, real estate, jewelry, etc. These domains and accounts have a value subject to be applied
21  to Mr. Randazza's judgment. NRS 21.320 authorizes this Court to order Google and GoDaddy to
22  transfer them to Mr. Randazza.

23  64. In addition, Ms. Cox, in a Facebook post appearing at
24  https://www.facebook.com/CrystalCoxCaseFreeSpeechRightsForBloggers/posts/1984020618281
25  291, identified a PayPal account owned by her with the associated email address of
26  BBGoddessChurch@Gmail.com. The funds in that account, if any, should be applied toward
27  satisfaction of the judgment as well.

65. Non-tangible digital assets can be liquidated and ordered sold by a bankruptcy court. *See, e.g., In re Don Karl Juravin,* Case No. 6:18-bk-06821-KSJ (Bankr. M.D. Fla. Sept. 2, 2020) (authorizing Chapter 7 Trustee to sell bankruptcy estate's interest in debtor's pre-petition websites, blogs, and social media accounts). In *In re CTLI, LLC*, 528 B.R. 359, 373-77 (Bankr. S.D. Tex. 2015), the bankruptcy court deemed social media accounts to be part of a business's "goodwill" and subject to transfer. Social media assets were also part of the sale order in *In re Borders Grp.*, Inc., No. 11-10614 (MG), 2011 Bankr. LEXIS 4606, at *38 (Bankr. S.D.N.Y. Sep. 27, 2011) "to the extent owned and transferable". Related, in *Righthaven v. Hoehn*, Case No. 2:11-cv-00050 (D. Nev. Mar. 13, 2012), the prevailing defendant successfully obtained an order transferring plaintiff's putative interest in certain copyrights to a receiver. Though Righthaven argued that it had no copyright that could be transferred, the court transferred whatever theoretical interest Righthaven had.

66. Thus, this Court can order the digital assets to be sold.

## IV. CONCLUSION

67. Since the foregoing domain names, YouTube accounts, and PayPal accounts are the only known assets of Ms. Cox that can possibly satisfy any part of the judgment, this Court may order them transferred to Mr. Randazza, reducing the outstanding judgment amount accordingly.

Dated: March 24, 2022.                     Respectfully submitted,

/s/ Ronald D. Green
Ronald D. Green (NV. Bar No. 7360)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
<ecf@randazza.com>

Attorney for Judgment Creditor

# CERTIFICATE OF SERVICE

On March 24, 2022, I served the foregoing document by the following means to the persons as listed below:

I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

<savvybroker@yahoo.com>
<crystal@crystalcox.com>
<ReverendCrystalCox@gmail.com>

Additionally, I caused the document(s) to be sent to the persons at the addresses listed below via United States mail, postage fully prepaid:

CRYSTAL L. COX
C/O ELIOT BERNSTEIN
2753 NORTHWEST 34TH STREET,
BOCA RATON, FL 33434

CRYSTAL L. COX
P.O. BOX 2027
PORT TOWNSEND, WA 98368

CRYSTAL L. COX
P.O. BOX 2087
PORT TOWNSEND, WA 98368

Crystal L. Cox
1000 DRUMLIN LANE
PO BOX 1610
EUREKA, MT 59917

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 24, 2022.

/s/ Brittani Holt
Employee,
Randazza Legal Group, PLLC